# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

_____
                                            )
JONATHAN WAYNE BOTTEN, SR.; TANJA           )
DUDEK-BOTTEN; ANNABELLE BOTTEN; AND         )
J.B., A MINOR BY AND THROUGH HIS            )
GUARDIAN JONATHAN WAYNE BOTTEN, SR.,        )
                                            )
                                            ) CASE NO.
                Plaintiffs,                 ) 5:23-CV-00257-KK-
                                            ) (KSHKX)
        vs.                                 )
                                            )
STATE OF CALIFORNIA; COUNTY OF              )
SAN BERNARDINO; ISAIAH KEE; MICHAEL         )
BLACWOOD; BERNARDO RUBALCAVA; ROBERT        )
VACCARI; JAKE ADAMS; AND DOES 1-10,         )
INCLUSIVE,                                  )
                                            )
                Defendants.                 )
_____)



VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

ANNABELLE BOTTEN

DECEMBER 16, 2024




REPORTED BY SANDRA NALLEY, CSR NO. 13607

1

```
 1                  UNITED STATES DISTRICT COURT
 2                 CENTRAL DISTRICT OF CALIFORNIA
 3
    _____
 4                                          )
    JONATHAN WAYNE BOTTEN, SR.; TANJA       )
 5  DUDEK-BOTTEN; ANNABELLE BOTTEN; AND     )
    J.B., A MINOR BY AND THROUGH HIS        )
 6  GUARDIAN JONATHAN WAYNE BOTTEN, SR.,    )
                                            )
 7                                          ) CASE NO.
                      Plaintiffs,           ) 5:23-CV-00257-KK-
 8                                          ) (KSHKX)
                 vs.                        )
 9                                          )
    STATE OF CALIFORNIA; COUNTY OF          )
10  SAN BERNARDINO; ISAIAH KEE; MICHAEL     )
    BLACWOOD; BERNARDO RUBALCAVA; ROBERT    )
11  VACCARI; JAKE ADAMS; AND DOES 1-10,     )
    INCLUSIVE,                              )
12                                          )
                      Defendants.           )
13  _____ )
14
15  VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF ANNABELLE
16  BOTTEN, taken remotely on Monday, December 16, 2024, at
17  2:47 p.m., before Sandra Nalley, Certified Shorthand
18  Reporter, CSR No. 13607.
19
20
21
22
23
24
25
```

2

```
 1                A P P E A R A N C E S:
 2
 3   FOR THE PLAINTIFFS:
 4         LAW OFFICES OF DALE K. GALIPO
           BY:  HANG LE, ESQ.
 5              (Appearing via videoconference)
           21800 Burbank Blvd., Suite 310
 6         Woodland Hills, California 91367
           818.347.3333
 7         Hlee@galipolaw.com
 8
     FOR THE DEFENDANTS MICHAEL BLACKWOOD, BERNARDO RUBALCAVA,
 9   AND STATE OF CALIFORNIA:
10         OFFICE OF THE DEPUTY ATTORNEY GENERAL
           BY:  DIANA ESQUIVEL, ESQ.
11              (Appearing via videoconference)
           1300 I Street, Suite 125
12         Sacramento, California 94222
           916.210.7320
13         Diana.esquivel@doj.ca.gov
14   FOR THE DEFENDANTS COUNTY OF SAN BERNARDINO,
     ROBERT VACCARI AND JAKE ADAMS:
15
           LYNBERG & WATKINS
16         BY:  SHANNON L. GUSTAFSON, ESQ.
                (Appearing via videoconference)
17         1100 W. Town & Country Road, Suite 1450
           Orange, California 92868
18         714.937.1010
           Sgustafson@lynberg.com
19
20   ALSO PRESENT:
21         JOSE FONTAO, VIDEOGRAPHER
22
23
24
25
```

