1  SHANNON L. GUSTAFSON (SBN 228856)
   sgustafson@lynberg.com
2  AMY R. MARGOLIES (SBN 283471)
   amargolies@lynberg.com
3  ANITA K. CLARKE (SBN 321015)
   aclarke@lynberg.com
4  **LYNBERG & WATKINS**
   A Professional Corporation
5  1100 W. Town & Country Road, Suite #1450
   Orange, California 92868
6  (714) 937-1010 Telephone
   (714) 937-1003 Facsimile
7
8  Attorneys for Defendant, COUNTY OF SAN BERNARDINO,
   ROBERT VACCARI, and JAKE ADAMS

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | L.C., a minor by and through her | CASE NO. 5:22-cv-00949-KK-(SHKx) |
   guardian *ad litem* Maria Cadena,
13 individually and as successor-in-interest | *Assigned for All Purposes to:*
   to Hector Puga; I.H., a minor by and | *Hon. Kenly K. Kato – Courtroom 3*
14 through his guardian *ad litem* Jasmine
   Hernandez, individually and as | **COUNTY DEFENDANTS' MOTION**
15 successor-in-interest to Hector Puga; | **FOR SUMMARY JUDGMENT, OR**
   A.L., a minor by and through her | **ALTERNATIVELY, SUMMARY**
16 guardian *ad litem* Lydia Lopez, | **ADJUDICATION; MEMORANDUM**
   individually and as successor-in-interest | **OF POINTS AND AUTHORITIES**
17 to Hector Puga; and ANTONIA
   SALAS UBALDO, individually, | *[Filed Concurrently County Defendants'*
18                                          | *Separate Statement of Undisputed*
                                            | *Material Facts; Exhibits and*
19             Plaintiffs,                   | *Declarations; Proposed Judgment]*

20     vs.                                   | Date:        March 20, 2025
                                            | Time:        9:30 a.m.
21 STATE OF CALIFORNIA; COUNTY             | Courtroom:   1
   OF SAN BERNARDINO; S.S.C., a
22 nominal defendant; ISAIAH KEE;          | *Trial Date: June 2, 2025*
   MICHAEL BLACKWOOD;
23 BERNARDO RUBALCAVA;                     | *Complaint filed: 06/07/2022*
   ROBERT VACCARI; JAKE ADAMS;            | *FAC filed: 10/18/22*
24 and DOES 6-10, inclusive,               | *SAC filed: 01/13/23*
                                            | *TAC filed: 05/12/23*
25

26             Defendants.

27

28
                                     **1**
**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY**
**JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 20, 2025, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the above-entitled Court located at 3470 Twelfth Street, Riverside, California, Defendants County of San Bernardino, Jake Adams, and Robert Vaccari ("County Defendants") will, and hereby do, move the Court pursuant to Fed. R. Civ. P. Rule 56, for an order granting summary judgment, or in the alternative summary adjudication as to each claim in Defendants' favor, and against Plaintiffs L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually ("Plaintiffs") on Plaintiffs' Third Amended Complaint ("TAC") (Dkt. 68).

The grounds for issuing an order granting summary judgment/adjudication as to each claim in favor of County Defendants are as follows[1]:

1. Plaintiffs' Second Claim for Fourth Amendment – Excessive Force (42 U.S.C. § 1983) against individual defendants Jake Adams and Robert Vaccari is without merit and fails as a matter of law. Further, any allegations less lethal force was excessive was not alleged in Plaintiffs' Third Amended Complaint and is therefore barred. *Newton v. American Debt Services, Inc.*, 75 F.Supp.3d 1048, 1063

---

[1] Pursuant to the meet and confer efforts preceding this Motion, Plaintiffs have stipulated to dismiss their First Claim for Fourth Amendment – Detention and Arrest against County Defendants, Third Claim for Fourth Amendment – Denial of Medical Care against County Defendants, and Fourth Claim – Substantive Due Process as to Vaccari only, and to strike allegations concerning medical care in other claims in the TAC ¶¶ 48, 107(d), 117, 118, and 119). (Dkt. 101).

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1   (N.D. Cal. 2014) (Plaintiffs may not use an opposition to a motion for summary

2   judgment as a "procedural second chance to flesh out inadequate pleadings.");

3      2.  Plaintiffs' Fourth Claim for Substantive Due Process (42 U.S.C. § 1983)

4   against Defendant Jake Adams is without merit and fails as a matter of law.  Further,

5   Jake Adams was not the cause of Decedent's death, therefore he did not interfere with

6   Plaintiffs' relationship;

7      3.  Plaintiff L.C.'s Fourth Claim for Substantive Due Process (42 U.S.C. §

8   1983) for the Fourteenth Amendment against Jake Adams is without merit as L.C. did

9   not have a sufficient relationship with Puga to maintain this claim;

10      4.  Plaintiffs' Fifth Claim for Battery (Survival and Wrongful Death) against

11   County of San Bernardino, Jake Adams, and Robert Vaccari is without merit and fails

12   as a matter of law.  Further, any allegations less lethal force was excessive was not

13   alleged in the tort claim as required by the Tort Claims Act, nor in the Complaint, and

14   is therefore barred.  *See,* Cal. Gov. Code §§ 910, *et seq.*; *Newton v. American Debt*

15   *Services, Inc.*, 75 F.Supp.3d 1048, 1063 (N.D. Cal. 2014) (Plaintiffs may not use an

16   opposition to a motion for summary judgment as a "procedural second chance to flesh

17   out inadequate pleadings.")  Additionally, because the County Defendants are not the

18   cause of Decedent's death, the wrongful death damages are entirely without merit;

19      5.  Plaintiffs' Sixth Claim for Negligence (Survival and Wrongful Death)

20   against County of San Bernardino, Jake Adams, and Robert Vaccari is without merit

21   and fails as a matter of law.  Further, any allegations less lethal force was excessive

22   and/or negligent tactics were utilized prior to the shooting were not set forth in the

23   tort claim as required by the Tort Claims Act, nor was alleged in the Complaint, and

24   is therefore barred.  *See,* Cal. Gov. Code §§ 910, *et seq.*; *Newton v. American Debt*

25   *Services, Inc.*, 75 F.Supp.3d 1048, 1063 (N.D. Cal. 2014) (Plaintiffs may not use an

26   opposition to a motion for summary judgment as a "procedural second chance to flesh

27

28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

1  out inadequate pleadings.") Additionally, because the County Defendants are not the
2  cause of Decedent's death, the wrongful death damages are entirely without merit;

3      6.  Plaintiffs' Seventh Claim for Violation of Cal. Civ. Code § 52.1 against
4  County of San Bernardino, Jake Adams, and Robert Vaccari is without merit and fails
5  as a matter of law.  Further, any allegations less lethal force was excessive was not
6  alleged in the tort claim as required by the Tort Claims Act, nor was alleged in the
7  Complaint, and is therefore barred.  *See,* Cal. Gov. Code §§ 910, *et seq.*; *Newton v.*
8  *American Debt Services, Inc.*, 75 F.Supp.3d 1048, 1063 (N.D. Cal. 2014) (Plaintiffs
9  may not use an opposition to a motion for summary judgment as a "procedural second
10 chance to flesh out inadequate pleadings.")

