# EXHIBIT Y

00425

JONATHAN WAYNE BOTTEN, SR., ET AL. vs STATE OF CALIFORNIA, ET AL.
Timothy Jong, M.D. on 01/02/2025

```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3

 4   JONATHAN WAYNE BOTTEN, SR.; TANJA     )
     DUDEK-BOTTEN; ANNABELLE BOTTEN; and   )
 5   J.B., a minor by and through his     )
     guardian JONATHAN WAYNE BOTTEN, SR.,  )
 6                                         )
                   Plaintiffs,             )
 7                                         )
                   vs.                     ) Case No.
 8                                         ) 5:22-CV-00949-KK-SHK
     STATE OF CALIFORNIA; COUNTY OF SAN    )
 9   BERNARDINO; ISAIAH KEE; MICHAEL       )
     BLACKWOOD; BERNARDO RUBALCAVA; ROBERT )
10   VACCARI; JAKE ADAMS; and DOES 1-10,   )
     inclusive,                            )
11                                         )
                   Defendants.             )
12   _____ )

13

14

15

16         REMOTE VIDEOCONFERENCE DEPOSITION OF

17                   TIMOTHY JONG, M.D.

18                THURSDAY, JANUARY 2, 2025

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  127502
```

Page 2

```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3

 4   JONATHAN WAYNE BOTTEN, SR.; TANJA    )
     DUDEK-BOTTEN; ANNABELLE BOTTEN; and  )
 5   J.B., a minor by and through his     )
     guardian JONATHAN WAYNE BOTTEN, SR., )
 6                                        )
                   Plaintiffs,            )
 7                                        )
                vs.                       ) Case No.
 8                                        ) 5:22-CV-00949-KK-SHK
     STATE OF CALIFORNIA; COUNTY OF SAN   )
 9   BERNARDINO; ISAIAH KEE; MICHAEL      )
     BLACKWOOD; BERNARDO RUBALCAVA; ROBERT)
10   VACCARI; JAKE ADAMS; and DOES 1-10,  )
     inclusive,                           )
11                                        )
                   Defendants.            )
12   _____)

13

14

15

16         The remote videoconference deposition of TIMOTHY

17   JONG, M.D., taken on behalf of the Plaintiffs, beginning at

18   2:05 p.m., and ending at 3:34 p.m., on Thursday, January 2,

19   2025, before Jinna Grace Kim, Certified Stenographic

20   Shorthand Reporter No. 14151.

21

22

23

24

25
```

JONATHAN WAYNE BOTTEN, SR., ET AL. vs STATE OF CALIFORNIA, ET AL.
Timothy Jong, M.D. on 01/02/2025

Page 3

```
 1   APPEARANCES OF COUNSEL:

 2
     For the Plaintiffs:
 3
              LAW OFFICES OF DALE K. GALIPO
 4            BY:  DALE K. GALIPO, ESQ.
              BY:  HANG D. LE, ESQ.
 5            21800 Burbank Boulevard, Suite 310
              Woodland Hills, California 91367
 6            Tel:  818-347-3333
              Fax:  818-347-4118
 7            E-mail:  dalekgalipo@yahoo.com
              E-mail:  hle@galipolaw.com
 8

 9   For the Defendants:

10            DEPUTY ATTORNEY GENERAL
              BY:  DIANA ESQUIVEL, ESQ.
11            1300 I Street, Suite 125
              P.O. Box 944255
12            Sacramento, California 94244
              E-mail:  diana.esquivel@doj.ca.gov
13

14            LYNBERG & WATKINS
              BY:  AMY MARGOLIES, ESQ.
15            1100 W. Town & Country Road, Suite 1450
              Orange, California 92868
16            E-mail:  amargolies@lynberg.com

17

18

19

20

21

22

23

24

25
```

