1  ROB BONTA
   Attorney General of California
2  NORMAN D. MORRISON
   Supervising Deputy Attorney General
3  DIANA ESQUIVEL
   Deputy Attorney General
4  State Bar No. 202954
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone:  (916) 210-7320
     Facsimile:  (916) 322-8288
7    E-mail:  Diana.Esquivel@doj.ca.gov
   *Attorneys for Defendants State of California, by and*
8  *through the California Highway Patrol, Blackwood,*
   *Kee, and Rubalcava*
9

10          IN THE UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                   EASTERN DIVISION

13

14  | | |
    |---|---|
15  | **L.C.,** | No. 5:22-cv-00949 KK (SHKx) |
    | | |
16  | Plaintiffs, | **STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
17  | v. | |
    | **STATE OF CALIFORNIA, et al.,** | |
18  | | Date:         March 20, 2025 |
    | Defendants. | Time:         9:30 a.m. |
19  | | Courtroom:  3 (3rd Floor) |
    | | Judge:        Hon. Kenly Kiya Kato |
20  | | Trial Date:   June 2, 2025 |
    | | Action Filed: June 7, 2022 2022 |
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................................... 1

Standard on Summary Judgment...................................................................... 2

Argument ......................................................................................................... 3

I.    Plaintiffs' Claims Under 42 U.S.C. § 1983 and California Law Arising From the Use of Lethal Force Fail Because the CHP Officers Used Objectively Reasonable Force to End the Immediate Threat of Death or Serous Harm that Puga Posed to the Officers and Others ..................................................................... 3

    A.    The uncontroverted facts establish that Kee, Rubalcava, and Blackwood's use of force was objectively reasonable such that Plaintiffs cannot maintain their Fourth Amendment claim............................................................. 5

    B.    Plaintiffs cannot maintain their Fourteenth Amendment claim because Puga created exigent circumstances that resulted in the shooting................................................ 8

    C.    Because the CHP Officers' use of force was reasonable, Plaintiffs' battery claim necessarily fails. ................................ 9

    D.    The CHP Officers were not negligent in their actions leading up or during their use of force. .................................... 10

    E.    Plaintiffs' claim under the Bane Act fails because no evidence shows that the CHP Officers had the intent to violate Puga's right to freedom from excessive force............ 12

II.   The CHP Officers are Entitled to Qualified Immunity...................... 12

III.  Rubalcava Did Not Cause Puga's Death ............................................. 15

IV.   State Defendants are Immune from State-Law Liability.................... 15

Conclusion ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abromson v. American Pac. Corp.*
114 F.3d 898 (9th Cir. 1997) ........................................................................... 3

*Anderson v. Creighton*
483 U.S. 635 (1987) ....................................................................................... 12

*Brouseau v. Haugen*
543 U.S. 194 (2004) ....................................................................................... 13

*Brown v. Ransweiler*
171 Cal. App. 4th 516 (2009) ..................................................................... 9, 10

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ......................................................................................... 3

*City & Cnty. of S.F. v. Sheehan*
575 U.S. 600 (2015) ....................................................................................... 13

*Cruz v. Cty. of Anaheim*
765 F.3d 1076 (9th Cir. 2014) .................................................................. 13, 14

*Curnow v. Ridgecrest Police*
952 F.2d 321 (9th Cir. 1991) ........................................................................... 8

*Diaz v. Cnty. of Ventura*
512 F. Supp. 3d 1030 (C.D. Cal. 2021) ........................................................ 12

*Edson v. Cty. of Anaheim*
63 Cal. App. 4th 1269 (1998) ........................................................................ 15

*Elliott v. Leavitt*
99 F.3d 640 (4th Cir. 1996) ............................................................................. 4

*Est. of Strickland v. Nevada Cnty.*
69 F.4th 614 (9th Cir. 2023) ..................................................................... 13, 14

*George v. Morris*
736 F.3d 829 (9th Cir. 2013) ....................................................................... 4, 5

1

2

### TABLE OF AUTHORITIES
### (continued)

**Page**

3

4

*Gilmore v. Sup. Ct.*
    230 Cal. App. 3d 416 (1991) ............................................................... 16

5

6

*Graham v. Connor*
    490 U.S. 386 (1989) .................................................................... *passim*

7

8

*Hayes v. Cty. of San Diego*
    736 F.3d 1223 (9th Cir. 2013) ............................................................. 8

9

*Hernandez v. Cty. of Pomona*
    46 Cal. 4th 501 (2009) ...................................................................... 15