3

```
 1                         I N D E X
 2
 3
 4    WITNESS:   ANNABELLE BOTTEN
 5    EXAMINATION                                          PAGE
 6    BY MS. GUSTAFSON:                                       6
 7    BY MS. ESQUIVEL:                                      103
 8
 9                        E X H I B I T S
10
11
12              (No exhibits were marked.)
13
14
15       QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER
16
17                         (None.)
18
19
20
21
22
23
24
25
```

```
02:48  1              THE VIDEOGRAPHER:  Good afternoon.
02:48  2              This is the video deposition of
02:48  3   Annabelle Botten, taken remotely on Monday, December 16th
02:48  4   in the year 2024.  We're here in the matter of Jonathan
02:48  5   Wayne Botten, Sr. et al. vs. State of California et al.,
02:48  6   Case No. 5:23-CV-00257-KK-(SHKX).  This case is being
02:48  7   heard in the United States District Court for the Central
02:48  8   District of California.
02:48  9              My name is Jose Fontao, legal videographer
02:48 10   contracted through Dean Jones Legal Videos, Inc. of
02:48 11   Los Angeles and Santa Ana, California.  This deposition
02:48 12   is commencing at 2:48 p.m.
02:48 13              Would all present please identify themselves,
02:48 14   beginning with the deponent.  Go ahead, Ms. Botten.
02:48 15              THE WITNESS:  Hi.  My name is Annabelle Marie
02:48 16   Botten.  I don't know what else I'm supposed to say.
02:48 17              MS. GUSTAFSON:  That's it.  You're doing great.
02:48 18              Shannon Gustafson for the County defendants.
02:48 19              MS. ESQUIVEL:  Diana Esquivel for the State
02:48 20   defendants, appearing from Sacramento.
02:48 21              MS. LE:  Hang Le on behalf of the deponent,
02:48 22   Annabelle Botten, and the plaintiffs.
02:49 23              THE VIDEOGRAPHER:  And would the court reporter
      24   please administer the oath.
      25   ///
```

```
02:53  1         A.   Yes.
02:53  2         Q.   What videos have you reviewed?
02:53  3         A.   I reviewed the videos that my neighbors had
02:53  4    taken.
02:53  5         Q.   And which neighbors took the video that you
02:53  6    reviewed?
02:53  7         A.   I don't know exactly which neighbor took which
02:53  8    video.  I just know it was one of the videos.
02:53  9         Q.   How many different videos have you seen that
02:53 10    were taken by neighbors?
02:53 11         A.   Two.
02:53 12         Q.   And how was it that you came to watch these
02:53 13    videos?
02:53 14         A.   My dad had had them when he had received them
02:53 15    from the neighbors.
02:53 16         Q.   And were they of the same view or two different
02:53 17    views?
02:53 18         A.   Two different views.
02:53 19         Q.   Can you describe for me what the two different
02:54 20    views were?
02:54 21         A.   Yes.  They were on either side.  So, like, the
02:54 22    view from across the street and the view from -- towards
02:54 23    our house.
02:54 24         Q.   View towards your house, was that the video
02:54 25    that your dad took?
```

10

```
02:57  1        Q.   So from this house possibly?
02:57  2        A.   Yes, possibly.
02:57  3        Q.   Do you know who lived in this house?
02:57  4        A.   No, not really.  I knew the kids, because we
02:57  5   would see them play outside, but other than that, I had
02:57  6   never met those neighbors.
02:57  7        Q.   When you saw the -- the video from this house,
02:57  8   it was something your dad showed you?
02:57  9        A.   Yes.  It was one of the videos that he had.
02:57 10        Q.   Then you referred to another video.  Was that
02:57 11   an angle from this house right here?
02:57 12        A.   Yes.
02:57 13        Q.   When was the last time you saw either of these
02:57 14   videos?
02:57 15        A.   It was really early on.  I can't give an exact
02:57 16   time.  I know it was maybe a month, maybe more after the
02:57 17   shooting, because I couldn't handle watching the videos.
02:57 18   I thought they would help me and it just made everything
02:57 19   worse.
02:57 20        Q.   So fair to say your dad had two videos.  You
02:58 21   may have looked at them a few times closer to the
02:58 22   incident, and then you just stopped watching them?
02:58 23        A.   Yeah.  It just wasn't helping me.  I thought it
02:58 24   was going to relieve, and it just -- it just didn't
02:58 25   relieve anything.  It just made my brain just more --
```