11     *7.*  As to the County Defendants, because they were not the cause of Decedent's
12 death, the survival damages, loss of life, and loss of enjoyment of life damages are
13 entirely without merit.

14     This Motion is made on the grounds that there are no triable issues of material
15 facts as to any of the foregoing matters, and the County Defendants are entitled to
16 judgment as a matter of law.  *See*, Fed. R. Civ. P. 56.

17     County Defendants' Motion is based upon this Notice, the accompanying
18 Memorandum of Points and Authorities, the Declarations of Lucien Haag, Jason
19 Alexander, Jake Adams, and Anita K. Clarke, and the Exhibits submitted therewith;
20 the concurrently-filed Separate Statement of Uncontroverted Material Facts and
21 Conclusions of Law; complete files and records of this action; and upon such other
22 and further matters as may properly come before the Court.

23     Pursuant to Local Rule 7-3, this Motion is being filed following meet and
24 confer efforts that commenced on February 13 with Defendants serving a detailed
25 meet and confer letter.  This letter was then followed up by the required real-time
26 telephonic meet and confer between counsel on February 17, 2025 where the claims

27
28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

were discussed at length.  The parties are at an impasse, the County Defendants therefore request this Court hear and decide the issues raised herein and grant summary judgment on all claims.

DATED:  February 20, 2025

**LYNBERG & WATKINS**
A Professional Corporation


By:  /s/ Anita K. Clarke
**SHANNON L. GUSTAFSON**
**AMY R. MARGOLIES**
**ANITA K. CLARKE**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO
ROBERT VACCARI, and JAKE ADAMS

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1

## **TABLE OF CONTENTS**

I.    STATEMENT OF FACTS.................................................................12

    A.    Freeway Shooting and Pursuit .............................................12

    B.    Puga Remained in the Vehicle .............................................12

    C.    Puga Exited the Vehicle.......................................................14

    D.    Puga Moved to Front of His Vehicle ...................................15

    E.    Cause of Death ....................................................................17

    F.    L.C.'s Familial Relationship ...............................................18

    G.    Tort Claims..........................................................................19

II.   SECOND CLAIM FOR EXCESSIVE FORCE................................19

    A.    DEADLY FORCE BY DEPUTY ADAMS .........................19

    B.    LESS LETHAL FORCE BY SERGEANT VACCARI ......23

III.  FOURTH CLAIM FOR SUBSTANTIVE DUE PROCESS ...........24

IV.   QUALIFIED IMMUNITY .............................................................27

V.    STATE CLAIMS ...........................................................................30

    A.    WRONGFUL DEATH DAMAGES CLAIM FAILS .........30

    B.    PLAINTIFFS FAILURE TO ALLEGE USE OF LESS LETHAL
IN TORT CLAIM OR COMPLAINT ...............................30

    C.    REASONABLENESS OF FORCE DISPOSES WITH STATE
CLAIMS...............................................................................31

    D.    NO EVIDENCE COUNTY DEFENDANTS' TACTICS WERE
NEGLIGENT .....................................................................32

VI.   CONCLUSION ..............................................................................33

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.K.H. by and through Landeros v. City of Tustin*,
2014 WL 12672480 (C.D. Cal. 2014) ................................................................24

*Alford v. Humboldt County*,
785 F.Supp.2d 867 ............................................................................................29

*Baldridge v. City of Santa Rosa*,
1999 WL 66141 (N.D. Cal.1999) ......................................................................21

*Bernal v. Sacramento Cnty. Sheriff's Dep't*,
73 F.4th 678 (9th Cir. 2023) .............................................................................21

*Brown v. Ransweiler*,
171 Cal. App. 4th 516 (2009) ...........................................................................32

*Caban v. Mohammed*,
441 U.S. 380 (1979) ..........................................................................................26

*City of San Jose v. Superior Court*,
12 Cal.3d 447 (1974) ........................................................................................31

*Connelly v. County of Fresno*,
146 Cal.App.4th 29 (2006) ...............................................................................31

*Connelly v. State of California*,
3 Cal.App.3d 744 (1970) ..................................................................................30

*County of Los Angeles v. Mendez*,
581 U.S. 420 (2017) ..........................................................................................19

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) .....................................................................................24, 25

*Cruz v. City of Anaheim*,
765 F.3d 1076 (9th Cir. 2014) ......................................................................22, 23

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

*Demarest v. City of Vallejo,*
  44 F.4th 1209 (9th Cir. 2022) ................................................................ 20

*DiCampli-Mintz v. County of Santa Clara,*
  55 Cal.4th 983 (2012) ........................................................................... 30

*District of Columbia v. Wesby,*
  138 S.Ct. 577 (2018) ............................................................................ 28

*Donaldson v. United States,*
  2018 WL 1089986 (S.D. Cal. 2018) ...................................................... 32

*Estate of Aguirre v. County of Riverside,*
  29 F.4th 624 (9th Cir. 2022) ................................................................. 19

*Estate of Chivrell v. City of Arcata,*
  694 F.Supp.3d 1218 .............................................................................. 26

*Estate of Moppin-Buckskin v. City of Oakland,*
  2010 WL 147976 (N.D. Cal. 2010) ....................................................... 22

*Estate of Strickland v. Nevada County,*
  69 F.4th 614 (9th Cir. 2023) ................................................................. 21

*Fewell v. California,*
  2017 WL 6043080 (C.D. Cal. 2017) ...................................................... 25

*Foster v. City of Fresno,*
  392 F.Supp.2d 1140 (E.D. Cal. 2005) ................................................... 22

*Gonzalez v. City of Anaheim,*
  747 F.3d 789 (9th Cir. 2014) ................................................................ 25

*Graham v. Connor,*
  490 U.S. 386 (1989) ................................................................. 19, 20, 21

*Hall v. City of Los Angeles,*
  19 Cal.2d 198 (1941) ............................................................................ 31

*Hamby v. Hammond,*
  821 F.3d 1085 (9th Cir. 2016) .............................................................. 28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ........................................................................... 27

*Hayes v. v. Co. of San Diego,*
  736 F.3d 1223 (9th Cir. 2013) .......................................................... 25

*Hughes v. Rodriguez,*
  31 F.4th 1211 (9th Cir. 2022) .......................................................... 29

*Karam v. City of Burbank,*
  352 F.3d 1188 (9th Cir. 2003) .......................................................... 26

*Kelson v. City of Springfield,*
  767 F.2d 651 (9th Cir. 1985) ............................................................ 26

*Kingsley v. Hendrickson,*
  576 U.S. 389 (2015) ........................................................................... 20