Page 4

```
 1                            INDEX

 2   WITNESS:                                            PAGE

 3   TIMOTHY JONG, M.D.

 4      BY: MR. GALIPO                                      5

 5      BY: MS. ESQUIVEL                                   24

 6      BY: MS. MARGOLIES                                  35

 7      BY: MR. GALIPO                                     44

 8      BY: MS. ESQUIVEL                                   48

 9      BY: MS. MARGOLIES                                  50

10
                              EXHIBITS
11
     MARKED FOR IDENTIFICATION                          PAGE
12
                               (None)
13
```

Page 5

```
 1                        CALIFORNIA

 2                  THURSDAY, JANUARY 2, 2025

 3                         2:05 P.M.

 4                        TIMOTHY JONG,

 5  called as a witness on behalf of the Plaintiffs, having been

 6  first duly sworn remotely via videoconference, was examined

 7  and testified as follows:

 8                        EXAMINATION

 9  BY MR. GALIPO:

10      Q.   Can you state your full name.

11      A.   Name is Timothy, last name is Jong, J-o-n-g.

12      Q.   Thank you.  Are you able to hear me okay so far?

13      A.   Yes.

14      Q.   And if you have any trouble hearing me at any time,

15  will you please let me know?

16      A.   Yes.

17      Q.   And if I ask you a question that's poorly phrased

18  and you do not understand it, will you please let me know so

19  I can try to ask it in a better way?

20      A.   Sure.

21      Q.   I don't plan to be too long, but if you need to take

22  a break at any time, just let me know and we'll take a break.

23           If I go more than an hour, I'll take a break at the

24  hour mark for sure, but I'm hoping to be within that time

25  frame.
```

Page 7

| | | |
|---|---|---|
| 1 | Q. | And at some point did you determine the cause of |
| 2 | | death? |
| 3 | A. | Yes. |
| 4 | Q. | And what was your determination of cause of death? |
| 5 | A. | Gunshot wound to the back. |
| 6 | Q. | And did you make a classification as to the manner |
| 7 | | of death? |
| 8 | A. | Yes. |
| 9 | Q. | And what was your classification? |
| 10 | A. | Homicide. |
| 11 | Q. | And when did you perform the autopsy, do you know |
| 12 | | the date? |
| 13 | | And you can look at your report for any of these |
| 14 | | questions if you need to. |
| 15 | A. | Sure.  The date the autopsy was performed was March |
| 16 | | 5th, 2021. |
| 17 | Q. | And did you have some general information that the |
| 18 | | person you were doing the autopsy on had been shot by law |
| 19 | | enforcement? |
| 20 | A. | Yes. |
| 21 | Q. | And were you trying your best to document the |
| 22 | | gunshot wounds? |
| 23 | A. | Yes. |
| 24 | Q. | And did you classify the gunshot wounds either by |
| 25 | | number or letter for description purposes? |

Page 9

```
 1    A.   Yes.
 2    Q.   So starting with the gunshot wound of the mid left
 3    back, where was the entry, generally speaking?
 4    A.   Entry was on the mid left back area.
 5    Q.   And you took measurements with respect to each
 6    gunshot wound?
 7    A.   Yes.
 8    Q.   And you included those measurements in your
 9    report?
10    A.   Yes.
11    Q.   And I note you have entry, and then a parenthetical
12    "K."
13         Do you see that?
14    A.   Yes.
15    Q.   And was that the descriptor you were using for
16    purposes of this particular gunshot wound?
17    A.   Yes.
18    Q.   Would I be correct to say you did not list the
19    gunshots in the order you think they were necessarily
20    sustained; you listed them for discussion purposes?
21    A.   Yes.
22    Q.   And the gunshot wound to the left back, can you
23    generally tell us what that traveled through?
24    A.   Sure.  So the gunshot wound on the mid left back
25    traveled through the skin and soft tissue, and then it
```