10

11

*Holland v. Silverscreen Healthcare, Inc.*
    101 Cal. App. 5th 1125 (2024) ........................................................... 15

12

13

*Jean-Baptiste v. Gutierrez*
    627 F.3d 816 (11th Cir. 2010) ............................................................. 4

14

15

*Kennedy v. Ridgefield*
    439 F.3d 1055 (9th Cir. 2006) ........................................................... 13

16

17

*Lujan v. National Wildlife Fed'n*
    497 U.S. 871 (1990) ............................................................................ 3

18

19

*Martinez v. Cnty. of L.A.*
    47 Cal. App. 4th 334 (1996) ............................................................... 16

20

21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574 (1986) ............................................................................ 3

22

23

*O'Neil v. Cty. & Cty. of S.F.*
    No. 17-CV-07190-JCS, 2021 WL 2914975 (N.D. Cal. July 12,
    2021) .................................................................................................... 5

24

25

*Reese v. Cty. of Sacramento*
    888 F.3d 1030 (2018) ........................................................................ 12

26

27

*Reynolds v. Cnty. of San Diego*
    858 F. Supp. 1064 (S.D. Cal. 1994) ............................................ 14, 16

28

# TABLE OF AUTHORITIES
## (continued)

Page

*Rosenbaum v. Washoe County*
   654 F.3d 1001 (9th Cir. 2011) ................................................................ 12

*S.B. v. County of San Diego*
   864 F.3d 1010 (9th Cir. 2017) ............................................................ 4, 13

*Sabbe v. Washington Cnty. Bd. of Comm.*
   84 F.4th 807 (9th Cir. 2023) ............................................................... 6, 13

*Saucier v. Katz*
   533 U.S. 194 (2001) ................................................................................ 13

*Scott v. Henrich*
   39 F.3d 912 (9th Cir. 1994) ...................................................................... 4

*Smith v. City of Hemet*
   394 F.3d 689 (9th Cir. 2005) .................................................................... 4

*Tabares v. Cty. of Huntington Beach*
   988 F.3d 1119 (9th Cir. 2021) .......................................................... 10, 11

*Torres v. Cty. of Madera*
   648 F.3d 1119 (9th Cir. 2011) ................................................................ 13

*Velazquez v. Cty. of Long Beach*
   793 F.3d 1010 (9th Cir. 2015) .................................................................. 5

*Villalobos v. Cty. of Sta. Maria*
   85 Cal. App. 5th 383 (2022) .................................................................... 11

*Wilkinson v. Torres*
   610 F.3d 546 (9th Cir. 2010) ................................................................ 4, 8

*Wilson v. Layne*
   526 U.S. 603 (1999) ................................................................................ 13

**STATUTES**

Cal. Gov. Code § 815.2 ................................................................................ 16

Cal. Pen. Code § 197 ................................................................................... 16

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Pen. Code §§ 241(c), 245(a)(1).................................................................. 6

Cal. Penal Code § 835a................................................................................... 15

Cal. Penal Code § 835a(b), (c)(1)(A) ............................................................ 15

**COURT RULES**

Fed. R. Civ. P. 56(c) ...............................................................................2, 3

L.R. 11-6.1 ................................................................................................... 18

**INTRODUCTION**

In the early morning of February 17, 2021, decedent Hector Puga led Defendants California Highway Patrol (CHP) Officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava (State Defendants) on a hour-long, highspeed pursuit, followed by an equally lengthy standoff to evade arrest. Puga was suspected of shooting at a motorist the day before. Kee was involved in the investigation, and Blackwood and Rubalcava were briefed on the shooting and provided with Puga's physical description and vehicle information, such that they recognized Puga's vehicle when they were on patrol and gave chase. Although the pursuit ended when Puga's vehicle was disabled, an almost equally lengthy standoff ensued.

During the standoff, Kee attempted to communicate, negotiate, and build a rapport with Puga, in addition to repeatedly ordering him to exit the vehicle and surrender. Kee and other officers used less-lethal options, such a bean bags and pepper balls, to coax Puga out of the vehicle, but these efforts were unsuccessful, and the pepper balls were ineffective against Puga. When Puga finally exited the car, his actions were furtive, and he prevented the officers from seeing the front of his waistband to confirm that he was not armed. Puga even told Kee that he was not armed. It was a lie. When Kee was eventually able to see Puga's front torso, Kee saw a gun in Puga's waistband. Without warning, Puga dropped his right hand and reached for the gun as Kee and Rubalcava were approaching to apprehend him. Kee fired his weapon and saw two muzzle flashes come from Puga's gun. Rubalcava and Blackwood heard the gunshot from Puga's gun and returned fire. Puga attempted to flee while still holding the gun and pointing it back at the officers, and he headed in the direction of a nearby house. Fearing a hostage situation and perceiving the immediate threat Puga continued to pose while in possession of the gun, the three officers again fired upon Puga until he went down to the ground. Puga died at the scene.