13

```
05:16  1   quality.  Does this look like the one you might be
05:16  2   referring to?
05:16  3        A.   I can't see anything.  Alls I can see is --
05:16  4             MS. GUSTAFSON:  Diana, we don't have the video.
05:16  5   We just have your screen with a list of videos.
05:16  6             MS. ESQUIVEL:  Oh.
05:16  7             THE WITNESS:  Yeah.
05:16  8             MS. ESQUIVEL:  I probably shared the wrong
05:16  9   screen.  Hold on.
05:16 10   BY MS. ESQUIVEL:
05:16 11        Q.   Okay.  Let me try this again.
05:16 12        A.   No.
05:16 13        Q.   No? Okay. Let me try one more. Okay. Let's
05:16 14   try to see if this one might be it.
05:17 15        A.   No.
05:17 16        Q.   No?  And who showed you -- or do you know where
05:17 17   you got the second video that you're thinking about that
05:17 18   is in black and white?
05:17 19        A.   I don't know exactly where I got the video.  I
05:17 20   don't know if I had gotten it from my parents, but I do
05:17 21   know it was a video that was from the neighbors, and it's
05:17 22   in black and white.
05:17 23        Q.   Do you still have that video?
05:17 24        A.   I believe so, I do.
05:17 25        Q.   Okay.  I'm going to ask you if you can please
```

117

```
05:17  1    provide that to your attorney --
05:17  2        A.   Okay.
05:17  3        Q.   -- and we'll just ask it from her.  Okay?
05:17  4        A.   Okay.
05:17  5        Q.   Because like I said, I don't -- I have never
05:17  6    seen a black-and-white one, so I don't know if that's one
05:17  7    that we have.
05:17  8        A.   Okay.
05:17  9        Q.   Okay.  And that's one that you say that you've
05:17 10    watched and that you watched back in 2022 for six to
05:18 11    eight hours total over a period of time, correct?
05:18 12        A.   Yes.  I had watched both the neighbor videos.
05:18 13    The black-and-white video is very -- is probably the
05:18 14    worse video out of both of them.
05:18 15        Q.   Okay.
05:18 16        A.   Because in that video you hear us screaming for
05:18 17    help.
05:18 18        Q.   Okay.  And that's the one that you feel has
05:18 19    contributed to your trauma and why you want to -- you've
05:18 20    forgotten a lot of what had happened?
05:18 21        A.   No.  The shooting is the reason I forgot what
05:18 22    was happening.  The videos were to try to help me
05:18 23    remember what was happening.
05:18 24        Q.   Okay.
05:18 25             MS. GUSTAFSON:  And, Diana, for the record, I
```

118

```
05:18  1   have -- I don't have any black-and-white video that I
05:18  2   have ever seen from the angle that she's described
05:18  3   either.
05:18  4              MS. ESQUIVEL:  Right.  So -- okay.  I think
05:18  5   that's all the questions I have.  Thank you very much for
05:18  6   your time.
05:18  7              THE WITNESS:  Okay.  Thank you.
05:18  8              MS. LE:  I have no questions.
05:18  9              MS. ESQUIVEL:  Okay.  We can go off the record.
05:18 10              THE REPORTER:  Okay.  Before we go off, would
05:19 11   anybody like to order a certified copy?
05:19 12              MS. ESQUIVEL:  Yes.  Electronic for me only.
05:19 13              THE REPORTER:  Thank you.
05:19 14              MS. ESQUIVEL:  Electronic only for me, yes.
05:19 15              MS. LE:  And I'd like to request that the
05:19 16   deponent review the transcript, please.
05:19 17              THE REPORTER:  Okay.  Off the record?
05:19 18              THE VIDEOGRAPHER:  Videotaped deposition is
05:19 19   going off the record at 5:19 p.m.  This concludes today's
05:19 20   video deposition of Annabelle Botten.  Thank you.
      21              (The deposition concluded at 5:19 p.m.)
      22
      23
      24
      25
```

119

I, SANDRA NALLEY, Certified Shorthand Reporter for the State of California, do hereby certify:

That the witness in the foregoing deposition was by me first duly sworn to testify to the truth, the whole truth and nothing but the truth in the foregoing cause; that the deposition was taken by me in machine shorthand and later transcribed into typewriting, under my direction, and that the foregoing contains a true record of the testimony of the witness.

Dated:    This 30th day of December, 2024, at Temecula, California.

_____
SANDRA NALLEY
CSR NO. 13607

121