*Lehr v. Robertson,*
  463 U.S.  (1983) ................................................................................ 27

*Lopez v. City of Los Angeles,*
  196 Cal.App.4th 675 (2011) .............................................................. 30

*Mattos v. Agarano,*
  661 F.3d 433 (9th Cir. 2011) ............................................................ 21

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ........................................................................... 27

*Moore v. City of Berkley,*
  2016 WL 6024530 (N.D. Cal. 2016) ................................................. 31

*Moreland v. Las Vegas Metro. Police Dep't.,*
  159 F.3d 365 (9th Cir. 1998) ............................................................ 24

*Newton v. American Debt Services, Inc.,*
  75 F.Supp.3d 1048 (N.D. Cal. 2014) ......................................... 2, 3, 4, 23

*Orn v. City of Tacoma,*
  949 F.3d 1167 (9th Cir. 2020) .......................................................... 28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

*Peck v. Montoya*,
   51 F.4th 877 (9th Cir. 2022) ................................................................25

*Reynolds v. County of San Diego*,
   858 F.Supp. 1064 (S.D. Cal. 1994) ....................................................28

*Saucier v. Katz*,
   533 U.S. 194 (2001) ............................................................................28

*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................................................19

*Seidner v. de Vries*,
   39 F.4th 591 (9th Cir. 2022) ..............................................................21

*Shafer v. Cty. of Santa Barbara*,
   868 F.3d 1110 (9th Cir. 2017) ...........................................................27

*Sharp v. County of Orange*,
   871 F.3d 901 (9th Cir. 2017) .............................................................28

*Smith v. City of Fontana*,
   818 F.2d 1411 (9th Cir. 1987) ...........................................................26

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005) .............................................................21

*Sorgen v. City & County of San Francisco*,
   2006 WL 2583683 (N.D. Cal. 2006) .................................................32

*Spencer v. Pew*,
   117 F.4th 1130 (9th Cir. 2024) ..........................................................29

*Tennessee v. Garner*,
   471 U.S. 1 (1985) ..........................................................................19, 21

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
   435 F.3d 989 (9th Cir. 2006) .............................................................24

*Watkins v. City of San Jose*,
   2017 WL 1739159 (C.D. Cal 2017) ..................................................21

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

*White v. Pauly*,
   137 S.Ct. 548 (2017)..............................................................................28

*Wilkinson v. Torres*,
   610 F.3d 546 (9th Cir. 2010) ...................................................21, 26, 29

*Williamson v. City of Nat'l City*,
   23 F.4th 1146 (9th Cir. 2022) ...........................................................20

*Winterrowd v. Nelson*,
   480 F.3d 1181 (9th Cir. 2007) ...........................................................29

*Wood v. Riverside Gen. Hosp.*,
   25 Cal. App 4th 1113 (1994) .............................................................30

Codes

42 U.S.C. § 1983................................................................................2,3

Cal. Civ. Code § 52.1..........................................................................4

Cal. Gov. Code § 945.4 .......................................................................30

Cal. Gov. Code §§ 910 ...........................................................3, 4, 30, 31

Rules

Fed. R. Civ. P. Rule 56 ...............................................................2, 4, 33

-

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.     STATEMENT OF FACTS**

3    **A. Freeway Shooting and Pursuit**

4        On February 16, 2021, CHP received reports that a white Ford SUV with a

5    funeral sticker on the back window had been involved in shooting at another vehicle

6    on the freeway earlier that same evening.  (UMF 9-10).  Sergeant Kee was the on-

7    duty supervisor when the freeway shooting occurred (UMF 11) and spoke to the

8    victim who showed Kee the bullet went through the passenger door and through the

9    seat (UMF 12-14).  CHP were briefed regarding the shooting and permitted to conduct

10   a felony stop on the vehicle.  (UMF 15-18).

11       CHP Officers Blackwood and Rubalcava located the sane vehicle in the early

12   morning hours on February 17, 2021 and attempted a traffic stop.  (UMF 19).

13   Although, the driver, later identified as decedent Hector Puga, briefly yielded to the

14   right curb with Rubalcava and Blackwood behind him, when they attempted to contact

15   him, he sped away and a pursuit was initiated.  (UMF 20-21). The pursuit was later

16   joined by CHP defendant Sergeant Kee.  (UMF 22-24).  At some point Deputy Adams

17   and Sergeant Vaccari also assisted CHP in pursuit.  (UMF 25).  CHP notified the

18   Sheriff's Department through dispatch, which was relayed to Adams and Vaccari in

19   their patrol vehicles that there had been a shooting from the white SUV earlier in the

20   evening.  (UMF 26-27).  Vaccari and Adams were also given information that Puga

21   had a gun in the car.  (UMF 28). During the pursuit, no one entered or exited the

22   vehicle, leading the deputies to believe that the person involved in the shooting was

23   still within the white SUV, with the gun.  (UMF 29-31).

24   **B. Puga Remained in the Vehicle**

25       After approximately an hour, the pursuit terminated at the intersection of Peach

26   Avenue and Catalpa Street in Hesperia when the suspect vehicle became disabled,

27

28

just south of Catalpa.  (UMF 32-35).  The passenger of the vehicle complied with commands and was safely taken into custody.  (UMF 36).  Adams spoke with the passenger, who did not know if there was still a gun in the vehicle. (UMF 37-38).  Puga refused to exit the vehicle for approximately an hour, despite repeated commands (UMF 39-40).  During this time, Puga behaved erratically and was agitated which included asking to call his sister and his mom, requesting a cigarette, yelling and cursing, and throwing items out of the driver's side window.  (UMF 41-44).  During this time, Puga was seen twisting and turning his body, reaching around the vehicle, and leaning over in the car.  (UMF 45-47).

After approximately 50 minutes of Puga refusing to exit the vehicle, Puga's rear windshield was broken in order to deploy less lethal rounds to facilitate his exit.  (UMF 48-49).  Vaccari then deployed pepper balls into the vehicle to make the vehicle's environment uncomfortable and force Puga out.  (UMF 50-51).  The effects of pepper balls on a person include runny nose, coughing, impaired eyesight, and an urge to evacuate.  (UMF 52-55).

Vaccari was positioned to the rear of Puga's vehicle along the passenger side of one of the CHP units (UMF 56), in a position of cover behind an open door, when he deployed the pepper balls.  (UMF 57).  Kee was talking with Puga to attempt to get him out of the vehicle, however, when he did not respond, Vaccari deployed pepper balls to attempt to get Puga to evacuate the vehicle.  (UMF 58-59).  During this time, Puga would agree to come out of the vehicle but then fail to do so.  (UMF 60).  Several times Puga opened the door, but then immediately close it without exiting, resulting in the deployment of additional pepper balls by Sergeant Vaccari.  (UMF 61-63).  There were varying estimates of the number of pepper balls deployed, but it was somewhere between 75 and 150 pepper balls over a period of approximately twenty-six minutes.  (UMF 65-68).  Vaccari would deploy a round of pepper balls

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

1   and then give Puga time to comply before deploying more rounds.  (UMF 69-70).