Page 10

```
 1   traveled through the rib cage, and then the left lung, and
 2   then the front part of the rib cage, and it terminated --
 3   there is a projectile in the soft tissues of the left upper
 4   chest.
 5        Q.    So that projectile was recovered?
 6        A.    Yes.
 7        Q.    And that's why in essence there is no exit because
 8   the projectile was recovered from within the body; is that
 9   correct?
10        A.    That's correct.
11        Q.    And you described at the bottom of Page 3, the
12   recovered projectile?
13        A.    Yes.
14        Q.    What did you end up doing with the projectiles that
15   were recovered?
16              Did you turn them over to the investigating
17   agency?
18        A.    Yes.
19        Q.    What was the direction?
20              And I'm at the top of Page 4 now of your report --
21   the direction of the bullet wound to the mid left back?
22              And I'm assuming the direction is with the body in
23   and anatomical position; is that correct?
24        A.    Yes.
25        Q.    Tell us what the direction of that bullet was.
```

Page 11

```
1    A.   Sure.  The direction of that projectile was
2    back-to-front, left-to-right, and upward.
3    Q.   And were there associated injuries with that
4    projectile?
5    A.   Yes.
6    Q.   And what were those?
7    A.   So those associated injuries included 850
8    milliliters of blood in the left side of the chest, and over
9    the area of recovery where the projectile was recovered was
10   an ecchymosis which is similar to a bruise.
11        There were also big fractures, and there's
12   hemorrhaging throughout the wound track.
13   Q.   In your opinion was that projectile fatal?
14   A.   Yes.
15   Q.   And why was it fatal from a medical perspective?
16   A.   From a medical perspective, it went through the lung
17   and also created a defect at which air could move into the
18   chest cavity as well as when it hit the lung, blood was going
19   into the chest cavity, and that compresses the lung.
20        And that creates difficulty for the body to
21   oxygenate the blood.
22   Q.   And given that the entry wound was to the mid left
23   back, would that part of the body have to be exposed to the
24   muzzle of the gun for that shot to occur?
25   A.   Will you be able to reword that question, please.
```

```
 1   foot?
 2       A.   Yes.
 3       Q.   And did that strike in the area of the fifth toe?
 4       A.   Yes.
 5       Q.   And where did that travel after striking the toe or
 6   the area of the fifth toe?
 7       A.   The area that the projectile traveled through was
 8   the skin and the soft tissue of the right foot.
 9       Q.   Did that also have an upward trajectory?
10       A.   Yes.
11       Q.   And what were the associated injuries?
12       A.   The associated injuries of that wound included the
13   laceration which is a tear with surrounding hemorrhaging into
14   the soft tissue which is the ecchymosis on the sole of the
15   fourth toe of the right foot as well as another tear on the
16   anterior aspect of the right foot which is the front aspect
17   between the third and fourth toes, and there was also
18   hemorrhage throughout the wound track.
19       Q.   So were there ten entry wounds altogether?
20       A.   Yes.
21       Q.   And multiple shots to the backside of the body?
22       A.   That's correct.
23       Q.   And your opinion, the fatal shot was the wound to
24   the mid left back that we started off by describing?
25       A.   Yes.
```

Page 54

```
1                        CERTIFICATE

2                            OF

3         CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

4

5         I, JINNA GRACE KIM, CSR No. 14151, a Certified

6   Stenographic Shorthand Reporter of the State of California,

7   do hereby certify:

8         That the foregoing proceedings were taken before me

9   at the time and place herein set forth;

10        That any witnesses in the foregoing proceedings,

11  prior to testifying, were placed under oath;

12        That a verbatim record of the proceedings was made

13  by me, using machine shorthand, which was thereafter

14  transcribed under my direction;

15        Further, that the foregoing is an accurate

16  transcription thereof.

17        I further certify that I am neither financially

18  interested in the action, nor a relative or employee of any

19  attorney of any of the parties.

20

21        IN WITNESS WHEREOF, I have subscribed my name, this

22  date:  January 2, 2025.

23
                     _____
24
                       Jinna Grace Kim, CSR No. 14151
25
```