Summary judgment is appropriate because CHP Officers Kee, Rubalcava, and Blackwood's use of lethal force against Puga was objectively reasonable under the circumstances. Puga posed an immediate threat of death or serious bodily injury when he reached for his gun and fired it at the officers then fled with the gun towards a residence. The officers reasonably feared for their lives as well as the lives and safety of other officers and the public. The reasonableness of the officers' use of force defeats Plaintiffs' Fourth Amendment claim for excessive force, battery, and violation of the California Bane Act. Further, the undisputed evidence shows that the officers used lethal force for a legitimate law enforcement objective and not for the purpose of causing Puga harm such that Plaintiffs' Fourteenth Amendment claim for deprivation of the familial relationship fails.[1] The undisputed evidence shows that Rubalcava did not cause Puga's death, thus Plaintiffs cannot proceed with their wrongful death claim against him. Moreover, Blackwood, Kee, and Rubalcava are qualifiedly immune from Plaintiffs' 42 U.S.C. § 1983 claims and immune from the state-law claims. Lastly, because no CHP employee is liable, Plaintiffs cannot hold Defendant State of California vicariously liable for the officers' conduct. Accordingly, the Court should grant this motion and enter judgment in favor of the State Defendants.[2]

**STANDARD ON SUMMARY JUDGMENT**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon

---

[1] State Defendants join in, and incorporate by reference, the County Defendants' motion for summary judgment as to Plaintiff L.C.'s Fourteenth Amendment claim on the ground that Puga was estranged from his daughter, L.C. (County Defs.' Mot. for Summ. J. 26:24-27:16, ECF No. 103.)

[2] To avoid repetition, State Defendants refer the Court to their Statement of Uncontroverted Facts which chronicles the events that occurred during the subject incident.

which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. Fed. R. Civ. P. 56(c). The nonmoving party may not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex Corp.*, 477 U.S. at 324.

Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

**I.  PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983 AND CALIFORNIA LAW ARISING FROM THE USE OF LETHAL FORCE FAIL BECAUSE THE CHP OFFICERS USED OBJECTIVELY REASONABLE FORCE TO END THE IMMEDIATE THREAT OF DEATH OR SEROUS HARM THAT PUGA POSED TO THE OFFICERS AND OTHERS**

An excessive force claim against a police officer is considered a seizure and analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts should analyze reasonableness from the perspective of a reasonable officer on the scene and a totality-of-the-circumstances analysis with then-existing facts and circumstances, rather than with the benefit of 20/20 hindsight. *Id.* at 396-397. In addition, a court must make "allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly

1    evolving." *Id*. at 397.

2        The Ninth Circuit has repeatedly emphasized that the most important factor in

3    analyzing an officer's use of force is "whether the suspect posed an immediate

4    threat to the safety of the officers or others." *See, S.B. v. County of San Diego*, 864

5    F.3d 1010, 1013 (9th Cir. 2017). The Ninth Circuit has also emphasized that, as a

6    matter of common sense, an armed criminal suspect represents the paradigm threat

7    to officer safety. *See, Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005)

8    ("[W]here a suspect threatens an officer with a weapon such as a gun or a knife, the

9    officer is justified in using deadly force."). "If the person is armed – or reasonably

10    suspected of being armed – a furtive movement, harrowing gesture, or serious

11    verbal threat might create an immediate threat." *George v. Morris*, 736 F.3d 829,

12    838 (9th Cir. 2013). "A reasonable use of deadly force encompasses a range of

13    conduct, and the availability of a less-intrusive alternative will not render conduct

14    unreasonable." *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010). Requiring

15    police officers to find and choose the least intrusive alternative would require them

16    to exercise superhuman judgment. Officers therefore need not avail themselves of

17    the least intrusive means of responding to an exigent situation; they need only act

18    within that range of conduct identified as reasonable. *Scott v. Henrich*, 39 F.3d 912,

19    915 (9th Cir. 1994). The Fourth Amendment "does not require officers in a tense

20    and dangerous situation to wait until the moment a suspect uses a deadly weapon to

21    act to stop the suspect." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir.