2   During this entire time, Vaccari gave warnings to Puga to exit the car or more rounds

3   would be fired.  (UMF 71).

4          While the pepper balls were being deployed, Adams was behind an open

5   passenger side door of a CHP vehicle that was facing northbound behind Puga's

6   vehicle.  (UMF 72-73).

7          Puga made a statement indicating he was hurt by one of the pepper balls, or it

8   was causing him pain, which caused Vaccari to stop deploying pepper balls.  (UMF

9   74-75).

10         **C. Puga Exited the Vehicle**

11         Puga eventually exited the vehicle through the vehicle driver's side.  (UMF 76-

12  77).  He did not have a shirt on and was wearing baggy jeans. (UMF 78-79). Puga

13  was next to his driver's side door for approximately 2 minutes before moving rapidly

14  to the front of his vehicle.  (UMF 80). Once out of the vehicle on the driver's side,

15  Puga was told to put his hands up several times and walk backwards, but while he

16  periodically complied with raising his arms, he never kept them up for an extended

17  period of time and completely ignored officers' commands to walk backwards. (UMF

18  81-84).  He was additionally given commands to get on the ground, which he ignored.

19  (UMF 88-89). The law enforcement officers did not observe a firearm when Puga was

20  on the driver's side of his vehicle in clear view, and no shots were fired by any law

21  enforcement at this time, despite Puga repeatedly lowering his arms while on the

22  driver's side.  (UMF 81-84, 90-94).

23         Rubalcava was behind his driver's side door under cover when Puga exited the

24  vehicle. (UMF 85).  Adams was close to a CHP vehicle with cover when Puga exited

25  the vehicle.  (UMF 86). Vaccari was behind the trunk of the CHP vehicle behind

26  Puga's car.  (UMF 87).

27

28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

### D. Puga Moved to Front of His Vehicle

After a few minutes of being on the driver's side of his vehicle, Puga ran to the front of his vehicle and faced south towards his vehicle, near the middle of the hood but slightly closer to the driver's side. (UMF 95-97). The front of Puga's vehicle was blocking the view of Puga's midsection down to his feet. (UMF 98). Kee gave Puga commands to keep his hands where they could see them. (UMF 99).

The officers were unable to get Puga to comply and surrender and they were unable to see Puga's waistband where Puga was positioned. (UMF 100-101). Puga had been at the front of his vehicle for several minutes before law enforcement approached. (UMF 102). Although a helicopter was initially present and using its spotlights throughout the pursuit, by the time Puga had moved to the front of his vehicle, the helicopter was not present, and it was dark where Puga was standing. (UMF 103-105).

Kee and Rubalcava were to the left of the patrol vehicle to the southwest dirt area, approaching to the left-front corner of Puga's vehicle on the west side. (UMF 106-107). While they were approaching, Kee told Puga to put his hands up so they could see them. (UMF 108). Commands were consistently given for Puga to keep his hands up. (UMF 109).

At this same time, Adams and Vaccari approached by crossing between Puga's and CHP's vehicles and moving eastward to gain a better view of Puga by walking on the passenger side of Puga's vehicle. (UMF 110-112). Adams was in front of Vaccari with his Glock 17, 9mm drawn. (UMF 113-114). The CHP officers were approaching Puga at a similar pace, on the other side of Puga's vehicle. (UMF 115).

There was no discussion between CHP and the Sheriff's Department about how to approach Puga when he was in front of his vehicle. (UMF 116). CHP discussed amongst themselves that Rubalcava and Kee would approach Puga and handcuff him.

(UMF 117).  Likewise, Adams and Vaccari formulated a plan to move to the east side of Puga's vehicle to gain a better view of Puga, while using Puga's vehicle passenger side as cover.  (UMF 118-120).  Adams and Vaccari also determined that upon approach, Sgt. Vaccari would arm himself with the less lethal launcher to have a less lethal option available, and Adams would be armed with his firearm in the event deadly force was needed.  (UMF 121-126).

As Adams and Vaccari approached on the passenger side, Adams observed Puga lower his arms from over his head to his waistband from which he drew a firearm, almost simultaneously he heard shots and believed Puga was firing at him from the gun he had drawn.  (UMF 125-132).  Vaccari who was slightly behind Adams with the same view of Puga, also observed Puga pull a firearm and heard shots. (UMF 134-137). Vaccari, who was holding the 40mm launcher, was not certain whether any less lethal rounds were discharged.  (UMF 138-139).

Within seconds of the first shot being fired, Puga turned to run in a northwest direction.  (UMF 140).  Puga had a gun and did not drop his firearm while he ran. (UMF 141-142).  Puga did not make any gestures that he was surrendering.  (UMF 143).  While Puga was running, he turned back towards the officers with his firearm in his hand. (UMF 144). Because Puga still held a gun in his hand while running, with the ability to shoot at Defendants and because he was running toward a residence where he could potentially take hostages, he continued to be both a threat to the officers and civilians as he ran. (UMF 147-150).

The officers therefore continued to fire their weapons and Puga was observed falling down, in the dirt shoulder, chest-down.  (UMF 145).  Once Adams observed Puga go to the ground, Adams ceased firing his weapon.  (UMF 146).

Once on the ground, the Defendants moved towards Puga. Puga was still breathing when the officers approached.  (UMF 151).  Defendants did not see Puga

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

drop his gun at any time as he ran.  (UMF 152).  When they approached, Puga had fallen on his hands in a prone position and therefore his hands were not visible.  (UMF 153).  Officers continued to give verbal commands to show his hands. (UMF 154). When he failed to do so, Vaccari deployed the taser twice to ensure that Puga was no longer a threat and would not again draw his firearm.  (UMF 155).  The taser made Puga's body lock twice, indicating the taser was having an effect on Puga.  (UMF 156).  Puga was then handcuffed by Rubalcava and rolled over.  (UMF 157-158).

Once rolled over, Puga's firearm, with a shiny slide on the top, was found underneath him where his hands had been positioned prior to the handcuffing. (UMF 159-160, 161-162).   The pistol that was found underneath Puga was a PMF (Personally Manufactured Firearm) or "ghost gun" (UMF 163) with a partially removed magazine.  (UMF 163-164).  A fired 9m cartridge was found on the ground next to Puga  (UMF 165).

### E. Cause of Death

The autopsy of Puga revealed he had 10 gunshot wounds.  (UMF 166). However, Puga's cause of death was identified as being the gunshot wound to the mid-left back (UMF 167) that entered through the mid-left back (UMF 168), travelled through skin and soft tissue, through the rib cage, pierced the left lung, then through the front part of the rib cage, ultimately getting lodged in soft tissue of the left upper chest.  (UMF 169-173).  This bullet travelled back to front, angled left to right, and upward.  (UMF 174).  This bullet was fatal (UMF 175) because it went through the lung and created a defect wherein air could not move into the chest cavity, as well as when it hit the lung, blood went into the chest cavity which compressed the lung and created difficulty for the body to oxygenate blood.  (UMF 176-177).