22    2010); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) ("[T]he Fourth

23    Amendment does not require omniscience . . . [o]fficers need not be absolutely

24    sure, however, of the nature of the threat or the suspect's intent to cause them

25    harm—the Constitution does not require that certitude precede the act of self

26    protection.")

27        Fundamental to "*Graham*'s objective-reasonableness test is the clear principle

28    that the force used to make an arrest must be balanced against the need for force: it

is the need for force which is at the heart of the *Graham* factors." *Velazquez v. Cty. of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (citation omitted). In *Graham*, the Supreme Court set forth factors to be considered in evaluating whether the force used was reasonable, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Other relevant considerations: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; and the threat reasonably perceived by the officer. *O'Neil v. Cty. & Cty. of S.F.*, No. 17-CV-07190-JCS, 2021 WL 2914975, at *8 (N.D. Cal. July 12, 2021) (citing *Lombardo v. Cty. of St. Louis*, 594 U.S. 464, 467 (2021)). The court may additionally consider whether officers administered a warning, assuming one was practicable. *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007)).

**A.    The uncontroverted facts establish that Kee, Rubalcava, and Blackwood's use of force was objectively reasonable such that Plaintiffs cannot maintain their Fourth Amendment claim.**

Applying the *Graham* considerations to Kee, Rubalcava, and Blackwood's conduct on February 17, 2021, the undisputed evidence shows that their conduct was objectively reasonable. The officers were aware that Puga was suspected of firing a gun at a motorist the day before, was considered armed and dangerous, and was wanted for attempted murder, assault with a deadly weapon, and discharge of a firearm under California Penal Code sections 664, 245(A)(2), and 246, respectively. (DUF 4-5; *see also*, Arrest-Investigation Report at 1-13, attached as Ex. L to Esquivel Decl.) When Blackwood and Rubalcava encountered Puga on the road at approximately 1:30 a.m. and attempted to initiate a traffic stop, Puga feigned cooperation by pulling over but then sped away to avoid arrest. (DUF 7.) He led

officers on a lengthy and dangerous chase, speeding in residential neighborhoods and ignoring traffic signals, in violation of California Vehicle Code section 2800.2, among others. (DUF 7-8.) After the pursuit and standoff, Puga reached for and pulled a gun on Kee and Rubalcava and ultimately fired it at the officers in addition to pointing it at them in a threatening way, thus committing, at a minimum, an assault on the officers. (DUF 21-27, 33, 39; Cal. Pen. Code §§ 241(c), 245(a)(1).) It cannot be reasonably disputed that the severity of Puga's crimes were serious and substantial, especially since they involved a deadly weapon. Thus, the first *Graham* factor is satisfied.

The second *Graham* factor considers whether Puga posed an imminent threat to Kee, Rubalcava, Blackwood, or others. This factor is also satisfied because Puga was evading arrest by refusing to surrender, then he brandished a gun from his waistband, pointed it at the officers, and fired it. (DUF 9-27, 33, 39.) When the officers returned fire, Puga attempted to flee but continued to maintain control of his gun and ran in the direction of a house, creating another immediate threat of death or serious injury if he reached the residence and a hostage situation ensued. (DUF 30-40.) State Defendants anticipate that Plaintiffs will argue that Puga was "running away" from the officers when they fired their second volley, such that Puga could not have posed an imminent threat of harm nor was it reasonable to perceive him as a threat. Any such argument fails because the CHP Officers had information from which they could reasonably and objectively conclude that Puga continued to pose an imminent threat of death or serious harm. *Sabbe v. Washington Cnty. Bd. of Comm.*, 84 F.4th 807, 822 (9th Cir. 2023) ("Even when a suspected felon is fleeing arrest, an officer's use of deadly force is reasonable if it is 'necessary to prevent ... escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'")

Here, the CHP Officers reasonably believed Puga was the suspect involved in the freeway shooting because his vehicle matched the description provided by the victim of that earlier incident. (DUF 4-6.) Puga was a fleeing suspected felon and took drastic measures to avoid arrest—he led officers on a lengthy, dangerous, hour-long pursuit, and then refused to exit his vehicle for almost another hour. When Puga finally exited his vehicle, he was evasive and took great measures to avoid displaying his front torso to the officers where he had a gun in his waist band. Puga lied about being unarmed. And when Kee eventually saw the gun in Puga's waistband, Puga reached for it, pulled it out, and fired it at the officers. Puga then attempted to flee again by running towards a nearby house while still armed with the gun. A reasonable officer would believe that Puga continued to pose an immediate threat of death or serious bodily injury while he was in possession of a gun and desperate to avoid arrest. Puga demonstrated that he would not hesitate to use the gun, and so long as he was armed and capable of using the gun, he continued to be an imminent threat. Additionally, despite the number of rounds the officers fired at Puga during the first volley, he continued to flee and did not drop the gun. (DUF 30-42.) For these reasons, the second *Graham* factor is satisfied for both volleys.