The bullet identified by the coroner as being the fatal shot was removed from the chest cavity and was a fully expanded 5.56 mm (.223 caliber) rifle bullet.  (UMF

178-179).  Only Sergeant Kee and Officer Blackwood were armed with firearms that deployed such bullets (UMF 180), thus the fatal wound that caused Puga's death was fired by either Kee or Blackwood.  (UMF 181).  Deputy Adams is therefore excluded as having caused the fatal injury.  (UMF 182).

Deputy Adams' firearm used 9mm ammunition.  Only two 9mm bullets were recovered from Puga during the autopsy. (UMF 183).  These bullets were associated with gunshot wounds to the right flank and left thigh, both of which the coroner identified as non-fatal. (UMF 185-186).  These bullets both ricocheted before striking Puga.  (UMF 187).  Because of the general upward flight path of ricocheted bullets and general wound path, these wounds were sustained prior to Puga falling to the ground, and therefore there is no evidence to support that Adams continued to use deadly force once Puga was on the ground.  (UMF 188).

## F.  L.C.'s Familial Relationship

As a result of his death, Plaintiff's mother and minor children have filed this lawsuit seeking recovery for the loss of their familial relationship.  However, Plaintiff L.C. had no appreciable relationship with her absentee father. Maria Cadena, mother to minor L.C. (UMF 189), testified that Cadena and Hector Puga were not in a relationship by the time Plaintiff L.C. was born in 2013.  (UMF 190-191).  Puga was not listed as the father on L.C.'s birth certificate (UMF 192) because Puga did not want to be responsible for L.C. (UMF 193) nor did Puga have an issue with another person being listed on the certificate as the father.  (UMF 194).  Cadena never let Puga see Plaintiff L.C. (UMF 195).  Cadena did not get along with Puga (UMF 196) and was concerned about his drinking and verbally abusive behavior if he were to be around L.C.  (UMF 197-198).  L.C. was eight years old at the time of Puga's death and had only ever spoken to him three times. (UMF 199, 191). L.C. never received anything from Puga.  (UMF 200).  Cadena had no plans to allow L.C. to see Puga in

1  the future.  (UMF 201).

2  ### G.  Tort Claims

3  The Estate of Hector Javier Puga, Antonia Salas Ulbaldo, I.H., A.L., and

4  L.C. all submitted claims to the County of San Bernardino on November 23, 2021.

5  (UMF 202-205).  These tort claims provide the same identical factual summary that

6  on February 17, 2021, at approximately 1:42 a.m., California Highway Patrol officers

7  and County of San Bernardino sheriff's deputies encountered Mr. Puga on a street in

8  Hesperia, California.  (UMF 207-211).  The officers and deputies fired shots at Mr.

9  Puga, thereby using excessive force against him.  At the time of the shooting and other

10  undiscovered uses of force, Mr. Puga did not pose an immediate threat of death or

11  serious bodily injury to any person.  (UMF 207-211).  Plaintiffs never set forth any

12  claims about the use of pepper balls and/or tasers nor did they set forth that any pre-

13  shooting tactics were the basis of their claims.  (UMF 212-213, 220).

14  ## II.   SECOND CLAIM FOR EXCESSIVE FORCE

15  ### A. DEADLY FORCE BY DEPUTY ADAMS

16  Deputy Adams and Sergeant Vaccari are entitled to judgment as a matter of law

17  because the force used by these deputies against Decedent was objectively reasonable

18  under the circumstances.  In general, all claims of excessive force, including deadly

19  force, should be analyzed under the objective reasonableness standard of the Fourth

20  Amendment. *See, County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017), *Scott*

21  *v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham v. Connor*, 490 U.S. 386, 397 (1989),

22  *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985).  The objective reasonableness of such

23  conduct is assessed by balancing the nature and quality of the intrusion on Fourth

24  Amendment rights against the government's countervailing interest in the

25  force.  *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022);

26  *Mendez*, 581 U.S. at 427 ("[D]etermining whether the force used to effect a particular

27

28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

seizure is reasonable requires balancing of the individual's Fourth Amendment interests against the relevant government interests." (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396)).

In assessing "whether an officer's actions were objectively reasonable, [the court] consider[s]: '(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion.'" *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (citations omitted). "Our analysis must make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Williamson*, 23 F.4th at 1151. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."); *Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022) ("[A]n 'officer's use of force cannot be deemed excessive based on facts that he [or she] reasonably would not have known or anticipated.'").

There are three non-exclusive factors set forth by the Supreme Court in *Graham v. Connor. See Williamson*, 23 F.4th at 1153 to determine the government's interest in force as follows: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

evade arrest by flight. *Graham*, 490 U.S. at 396; *Seidner v. de Vries*, 39 F.4th 591, 599 (9th Cir. 2022). The Ninth Circuit has repeatedly emphasized that "the most important *Graham* factor" is whether the individual posed an immediate threat to the safety. *Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 692 (9th Cir. 2023) (characterizing the threat to the officer as "minimal and quickly mitigated" when officer was standing momentarily behind an operational vehicle); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). The importance of the second factor was most pointedly made when the Ninth Circuit weighed the immediacy of the threat of a person pointing a replica gun as outweighing the other *Graham* factors. *Estate of Strickland v. Nevada County*, 69 F.4th 614, 621-22 (9th Cir. 2023). Here the immediacy of the threat posed by Puga when he pulled out a real firearm cannot be denied.

Peace officers may reasonably use deadly force whenever they have "probable cause to believe that [a] suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The Ninth Circuit has emphasized that, as a matter of common sense, an armed suspect represents the paradigm threat to officer safety. *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (en banc) ("[W]here a suspect threatens an officer with a weapon…, the officer is justified in using deadly force."); *Watkins v. City of San Jose*, 2017 WL 1739159, at *8 (C.D. Cal 2017). Indeed, "where the totality of the circumstances could cause a reasonable police officer to conclude ***that a suspect is reaching for a gun***, the officer's use of deadly force in self-defense is justified." *Baldridge v. City of Santa Rosa*, 1999 WL 66141, at *7 (N.D. Cal.1999); *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ("'the Fourth Amendment does not require omniscience,' and absolute certainty of harm need not precede an act of self-protection.") (citation omitted).

Consistent with these principles, courts have repeatedly held there is an

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

1  actionable threat justifying the use of deadly force when a suspect even appears to

2  reach for a potential gun.  *Estate of Moppin-Buckskin v. City of Oakland*, 2010 WL

3  147976, at *4 (N.D. Cal. 2010) ("The officers shot Mr. Moppin only after he failed to

4  come toward them, as ordered, dropped his hands and then made a movement toward

5  his waist area as though reaching for a weapon.  All three officers who could see Mr.