The final *Graham* factor—resisting arrest—is also satisfied. For over two hours, Puga resisted the officers efforts to arrest him. First he led them on an hour-long pursuit. When Puga's vehicle came to a stop—because it became disabled, not because he chose to stop—he refused to exit the vehicle for almost another hour. Kee attempted to engage Puga in conversation to convince him to surrender, but Puga ignored those efforts and refused to comply with repeated orders to exit the vehicle and surrender. The officers used non-lethal force, such as the bean bags and pepper balls, to attempt to compel his surrender to no avail.

Given all these undisputed facts, a reasonable officer in Kee, Blackwood, and Rubalcava's position would have believed that Puga posed an immediate threat of

1   death or serious harm to the officers when Puga pulled the gun from his waistband

2   and continued to be an imminent threat of death or harm when he tried to flee with

3   the gun still firmly in his hand. The "critical inquiry" is what Kee, Blackwood, and

4   Rubalcava perceived. *Wilkinson*, 610 F.3d at 551. Here, because a reasonable

5   officer would have believed the use of deadly force was objectively reasonable in

6   the face of an imminent threat of serious bodily harm or death, the CHP Officers

7   are entitled to summary judgment on Plaintiffs' Fourth Amendment claim for

8   excessive force.

9       **B.    Plaintiffs cannot maintain their Fourteenth Amendment claim**
            **because Puga created exigent circumstances that resulted in the**
10           **shooting.**

11      A parent or child has a constitutionally protected liberty interest under the

12   Fourteenth Amendment in the companionship and society of the other. *Curnow v.*

13   *Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). Therefore, if a child or parent

14   loses companionship with the other through an officer's excessive use of force, the

15   child or parent may bring a claim under the Fourteenth Amendment. *Id*. To

16   establish such a claim, the plaintiff must prove that the officer's action "shocks the

17   conscience." *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). This

18   standard differs from the excessive force standard under the Fourth Amendment. *Id*.

19   "In determining whether excessive force shocks the conscience, the court must first

20   ask 'whether the circumstances are such that actual deliberation [by the officer] is

21   practical.'" *Id*., quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

22   "Where actual deliberation is practical, then an officer's 'deliberate indifference'

23   may suffice to shock the conscience. On the other hand, where a law enforcement

24   officer makes a snap judgment because of an escalating situation, his conduct may

25   be found to shock the conscience only if he acts with a purpose to harm unrelated to

26   legitimate law enforcement objectives." *Id*.

27      The undisputed evidence shows that Puga's erratic and resistive behavior

28   created an unpredictable situation. (DUF 4-41.) That the standoff lasted about an

hour is not dispositive of whether the officers had ample opportunity to deliberate how to respond to Puga unexpectedly reaching for and pulling out a gun. Kee and Rubalcava repositioned themselves based on Puga's actions. Initially Kee and Rubalcava stood on the driver's side of Blackwood's patrol vehicle. When Puga exited the vehicle, Kee and Rubalcava moved to a position where they were almost in-line with the front of Puga's car in their continued efforts to see Puga's waistband. Rubalcava even holstered his handgun and took out his handcuffs when Puga feigned his desire to surrender. When Puga suddenly moved to the front of his vehicle, facing the officers but concealing his waistband, Rubalcava and Kee now faced a very different scenario than seconds before. When Puga unexpectedly reached for the gun as Kee moved within 20-30 feet of him, exigent circumstances now existed for the officers' use of lethal force without time for deliberation. Similarly, Rubalcava and Blackwood fired their weapons in response to Puga's sudden movement of reaching for the gun and firing at the officers. The CHP Officers had a split-second to decide to act in the face of the immediate threat of death or serious injury that Puga created.

Based on these undisputed facts, Plaintiffs' Fourteenth Amendment claim must be analyzed under the purpose-to-harm standard. There is simply no evidence to show that the CHP Officers acted maliciously or sadistically for the purpose of causing Puga harm. Summary judgment on this claim is therefore appropriate.