6  Moppin unequivocally thought that he was reaching for a gun and feared for their

7  safety.  Therefore, in this case, the test for objective reasonableness is met."); *Foster*

8  *v. City of Fresno*, 392 F.Supp.2d 1140, 1157 (E.D. Cal. 2005) (where suspect "moved

9  his arm down toward his waistband area…a reasonable officer in Officer Cornelison's

10 position would have believed that [the suspect] posed an immediate threat of serious

11 harm.   Officer Cornelison's application of deadly force was thus objectively

12 reasonable.").

13      Applied here, the undisputed evidence establishes at the time Defendant Adams

14 fired his weapon, Puga, who was wearing baggy jeans, suddenly dropped his hands

15 where the officers could not see, despite commands to keep his hands up, and reached

16 towards his waistband, pulling out a firearm. (UMF 79, 98-99, 101, 108-109, 127-

17 128, 130).   Case law is clear that when Decedent reached for his waistband and

18 withdrew a gun, Defendants were justified in shooting. *Cruz v. City of Anaheim*, 765

19 F.3d 1076, 1079 (9th Cir. 2014).   "[F]or a judge ruling on the officers' motion for

20 summary judgment, this translates to a different question: Could any reasonable jury

21 find it more likely than not that Cruz *didn't* reach for his waistband?"  *Id.* at 1079

22 (emphasis in original).  "It would be unquestionably reasonable for police to shoot a

23 suspect in Cruz's position if he reaches for a gun in his waistband, or even if he

24 reaches there for some other reason." *Id.* at 1078.  "Given Cruz's dangerous and

25 erratic behavior up to that point, the police would doubtless be justified in responding

26 to such a threatening gesture by opening fire." *Id.*

27

28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

1    Like the decedent in *Cruz*, Puga was a suspect in a shooting earlier in the

2  evening. (UMF 9). When his vehicle finally became disabled, Puga acted erratically,

3  drinking, wanting to smoke, making various demands and refusing to exit his vehicle.

4  (UMF 40-48). And just prior to all of this, Puga had led officers on a lengthy pursuit.

5  (UMF 23, 35, 48). Unlike in *Cruz*, however, there can be no dispute that in the

6  moments prior to the shooting Plaintiff reached for his waistband as clearly depicted

7  on the video evidence.[2] Further, multiple witnesses, including Defendant Adams saw

8  a firearm removed from that waistband. (UMF 130, 214-219). The firearm was seen

9  in Puga's hand while he ran (UMF 141-142) and was discovered underneath him after

10  he fell. (UMF 159). There can be no reasonable dispute that Puga pulled a firearm

11  from his waistband and then continued to run with it in his hand readily available for

12  use at the time of the shooting. At minimum, Deputy Adams is entitled to qualified

13  immunity as further detailed below.

14  **B. LESS LETHAL FORCE BY SERGEANT VACCARI**

15    Sergeant Vaccari never discharged his firearm (UMF 138) and there is no

16  evidence that Puga was ever struck by any 40 mm rounds from the less lethal launcher

17  held by Sergeant Vaccari at the time of the shooting. (UMF 139). Instead, Plaintiff

18  contends now that it was excessive force for Defendant Vaccari to have utilized the

19  pepper balls to extract Puga from the vehicle and/or to deploy his taser.  However,

20  Plaintiffs fail to mention the use of pepper balls and the taser anywhere in their Third

21  Amended Complaint. (UMF 212-213; *see* Clarke Decl. ¶ 2, Ex. M – TAC (Dkt. 68)).

22  It is well-settled Plaintiffs may not use an opposition to a motion for summary

23  judgment as a "procedural second chance to flesh out inadequate pleadings,"

24  amending their complaint to add claims they had ample time to allege. *Newton v.*

25  _____

26    [2] Jason Decl. ¶¶ 14-17, 18, Exhibits D, E, F, G, and I; Adams Decl. ¶ 6, Ex. J –

27  Mangerino Video

28  **COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

*American Debt Services, Inc.*, 75 F.Supp.3d 1048, 1063 quoting *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

Plaintiffs' TAC alleged the opposite of what they now claim. Specifically, the TAC sets forth that deputies should have utilized less lethal alternatives to take Puga into custody, exactly what Vaccari did (UMF 221). However, after learning that Sergeant Vaccari did not use deadly force, Plaintiffs are now trying to keep him in this lawsuit solely by claiming the exact opposite of what they previously alleged – that the use of less lethal options by Sergeant Vaccari was somehow excessive. This new claim of excessive force through the use of less lethal options should be dismissed as it was not pled in the Third Amended Complaint.

Moreover, for the reasons stated below in Part V, Vaccari is entitled to qualified immunity for his use of less lethal options.

### III.    FOURTH CLAIM FOR SUBSTANTIVE DUE PROCESS

Under the due process clause of the Fourteenth Amendment, liability is found only where the plaintiff can show that police conduct "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). For the aforementioned reasons, Plaintiffs have no evidence Deputy Adams' use of force was not objectively reasonable, let alone conscience shocking. *See*, *Moreland v. Las Vegas Metro. Police Dep't.*, 159 F.3d 365, 371 (9th Cir. 1998) ("[I]f the district court correctly determined [the officer]'s actions were objectively reasonable, it follows that his conduct did not offend the more stringent standard applicable to substantive due process claims.").

"[W]here a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a ***purpose to harm*** unrelated to legitimate law enforcement objectives." *A.K.H. by and through Landeros v. City of Tustin*, 2014 WL 12672480, at *6–7 (C.D. Cal. 2014). "Where, [ ] the officers did not have time to deliberate, a use of force shocks

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

the conscience only if the officers had a "purpose to harm" the decedent for reasons unrelated to legitimate law enforcement objectives." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014). "'Legitimate law enforcement objectives [include] arrest, self-defense, or the defense of others." *Fewell v. California*, 2017 WL 6043080, at *6 (C.D. Cal. 2017) (internal quotation omitted).

"The 'shocks the conscience' standard is applied to evaluate whether the actions of law enforcement during situations that require quick decision-making—such as a traffic stop—were driven by a purpose to harm that is unrelated to legitimate law enforcement objectives. This standard is particularly stringent and requires showing that the officers' actions were directed intentionally to cause harm, rather than merely acting negligently or unreasonably." *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) (internal citations omitted). "We apply the purpose-to-harm standard when officials were required to make "repeated split-second decisions" about how best to respond to a risk, such as during a high-speed car chase or when confronting a threatening, armed suspect." *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) citing Porter, 546 F.3d at 1139 (citation omitted); *Hayes v. v. Co. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013).