### C. Because the CHP Officers' use of force was reasonable, Plaintiffs' battery claim necessarily fails.

Under California law, a battery cause of action against a police officer, just like a federal claim of excessive force, requires proof of unreasonable force. "Because federal civil rights claims of excessive use of force are the federal counterpart to state battery and wrongful death claims, federal cases are instructive in this area." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, n.11 (2009). Police officers are not treated as ordinary battery defendants because they are charged with

protecting the public peace and are therefore "entitled to the even greater use of force than might be in the same circumstances required for self-defense." *Id.* at 527. A police officer's use of deadly force is reasonable if the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 528 (quotation omitted.) Because a police officer is "charged with acting affirmatively and using force as part of their duties," a plaintiff suing on grounds of battery resulting from police action must prove that "the police officer's use of force was unreasonable." *Id*.

As discussed above in connection with the Fourth Amendment claim for excessive force, Puga posed an imminent threat to Kee, Rubalcava, Blackwood, and others when he, without warning, reached for the gun in his waistband and fired the gun at the officers. Puga continued to pose an immediate threat of death or serious injury when he fled, still in possession of the gun, and headed in the direction of a house. Summary judgment on Plaintiffs' claim for battery is therefore proper.

### D.    The CHP Officers were not negligent in their actions leading up or during their use of force.

Under California negligence law, "a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Tabares v. Cty. of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (citations omitted). Officers have a duty to act reasonably when using deadly force. *Id*. (citations omitted). "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham v. Connor*, 490 U.S. at 396). The officer's conduct must only "fall[ ] within the range of conduct that is reasonable" viewed "in light of the totality of circumstances." *Tabares*, at 1125. Officers may be liable "if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Id*. "The

reasonableness of a peace officer's conduct must be determined in light of the totality of circumstances. ... Preshooting conduct is included in the totality of circumstances surrounding an officer's use of deadly force, and therefore the officer's duty to act reasonably when using deadly force extends to preshooting conduct." *Villalobos v. Cty. of Sta. Maria*, 85 Cal. App. 5th 383, 389 (2022) (internal quotation marks and brackets omitted), quoting *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 632 (2013).

California courts generally use "[t]he same consideration" as federal law in assessing an officer's tactical conduct at the time of shooting as part of the totality of the circumstances. *Tabares*, 988 F.3d at 1126. California courts consider "the severity of the crime at issue, whether the [suspect] posed a reasonable threat to the safety of the officer or others, and whether the [suspect] was actively resisting detention or attempting to escape." *Id*.

As discussed above in connection with the Fourth Amendment claim for excessive force, the undisputed evidence shows that the severity of the crime at issue, the immediate threat Puga posed to the safety of the CHP Officers and others, and Puga's continuous and active attempts to evade the officers, supports and justifies the use of lethal force to stop Puga from further firing upon the officers and advancing towards a house which could have resulted in a hostage situation. (DUF 4-41.) Based on the totality of the circumstances, the officers' use of lethal force was objectively reasonable.

Likewise, the CHP Officers' pre-shooting conduct fell within standard of police procedures and practices. (Meyer Report 23, attached as Ex. M to Esquivel Decl.) Kee engaged in lengthy de-escalation efforts to get Puga to exit the vehicle and surrender. He and the Sherriff's Sergeant attempted less-lethal options that were ineffective against Puga. Thus, undisputed evidence shows that the CHP Officers were not negligent in their pre-shooting and shooting tactics and decisions.

1   Because the CHP Officers were not negligent, summary judgment on Plaintiffs'
2   negligence claim is proper.

3   **E.    Plaintiffs' claim under the Bane Act fails because no evidence shows that the CHP Officers had the intent to violate Puga's right to freedom from excessive force.**
4

5       California Civil Code section 52.1, known as the Bane Act, creates a cause of
6   action against those who interfere with constitutional rights "by threat, intimidation,
7   or coercion." *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1047 (C.D. Cal.
8   2021). In an excessive force case, the Bane Act requires not merely establishing a
9   Fourth Amendment violation, but also "a specific intent to violate the arrestee's
10  right to freedom from unreasonable seizure." *Reese v. Cty. of Sacramento*, 888 F.3d
11  1030, 1043 (2018), quoting *Cornell v. Cty. and Cnty. of S.F.*, 17 Cal. App. 5th 766,
12  801-02 (2017). A plaintiff must prove that the offending officer "intended not only
13  the force, but its unreasonableness, its character as more than necessary under the
14  circumstances." *Reese*, at 1045 (internal quotation marks omitted).