Applied here, Deputy Adams' actions were entirely related to the legitimate law enforcement objective of apprehending Decedent, a suspect in a freeway shooting. Plaintiffs have no evidence to meet the purpose to harm standard. Adams did not "act with a purpose to harm unrelated to legitimate law enforcement objectives." *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022)(emphasis added); *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). Plaintiffs certainly have not produced any evidence that Deputy Adams had any other ulterior motive for using force against Decedent (let alone an actionable ulterior motive). *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014) (summary judgment affirmed on

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Fourteenth Amendment claim where plaintiff did not have evidence of officer's illegal ulterior motive(s) for using force); *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (explaining that "speculation as to…improper motive does not rise to the level of evidence sufficient to survive summary judgment.").

Further, for Plaintiffs to establish a claim for interference with a familial relationship, they must prove that Defendants interfered with their relationship to decedent.  U.S. Const. Amend. XIV, § 1; *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985), *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987). The 9th Circuit "recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  To state a claim for loss of familial association, a plaintiff must show that official conduct "'shocks the conscience' ***in depriving family members of a liberty interest in the companionship and society*** of a family member." *Estate of Chivrell v. City of Arcata*, 694 F.Supp.3d 1218, 1231. Thus, the companionship must be lost for Plaintiffs to establish this claim.

Here, the undisputed evidence is that the fatal shot was caused by ammunition only utilized by Defendants Kee and Blackwood.  (UMF 167, 179-182).  Stated otherwise, the undisputed evidence firmly establishes that Deputy Adams only struck Puga twice, with non-fatal shots. (UMF 183-186).  Even if, the Court finds a triable issue as to whether these shots fired by Deputy Adams constituted actionable excessive force, they were undisputably not the cause of Puga's death.  Accordingly, Deputy Adams cannot be liable to the Puga family members for depriving them of their relationship as he quite plainly did not cause Puga's death.

Finally, as to Plaintiff L.C., the undisputed evidence is that she did not have a relationship with her father that could be subject to interference. As was aptly stated in *Caban v. Mohammed*, 441 U.S. 380, 397 (1979), "Parental rights do not spring full-

blown from the biological connection between parent and child. They require relationships more enduring." In the context of parent-child relationships specifically, the Supreme Court has emphasized that the rights of parents are a counterpart of the responsibilities they have assumed: "the mere existence of a biological link does not merit equivalent constitutional protection." *Lehr v. Robertson*, 463 U.S. 284, 261 (1983). Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and "stem[ ] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children." *Id.*

Plaintiff L.C.'s mother has testified that to her knowledge Puga never saw L.C. since L.C. was born in 2013 up to Puga's death. (UMF 188). L.C.'s mother took deliberate steps to never have Puga meet L.C. because of her concern for Puga's drinking and abusive behavior (UMF 194-195), even going so far as to not have Puga listed on L.C.'s birth certificate, for which Puga did not protest. (UMF 189-192). Nor were there any plans for the future for Puga to become involved in L.C.'s life. (UMF 198). Three conversations in a span of 8 years is insufficient to maintain this claim.

## IV.    **QUALIFIED IMMUNITY**

Qualified immunity protects peace officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Moreover, "[i]t is ***the plaintiff*** who bears the ***burden*** of showing that the rights allegedly violated were clearly established." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (emphasis added). In order to discharge this burden, a Section 1983 plaintiff must point to case law that states "a clearly established rule prohibiting the [public

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

employee] from acting as he did . . . [i]n the **_circumstances presented_** to the [employee]." *Saucier v. Katz*, 533 U.S. 194, 209 (2001) (emphasis added). "This requires a high 'degree of specificity'" (*District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018))(citations omitted), inasmuch as qualified immunity is a "fact-specific, highly contextualized" inquiry. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016); *see*, *White v. Pauly*, 137 S.Ct. 548, 552 (2017) ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case."); *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these [public employees] *in this case* that *their particular conduct* was unlawful.") (italics original).

Neither Deputy Adams nor Sergeant Vaccari's conduct violated clearly established law at the time of the incident. There is no precedent that indicates a deputy cannot fire upon a person who suddenly withdrew his firearm and has not vocalized their surrender in any way. *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1072 (S.D. Cal. 1994) ("[A]n officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer."). There is also no clearly established case law that would prohibit Deputy Adams from firing at a suspect who was running away or even on the ground, but still holding his firearm with the ability to shoot it and/or take hostages. *Orn v. City of Tacoma,* 949 F.3d 1167, 1174 (9th Cir. 2020)(officers may use force in fleeing suspect where the suspect still poses a threat of serious physical harm, either to the officer or to others.) Further, the undisputed evidence is clear that Deputy Adams shots did not strike Puga once on the ground. (UMF 183-188).

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

1    Likewise, there is no clearly established case law that would have put Vaccari

2    on notice that using pepper balls to extract a non-compliant Puga from the vehicle

3    was inappropriate. *Alford v. Humboldt County*, 785 F.Supp.2d 867, 872, 877-79

4    (Court found deputies entitled to qualified immunity for using chemical agents to

5    evacuate a barricaded suspect potentially armed with a lethal weapon).

6    Finally, there was no clearly established case law to inform Vaccari that the use

7    of taser was inappropriate when Puga failed to comply with commands to show his

8    hands which were positioned underneath him where the officers had every reason to

9    believe Puga had a firearm and capable of using it. *See*, *Spencer v. Pew*, 117 F.4th

10   1130, 1139 (9th Cir. 2024) ("But even taking as true that Spencer told the officers that

11   his hands were 'locked up,' we cannot say that every reasonable officer, considering

12   the objective circumstances concerning the nature and length of Spencer's non-

13   compliance, would have taken his statements at face value."); *accord Winterrowd v.*

14   *Nelson*, 480 F.3d 1181, 1184 (9th Cir. 2007) (noting that an officer need not "unduly

15   credit[ ]" a suspect's claim that he is "physically unable to comply with a request").

16   The law did not require Defendants to wait to see what action Plaintiff may take next.

17   *See*, *Wilkinson*, 610 F.3d at 553 ("'the Fourth Amendment does not require

18   omniscience,' and absolute certainty of harm need not precede an act of self-

19   protection.") (citation omitted).  Rather, in such a situation, with lives on the line, the

20   authorities cited above readily permitted the non-lethal uses of force employed by

21   Defendants to end the unabated threat presented by Plaintiff. *See*, *Spencer*, 117 F.4th

22   at 1140 ("Even taking the evidence in the light most favorable to Spencer, his

23   objective actions made it very difficult for the officers to handcuff him, resulting in

24   an extended struggle and multiple uses of various types of force (a stomach punch,

25   head strikes, and taser shots) that each could reasonably be thought to be likely to

26   reduce Spencer's non-compliance with being handcuffed."); *see also*, *Hughes v.*

27

28
**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

*Rodriguez*, 31 F.4th 1211, 1222 (9th Cir. 2022) (affirming summary judgment, reasoning that use of force was proportional to the "threats to the safety of [the officers], as reasonably perceived by the responsible officials on the basis of the facts known to them").