15      As discussed above in connection with the Fourth and Fourteenth Amendment
16  claims, no evidence shows Kee, Blackwood, or Rubalcava violated any such rights.
17  Further, there is no evidence to show that Kee or Rubalcava specifically intended
18  the purported unreasonableness of their conduct. Rather, the undisputed evidence
19  shows that the officers were required to make a split-second decision, when, Puga
20  reached for and grabbed the gun from his waistband and fired it at the officers,
21  making the use of lethal force objectively reasonable in the face of an immediate
22  and obvious threat to life and limb. Accordingly, Plaintiffs' Bane Act claim fails.

23  **II.   THE CHP OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY**

24      Qualified immunity protects "government officials performing discretionary
25  functions" by "shielding them from civil damages liability as long as their actions
26  could reasonably have been thought consistent with the rights they are alleged to
27  have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "The linchpin of
28  qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v.*

*Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of the law at the time of the conduct at issue. *Brouseau v. Haugen*, 543 U.S. 194, 198 (2004); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Thus, the reasonableness inquiry must be undertaken in light of the specific context of the case and not as a general, broad proposition. *Saucier v. Katz,* 533 U.S. 194, 202 (2001); *Kennedy v. Ridgefield*, 439 F.3d 1055, 1065-66 (9th Cir. 2006). To be clear, the Supreme Court has admonished courts "not to define clearly established law at a high level of generality." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015); *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017). "An officer will be denied qualified immunity in a [section] 1983 action only if (1) the facts alleged, taken in light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." *Torres v. Cty. of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

Here, Kee, Rubalcava, and Blackwood are entitled to qualified immunity for their use of lethal force against Puga. As discussed above, no constitutional violation occurred in connection with Kee, Blackwood, or Rubalcava's use of lethal force on February 17, 2021. "It would be unquestionably reasonable for police to shoot a suspect in [decedent's] position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given [decedent's] dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire." *Cruz v. Cty. of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014); *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023), cert. denied, 144 S. Ct. 559, 217 L. Ed. 2d 297 (2024) (stating that when a suspect points a gun in an officer's direction, "the Constitution undoubtedly entitles the officer to respond with deadly force"); *Sabbe*, 84 F.4th at 811 (finding officers' use of deadly force reasonable against a suspect who

appeared to be shooting and pointing a gun at the officers). The undisputed facts here show that Puga reached for the gun in his waistband, compelling Kee to initially fire his gun at Puga. (DUF 26-27.) Rubalcava and Blackwood shot their first volley when Puga fired in Kee and Rubalcava's direction. (DUF 33, 39.) Under *Cruz*, both officers were justified in using lethal force.

However, the case law is not so equally clear whether Kee, Blackwood, and Rubalcava's use of lethal force was reasonable during the second volley, when Puga fled with gun in hand in the direction of house. Qualified immunity applies when officers are reasonably mistaken about the nature of the threat. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate threat, and in those situations courts will not hold that they have violated the Constitution." *Strickland*, 69 F.4th at 621, quoting *Saucier*, 533 U.S. at 206. Although the State Defendants do not concede that they were mistaken about the immediate threat Puga posed to them and others when he attempted to flee (because Puga still had the gun and could have easily fired at and shot them, including when Puga stumbled to the ground and continued to hold the gun), there is no precedent that put the CHP Officers on notice that they cannot fire upon a fleeing suspected felon who suddenly pulled his firearm, shot at the officers, then fled without ever vocalizing or signaling his desire to surrender. *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1072 (S.D. Cal. 1994) (modified on other grounds, 84 F.3d 1162 (9th Cir. 1996)). As discussed above, the CHP Officers were aware that Puga had shot at another motorist the day before; he led police on a lengthy highspeed chase without regard for public safety; he pulled a gun and fired at them moments earlier. Thus, it was not unreasonable for the officers to believe that Puga would again use the gun even if fleeing from them or that Puga would force his way into the house that was in his path of travel and take hostages or shoot someone in that home who might try to defend themself. Kee, Blackwood, and Rubalcava knew of and had already experienced the extreme and violent measures Puga resorted to, especially

to evade arrest. Because the law was not clear whether lethal force was lawful to stop Puga as he fled from the officers with the gun, the CHP Officers are entitled to qualified immunity.