## V.    <u>STATE CLAIMS</u>

### A. WRONGFUL DEATH DAMAGES CLAIM FAILS

Plaintiffs Antonio Salas, L.C., I.H. and A.L. claim for wrongful death damages must fail.  Specifically, Plaintiffs allege that they "have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural life.," (TAC ¶ 97).  However, as already set forth above, the undisputed facts confirm County Defendants Adams and Vaccari did not fire the fatal shot that killed Puga.  *Lopez v. City of Los Angeles*, 196 Cal.App.4th 675, 682, 688 (2011) (finding officers that did not fire fatal shot could not be liable for negligence or wrongful death). As such, this category of damages is not available as against the County Defendants and all state law claims by the individual Plaintiffs for wrongful death must be dismissed.

### B. PLAINTIFFS FAILURE TO ALLEGE USE OF LESS LETHAL IN TORT CLAIM OR COMPLAINT

Compliance with the tort claim presentation requirements is a condition precedent to suit and the failure to comply bars suit for money damages.  Cal. Gov. Code § 945.4; *see e.g.*, *DiCampli-Mintz v. County of Santa Clara*, 55 Cal.4th 983, 991 (2012).  The requirements are mandatory and strict compliance is required.  *Wood v. Riverside Gen. Hosp.*, 25 Cal. App 4th 1113, 1119 (1994).  Gov. Code § 910 requires: "the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of the plaintiff's injury."  *Connelly v. State of California*, 3 Cal.App.3d 744, 743 (1970).  Where there

has been an attempt to comply but the compliance is defective, the test of substantial compliance controls.    Under this test, the court must ask whether sufficient information is disclosed on the face of the filed claim "to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 456 (1974).    The doctrine of substantial compliance, however, cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute.    *Hall v. City of Los Angeles*, 19 Cal.2d 198 (1941). Gov. Code § 910 provides that the claim should state the "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted." "[T]he purpose of these statutes is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'"    *Connelly v. County of Fresno*, 146 Cal.App.4th 29, 38 (2006).

Plaintiffs never set forth in their Tort Claim that the use of the pepper balls and the taser were a basis for their claims against Defendants and therefore Plaintiffs failed to properly comply with the Tort Claims Act as to the claims against Sergeant Vaccari. Perhaps recognizing the same, Plaintiffs also failed to mention the use of pepper balls and the taser anywhere in their Third Amended Complaint and such claims should be dismissed as argued in section II, B, *supra*.  (UMF 212-213; 221-223).

## C. REASONABLENESS OF FORCE DISPOSES WITH STATE CLAIMS

Should the Court determine there was no excessive force as a matter of law, Plaintiff's state law claims also must fail. *Moore v. City of Berkley*, 2016 WL 6024530, at *7 (N.D. Cal. 2016) ("In California, state law claims for wrongful death and battery at the hands of the police rise and fall with federal Section 1983 claims.

1    [Citations].    The same is true for a Bane Act claim, which requires a civil rights

2    violation 'by threat, intimidation, or coercion.'  [Citation].  Because the arrest and use

3    of force did not violate Moore's Fourth Amendment rights, all three claims fall

4    away."); *Donaldson v. United States*, 2018 WL 1089986, at *13 (S.D. Cal. 2018) ("As

5    with negligence, claims of excessive force under California law are analyzed under

6    the same standard of objective reasonableness used in Fourth Amendment claims.")

7    (citations omitted); *Sorgen v. City & County of San Francisco*, 2006 WL 2583683, at

8    *9 (N.D. Cal. 2006) ("[T]he law governing Plaintiff's state law claim for assault and

9    battery/excessive force is the same as that used to analyze Plaintiff's [federal] claim

10   for excessive force . . . Accordingly, Plaintiffs' claim of battery under state law fails

11   for the same reasons [as his federal claim]….").

12   **D. NO  EVIDENCE  COUNTY  DEFENDANTS'  TACTICS  WERE**

13   **NEGLIGENT**

14      Plaintiffs' theory that negligent pre-shooting tactics somehow led to Puga's

15   death must fail under the facts and circumstances presented here. There is no evidence

16   that any tactics by the County Defendants were outside of the realm of reason given

17   the actions of Puga.  *Brown v. Ransweiler,* 171 Cal. App. 4th 516, 537-538 (2009)

18   ("As long as an officer's conduct falls within the range of conduct that is reasonable

19   under the circumstances, there is no requirement that he or she choose the 'most

20   reasonable' action or the conduct that is the least likely to cause harm and at the same

21   time the most likely to result in successful apprehension of a violent suspect, in order

22   to avoid liability for negligence"); *see Golick,* 82 App. 5th at 1148 ("'In volatile

23   situations, one can always argue that the arrival of police officers caused incremental

24   increase in tension at the scene, and thus increased the risk of injury occurring, and

25   whenever tragedy ensues one can argue that a different police response would have

26   produced a better outcome.  But this sort of speculative, after-action critique falls

27

28

---

32

1 short" in subjecting an officer to tort liability for negligence).

2    Additionally, Plaintiffs failed to address their negligent tactics in any of the tort

3 claims presented (UMF 207-211). Such, claims therefore fail for failure to comply

4 with the tort claims act for same reason as their excessive force claim based on less

5 lethal options. *See,* Section V. B. *supra.*

6 **VI.    CONCLUSION**

7    For the reasons stated herein, this Court should grant summary judgment and

8 enter judgment in favor of Defendants. Fed. R. Civ. P. 56.

9

10 DATED: February 20, 2025          **LYNBERG & WATKINS**
                                     A Professional Corporation

11

12

13                             By:  /s/ Anita K. Clarke
                                    **SHANNON L. GUSTAFSON**
14                                  **AMY R. MARGOLIES**
                                    **ANITA K. CLARKE**
15                                  Attorneys for Defendant,
                                    COUNTY OF SAN BERNARDINO
16                                   ROBERT VACCARI, and JAKE ADAMS

17

18

19

20

21

22

23

24

25

26

27

28
**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

1                <u>**CERTIFICATE OF COMPLIANCE**</u>

2       The undersigned, counsel of record for County of San Bernardino, Deputy

3 Jake Adams, and Sergeant Robert Vaccari certify that this brief contains 7,000

4 words, which:

5       ■ complies with the word limit of L.R. 11-6.1.

6       ☐ complies with the word limit set by court order dated _____.

7 DATED:  February 20, 2025         **LYNBERG & WATKINS**
                                     A Professional Corporation

8

9

10                               By:   */s/ Anita K. Clarke*_____

11                                     Shannon L. Gustafson
                                    Amy R. Margolies

12                                     Anita K. Clarke
                                    Attorneys for Defendants, COUNTY OF

13                                     SAN BERNARDINO, ROBERT
                                    VACCARI and JAKE ADAMS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**