## III.  RUBALCAVA DID NOT CAUSE PUGA'S DEATH

To prevail on a wrongful death claim, the heir plaintiff must show that the wrongful act or negligence of the defendant caused the death of another person. *Holland v. Silverscreen Healthcare, Inc*., 101 Cal. App. 5th 1125, 1132 (2024). The undisputed evidence shows that Puga's fatal injury was caused by a .223 caliber bullet. (DUF 42-43.) Rubalcava used his Smith & Wesson service pistol that fired .40 caliber ammunition. (DUF 14.) Because there is no evidence that Rubalcava caused Puga's death, Plaintiffs' wrongful death claim against him fails.

## IV.  STATE DEFENDANTS ARE IMMUNE FROM STATE-LAW LIABILITY

Peace officers are privileged under state law to use reasonable force to make an arrest, prevent an escape, or overcome resistance. Cal. Penal Code § 835a. *Hernandez v. Cty. of Pomona*, 46 Cal. 4th 501 (2009). California Penal Code section 835a provides that an officer "may use reasonable force to effect the arrest, to prevent escape or overcome resistance" and is justified in using deadly force "when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary" to defend against an imminent threat of death or serious bodily injury to the officer or to another person. Cal. Penal Code § 835a(b), (c)(1)(A); *Edson v. Cty. of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (noting "police battery actions recognize[ ]" § 835a's protections by requiring a plaintiff to "prove[ ] unreasonable force was used").

California Penal Code section 196 also provides a privilege for justifiable homicide. "Under Penal Code section 196, a police officer who kills someone has committed a justifiable homicide if the homicide was necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty . . . [Citation omitted.]  There can be no civil

liability under California law as the result of a justifiable homicide." *Martinez*, at 349-350. "The test for determining whether a homicide was justifiable under Penal Code section 196 is whether the circumstances reasonably create[d] a fear of death or serious bodily harm to the officer or to another." *Id*. (Citations omitted); *see also*. Cal. Pen. Code § 197 (privilege for justifiable homicide); *Gilmore v. Sup. Ct.*, 230 Cal. App. 3d 416, 422 (1991) ("[I]f, in a particular case, the facts establish a justifiable [use of force] under the Penal Code, there is no civil liability.").

California Government Code section 820.2 provides immunity from liability to public employees for their discretionary acts, including when a police officer is required to make split-second judgments about whether force is called for, and how much force is appropriate, in dealing with a threat from a suspect. *Martinez v. Cnty. of L.A.*, 47 Cal. App. 4th 334, 349 (1996). "In actions involving claims under state law, an officer's use of deadly force is privileged as a matter of law if he reasonably fears for his safety or that of others in the area." *Reynolds*, 858 F. Supp. at 1074 (recognizing an officer's "split-second decision to use force is exactly the kind of act" which section 820.2 was enacted to shield from liability).

As discussed above concerning Plaintiffs' Fourth Amendment claim for excessive force, the CHP Officers' use of deadly force was reasonable under the totality of the circumstances. They had a reasonable, well-founded belief that Puga posed an imminent risk of serious injury or death to them and others. Puga was armed with gun; the officers were aware that he was a suspect in an earlier freeway shooting; he took evasive measures to conceal the gun during the standoff; and without warning, he pulled a gun from his waistband and pointed and fired the gun at the officers; he continued to point the gun at the officers as he fled. (DUF 4-41.) State Defendants' use of lethal force was reasonable, and therefore they are immune from liability on Plaintiffs' negligence, Bane Act, and battery claims. Because none of the CHP Officers are liable for Plaintiffs' state-law claims, the State also had no liability. Cal. Gov. Code § 815.2.

1

**CONCLUSION**

2          For the reasons discussed above, the Court should grant the State Defendants'

3   motion and entered judgment in their favor.

4

5   Dated:  February 20, 2025                          Respectfully submitted,

6                                                      ROB BONTA
                                                       Attorney General of California
7                                                      NORMAN D. MORRISON
                                                       Supervising Deputy Attorney General
8

9                                                      */s/ Diana Esquivel*

10                                                     DIANA ESQUIVEL
                                                       Deputy Attorney General
11                                                     *Attorneys for Defendants State of Cal.,*
                                                       *by and through the Cal. Highway*
12                                                     *Patrol, Blackwood, Kee, and*
                                                       *Rubalcava*
13          LA2022603031
14          38804957.docx

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for State of California, Blackwood, Kee, and Rubalcava, certifies that this brief contains 5,876 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 20, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants State of Cal., Blackwood, Kee, and Rubalcava*