**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
L.C., I.H., A.L., and Antonia Salas Ubaldo

### UNITED STATES DISTRICT COURT FOR THE
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive, <br><br> Defendants. | Case No. 5:22-cv-00949-KK-SHK <br><br> *Honorable Kenly Kiya Kato* <br><br> **PLAINTIFFS' CONSOLIDATED STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS** |

Pursuant to Local Rule 56-2, Plaintiffs respectfully submit this Consolidated Statement of Genuine Disputes of Material Facts and Additional Material Facts in support of their Consolidated Opposition to Defendants' Motions for Summary Judgment.

DATED: February 27, 2025        LAW OFFICES OF DALE K. GALIPO

By _____ */s/ Hang D. Le*_____
        Dale K. Galipo
        Hang D. Le
        Attorneys for Plaintiffs

1    **STATE DEFENDANTS' ALLEGED MATERIAL FACTS AND PLAINTIFFS'**
2    **RESPONSES**

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. In February 2021, Defendant Michael Blackwood was an officer with the California Highway Patrol (CHP), assigned to patrol. *Evidence:* Blackwood Dep. 5:25-6:10, Ex. P.1 | <u>Undisputed.</u> |
| 2. In February 2021, Defendant Isaiah Kee was a Sergeant with the CHP, assigned to patrol. *Evidence:* Kee Dep. 13:17-14:5, Ex. O. | <u>Undisputed.</u> |
| 3. In February 2021, Defendant Bernardo Rubalcava was a CHP officer, assigned to patrol. *Evidence:* Rubalcava Dep. 9:25-10:20, 66:4-8, Ex. Q. | <u>Undisputed.</u> |
| 4. On February 16, 2021, at approximately 5:45 p.m., CHP officers, including Kee, were investigating a car-to-car shooting, which occurred on Interstate 15. The suspect, later identified as decedent Hector Puga, drove along the passenger side of the victim's vehicle, and fired one shot at the victim and struck the victim's front passenger door. Puga fled in his vehicle after shooting at the victim. The victim described Puga as a Hispanic male, heavy set, bald, and Puga's vehicle as a white Ford Expedition, with large black rims, and a funeral procession sticker on the back window. *Evidence*: Arrest-Investigation Report 1-12, Ex. L; Kee Dep. 75:18-77:24, Ex. O. | **Objection**. Compound; hearsay. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 5. Blackwood and Rubalcava were briefed about the freeway shooting at the beginning of their work shifts. *Evidence*: Kee Dep. 75:18-77:24, Ex. O; Blackwood Dep. 51:3-20, Ex. P; Rubalcava Dep. 77:14-78:15, Ex. R. | <u>Undisputed</u>. |
| 6. At approximately 1:30 a.m. on February 17, 2021, Blackwood and Rubalcava, who were riding in the same CHP patrol vehicle, observed a white Ford Expedition that matched the description of the vehicle involved in the earlier freeway shooting, and initiated a traffic stop. *Evidence*: Blackwood Dep. 51:3-10, Ex. P; Rubalcava Dep. 77:14-17, Ex. Q; Blackwood MVARS, Part 1 at 00:01-0:30, Ex. D.2 | <u>Undisputed</u>. |
| 7. Puga pulled over but did not comply with the officers' commands to turn off the car and to roll his window down. Instead, Puga drove away, and a pursuit ensued. *Evidence*: Blackwood MVARS, Part 1 at 01:35-02:00, Ex. D. | **<u>Objection</u>**. Compound.<br><br><u>Undisputed</u>. |
| 8. Kee and San Bernardino County Sheriff's Deputies Adams and Vaccari joined the pursuit that lasted over an hour, at high speeds through residential and commercial areas. *Evidence*: Kee MVARS, Part 1 at 02:50-38:50, Ex. B; Blackwood MVARS, Part 1 at 01:50-44:52, Ex. D; Blackwood MVARS, Part 2 at 00:01-28:17, Ex. E. | **<u>Disputed</u>** to the extent that this suggests the pursuit was conducted at high, dangerous speeds and posed a serious threat to the public.<br><br>There was little to no traffic on the road and no passing pedestrians during the pursuit.<br><br>*See* Ex. D to Esquivel Decl., Blackwood MVARS, Part 1; Ex. E to Esquivel Decl., Blackwood MVARS, Part 2.<br><br>The white Expedition never targeted any of the officers nor forced other vehicles off the road during the pursuit. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | *See* Ex. D to Esquivel Decl., Blackwood MVARS, Part 1; Ex. E to Esquivel Decl., Blackwood MVARS, Part 2.<br><br>The white Expedition's speed during the pursuit was fast but not outrageous as even on the freeway, the Expedition was only going 80 miles per hour.<br><br>Ex. 6 to Le Decl., Vaccari Int. 13:22-24; Ex. 4 to Le Decl., Adams Dep. 12:3-13.<br><br>As the pursuit continued down the dirt road, the Expedition's driving was not erratic.<br><br>Ex. 6 to Le Decl., Vaccari Int. 16:6-8. |
| 9. Puga's vehicle became disabled and stopped near the intersection of Peach and Catalpa Streets in Hesperia. It faced north on Peach Street.<br>*Evidence*: Blackwood MVARS, Part 3 at 08:30-10:00, Ex. F; Scene Photo, Ex. A. | <u>Undisputed.</u> |
| 10. Blackwood and Kee stopped their patrol vehicles behind Puga's Expedition, with Kee's vehicle on the right of the Expedition and Blackwood's on the left.<br>*Evidence*: Scene Photo, Ex. A; Blackwood MVARS, Part 3 at 09:00, Ex. F; Kee MVARS, Part 1 at 38:35-38:58, Ex. B. | <u>Undisputed.</u> |
| 11. Kee exited his patrol vehicle and took a position on the driver's side of Blackwood's vehicle.<br>*Evidence*: Kee MVARS, Part 1 at 39:00-39:15, Ex. B | <u>Undisputed.</u> |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 12. Kee was armed with his AR-15 rifle.<br>*Evidence:* Kee Dep. 8:2-3, 53:22-23, Ex. O; Haag Report at 2, Ex. N. | Undisputed. |
| 13. Rubalcava joined Kee on the driver's side of the patrol vehicle, and Blackwood moved to a position on the passenger side of his patrol vehicle, standing behind the open passenger door.<br>*Evidence*: Blackwood Dep. 42:10-19, Ex. P. | Undisputed. |
| 14. Rubalcava had his Smith & Wesson M&P pistol that fired .40 caliber ammunition, and Blackwood was armed with a AR-15 rifle.<br>*Evidence:* Blackwood Dep. 10:11-24, Ex. P; Rubalcava Dep. 12:19-22, 89:4-7 Ex. Q; Haag Report at 2, Ex. N. | Undisputed. |
| 15. Over the course of the next approximately 40 minutes, Kee, Rubalcava, and other officers repeatedly ordered Puga to exit the vehicle and to show them his hands, but Puga did not comply with their orders.<br>*Evidence*: Kee MVARS, Part 1 at 38:50-1:04:20, Ex. A; Kee MVARS, Part 2 at 00:01-40:20, Ex. C; Blackwood MVARS, Part 3 at 09:30-37:30, Ex F; Blackwood MVARS, Part 4 at 00:01-35:40, Ex G; | Undisputed. |
| 16. Kee also repeatedly attempted to de-escalate the situation and negotiate, converse, and build a rapport with Puga in an attempt to have Puga exit the vehicle and surrender, but without success. | Undisputed. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Kee MVARS, Part 1 at 38:50-1:04:20, Ex. A; Kee MVARS, Part 2 at 00:01-40:20, Ex. C; Blackwood MVARS, Part 3 at 09:30-37:30, Ex F; Blackwood MVARS, Part 4 at 00:01-35:40, Ex G; Mangerino Dep. 42:5-16, Ex. S. | |
| 17. During the course of the standoff, a female passenger exited the vehicle, and informed the officers of Puga's identity.<br>*Evidence*: Kee MVARS, Part 1 at 44:40-45:15, Ex. B; Adams Dep. 13:7-25, Ex. R. | Undisputed. |
| 18. Kee attempted to break the driver side windows with five rounds of bean bags, but was unsuccessful.<br>*Evidence*: Blackwood MVARS, Part 3 at 14:45-15:03, Ex. F; Kee Dep. 21:1-11, Ex. O. | Undisputed. |
| 19. The Sheriff's Sergeant broke the back window of the Expedition, and, for approximately 30 minutes, shot several volleys of pepper balls into the cabin of the Expedition in an attempt to have Puga exit the vehicle. These efforts were unsuccessful, and the pepper balls appeared to have no effect on Puga.<br>*Evidence*: Kee MVARS, Part 2 at 01:27-28:50, Ex. C; Adams Dep. 14:14-18:18, Ex. R. | **Objection**. Compound.<br><br>**Disputed**.<br><br>Puga reacted to the pepper balls by coughing and complaining that his eyes were burning and that he could not see.<br><br>Ex. 4 to Le Decl., Adams Dep. 18:10-13; Ex. 8 to Le Decl., Gonzalez Dep. 93:10-15.<br><br>Vaccari deployed pepper balls and struck Puga in the right eye, which is extremely painful.<br><br>Ex. 1 to Le Decl., Kee Dep. 23:2-10; Ex. 3 to Le Decl., Blackwood Dep. 14:24-15:6; Ex. 5 to Le Decl., Vaccari Dep. 32:14-18; Ex. 6 to Le Decl., Vaccari Int. 28:25-29:4; Ex. 7 to Le Decl., Mangerino Dep. 25:23-26:1. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Puga sustained a cut to the area of his forehead right above his right eye, which Blackwood associated with being hit in the right eye by pepper balls.<br><br>Ex. 3 to Le Decl., Blackwood Dep. 13:24-14:10. |
| 20. At approximately 3:40 a.m., Puga finally exited the Expedition with his hands above his head. Although he was shirtless, he faced north away from the officers and not displaying his waistband to the officers. *Evidence*: Blackwood MVARS, Part 4 at 33:40-37:49, Ex. G; Edward Mangerino Video at 00:01-00:42, Ex. H. | **Objection**. Compound.<br><br>**Disputed** that the officers could not see Puga's waistband.<br><br>Puga was shirtless and the officers could at least see the back of Puga's waistband, if not the sides of his waistband at times, given that the officers were offset and behind Puga.<br><br>*See* Ex. 11 to Le Decl., Blackwood Dashcam Video at 35:35-37:50; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 00:00-01:54. |
| 21. Puga stood near the driver side door, raising and dropping his hands, for several minutes, then quickly walked to the front of the Expedition and pressed his torso against the hood of the car concealing the front of his waistband from the officers' view. *Evidence*: Blackwood MVARS, Part 4 at 37:50-42:50, Ex. G; Kee Dep. 80:18-81:11, Ex. O; Rubalcava Dep. 53:12-17, 80:11-19, Ex. Q; Blackwood Dep. 33:25-34:6, Ex. P. | **Objection**. Compound.<br><br>**Disputed** that Puga walked at a quick pace to the front of the Expedition and that he intentionally concealed the front of his waistband from the officers.<br><br>Puga walked at an even pace to the front of the car.<br><br>Ex. 11 to Le Decl., Rubalcava Dashcam Video at 37:48-37:50.<br><br>The front of the vehicle was blocking the officers' view of Puga's waistband.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 80:15-19; Ex. 4 to Le Decl., Adams Dep. 41:2-9; Ex. 5 to Le Decl., 63:23-64:3. |
| 22. When Puga moved to the front of the Expedition, Kee and Rubalcava moved to the southwest corner of the | **Disputed**. Kee and Rubalcava never got to the area near the utility pole. Kee and Rubalcava were further back at the time the shooting started. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| intersection, near the utility pole, such that they were almost in line with the front of the Expedition. *Evidence*: Erin Mangerino Video at 00:01-00:42, Ex. I; Kee Dep. 81:6-82:3, Ex. O; Rubalcava Dep. 79:14-80:10, 95:15-96:11, Ex. Q. | There was an electrical pole on the southwest corner of the intersection that was almost parallel to the front of the Expedition.

Ex. 1 to Le Decl., Kee Dep. 26:22-27:9; Ex. 15 to Le Decl., Photograph of Scene.

In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame.

Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:29-00:53.

Erin Mangerino was unable to see any officers standing on her side of Peach Street.

Ex. 7 to Le Decl., Mangerino Dep. 53:11-22.

Rubalcava was side by side and to the right of Kee while they were approaching and when Kee started firing.

Ex. 1 to Le Decl., Kee Dep. 29:10-19, 30:16-22.

Rubalcava was firing in a northeast direction during his first volley.

Ex. 2 to Le Decl., Rubalcava Dep. 21:16-19. |
| 23. Kee repeatedly asked Puga if he had a gun because Kee was unable to see the front of Puga's pants and waistband; Puga denied having a weapon. | **Objection**. Compound. Vague as to time.

Kee claims that as he approached the electrical pole, he could only see a |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Blackwood MVARS, Part 4 at 40:30-42:20, Ex. G. | portion of Puga's body in front of the vehicle.<br><br>Ex. 1 to Le Decl., Kee Dep. 29:20-23.<br><br>Kee claims he could not see Puga's waistband while Puga was standing in front of the vehicle and could only see Puga's waistband once he moved past the front of Puga's vehicle.<br><br>Ex. 1 to Le Decl., Kee Dep. 81:6-19.<br><br>There was an electrical pole on the southwest corner of the intersection that was parallel to the back passenger doors of the Expedition.<br><br>*See* Ex. 15 to Le Decl., Photograph of Scene; Ex. 16 to Le Decl., Photograph of Expedition at Curb.<br><br>In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame.<br><br>Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:29-00:53.<br><br>Erin Mangerino was unable to see any officers standing on her side of Peach Street. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 7 to Le Decl., Mangerino Dep. 53:11-22. |
| 24. When Kee was approximately 20 to 30 feet from Puga, a few seconds after reaching the utility pole on the southwest corner of the intersection, Kee saw a handgun in Puga's waistband. *Evidence:* Kee Dep. 9:10-19, 28:23-29:5, Ex. O. | **Disputed** that Kee ever reached the utility pole prior to the shooting and that Kee saw a handgun in Puga's waistband. |
| 25. As Kee continued to negotiate with Puga, telling him to keep his hands up as Kee and Rubalcava approached to handcuff him, Kee saw Puga's right hand going towards the gun, and several times yelled at Puga to not reach for the gun. *Evidence:* Blackwood MVARS, Part 4 at 42:05-42:29, Ex. G. | **Disputed**. Kee and Rubalcava never got to the area near the utility pole. Kee and Rubalcava were further back at the time the shooting started and therefore could not have seen Puga's waistband and the alleged gun in his waistband. Moreover, Puga had reached down several times throughout the time he was outside of the car to pull up his pants. Lastly, there was no gun visibly sticking out of Puga's waistband.

There was an electrical pole on the southwest corner of the intersection that was almost parallel to the front of the Expedition.

Ex. 1 to Le Decl., Kee Dep. 26:22-27:9; Ex. 15 to Le Decl., Photograph of Scene.

In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame.

Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:29-00:53.

Erin Mangerino was unable to see any officers standing on her side of Peach Street. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 7 to Le Decl., Mangerino Dep. 53:11-22.

Rubalcava was side by side and to the right of Kee while they were approaching and when Kee started firing.

Ex. 1 to Le Decl., Kee Dep. 29:10-19, 30:16-22.

Rubalcava was firing in a northeast direction during his first volley.

Ex. 2 to Le Decl., Rubalcava Dep. 21:16-19.

Kee claims that as he approached the electrical pole, he could only see a portion of Puga's body in front of the vehicle.

Ex. 1 to Le Decl., Kee Dep. 29:20-23.

While Puga was positioned next to the driver's side of the vehicle, Puga was continually reaching down to pull up his pants because they were loose and kept falling.

Ex. 1 to Le Decl., Kee Dep. 11:15-23; Ex. 4 to Le Decl., Adams Dep. 42:12-17, 43:5-13, 43:23-44:5; Ex. 8 to Le Decl., Gonzalez Dep. 105:11-25.

Puga occasionally would drop his hands to pull up his pants while he was standing near the front of the vehicle. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 4 to Le Decl., Adams Dep. 61:3-62:3; Ex. 8 to Le Decl., Gonzalez Dep. 42:18-25. |
| | The bystander cell phone video taken by Erin Mangerino shows Puga with his hands up and briefly dropping his right hand to his waistband to adjust his pants before raising his hand up again, twice, before the shooting. |
| | Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:03-00:07; 0:00:20-00:27. |
| | Puga did not appear to have a gun or weapon in his hand, waistband, or pocket when he exited the vehicle. |
| | Ex. 1 to Le Decl., Kee Dep. 24:15-17; Ex. 2 to Le Decl., Rubalcava Dep. 37:25-38:4; Ex. 3 to Le Decl., Blackwood Dep. 34:4-6; Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25; Ex. 9 to Le Decl., Edward Mangerino Video; Clark Decl. ¶ 16. |
| | Puga did not have anything in his hands and he never reached for any weapon while he was standing near the driver's side of the vehicle |
| | Ex. 1 to Le Decl., Kee Dep. 24:7-9; Ex. 2 to Le Decl., 38:8-20 Ex. 3 to Le Decl., Blackwood Dep. 15:25-16:2. |
| | Puga did not appear to have a weapon in his hands or on his person while he |

5:23-cv-00257-KK-SHK

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | stood next to the driver's side of the vehicle. |
| | Ex. 3 to Le Decl., Blackwood Dep. 33:25-34:3; Ex. 4 to Le Decl., Adams Dep. 21:22-22:2. |
| | When Puga was in front of the Expedition, Puga did not have anything in his. |
| | Ex. 2 to Le Decl., Rubalcava Dep. 40:6-8. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | As soon as Puga started to turn to run, officers shot at Puga. |
| | Ex. 2 to Le Decl., Rubalcava Dep.. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| 26. Kee fired first when he saw Puga's hand go towards the gun. *Evidence:* Kee Dep. 9:16-10:11, Ex. O. | **Disputed** that Kee saw Puga's hand go towards a gun and that Kee fired because he saw Puga's hand go towards a gun.<br><br>There was an electrical pole on the southwest corner of the intersection that was almost parallel to the front of the Expedition.<br><br>Ex. 1 to Le Decl., Kee Dep. 26:22-27:9; Ex. 15 to Le Decl., Photograph of Scene.<br><br>In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame.<br><br>Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:29-00:53.<br><br>Erin Mangerino was unable to see any officers standing on her side of Peach Street.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 53:11-22.<br><br>Rubalcava was side by side and to the right of Kee while they were approaching and when Kee started firing.<br><br>Ex. 1 to Le Decl., Kee Dep. 29:10-19, 30:16-22.<br><br>Rubalcava was firing in a northeast direction during his first volley. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 2 to Le Decl., Rubalcava Dep. 21:16-19. |
| | Kee claims that as he approached the electrical pole, he could only see a portion of Puga's body in front of the vehicle. |
| | Ex. 1 to Le Decl., Kee Dep. 29:20-23. |
| | While Puga was positioned next to the driver's side of the vehicle, Puga was continually reaching down to pull up his pants because they were loose and kept falling. |
| | Ex. 1 to Le Decl., Kee Dep. 11:15-23; Ex. 4 to Le Decl., Adams Dep. 42:12-17, 43:5-13, 43:23-44:5; Ex. 8 to Le Decl., Gonzalez Dep. 105:11-25. |
| | Puga occasionally would drop his hands to pull up his pants while he was standing near the front of the vehicle. |
| | Ex. 4 to Le Decl., Adams Dep. 61:3-62:3; Ex. 8 to Le Decl., Gonzalez Dep. 42:18-25. |
| | The bystander cell phone video taken by Erin Mangerino shows Puga with his hands up and briefly dropping his right hand to his waistband to adjust his pants before raising his hand up again, twice, before the shooting. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:03-00:07; 0:00:20-00:27. |
| | Puga did not appear to have a gun or weapon in his hand, waistband, or pocket when he exited the vehicle. |
| | Ex. 1 to Le Decl., Kee Dep. 24:15-17; Ex. 2 to Le Decl., Rubalcava Dep. 37:25-38:4; Ex. 3 to Le Decl., Blackwood Dep. 34:4-6; Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25; Ex. 9 to Le Decl., Edward Mangerino Video; Clark Decl. ¶ 16. |
| | Puga did not have anything in his hands and he never reached for any weapon while he was standing near the driver's side of the vehicle |
| | Ex. 1 to Le Decl., Kee Dep. 24:7-9; Ex. 2 to Le Decl., 38:8-20 Ex. 3 to Le Decl., Blackwood Dep. 15:25-16:2. |
| | Puga did not appear to have a weapon in his hands or on his person while he stood next to the driver's side of the vehicle. |
| | Ex. 3 to Le Decl., Blackwood Dep. 33:25-34:3; Ex. 4 to Le Decl., Adams Dep. 21:22-22:2. |
| | When Puga was in front of the Expedition, Puga did not have anything in his. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 2 to Le Decl., Rubalcava Dep. 40:6-8.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21.<br><br>As soon as Puga started to turn to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| 27. Puga pulled the gun from his waistband and fired it twice in Kee and Rubalcava's direction. Kee saw two muzzle flashes from Puga's gun while Kee was firing his first volley. *Evidence*: Kee Dep. 78:15-79:6, Ex. O; Gonzalez Video at 05:30-6:47, Ex. J; Erin Marino Video at 00:51-52, Ex. I; | **Objection**. Compound.<br><br>**Disputed** that Puga pulled a gun from his waistband. Further **disputed** that Puga fired any weapon at anyone. Further **disputed** that there any muzzle flash ever came from Puga's area. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Annabelle Botten Interview at 02:00-02:50, Ex. L; Mangerino Dep. 35:2-36:17, 50:14-52:5, Ex. S; Goodson Dep. 26:10-27:3, 31:19-32:11, 49:11-22, 53:6-54:6, Ex. T; Adams Dep. 35:12-36:18, Ex. R; Blackwood Dep. 53:14-16, Ex. P. | As soon as Puga turned to run, officers shot at Puga.

Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.

Puga never grabbed or aggressively reached for anything prior to the shots.

Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Puga never had a gun in his hand.

Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Puga never pointed his hand or a weapon in any specific direction or at any officer.

Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6.

Puga never fired a weapon at any officer.

Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Neither smoke nor any muzzle flash ever came from Puga.

Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a |
| 28. Kee fired two volleys of gunfire at Puga. The first volley occurred when | **Objection**. Compound.

**Disputed** that Kee only fired two volleys of shots. Further **disputed** that |

-19-                                    5:23-cv-00257-KK-SHK

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Puga reached for the gun in his waistband. *Evidence*: Kee Dep. 9:7-10:16, Ex. O. | Puga ever reached for a gun in his waistband or that a gun was visibly sticking out of his waistband. Further **disputed** that Kee fired after Puga reached for a gun in his waistband. |
| | Puga did not appear to have a gun or weapon in his hand, waistband, or pocket when he exited the vehicle. |
| | Ex. 1 to Le Decl., Kee Dep. 24:15-17; Ex. 2 to Le Decl., Rubalcava Dep. 37:25-38:4; Ex. 3 to Le Decl., Blackwood Dep. 34:4-6; Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25; Ex. 9 to Le Decl., Edward Mangerino Video; Clark Decl. ¶ 15. |
| | Puga stood near the driver's side of the car for a period of time and during that time, the officers were able to see Puga's hands. |
| | Ex. 1 to Le Decl., Kee Dep. 23:23-24:3. |
| | Puga did not have anything in his hands and he never reached for any weapon while he was standing near the driver's side of the vehicle. |
| | Ex. 1 to Le Decl., Kee Dep. 24:7-9; Ex. 2 to Le Decl., 38:8-20 Ex. 3 to Le Decl., Blackwood Dep. 15:25-16:2. |
| | Puga did not appear to have a weapon in his hands or on his person while he stood next to the driver's side of the vehicle. |
| | Ex. 3 to Le Decl., Blackwood Dep. 33:25-34:3; Ex. 4 to Le Decl., Adams Dep. 21:22-22:2. |
| | While Puga was outside of the vehicle, Puga was continually reaching down to pull up his pants because they were loose and kept falling. |
| | Ex. 1 to Le Decl., Kee Dep. 11:15-23; Ex. 4 to Le Decl., Adams Dep. 42:12- |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 17, 43:5-13, 43:23-44:5; Ex. 8 to Le Decl., Gonzalez Dep. 105:11-25. |
| | Puga occasionally would drop his hands to pull up his pants while he was standing near the front of the vehicle. |
| | Ex. 4 to Le Decl., Adams Dep. 61:3-62:3; Ex. 8 to Le Decl., Gonzalez Dep. 42:18-25. |
| | The bystander cell phone video taken by Erin Mangerino shows Puga with his hands up and briefly dropping his right hand to his waistband to adjust his pants before raising his hand up again, twice. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:03-00:07; 0:00:20-00:27. |
| | As soon as Puga turned to run, officers shot at Puga. |
| | Ex. 2 to Le Decl., Rubalcava Dep.. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Several shots were fired at Puga after he fell to the ground. |
| | Ex. 1 to Le Decl., Kee Dep. 68:17-24; Ex. 3 to Le Decl., 25:8-12; Ex. 5 to Le Decl., Vaccari Dep. 43:11-24; Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:01:04-01:12; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:37-42:45. |
| | After Puga fell to the ground, several shots are fired and there was a pause before the final two, almost simultaneous volleys of shots from two different firearms are heard. |
| | Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:02-01:10. |
| 29. After the first volley, Kee ran away from Puga, slid on to the ground, and repositioned himself in a prone position to avoid any further gunfire from Puga. *Evidence*: Kee Dep. 30:23-32:9, 83:3-21, Ex. O. | **Disputed** that Kee went to the ground to avoid gunfire from *Puga*. <br><br> Kee went to the prone position on the ground because he was aware that Rubalcava was behind him and he did not want to run the risk of getting hit by friendly fire. <br><br> Ex. 20 to Le Decl., Kee Int. 74:23-75:2. |
| 30. Kee regained sight of Puga who was fleeing in a northwest direction past the intersection. Kee could see Puga's left ribcage area, and Puga had the gun in his left hand, pointing it back towards Kee's location. *Evidence*: Kee Dep. 83:16-84:3, Ex. O. | **Objection**. Compound. <br><br> **Disputed** that only Puga's left ribcage was exposed to Kee while Puga was running in a northwest direction. Further **disputed** that Puga had a gun in his hand. Further **disputed** that Puga pointed anything back towards Kee's location while he was running. <br><br> As soon as Puga turned to run, officers shot at Puga. <br><br> Ex. 2 to Le Decl., Rubalcava Dep.. 60:20-61:1; Ex. 5 to Le Decl., Vaccari |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 17a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21.

None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers.

Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07.

When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon.
Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22.

Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away.

Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2.

During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands.

Ex. 3 to Le Decl., Blackwood Dep. 36:18-20.

Puga sustained multiple gunshot wounds to his backside.

Ex. 19 to Le Decl., Jong Dep. 21:21-22. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Many of the gunshots wounds have a back-to-front trajectory. |
| | Ex. 19 to Le Decl., Jong Dep. 45:25-46:4. |
| | Some of the gunshot wounds had an upward trajectory. |
| | Ex. 19 to Le Decl., Jong Dep. 46:5-8. |
| | Puga sustained a gunshot wound that entered the mid left back with a trajectory of back-to-front, left-to-right, and upward. |
| | Ex. 19 to Le Decl., Jong Dep. 9:2-4, 9:22-10:4, 10:25-11:2. |
| | In order to get the gunshot wound to the mid left back, the back would have had to been exposed to the muzzle of the gun. |
| | Ex. 19 to Le Decl., Jong Dep. 11:22-13:23. |
| | Puga sustained a gunshot wound to the lower left back with a trajectory of back-to-front, left-to-right, and upward. |
| | Ex. 19 to Le Decl., Jong Dep. 13:17-20, 14:14-16. |
| | The gunshot wound to the lower left back is consistent with Puga's back directly facing the shooter. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 19 to Le Decl., Jong Dep. 31:7-13. |
| 31. Kee shot at Puga to begin the second volley because Puga posed a continuing threat of immediate death or serious harm: Puga still had the gun; Puga had already fired upon Kee and Rubalcava based on the muzzle flashes Kee saw come from Puga's gun; Puga had used a gun in the earlier freeway shooting incident, indicating to Kee that Puga would not hesitate to use a gun; and Puga was now heading towards a house that could result in a hostage situation. Kee therefore fired his second volley of gunfire when Puga continued to run in the direction of the house. *Evidence*: Kee Dep. 82:10-85:7, Ex. O. | **Objection**. Compound.

**Objection**. Lay witness-ultimate issue; legal conclusion. Fed. R. Evid. 701; *United States v. Bohn*, 622 F.3d 1129, 1138 (9th Cir. 2010).

**Objection**. Expert witness-legal conclusion. Fed. R. Evid. 702(a); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.2004).

**Disputed** that Puga posed ever posed an immediate threat of death or serious bodily harm. Further **disputed** that Puga ever had a gun in his hand while in front of the Expedition or while running. Further **disputed** that Puga ever fired a weapon at anyone. Further **disputed** that it was reasonable for Kee to believe that Puga would not hesitate to use a gun. Further **disputed** that it was reasonable for Kee to believe that Puga posed a threat to the residents and would take hostages as Puga was nowhere near any houses during the shooting and had likely changed directions away from any house by the time Kee fired his second volley.

As soon as Puga turned to run, officers shot at Puga.

Ex. 2 to Le Decl., Rubalcava Dep.. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25- |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 17a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. |
| | Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |
| | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. |
| | Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2. |
| | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. |
| | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| | Vaccari's impression what that as Puga was running, he had been struck by gunfire because it appeared that Puga was staggering. |
| | Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:1. |
| | Approximately 5 to 8 seconds elapsed between Kee's first volley and when he started firing his second volley. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 54:5-9.

When Puga reached the northwest corner, he changed directions and started running north instead of towards the house on the corner.

Ex. 4 to Le Decl., Adams Dep. 50:15-21; Ex. 7 to Le Decl., Mangerino Dep. 34:3-12.

Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner.

Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13.

Officer Rubalcava, Officer Blackwood, Sergeant Kee, and Deputy Adams violated standard police practices and training when they shot at Mr. Puga while he was running away. Mr. Puga did not present an immediate threat of death or serious bodily injury as he was running and the officers failed to reassess and overreacted when they fired subsequent volleys when Mr. Puga was running.

Clark Decl. ¶ 17.

Under the facts of this case, there was no immediate defense of life situation while Mr. Puga was running away.

Clark Decl. ¶ 17a.
Officers are trained that they may use deadly force against a fleeing suspected felon to prevent escape only if the officer has probable cause to believe |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | that the suspect poses a significant threat of death or serious physical injury to the officers or others.<br><br>Clark Decl. ¶ 17c.<br><br>There is evidence that this was likely a situation of contagious fire.<br><br>Clark Decl. ¶ 17d. |
| 32. Rubalcava fired two volleys at Puga—approximately five in the first volley, and five to eight in the second. *Evidence*. Rubalcava Dep. 14:3-11, Ex. Q. | **Disputed** that Rubalcava fired only two volleys.<br><br>Just prior to Puga going to the ground, he was staggering as if he had been struck by gunfire.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:4.<br><br>There were gunshots immediately before Puga went to the ground.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 53:5-7.<br><br>Several shots were fired at Puga after he fell to the ground.<br><br>Ex. 1 to Le Decl., Kee Dep. 68:17-24; Ex. 3 to Le Decl., 25:8-12; Ex. 5 to Le Decl., Vaccari Dep. 43:11-24; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:01:04-01:12; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 0:42:37-42:45. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | After Puga fell to the ground, several shots are fired and there is a pause before the final two, almost simultaneous volleys of shots from two different firearms are heard.

Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:02-01:10.

As the last volleys are going off, Puga can be seen jerking on the ground as if struck by the gunshots.

Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:06-01:10. |
| 33. In the first volley, Rubalcava returned fire when Puga turned towards Rubalcava and fired the gun. Rubalcava shot at Puga's chest-abdomen area. *Evidence*: Rubalcava Dep. 17:13-18:20, 80:4-81:11, Ex. Q. | **Disputed** that Rubalcava returned fire and that Puga ever fired a weapon towards anyone. Further **disputed** that Rubalcava shot at Puga's chest-abdomen area.

As soon as Puga turned to run, officers shot at Puga.

Ex. 2 to Le Decl., Rubalcava Dep.. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.

Puga never grabbed or aggressively reached for anything prior to the shots.

Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Puga never had a gun in his hand. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 17a. |
| | Puga sustained ten gunshot wounds: one to the mid left back, one to the lower left back, one to the middle right buttock, one to the front of the left thigh, one to the side of the left thigh, one to the back of the left thigh, one to the lateral left knee, two to the anterior right lower leg, and one to the right foot. |
| | Ex. 19 to Le Decl., Jong Dep. 9:2-4, 9:22-10:4, 10:25-11:2, 13:17-20, 14:14-16, 14:17-20, 15:10-16:2, 16:8-21, 17:3-16, 17:20-18:19, 20:3-9, 20:25-21:10, 21:19-20. |
| 34. Rubalcava was located on the dirt area near the left-front bumper area of Puga's vehicle when he shot the first volley. | **Disputed** that Rubalcava had reached near the left-front bumper area of Puga's vehicle at the time of the shooting. Kee and Rubalcava never got |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Rubalcava Dep. 26:8-11, Ex. Q. | to the area near the utility pole. Kee and Rubalcava were further back at the time the shooting started and therefore could not have seen Puga's waistband and the alleged gun in his waistband.<br><br>There was an electrical pole on the southwest corner of the intersection that was almost parallel to the front of the Expedition.<br><br>Ex. 1 to Le Decl., Kee Dep. 26:22-27:9; Ex. 15 to Le Decl., Photograph of Scene.<br><br>In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame.<br><br>Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:29-00:53.<br><br>Erin Mangerino was unable to see any officers standing on her side of Peach Street.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 53:11-22.<br><br>Rubalcava was side by side and to the right of Kee while they were approaching and when Kee started firing.<br><br>Ex. 1 to Le Decl., Kee Dep. 29:10-19, 30:16-22.<br><br>Rubalcava was firing in a northeast direction during his first volley.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 21:16-19. |

5:23-cv-00257-KK-SHK

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 35. During the second volley, Rubalcava shot Puga as he was fleeing with the gun. Rubalcava still considered Puga an immediate threat because he still had the gun in his hand, and Puga was heading towards a residence, creating a risk of a hostage situation. *Evidence*: Rubalcava Dep. 18:18-19:6, 23:1-14, 86:23-87:8, Ex. Q. | **Objection**. Vague as to "the second volley." <br><br> **Disputed** that Puga was fleeing with a gun in his hand. Further **disputed** that Puga posed an immediate threat while he was running. Further **disputed** that Puga was heading towards a residence as he had likely had changed directions away from any house by the time Rubalcava fired his second volley. Further **disputed** that Puga ever posed a risk of a hostage situation. <br><br> Puga never had a gun in his hand. <br><br> Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. <br><br> Neither smoke nor any muzzle flash ever came from Puga. <br><br> Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. <br><br> None of the videos capturing the incident show Puga with a gun in his hand. <br><br> Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. <br><br> None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. <br><br> Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There was an approximately 5 to 10 second pause between Rubalcava's first volley and second volley. |
| | Ex. 2 to Le Decl., Rubalcava Dep. 14:12-18. |
| | When Puga reached the northwest corner, he changed directions and started running north instead of towards the house on the corner. |
| | Ex. 4 to Le Decl., Adams Dep. 50:15-21; Ex. 7 to Le Decl., Mangerino Dep. 34:3-12. |
| | Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner. |
| | Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13. |
| | Officer Rubalcava, Officer Blackwood, Sergeant Kee, and Deputy Adams violated standard police practices and training when they shot at Mr. Puga while he was running away. Mr. Puga did not present an immediate threat of death or serious bodily injury as he was running and the officers failed to reassess and overreacted when they fired subsequent volleys when Mr. Puga was running. |
| | Clark Decl. ¶ 17. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Under the facts of this case, there was no immediate defense of life situation while Mr. Puga was running away.<br><br>Clark Decl. ¶ 17a.<br>Officers are trained that they may use deadly force against a fleeing suspected felon to prevent escape only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others.<br><br>Clark Decl. ¶ 17c.<br><br>There is evidence that this was likely a situation of contagious fire.<br><br>Clark Decl. ¶ 17d. |
| 36. During the second volley, Rubalcava was standing behind the driver's side door of Blackwood's patrol vehicle, and shooting northbound on Peach Street.<br>*Evidence*: Rubalcava Dep. 45:20-46:7, 51:3-8, Ex. Q. | **Objection**. Vague as to "the second volley."<br><br><u>Undisputed</u>. |
| 37. Rubalcava did not give Puga a verbal warning that lethal force would be used because there was no opportunity to do so.<br>*Evidence*: Rubalcava Dep. 79:6-80:19, Ex. Q. | **Objection**. Vague as to time.<br><br>**Disputed** that Rubalcava did not have the opportunity to give Puga a verbale warning that lethal force would be used.<br><br>The officers had time to provide Mr. Puga with a warning that deadly force was going to be used prior to the |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | shooting as the officers were able to issue commands to "get your hands up" prior to the shooting.<br><br>Clark Decl. ¶ 19.<br><br>The officers also had time to provide an additional warning that deadly force was going to be used in between their first and subsequent volleys of shots as Puga was simply running and then fell to the ground after being struck by shots.<br><br>Clark Decl. ¶ 19. |
| 38. Blackwood fired 20 rounds at Puga in two separate volleys.<br>*Evidence*: Blackwood Dep. 10:11-21, 34:18-38:5, Ex. P. | **Disputed** that Blackwood only fired two volleys. |
| 39. Blackwood saw the gun in Puga's hand when he fired the first volley. Blackwood aimed at Puga's torso and left side while Puga was hunched over, not yet running.<br>*Evidence*. Blackwood Dep. 28:16-29:20, 53:14-55:7, Ex. P. | **Disputed** that Blackwood saw the gun in Puga's hand when he fired his first volley. **Disputed** that Puga was not already in the process of running when Blackwood fired his first volley.<br><br>While at the front of the vehicle, Puga was positioned in the middle of the hood.<br><br>Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 00:00-00:52.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep.. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga had just cleared the front of the vehicle when Blackwood started firing. |
| | Ex. 3 to Le Decl., Blackwood Dep. 28:20-23 |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. |
| | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 40. Blackwood paused his shooting when he saw Puga stumble. Blackwood fired the second volley when Puga started to run because Puga still had the gun which he could have fired at Blackwood or another officer, and Puga was running towards a house, which could have led to a hostage situation. *Evidence*. Blackwood Dep. 29:21-31:18, 53:14-55:7, Ex. P. | **Objection**. Compound.<br><br>**Objection**. Vague as to time "Puga started to run."<br><br>**Disputed** that Puga ever had a gun in his hand while he was running. Further **disputed** that Puga was running towards a house when Blackwood started firing his second volley. Further **disputed** that there is evidence Puga posed a threat of a hostage situation.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep.. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never pointed his hand or a weapon in any specific direction or at any officer. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 17a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. |
| | Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away.

Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2.

During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands.

Ex. 3 to Le Decl., Blackwood Dep. 36:18-20.

Vaccari's impression what that as Puga was running, he had been struck by gunfire because it appeared that Puga was staggering.

Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:1.

When Puga reached the northwest corner, he changed directions and started running north instead of towards the house on the corner.

Ex. 4 to Le Decl., Adams Dep. 50:15-21; Ex. 7 to Le Decl., Mangerino Dep. 34:3-12.

Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner.

Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13.

Officer Rubalcava, Officer Blackwood, Sergeant Kee, and Deputy Adams violated standard police practices and training when they shot at Mr. Puga |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | while he was running away. Mr. Puga did not present an immediate threat of death or serious bodily injury as he was running and the officers failed to reassess and overreacted when they fired subsequent volleys when Mr. Puga was running.<br><br>Clark Decl. ¶ 17.<br><br>Under the facts of this case, there was no immediate defense of life situation while Mr. Puga was running away.<br><br>Clark Decl. ¶ 17a.<br>Officers are trained that they may use deadly force against a fleeing suspected felon to prevent escape only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others.<br><br>Clark Decl. ¶ 17c.<br><br>There is evidence that this was likely a situation of contagious fire.<br><br>Clark Decl. ¶ 17d. |
| 41. After Puga went down to the ground, Rubalcava and a deputy handcuffed him and found Puga's gun tucked under his stomach where both his hands were also located.<br>*Evidence:* Rubalcava Dep. 85:25-86:22, Ex. Q. | **Disputed** that Puga fell with his hands underneath his body. Further **disputed** to the extent that this suggest Puga was holding a gun while he was running or that a gun was sticking out of Puga's waistband while he was running.<br><br>Puga never had a gun in his hand. |

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | Just prior to Puga going to the ground, he was staggering as if he had been struck by gunfire. |
| | Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:4. |
| | Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner. |
| | Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (State) Alleged Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Puga's hands were next to him when he was on the ground.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 61:7-13.<br><br>There was no gun in either of Puga's hands immediately after Puga went to the ground.<br><br>Ex. 4 to Le Decl., Adams Dep. 52:18-22. |
| 42. Puga sustained ten gunshot wounds, but only the wound to the mid left back was fatal.<br>*Evidence:* Jong Dep. 21:19-22:3, Ex. U. | <u>**Disputed**</u> that only the wound to the mid left back was fatal.<br><br>Puga sustained a gunshot wound to the lower left back with a trajectory of back-to-front, left-to-right, and upward.<br><br>Ex. 19 to Le Decl., Jong Dep. 13:17-20, 14:14-16.<br><br>The gunshot wound to the lower left back could have also been fatal after a longer period of time.<br><br>Ex. 19 to Le Decl., Jong Dep. 30:7-31:2. |
| 43. The wound to Puga's mid left back was caused by a .223 caliber bullet.<br>*Evidence:* Haag Report at 2, Ex. N. | <u>Undisputed</u>. |

## COUNTY DEFENDANTS' ALLEGED MATERIAL FACTS AND

## PLAINTIFFS' RESPONSES

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1.Deputy Adams went to the Academy from March to September 2018.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 5:24-25. | **Objection**. Fed. R. Evid. 401, 402. Relevance.<br><br>Otherwise, <u>undisputed</u> |
| 2. After graduation from the Academy Deputy Adams was assigned to the West Valley Detention Center for the San Bernardino County Sheriff's Department.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 6:1-3. | **Objection**. Fed. R. Evid. 401, 402. Relevance.<br><br>Otherwise, <u>undisputed</u> |
| 3. Deputy Adams was assigned to patrol starting May 2020 with the San Bernardino County Sheriff's Department.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 6:6-16. | **Objection**. Fed. R. Evid. 401, 402. Relevance.<br><br>Otherwise, <u>undisputed</u> |
| 4. From May through September 2020 Deputy Adams was in field training.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 6:6-16. | **Objection**. Fed. R. Evid. 401, 402. Relevance.<br><br>Otherwise, <u>undisputed</u> |
| 5. Sergeant Vaccari graduated from the Academy in 1997.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 10:8-14. | **Objection**. Fed. R. Evid. 401, 402. Relevance.<br><br>Otherwise, <u>undisputed</u> |
| 6. After graduation from the Academy Sergeant Vaccari was assigned to West Valley Detention Center for the San Bernardino County Sheriff's Department. | **Objection**. Fed. R. Evid. 401, 402. Relevance.<br><br>Otherwise, <u>undisputed</u> |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 10:18-22. | |
| 7. Sergeant Vaccari went to patrol in 2000.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 10:21-11:3. | **Objection**. Relevance.<br><br>Otherwise, <u>undisputed</u> |
| 8. Sergeant Vaccari was promoted to Sergeant in January 2012.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 11:4-7. | **Objection**. Relevance.<br><br>Otherwise, <u>undisputed</u> |
| 9. On February 16, 2021, CHP received reports that a white Ford SUV was involved in a shooting with another vehicle on the freeway during the evening.<br><br>Clarke Decl. ¶ 11, Ex. V - Kee Depo. 14:6-9, 75:3-76:19; Clarke Decl. ¶ 12, Ex. W - Rubalcava Depo. 77:14-78:15; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 51:11-20. | **Objection**. The cited evidence does not support the allegation that the shooting with another vehicle on the freeway occurred during the evening of February 16, 2021. |
| 10. The Ford SUV had a funeral sticker on the back window.<br><br>Clarke Decl. ¶ 11, Ex. V - Kee Depo. 76:14-19; Clarke Decl. ¶ 12, Ex. W - Rubalcava Depo. 78:4-9; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 51:11-20. | <u>Undisputed</u>. |
| 11. Sergeant Kee was the on-duty supervisor when the freeway shooting occurred.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 75:22-76:5. | <u>Undisputed</u>. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 12. Kee spoke to the victim of the freeway shooting.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 75:22-76:5 | **Objection**. Fed. R. Evid. 401, 402. Relevance.<br><br>Undisputed. |
| 13. The victim directed Kee's attention to the right passenger side door where there was a bullet hole in the door<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 75:22-76:5 | Undisputed. |
| 14. The bullet penetrated through the door and passenger seat.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 76:6-13 | Undisputed. |
| 15. CHP were briefed regarding the shooting. Clarke Decl. ¶ 11, Ex. V – Kee Depo.<br><br>76:25-77:14 | Undisputed. |
| 16. The shooting was classified as a felony.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 76:25-77:14 | Undisputed. |
| 17. Because the freeway shooting was classified as a felony, the officers were permitted to conduct a felony stop.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 76:25-77:14 | Undisputed. |
| 18. A felony stop is when an officer orders the occupants out of the vehicle without approaching, and with the weapons drawn behind cover. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 11, Ex. V – Kee Depo. 77:15-24 | |
| 19. CHP Officers Blackwood and Rubalcava located the vehicle and attempted a traffic stop on February 17, 2021.<br><br>Clarke Decl. ¶ 13, Ex. X - Blackwood Depo. 51:1-10; Clarke Decl. ¶ 12, Ex. W - Officer Rubalcava Depo. 23:21-24:6, 77:13-17; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 14:6-9. | **Disputed** to the extent that this suggests CHP was in active pursuit of the vehicle after receiving the report.<br><br>After responding to the scene of the alleged freeway shooting, CHP put out a BOLO for a white SUV.<br><br>Ex. 1 to Le Decl., Kee Dep. 75:22-76:2, 76:14-19. |
| 20. Decedent briefly yielded to the right curb with Rubalcava and Blackwood behind him.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 77:13-17; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 51:1-10 | Undisputed. |
| 21. When they attempted to contact Puga, Puga sped away and continued the pursuit.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 68:17-69:9 | Undisputed. |
| 22. The driver of the White SUV was later identified as Hector Puga.<br><br>Clarke ¶ 2, Ex. M – Third Amended Complaint (Dkt. 68) ¶ 25 | Undisputed. |
| 23. Hector Puga led CHP Officers Rubalcava and Blackwood on a pursuit.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 23:21-24:6; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 51:1-10; see | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 9, Ex. K – Blackwood MVARs Fragment 01. | |
| 24. Sergeant Kee later joined the pursuit of the white SUV.<br><br>Clarke Decl. ¶ 11, Ex. V - Kee Depo.17:14-24; 75:3-21. | Undisputed. |
| 25. At some point San Bernardino County Sheriff's deputies Sergeant Vaccari and Deputy Adams joined the pursuit of Mr. Puga.<br><br>Clarke Decl. ¶ 9, Ex. T - Adams Depo. 9:12-10:13; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 18:15-19:3. | Undisputed. |
| 26. CHP notified the Sheriff's Department through dispatch that there had been a shooting from the white SUV on the freeway.<br><br>Clarke ¶ 9, Ex. T – Adams Depo. 68:17-69:9; Clarke ¶ 10, Ex. U – Vaccari Depo. 18:23-19:3; Adams Decl. ¶ 5. | |
| 27. It was relayed to Adams and Vaccari in their patrol vehicles that there had been a shooting from the white SUV on the freeway.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams 68:17-69:9; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 18:23-19:3; Adams Decl. ¶ 5. | |
| 28. Vaccari and Adams were given information that Puga had a gun in the car. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 32:25-33:5; Clarke Decl. ¶ 9, Ex. T – Adams Decl. ¶ 5. | |
| 29. Due to the information that Puga had a gun in the car, Adams and Vaccari believed Puga did in fact have a firearm in the vehicle.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari 32:25-33:9; Adams Decl. ¶ 5. | **Objection**. Argumentative. Speculation.<br><br>Undisputed. |
| 30. During the pursuit, no one entered or exited the vehicle.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 68:17-69:9 | **Objection**. Vague as to "the vehicle."<br><br>Undisputed that no one entered or exited the white Ford Expedition during the pursuit. |
| 31. Because no one entered or exited the vehicle, Adams and Vaccari believed that the person involved in the shooting was still within the white SUV.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 68:17-69:9 | **Objection**. The cited evidence does not support the alleged fact to the extent that this suggests Adams and Vaccari had information that the person in the vehicle was involved in the earlier shooting during the pursuit. Assumes facts not in evidence that the officers knew or has information that the person in the white SUV was involved in the shooting.<br><br>**Objection**. Speculation.<br><br>**Disputed** that Adams and Vaccari had information during the pursuit that the person in the vehicle was involved in the earlier shooting.<br><br>Adams testified that CHP informed him that the vehicle had been involved in an earlier shooting and that he based his belief that the person in the vehicle was involved in the earlier shooting |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | because later, the person allegedly produced a gun and shot at the officers.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 68:17-69:9 |
| 32. The pursuit terminated at the intersection of Peach Avenue and Catalpa Street in Hesperia, CA.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 10:14-18; Clarke Decl. ¶ 10, Ex. U – Vaccari 20:17-21 | Undisputed. |
| 33. The pursuit terminated because Puga's vehicle became disabled.<br><br>Clarke ¶ 18, Ex. L – Kee MVARS p1 38-38:45 | **Objection.** Speculation.<br><br>**Objection.** Assumes facts not in evidence.<br><br>Undisputed to the extent that the vehicle came shortly after spike strips were successfully deployed against the vehicle. |
| 34. The pursuit ended just south of Catalpa Street.<br><br>Clarke Decl. ¶ 11, Ex. V - Kee Depo. 16:22-24. | Undisputed. |
| 35. The pursuit lasted approximately an hour.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 24:4-6 | Undisputed. |
| 36. The passenger of the vehicle complied with commands and was safely taken into custody.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 13:4-9 | **Objection**. Vague as to "complied with commands."<br><br>Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

Case 5:22-cv-00949-KK-SHK   Document 111-1   Filed 02/27/25   Page 57 of 183   Page ID #:1988

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 37. Adams had a conversation with the passenger once she was out of the car.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 13:10-12 | <u>Undisputed</u>. |
| 38. The passenger did not know whether Puga had a gun or not.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 13:13-25 | <u>Undisputed</u>. |
| 39. Hector Puga refused to exit the vehicle for over an hour.<br><br>Clarke Decl. ¶ 12, Ex. W - Rubalcava Depo 27:14-19;<br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 24:5-11. | <u>Undisputed</u>. |
| 40. Numerous repeated commands were given for Hector Puga to exit the vehicle.<br><br>Clarke Decl. ¶ 11, Ex. V - Kee 19:10-13; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 23:15-24:14 | **<u>Objection</u>**. Vague as to time.<br><br><u>Undisputed</u> to the extent that commands were given to Puga to exit the vehicle in between the time the pursuit terminated and when Puga exited the vehicle. |
| 41. Puga behaved erratically and was agitated, asking to call his sister and his mom.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 54:25-55:7 | **<u>Objection</u>**. Vague and ambiguous as to "erratically" and "agitated."<br><br>**<u>Objection</u>**. Argumentative. |
| 42. Puga wanted to have a cigarette.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 30:4-9 | **<u>Objection</u>**. Vague as to time. Vague as to "have a cigarette."<br><br><u>Undisputed</u> that at some point while Puga was stopped and inside the Expedition, he told the officers that he wanted to smoke a cigarette. |

-56-

5:23-cv-00257-KK-SHK

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 43. Puga was yelling and cursing.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 30:4-9 | **Objection**. Vague as to time.<br><br>**Disputed** to the extent that this alleges that Puga was yelling in anger or in aggression and that he was "yelling and cursing" the entire time he was stopped inside his vehicle.<br><br>There was a helicopter flying overhead for the majority of the officers' interactions with Puga while the Expedition was stopped near Peach and Catalpa. A reasonable inference is that Puga was yelling in order to communicate over the noise of the helicopter.<br><br>*See*  Ex. 1 to Le Decl., Kee Dep. 28:7-15; Ex. 3 to Le Decl., Blackwood Dep. 59:23-61:1. |
| 44. Puga was throwing miscellaneous items out of his vehicle window.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 54:25-55:7 | **Objection**. Vague as to time.<br><br>**Disputed** to the extent that this alleges Puga was throwing miscellaneous items out of his vehicle window the entire time he was inside the vehicle. |
| 45. Puga was seen twisting and turning his body while he was in his vehicle.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:17-17:13 | **Objection**. Vague as to time. |
| 46. Puga was reaching around in the vehicle<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:17-17:13 | **Objection**. Vague as to time and vague and ambiguous as to "reaching around." |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 47. Puga was leaning over in his car.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:17-17:13 | **Objection**. Vague as to time and vague and ambiguous as to "leaning over." |
| 48. After approximately 50 minutes of Puga refusing to exit the vehicle, Puga's rear windshield was broken.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 27:25-28:2, 28:16-24; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 43:2-10; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 20:22-25; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 28:22-24; Adams Decl. ¶ 8, Ex. L – Kee MVARs Pt. 1 at 38:48-1:4 and Kee MVARs Pt. 2 1:4-1:28 | **Objection**. The cited evidence does not support the alleged fact that the windshield was broken after 50 minutes of Puga refusing to exit the vehicle. Vague and ambiguous as to time.<br><br>**Disputed** to the extent that this alleges that Puga's rear windshield was broken approximately 50 minutes after the pursuit had ended and Puga was sitting in the stopped car for 50 minutes, refusing to exit the car, before Expedition's rear windshield was broken.<br><br>Approximately 23 minutes elapsed between the time the Expedition came to a stop near Catalpa and Peach and when the Expedition's rear windshield was broken.<br><br>*See* Ex. F to Esquivel Decl., Blackwood MVARS Part 3 at 9:09-34:38. |
| 49. Puga's window was broken to deploy less lethal through it.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 27:25-28:2, 28:16-24, Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 42:20-43:1; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 20:22-25; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 28:22-24 | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 50. Because Puga would not exit the vehicle despite commands, Vaccari deployed pepper balls into the vehicle.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 27:25-28:4; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 42:20-43:1; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 22:1-6; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 14:22-16:2; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 27:1-9, 30:10-12 | Undisputed. |
| 51. The pepper balls were used to make the vehicle's environment uncomfortable and force Puga to exit the vehicle<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 29:14-17; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 19:10-13; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 20:18-21; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 14:22-16:2, 18:10-19:4; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 27:16-23 | Undisputed. |
| 52. The effects of pepper balls on a person include runny nose.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 27:19-28:4 | Undisputed. |
| 53. The effects of pepper balls on a person include coughing.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 18:10-18 | Undisputed. |
| 54. The effects of pepper balls on a person include impaired eyesight. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 27:19-28:4 | |
| 55. The effects of pepper balls on a person include an urge to get away from the pepper balls.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 27:19-28:4 | <u>Undisputed</u>. |
| 56. Vaccari was positioned to the rear of Puga's vehicle along the passenger side of one of the CHP units.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 30:13-16 | **Objection**. Vague as to time.<br><br><u>Undisputed</u> to the extent that Vaccari was positioned to the rear of Puga's vehicle along the passenger side of one of the CHP units when he deployed the pepper balls into the Expedition. |
| 57. Vaccari was in a position of cover behind an open door, when he deployed the pepper balls.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 30:17-21 | <u>Undisputed</u>. |
| 58. Kee was talking with Puga to attempt to get him out of the vehicle, however.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 30:25-31:18 | <u>Undisputed</u>. |
| 59. When Puga did not respond to Kee's attempt to get him out of the vehicle, Vaccari deployed pepper balls to attempt to get Puga to evacuate the vehicle.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 30:25-31:18 | **Objection**. Vague as to time. Vague and ambiguous as phrased.<br><br><u>Undisputed</u> to the extent that the officers would ask Puga to get out of the vehicle and when they did not get a response, Vaccari would introduce pepper balls into the car and that this would have every few minutes. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 60. During this period of over an hour, Puga would say he would come out of the vehicle but then would not exit.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 31:22-32:7 | Undisputed. |
| 61. Several times Puga opened the door and the officers would wait for Puga to come out.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 31:22-32:7; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:17-17:13 | Undisputed. |
| 62. Instead of Puga coming out though, he would stay in his vehicle and close the door.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 31:22-32:7; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:17-17:13 | Undisputed. |
| 63. As a result, more pepper balls were deployed.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 31:22-32:7; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:17-17:13 | Undisputed. |
| 64. Vaccari estimated he deployed between 120-150 pepper balls.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 31:19-21 | Undisputed. |
| 65. Kee estimated Vaccari deployed probably 100, at least 90 pepper balls.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 22:7-13 | Undisputed. |
| 66. Blackwood estimated Vaccari deployed 100-150 pepper balls. | Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 58:19-59:7 | |
| 67. Adams estimated Vaccari deployed approximately 75-100 pepper balls.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 15:21-16:2 | Undisputed. |
| 68. The pepper balls were deployed in the span of 26 minutes.<br><br>Clarke Decl. ¶ 18, Ex. L – Kee MVARS Pt. 2 2:05-28:48 | Undisputed. |
| 69. Sergeant Vaccari would deploy approximately a round of pepper balls.<br><br>Clarke Decl. ¶ 18, Ex. L – Kee MVARS Pt. 2 Part 2 2:05-28:48 | **Objection**. Vague and ambiguous as phrased. Vague as to time. Vague as to "approximately a round of pepper balls." |
| 70. Then Vaccari would give Puga time to comply before deploying more rounds.<br><br>Clarke Decl. ¶ 18, Ex. L – Kee MVARS Pt. 2; Kee MVARS Part 2 2:05-28:48 | **Objection**. Vague and ambiguous as phrased. Vague as to time.<br><br>Undisputed to the extent that over the course of approximately 30 minutes, Vaccari would deploy a round of pepper balls, give Puga time to comply, then deploy another round of pepper balls. |
| 71. During this entire time, Vaccari gave commands to Puga to exit the car or more rounds would be fired.<br><br>Clarke Decl. ¶ 18, Ex. L – Kee MVARS Pt. 2 2:05-28:48 | Undisputed. |
| 72. While the pepper balls were being deployed, Adams was behind Puga's vehicle, next to a CHP vehicle that was facing northbound behind Puga's vehicle | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:8-13 | |
| 73. Adams was behind an open passenger side door of the CHP vehicle for cover.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 16:14-16 | **Objection**. Vague as to which CHP vehicle, which open door, and time.<br><br>Undisputed that Adams was behind the open passenger door of one of the CHP vehicles at the time of the pepper ball deployments. |
| 74. Puga made a statement indicating he was hurt by one of the pepper balls, or it was causing him pain.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 15:3-6; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 32:14-18; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 23:2-10 | Undisputed. |
| 75. Puga's statement he was hurt by a pepper ball caused Vaccari to stop deploying pepper balls.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 32:19-24 | **Objection**. The cited evidence does not support the allegation that Puga's statement that he was hurt by a pepper by *caused* Vaccari to stop deploying pepper balls.<br><br>Undisputed to the extent that after Puga said that he had been shot in the eye, Vaccari did not deploy any additional pepper balls.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 32:19-24 |
| 76. Puga eventually exited the vehicle.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 36:15-17; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 33:10-12 | Undisputed. |
| 77. Puga exited the vehicle through his vehicle's driver's side door. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 37:16-18 | |
| 78. Puga did not have a shirt on.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 10:24-11:1; Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 51:20-21; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 16:3-4 | Undisputed. |
| 79. Puga had baggy jeans.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 11:4-11 | **Objection**. Vague and ambiguous as phrased as to whether Puga was wearing baggy jeans or was simply in possession of baggy jeans.<br><br>Undisputed to the extent that Puga had on baggy jeans. |
| 80. Puga was next to his driver's side door for approximately two minutes before moving to the front of his vehicle.<br><br>Clarke Decl. ¶ 18, Ex. L – Kee MVARs Pt. 2 at 40:41-42:08; Adams Decl. ¶ 9, Ex. L – Kee MVARs Pt. 2 at 40:41-42:08 | **Objection**. Vague as to "next to driver's side."<br><br>Undisputed to the extent that after Puga fully exited the vehicle, he stood next to the driver's side of the door for approximately two minutes before moving to the front of the vehicle. |
| 81. Throughout this time period while Puga was at the driver's side, Puga put his hands up several times but then would put his hands down.<br><br>Clarke ¶ 13, Ex. X – Blackwood 15:10-12; Clarke ¶ 10, Ex. U – Vaccari Depo. 34:7-9; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 21:2-16 | **Objection**. Vague and ambiguous as to "put his hands down."<br><br>**Disputed** to the extent that this alleges Puga's hands were mostly down and that he would occasionally put his hands up.<br><br>While Puga wad exiting the vehicle and while Puga stood next to the driver's side of the vehicle, Puga attempted to comply with commands to |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | raise his hands, but would occasionally bring his hands to his face in what appears to be an attempt to wipe the pepper balls' effects from his face and would also occasionally grip the driver's door of the vehicle with his hand(s). <br><br> *See* Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 32:23-37:50. |
| 82. While Puga was at the driver's side, Puga was given commands to keep his hands up. <br><br> Clarke Decl. ¶ 17, Ex. K – Blackwood MVARS Fragment 04 at 36:56 | **Objection**. Vague as to time. <br><br> **Disputed** to the extent that this alleges Puga was continually given commands to keep his hands up while he was exiting the vehicle and while he stood at the driver's side of the vehicle. <br><br> Over the course of approximately six minutes, Kee only gave Puga commands to keep his hands up twice while Puga was exiting the vehicle and while he stood at the driver's side of the vehicle. <br><br> Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 33:55, 36:56; *see* Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 32:22-37:50. |
| 83. When Puga was at the driver's side, Puga was given commands to walk back towards the officers. <br><br> Clarke Decl. ¶ 17, Ex. K – Blackwood MVARS at 36:54, 37:31; Clarke Decl. ¶ 18, Ex. L – Kee MVARS Pt 2 41:14-41:52 | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 84. Puga would not keep his hands up for an extended period of time.<br><br>Clarke Decl. ¶ 13, Ex. X –Blackwood Depo. 15:10-12; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 34:7-9; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 21:2-16 | **Objection**. Vague and ambiguous as to "extended period of time."<br><br>**Disputed** to the extent that this alleges Puga's hands were mostly down and that he would occasionally put his hands up and that he was not complying with repeated commands to keep his hands up.<br><br>While Puga was exiting the vehicle and while Puga stood next to the driver's side of the vehicle, Puga raised his hands, but would occasionally bring his hands to his face in what appears to be an attempt to wipe the pepper balls' effects from his face and would also occasionally grip the driver's door of the vehicle with his hand(s). Over the course of approximately six minutes, Kee only gave Puga commands to keep his hands up twice while Puga was exiting the vehicle and while he stood at the driver's side of the vehicle.<br><br>*See* Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 32:22-37:50. |
| 85. Rubalcava was behind his driver's side door under cover when Puga exited the vehicle.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 37:21-22 | Undisputed. |
| 86. Adams was close to a CHP vehicle with cover when Puga exited the vehicle. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 9, Ex. T – Adams Depo. 20:6-14 | |
| 87. Vaccari was behind the trunk of the CHP vehicle behind Puga's car.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 33:16-34:1 | **Objection**. Vague as to time. Vague is to which CHP vehicle.<br><br>Undisputed to the extent that Vaccari was behind the trunk of the CHP vehicle, behind Puga's car, |
| 88. Puga was given multiple commands while he was next to his driver's side that he ignored.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 21:10-12, 32:18-25 | **Objection**. Vague and ambiguous as phrased.<br><br>**Disputed** to the extent this alleges Puga ignored all commands given to him while he was next to the driver's side door.<br><br>Kee gave him the command to "keep your hands up" and to "close the door" to which Puga complied.<br><br>Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 36:56, 37:11-14. |
| 89. The multiple commands included getting on the ground and keeping his hands raised.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 21:10-12, 32:18-25 | **Objection**. Vague and ambiguous as to time.<br><br>**Disputed** that Puga was given commands to get on the ground while he was exiting the vehicle and when he was standing next to the driver's side of the vehicle.<br><br>Kee did not give Puga commands to get on the ground while Puga was exiting the vehicle or while Puga was standing next to the driver's side of the vehicle. Kee gave Puga commands to |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | come out, to walk back, to walk backwards, and to keep his hands up. *See* Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 32:22-37:50. |
| 90. Rubalcava did not see Puga had a firearm while he was on the driver's side of his vehicle.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 38:5-16, 77:8-10 | <u>**Objection**</u>. Vague as to "had a firearm."<br><br><u>Undisputed</u> to the extent that Rubalcava did not see a gun in Puga's hand or on his person while Puga was at the driver's side of the Expedition. |
| 91. Kee did not see Puga had a firearm while he was on the driver's side of his vehicle.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 24:4-17 | <u>**Objection**</u>. Vague as to "had a firearm."<br><br><u>Undisputed</u> to the extent that Kee did not see a gun in Puga's hand or on his person while Puga was at the driver's side of the Expedition. |
| 92. Blackwood did not see Puga had a firearm while he was on the driver's side of his vehicle.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 33:25-34:6 | <u>**Objection**</u>. Vague as to "had a firearm."<br><br><u>Undisputed</u> to the extent that Blackwood did not see a gun in Puga's hand or on his person while Puga was at the driver's side of the Expedition. |
| 93. Adams did not see Puga had a firearm while he was on the driver's side of his vehicle.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo 21:22-24 | <u>**Objection**</u>. Vague as to "had a firearm."<br><br><u>Undisputed</u> to the extent that Blackwood did not see a gun in Puga's hand or on his person while Puga was at the driver's side of the Expedition. |
| 94. Vaccari did not know whether Puga had a firearm on him when he exited the driver's side. | <u>Undisputed</u> to the extent that Vaccari was treating Puga as if he had a firearm until he had information otherwise. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 33:13-34:6 | |
| 95. After a few minutes of being on the driver's side of his vehicle, Puga ran to the front of his vehicle in front of his vehicle's hood.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 39:18-23; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 22:13-15; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo.15:13-15; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 35:8-10 | **Objection**. The cited evidence does not support the allegation that Puga *ran* to the front of his vehicle.<br><br>**Disputed** that Puga ran to the front of the Expedition. Puga walked to the front of the white Expedition.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 42:21-25; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 37:48-37:50. |
| 96. Puga faced south towards his own vehicle.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 43:21-24: Clarke Decl. ¶ 9, Ex. T – Adams Depo. 40:16-22; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 13:7-10 | **Objection**. Vague as to time.<br><br>Undisputed. |
| 97. Puga was near the middle of the hood but slightly closer to the driver's side.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 43:21-24: Clarke Decl. ¶ 9, Ex. T – Adams Depo. 40:16-22; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 13:7-10 | **Objection**. Vague as to time.<br><br>**Disputed**. Puga appears to be positioned in the middle of the hood while he was at the front of the Expedition.<br><br>Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 00:00-00:52. |
| 98. The front of Puga's vehicle was blocking the view of Puga's midsection down to his feet.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 41:2-9; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 63:23-64:3 | **Objection**. Vague as to time. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 99. Kee gave Puga commands to keep his hands where they could see them.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 59:23-60:3 | |
| 100. The officers were unable to get Puga to comply and surrender.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 53:12-17 | **Objection**. Vague as phrased. |
| 101. The officers and deputies were unable to see Puga's waistband where Puga was positioned.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 53:12-17 | **Objection**. Vague as to time. |
| 102. Puga had been at the front of his vehicle for several minutes before law enforcement approached.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 42:18-21; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 46:2-6 | **Objection**. Vague as to "several minutes."<br><br>Undisputed to the extent that Puga was at the front of the vehicle for less than five minutes before law enforcement started to approach.<br><br>Ex. 12 to Le Decl., Kee MVARS Part 2 at 42:09-46:43. |
| 103. A helicopter was initially present and using its spotlights throughout the pursuit<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 37:6-7; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 12:3-13 | **Objection**. Vague as to "initially present."<br><br>Undisputed that a helicopter was present during the pursuit. |
| 104. By the time the officers approached and the shooting began, the helicopter was not present. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 11, Ex. V – Kee Depo. 46:20-23; Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 87:19-23 | |
| 105. It was dark where Puga was standing.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 11:20-21; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 46:20-23 | **Objection**. Vague as to "dark."<br><br>**Objection**. The cited evidence does not support the alleged fact that it was dark where Puga was standing.<br><br>**Disputed**.<br><br>There was a streetlight on the corner of Peach and Catalpa as well as the patrol vehicle's spotlights and red and blue lights illuminating the area.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 37:8-15; Ex. 7 to Le Decl., Mangerino Dep. 40:17-41:6; Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 00:00-00:52.<br><br>There was enough light for Rubalcava to see Puga while Puga was running away.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 92:10-12. |
| 106. Kee and Rubalcava were to the left of the patrol vehicle to the southwest dirt area.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 18:11-21 | **Objection**. Vague as to which patrol vehicle. Vague as to time.<br><br>Undisputed to the extent that Kee and Rubalcava were to the left of Rubalcava and Blackwood's patrol vehicle, in the southwest dirt area when Puga was at the front of the vehicle. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 107. Kee and Rubalcava were approaching to the left-front corner of Puga's vehicle on the west side.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 41:5-7; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 37:5-11 | **Disputed** that Kee and Rubalcava ever reached near the left-front corner of Puga's vehicle on the west side.<br><br>There was an electrical pole on the southwest corner of the intersection that was almost parallel to the front of the Expedition.<br><br>Ex. 1 to Le Decl., Kee Dep. 26:22-27:9; Ex. 15 to Le Decl., Photograph of Scene.<br><br>In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame.<br><br>Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:29-00:53.<br><br>Erin Mangerino was unable to see any officers standing on her side of Peach Street.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 53:11-22. |
| 108. While they were approaching, Kee told Puga to put his hands up to where they can see them.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 42:2-6 | Undisputed. |

| | Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 1 2 | | |
| 3 4 5 6 | 109. Commands were consistently given for Puga to keep his hands up.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 32:5-10 | **Objection**. Vague as to time.<br><br>Undisputed to the extent that commands were given for Puga to keep his hands up which he was at the front of the vehicle. |
| 7 8 9 10 11 12 13 14 15 | 110. Adams and Vaccari approached by crossing between Puga's and CHP's vehicles.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 29:7-14 | **Objection**. Vague as to "crossing between Puga's and CHP's vehicles."<br><br>Undisputed to the extent that Adams and Vaccari approached the front of the Expedition by moving east and crossing in front of the CHP vehicles and behind the Expedition before moving north towards the front of the Expedition.<br><br>Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:49. |
| 16 17 18 19 20 21 22 23 24 25 26 27 28 | 111. Adams and Vaccari moved eastward to gain a better view of Puga.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 29:7-14 | **Disputed**.<br><br>Vaccari wanted to move up the passenger side of the vehicle to cut off an avenue of escape for Puga.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 39:6-20.<br><br>Prior to approaching, Vaccari and Adams had discussed the possibility of using the Taser on Puga because Puga was a good candidate for the Taser due to him being shirtless, but Vaccari ultimately decided to utilize the 40-mm less-lethal instead.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 40:3-16. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 112. Adams and Vaccari approached on the passenger side of Puga's vehicle.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 26:17-20; Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 18:11-21; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 46:2-6 | Undisputed. |
| 113. Adams was in front of Vaccari.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 27:8-14 | **Objection**. Vague as to time.<br><br>**Disputed** that Adams was in front of Vaccari during their entire approach. When Adams and Vaccari started moving east for their approach, Adams was in front of Vaccari. However, by the time Adams and Vaccari got to the side of the road and started moving north, they were side by side with each other.<br><br>Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:48. |
| 114. Adams had his Glock 17, 9mm drawn.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 31:24-32:4 | Undisputed. |
| 115. The CHP officers were approaching Puga at a similar pace, just on the other side of Puga's vehicle.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 27:15-21 | **Disputed**.<br><br>The CHP Officers were already in the dirt shoulder prior Adams and Vaccari's approach.<br><br>*See* Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 00:06-00:38. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | The CHP Officers moved back prior to Adams and Vaccari's approach.<br><br>*See* Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 00:38-00:52. |
| 116. There was no discussion between CHP and the Sheriff's Department about how to approach Puga when he was in front of his vehicle.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 28:3-19; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 36:16-25 | <u>Undisputed</u>. |
| 117. CHP discussed amongst themselves that Rubalcava and Kee would approach Puga and handcuff him.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 30:13-18 | **<u>Disputed</u>** to the extent that this suggest Rubalcava and Kee also discussed their intent to approach Puga with Blackwood.<br><br>There was no discussion between Blackwood and the other CHP officers about what they were going to do after Puga got out of the car.<br><br>Ex. 3 to Le Decl., Blackwood Dep. 31:19-23. |
| 118. Adams and Vaccari formulated a plan to move to the east side of Puga's vehicle when they could no longer see Puga's hands when he was at the front of his vehicle.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 25:12-22; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 39:6-20 | <u>Undisputed</u>. |
| 119. The extent of Adams' and Vaccari's plan was to merely gain a better view of Puga. | **<u>Disputed</u>**. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 9, Ex. T – Adams Depo. 25:12-22; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 39:6-20 | Vaccari wanted to move up the passenger side of the vehicle to cut off an avenue of escape for Puga.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 39:6-20.<br><br>Prior to approaching, Vaccari and Adams had discussed the possibility of using the Taser on Puga because Puga was a good candidate for the Taser due to him being shirtless, but Vaccari ultimately decided to utilize the 40-mm less-lethal instead.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 40:3-16. |
| 120. Adams and Vaccari used Puga's vehicle passenger side as cover.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 40:21-25 | **Disputed**.<br><br>As Vaccari approached from the dirt shoulder, he did not have any cover.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 41:14-24. |
| 121. Adams and Vaccari determined that upon approach, Vaccari would arm himself with the less lethal launcher.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 40:1-16; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 25:23-26:4 | **Disputed** to the extent that Adams and Vaccari decided that Vaccari would arm himself with a less-lethal launcher only at the time of the approach.<br><br>Prior to approaching, Vaccari and Adams had discussed the possibility of using the Taser on Puga because Puga was a good candidate for the Taser due to him being shirtless, but Vaccari ultimately decided to utilize the 40-mm less-lethal instead. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 5 to Le Decl., Vaccari Dep. 40:3-16. |
| 122. Vaccari was armed with the less lethal launcher to have a less lethal option available.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari 40:1-16; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 25:23-26:4 | Undisputed. |
| 123. Adams and Vaccari determined that upon approach, Adams would be armed with his firearm.<br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 31:18-32:2 | **Objection**. The cited evidence does not support the alleged fact that Adams and Vaccari determined that upon approach, Adams would be armed with his firearm.<br><br>Undisputed to the extent that when Adams was approaching, he had his firearm in his hands. |
| 124. Adams was armed with the firearm in the event deadly force was needed.<br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 31:24-32:4 | **Objection**. The cited evidence does not support the alleged fact that Adams was armed with the firearm in the event deadly force was needed.<br><br>The cited evidence simply states that Adams had a firearm in his hand when he was approaching the passenger side of the vehicle. |
| 125. As Adams and Vaccari approached on the passenger side, Puga's hands were overhead.<br><br>Jason Decl. ¶¶ 14-15, Ex. D and E; Adams Decl. ¶ 6, Ex. J – Mangerino Video | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 126. Vaccari remained with his 40mm less-lethal shotgun targeting Puga.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 50:25-51:10 | **Objection**. Vague and ambiguous as to "remained with his 40mm less-lethal targeting Puga." Vague as to time.<br><br>Undisputed to the extent that Vaccari at the time of the shooting and as Puga ran away, Vaccari initially kept his 40mm less-lethal shotgun. |
| 127. As Adams and Vaccari approached, Adams saw Puga's arms lower from overhead to his waistband.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 44:6-8; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 64:4-7; Clarke Decl. ¶ 9, Ex. T – Adams 36:2-11; Jason Decl. ¶ 14 – Ex. D, ¶ 16 – Ex. F, ¶ 19 – Ex. I | **Disputed**.<br><br>Only Puga's right hand dropped before the shooting started and then his left hand dropped as he |
| 128. As the officers were approaching, Puga lowered his hands.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 44:6-8; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 64:4-7; Jason Decl. ¶ 14 – Ex. D, ¶ 16 – Ex. F, ¶ 19 – Ex. I | **Disputed** to the extent that this suggests both hands lowered at the same time, or that Puga lowered his hands towards his waistband.<br><br>Puga occasionally would drop his hands to pull up his pants while he was standing near the front of the vehicle.<br><br>Ex. 4 to Le Decl., Adams Dep. 61:3-62:3; Ex. 8 to Le Decl., Gonzalez Dep. 42:18-25.<br><br>The bystander cell phone video taken by Erin Mangerino shows Puga with his hands up and briefly dropping his right hand to his waistband to adjust his pants before raising his hand up again, twice, before the shooting. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:03-00:07; 0:00:20-00:27.<br><br>When Kee saw Puga's right hand lower, Puga's left hand was still up.<br><br>Ex. 1 to Le Decl., Kee Dep. 59:9-11. |
| 129. Adams and Vaccari were on the passenger side of Puga's vehicle on the dirt shoulder when they first heard shots.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 41:1-13 | Undisputed. |
| 130. Adams saw Puga's hands dive into his waistband area and withdraw a gun.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 36:2-11; Jason Decl. ¶ 16 – Ex. F, ¶ 17 – Ex. G, ¶ 19 – Ex. I | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | When Adams approached the vehicle, Puga was standing in the front close to the driver's side headlight and Adams could only see Puga from chest up. |
| | Ex. 4 to Le Decl., Adams Dep. 40:16-22, 41:2-12, 45:11-16. |
| | As Adams was approaching from the passenger's side of the expedition, he heard shots. |
| | Ex. 4 to Le Decl., Adams Dep. 35:12-14. |
| | Adams and Vaccari had only reached the part where the painted curb meets the unpainted curb when the shots started, which is near the rear door of the Expedition. |
| | Ex. 4 to Le Decl., Adams Dep. 76:1-19; Ex. 12 to Le Decl., Kee MVARS |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Part 2 at 46:46-46:49; Ex. 16 to Le Decl., Photograph of Expedition at Curb. |
| | The passenger door of the Expedition was still open when Adams and Vaccari approached from the passenger side. |
| | Ex. 4 to Le Decl., Adams Dep. 73:2-6; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:49. |
| | After hearing the gunshots, Adams ducked and then stepped over a high curb before firing. |
| | Ex. 4 to Le Decl., Adams Dep. 38:1-4. |
| 131. Adams heard shots from what he believed was the firearm Puga had drawn.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 46:23-47:4; 49:2-10 | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand. |

5:23-cv-00257-KK-SHK

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | When Adams approached the vehicle, Puga was standing in the front close to the driver's side headlight and Adams could only see Puga from chest up. |
| | Ex. 4 to Le Decl., Adams Dep. 40:16-22, 41:2-12, 45:11-16. |
| | As Adams was approaching from the passenger's side of the expedition, he heard shots. |
| | Ex. 4 to Le Decl., Adams Dep. 35:12-14. |
| | Adams and Vaccari had only reached the part where the painted curb meets the unpainted curb when the shots started, which is near the rear door of the Expedition. |
| | Ex. 4 to Le Decl., Adams Dep. 76:1-19; Ex. 12 to Le Decl., Kee MVARS |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Part 2 at 46:46-46:49; Ex. 16 to Le Decl., Photograph of Expedition at Curb.

The passenger door of the Expedition was still open when Adams and Vaccari approached from the passenger side.

Ex. 4 to Le Decl., Adams Dep. 73:2-6; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:49.

After hearing the gunshots, Adams ducked and then stepped over a high curb before firing.

Ex. 4 to Le Decl., Adams Dep. 38:1-4. |
| 132. Adams believed the shots he heard were from Puga firing at him from the gun that he had drawn.

Clarke Decl. ¶ 9, Ex. T – Adams Depo. 46:23-47:4; 47:10-14; 49:2-10 | **Disputed**.

As soon as Puga turned to run, officers shot at Puga.

Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.

Puga never grabbed or aggressively reached for anything prior to the shots.

Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Puga never had a gun in his hand. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | When Adams approached the vehicle, Puga was standing in the front close to the driver's side headlight and Adams could only see Puga from chest up. |
| | Ex. 4 to Le Decl., Adams Dep. 40:16-22, 41:2-12, 45:11-16. |
| | As Adams was approaching from the passenger's side of the expedition, he heard shots. |
| | Ex. 4 to Le Decl., Adams Dep. 35:12-14. |
| | Adams and Vaccari had only reached the part where the painted curb meets the unpainted curb when the shots started, which is near the rear door of the Expedition. |
| | Ex. 4 to Le Decl., Adams Dep. 76:1-19; Ex. 12 to Le Decl., Kee MVARS |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Part 2 at 46:46-46:49; Ex. 16 to Le Decl., Photograph of Expedition at Curb.<br><br>The passenger door of the Expedition was still open when Adams and Vaccari approached from the passenger side.<br><br>Ex. 4 to Le Decl., Adams Dep. 73:2-6; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:49.<br><br>After hearing the gunshots, Adams ducked and then stepped over a high curb before firing.<br><br>Ex. 4 to Le Decl., Adams Dep. 38:1-4. |
| 133. Adams fired upon Puga.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 36:2-11 | **Objection**. Vague as to time.<br><br>Undisputed to the extent that after hearing the gunshots, Adams ducked and then stepped over a high curb before firing at Puga while Puga was running away.<br><br>Ex. 4 to Le Decl., Adams Dep. 38:1-4. |
| 134. Vaccari was slightly behind Adams.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 27:4-11 | **Objection**. Vague as to time.<br><br>**Disputed** that Vaccari was slightly behind Adams when the shooting started. Vaccari was standing side-by-side with Adams.<br><br>Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:47-46:51. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 135. Vaccari had the same view of Puga as Adams.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 27:12-14; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 41:1-8 | **Disputed**. Vaccari was standing to the right of Adams immediately prior to and when the shooting started.<br><br>Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:47-46:51. |
| 136. Vaccari observed Puga pull a firearm.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 64:4-12 | **Objection**. Vague as to time.<br><br>**Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>None of the videos capturing the incident show Puga with a gun in his hand.<br><br>Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | When Adams approached the vehicle, Puga was standing in the front close to the driver's side headlight and Adams could only see Puga from chest up. |
| | Ex. 4 to Le Decl., Adams Dep. 40:16-22, 41:2-12, 45:11-16. |
| | As Adams was approaching from the passenger's side of the expedition, he heard shots. |
| | Ex. 4 to Le Decl., Adams Dep. 35:12-14. |
| | Adams and Vaccari had only reached the part where the painted curb meets the unpainted curb when the shots started, which is near the rear door of the Expedition. |
| | Ex. 4 to Le Decl., Adams Dep. 76:1-19; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:46-46:49; Ex. 16 to Le Decl., Photograph of Expedition at Curb. |
| | The passenger door of the Expedition was still open when Adams and Vaccari approached from the passenger side. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 4 to Le Decl., Adams Dep. 73:2-6; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:49. |
| 137. Vaccari heard gunshots.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 40:21-41:5 | **Objection**. Vague as to time. |
| 138. Vaccari did not fire his firearm.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 42:17-21, 50:22-51:10 | **Objection**. Vague as to time. |
| 139. Vaccari was unsure if the less lethal made contact with Puga.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 52:1-6 | **Objection**. Assumes facts not in evidence. |
| 140. Within seconds of the first shot being fired, Puga turned to run in a northwest direction.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 21:16-20; Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 48:13-18, 51:3-6; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 42:7-9; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 50:11-14 | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| 141. Puga had a gun when he was running.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 83:10-19; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 65:25-66:4; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 38:8- | **Disputed**. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 11; Jason Decl. ¶ 17 – Ex. G, ¶ 18 – Ex. H | |
| 142. Puga did not drop his while he ran.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 83:10-19, 85:13-16; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 65:25-67:4; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 38:8-11; Jason Decl. ¶ 17 – Ex. G, ¶ 18 – Ex. H | **Objection**. Vague and ambiguous as to "drop his while he ran."<br><br>**Disputed** to the extent this alleges Puga was holding a gun while he ran. |
| 143. Puga did not make any gestures that he was surrendering.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava 85:17-19 | **Objection**. Vague as to time.<br><br>Undisputed to the extent that that Puga did not make any gestures that he was surrendering while he was running. |
| 144. While Puga was running, he turned back towards the officers with his firearm in his hand.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 38:8-11 | **Disputed** that Puga had a firearm in his hands while he was running.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon.<br>Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22.<br><br>Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away.<br><br>Ex. 3 to Le Decl., Blackwood Dep. 24:10-13, 30:23-31:11, 45:23-46:2.<br><br>During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands.<br><br>Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| 145. Puga fell down in the dirt shoulder, chest-down.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 38:11-24; Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 57:6-8; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 43:11-13, 54:1-2 | Undisputed. |
| 146. Once Puga was no longer a threat, Adams ceased firing his weapon.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 51:25-52:4 | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | Rubalcava concedes it would not have been appropriate to shoot at Puga if he merely saw a gun in Puga's waistband. |
| | Ex. 2 to Le Decl., Rubalcava Dep. 97:19-22. |
| | Based on Rubalcava's training, if Puga had not pointed a gun at Rubalcava, Rubalcava would not have shot. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 2 to Le Decl., Rubalcava Dep. 103:7-18. |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | Adams fired three volleys of shots with two distinct pauses between the volleys. |
| | Ex. 4 to Le Decl., Adams Dep. 37:15-18. |
| | Adams fired three shots during his first volley, four shots during his second volley, and three shots during his third volley. |
| | Ex. 4 to Le Decl., Adams Dep. 37:19-22, 38:5-7, 39:10-12. |
| | Adams was aiming at Puga's back and side during all three volleys. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 4 to Le Decl., Adams Dep. 39:13-20.

Puga was still running away when Adams fired his second volley.

Ex. 4 to Le Decl., Adams Dep. 38:8-9.

Adams is not sure whether he fired any shots after Puga went to the ground.

Ex. 4 to Le Decl., Adams Dep. 52:7-17.

Just prior to Puga going to the ground, he was staggering as if he had been struck by gunfire.

Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:4.

There were gunshots immediately before Puga went to the ground.

Ex. 5 to Le Decl., Vaccari Dep. 53:5-7.

Puga did not pose a threat to anyone after falling to the ground and appeared incapacitated.

Ex. 1 to Le Decl., 37:17-38:3; Ex. 4 to Le Decl., Adams Dep. 52:1-6.

Several shots were fired at Puga after he fell to the ground. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 68:17-24; Ex. 3 to Le Decl., 25:8-12; Ex. 5 to Le Decl., Vaccari Dep. 43:11-24; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:01:04-01:12; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 0:42:37-42:45. |
| | After Puga fell to the ground, several shots are fired and there is a pause before two almost simultaneous volleys of shots from two different firearms are heard. |
| | Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:02-01:10. |
| | Rubalcava, Blackwood, Kee, and Adams violated standard police practices and training when they shot at Puga while he was running away. |
| | Clark Decl. ¶ 17. |
| | Puga did not present an immediate threat of death or serious bodily injury as he was running and the officers failed to reassess and overreacted when they fired subsequent volleys when Puga was running. |
| | Clark Decl. ¶ 17. |
| | There was no immediate defense of life situation while Mr. Puga was running away. |
| | Clark Decl. ¶ 17a. |
| | There is evidence that this was likely a situation of contagious fire. |
| | Clark Decl. ¶ 17d. |
| | Officer Rubalcava, Officer Blackwood, Sergeant Kee, and Deputy Adams |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | violated standard police practices and training when they shot at Mr. Puga after he had fallen to the ground. |
| | Clark Decl. ¶ 18. |
| | Mr. Puga was not an immediate threat of death or serious bodily injury after he had fallen to the ground. |
| | Clark Decl. ¶ 18a. |
| 147. Because Puga had a gun in his hands and he was running towards a residential area where he could hold people hostage after he was involved in the shooting, he was considered a threat.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 86:23-87:8 | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never pointed his hand or a weapon in any specific direction or at any officer.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Puga never fired a weapon at any officer.

Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Neither smoke nor any muzzle flash ever came from Puga.

Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25.

None of the videos capturing the incident show Puga with a gun in his hand.

Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18.

None of the videos capturing the incident show Puga ever pointing a gun at anyone.

Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21.

None of the videos capturing the incident show Puga ever firing a gun.

Ex. 1 to Le Decl., Kee Dep. 7:19-21.

None of the videos capturing the incident show any muzzle flash coming from the area Puga was at.

Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19.

There were no bullet impacts or casings found near the area of the initial shooting that would support the |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | When Puga reached the northwest corner, he changed directions and started running north instead of towards the house on the corner. |
| | Ex. 4 to Le Decl., Adams Dep. 50:15-21; Ex. 7 to Le Decl., Mangerino Dep. 34:3-12. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Just prior to Puga going to the ground, he was staggering as if he had been struck by gunfire. |
| | Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:4. |
| | Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner. |
| | Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13. |
| | Puga's hands were next to him when he was on the ground. |
| | Ex. 7 to Le Decl., Mangerino Dep. 61:7-13. |
| | There was no gun in either of Puga's hands immediately after Puga went to the ground. |
| | Ex. 4 to Le Decl., Adams Dep. 52:18-22. |
| 148. Puga running still armed was able to turn around and fire within less than one half second.<br><br>Clarke Decl. ¶ 16, Ex. AA – Jason Rebuttal Report pgs. 2-3 | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15- |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
|  | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
|  | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
|  | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |
|  | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. |
|  | Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2. |
|  | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. |
|  | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| 149. Puga running still armed could point the handgun over his shoulder and fired backwards.<br><br>Clarke Decl. ¶ 16, Ex. AA – Jason Rebuttal Report pgs. 2-3 | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15- |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |
| | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. |
| | Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2. |
| | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. |
| | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| 150. Puga running still armed could point the handgun around his torso and fire backwards.<br><br>Clarke Decl. ¶ 16, Ex. AA – Jason Rebuttal Report pgs. 2-3 | **Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15- |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never pointed his hand or a weapon in any specific direction or at any officer.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6.<br><br>Puga never fired a weapon at any officer.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Neither smoke nor any muzzle flash ever came from Puga.<br><br>Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25.<br><br>None of the videos capturing the incident show Puga with a gun in his hand. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |
| | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. |
| | Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2. |
| | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. |
| | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| 151. Puga was still breathing when the officers approached.

Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 57:6-8; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 55:23-56:9; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 54:6-9 | Undisputed. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 152. The officers still did not see where Puga's gun went because he did not drop it while he was running.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 86:2-4; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 52:18-22; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 85:1-4 | **Disputed** to the extent that this suggests Puga had a gun in his hand prior to running and while he was running.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 3 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never pointed his hand or a weapon in any specific direction or at any officer.<br><br>Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6.<br><br>Puga never fired a weapon at any officer.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 17a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |
| | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. |
| | Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands.<br><br>Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| 153. Puga had fallen on his hands in a prone position.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 56:12-21 | **Disputed**.<br><br>Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner.<br><br>Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13.<br><br>Puga's hands were next to him when he was on the ground.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 61:7-13. |
| 154. Officers continued to give verbal commands to Puga to gain compliance.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 56:12-21 | **Objection**. Vague and ambiguous as phrased. |
| 155. Vaccari deployed the taser twice in case there was another element of force or a threat posed by Puga.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 56:22-57:15 | **Objection**. The cited evidence does not support the alleged fact.<br><br>**Disputed** that Puga posed any threat to the officers after he had gone to the ground and prior to and during the Taser deployments. Further **disputed** |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | that deploying the Taser twice was reasonable. |
| | As soon as Puga turned to run, officers shot at Puga. |
| | Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Clark Decl. ¶ 16a |
| | As Puga was running, he never turned around to look at the officers. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17. |
| | While Puga was running, his hands were moving in a running motion. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| | None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. |
| | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Rubalcava Dashcam Video at 0:42:23-42:47; Kee Dashcam Video at 46:47-47:07. |
| | When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |
| | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. |
| | Ex. 3 to Le Decl., 24:10-13, 30:23-31:11, 45:23-46:2. |
| | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. |
| | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Blackwood was firing at Puga's left side while Puga was hunched over as if he had been struck by gunshots. |
| | Ex. 3 to Le Decl., Blackwood Dep. 29:9-20. |
| | When Blackwood saw Puga stumble, he believed that some shots he fired may have struck Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 39:24-40:3. |
| | Just prior to Puga going to the ground, he was staggering as if he had been struck by gunfire. |
| | Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:4. |
| | There were gunshots immediately before Puga went to the ground. |
| | Ex. 5 to Le Decl., Vaccari Dep. 53:5-7. |
| | Puga's hands were next to him when he was on the ground. |
| | Ex. 7 to Le Decl., Mangerino Dep. 61:7-13. |
| | There was no gun in either of Puga's hands immediately after Puga went to the ground. |
| | Ex. 4 to Le Decl., Adams Dep. 52:18-22. |
| | Puga did not pose a threat to anyone after falling to the ground and appeared incapacitated. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 37:17-38:3; Ex. 4 to Le Decl., Adams Dep. 52:1-6. |
| | Several shots were fired at Puga after he fell to the ground. |
| | Ex. 1 to Le Decl., Kee Dep. 68:17-24; Ex. 3 to Le Decl., 25:8-12; Ex. 5 to Le Decl., Vaccari Dep. 43:11-24; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:01:04-01:12; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 0:42:37-42:45. |
| | The probes made contact during the first Taser deployment and there was tensing and muscle reaction and Puga appeared to lock up. |
| | Ex. 4 to Le Decl., Adams Dep. 57:20-25; Ex. 5 to Le Decl., Vaccari Dep. 55:6-9. |
| | No one went in to handcuff Puga during the first Taser cycle. |
| | Ex. 5 to Le Decl., Vaccari Dep. 62:23-25. |
| | Vaccari later concedes during his interview with detectives that it would have been a much better option to go in and handcuff Puga while he was under the power of the initial Taser deployment instead of activating the Taser a second time. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 6 to Le Decl., Vaccari Dep. 90:3-11. |
| | Officers are also trained on the concept of "cuffing under power" in which an officer can safely go in and handcuff a suspect while the suspect is under effects of the neuromuscular incapacitation of the Taser. |
| | Clark Decl. ¶ 22b. |
| | The second Taser deployment violated standard police practices and training because it was clear from the first Taser deployment that Mr. Puga was incapacitated when his muscles responded to the Taser deployment but he did not respond, no verbal warning was given prior to the second Taser deployment, and Sergeant Vaccari admits that the second deployment would have been unnecessary had he considered at the time to go in and handcuff Mr. Puga while he was under the power of the Taser during the first Taser deployment. |
| | Clark Decl. ¶ 22b. |
| 156. The taser made Puga's body lock twice, indicative the taser was having an effect on Puga.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 57:23-58:10; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 55:1-17, 56:20-22 | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 157. Puga was then handcuffed by Rubalcava.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 58:6-7, Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 26:15-18; Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 56:23-25; Clarke Decl. ¶ 9, Ex. T – Adams Depo. 58:20-23 | **Objection**. Vague as to time.<br><br>Undisputed that Rubalcava handcuffed Puga after the two Taser deployments. |
| 158. Puga was then rolled over.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 58:8-9 | **Objection**. Vague as to time.<br><br>Undisputed that Puga was rolled over onto his back after he was handcuffed. |
| 159. Puga's firearm was found under Puga.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 89:22-90:1 | **Objection**. Vague as to "under Puga."<br><br>**Disputed** that a firearm was found underneath Puga after he went to the ground.<br><br>Rubalcava claims that the gun was found in Puga's hands, underneath his stomach as he laid facing down the on the ground.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 86:10-16.<br><br>Puga fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner.<br><br>Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11- |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13. |
| | Puga's hands were next to him when he was on the ground. |
| | Ex. 7 to Le Decl., Mangerino Dep. 61:7-13. |
| | There was no gun in either of Puga's hands immediately after Puga went to the ground. |
| | Ex. 4 to Le Decl., Adams Dep. 52:18-22. |
| 160. Puga's firearm had a shiny slide on the top of it.<br><br>Clarke Decl. ¶ 11, Ex. V – Kee Depo. 89:22-90:1, Jason Decl. ¶ 18, Ex. H | **Objection**. Vague as to "shiny."<br><br>**Disputed** to the extent that this suggests that the alleged reflective object allegedly seen around the area of Puga's hand while he was running was the slide of the firearm found near Puga after the shooting.<br><br>Throughout the incident, Puga wore a polished, silver watch on his left wrist.<br><br>*See* Ex. 19 to Le Decl., Photograph of Puga's Hands after Shooting. |
| 161. The gun was tucked under his stomach.<br><br>Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 86:10-16 | **Objection**. Vague as to "tucked under his stomach."<br><br>**Disputed**. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner. |
| | Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13. Puga's hands were next to him when he was on the ground. |
| | Ex. 7 to Le Decl., Mangerino Dep. 61:7-13. |
| | There was no gun in either of Puga's hands immediately after Puga went to the ground. |
| | Ex. 4 to Le Decl., Adams Dep. 52:18-22. |
| 162. His arms were underneath him. | **Objection**. Vague as to time. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 47:9-13 | **Disputed** that Puga's arms were underneath him while Puga was prone on his stomach, on the ground, after falling.<br><br>Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner.<br><br>Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13.<br><br>Puga's hands were next to him when he was on the ground.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 61:7-13. |
| 163. The pistol that was found underneath Puga was a PMF (Personally Manufactured Firearm) or "ghost gun."<br><br>Haag ¶¶ 19-20; Clarke Decl. ¶ 11, Ex. V – Kee Depo. 89:22-90:1 | Undisputed. |
| 164. The pistol next to Puga had a partially removed magazine.<br><br>Haag Decl. ¶ 20 | **Objection**. Vague as to "partially removed."<br><br>Undisputed to the extent that the gun found near Puga had a magazine that was not fully seated. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 165. A fired 9m cartridge was found next to the pistol.<br><br>Haag ¶ 19 | **Objection**. Vague as to time.<br><br>**Disputed** that a fired 9mm cartridge was found next to the firearm near Puga immediately after the shooting when the officers went to handcuff Puga.<br><br>After Puga went down, Kee did not find any other object on or around Puga's body other than the gun allegedly found near Puga.<br><br>Ex. 1 to Le Decl., Kee Dep. 89:8-10. |
| 166. The autopsy of Puga revealed he had 10 gunshot wounds.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 21:19-20 | Undisputed. |
| 167. Puga's cause of death was identified as being the gunshot wound to the mid-left back.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 7:1-5; 9:2-11:14 | Undisputed. |
| 168. The bullet that caused the death entered through the mid-left back<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 9:2-4 | Undisputed. |
| 169. The bullet travelled through skin and soft tissue, ultimately getting lodged in soft tissue of the left upper chest.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 9:22-10:6 | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 170. The bullet then travelled through the rib cage.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 9:22-10:6 | Undisputed. |
| 171. The bullet then travelled pierced the left lung.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 9:22-10:6 | Undisputed. |
| 172. The bullet then travelled through the front part of the rib cage.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 9:22-10:6 | Undisputed. |
| 173. The bullet ultimately got lodged in soft tissue of the left upper chest.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 9:22-10:6 | Undisputed. |
| 174. This bullet travelled back to front, angled left to right, and upward.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 10:25-11:2 | Undisputed. |
| 175. This mid-back bullet was fatal.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 11:13-14 | Undisputed that the gunshot wound to the mid left back was fatal. |
| 176. The mid-back bullet was fatal because it went through the lung and created a defect wherein air could not move into the chest cavity.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 11:13-21, 21:23-24:3 | Undisputed that the gunshot wound to the mid left back was fatal because it went through the lung and created a defect wherein air could not move into the chest cavity. |
| 177. Additionally, when the bullet hit the lung, blood went into the chest | |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| cavity which compressed the lung and created difficulty for the body to oxygenate blood.<br><br>Clarke Decl. ¶ 14, Ex. Y – Jong Depo. 11:13-21, 21:23-24:3 | Undisputed that the gunshot wound to the mid left back hut the lung, causing blood to go into the chest cavity, which compressed the lung and created difficulty for the body to oxygenate blood. |
| 178. The bullet identified by the coroner as being the fatal shot was removed from the chest cavity.<br><br>Haag ¶ 14 | Undisputed. |
| 179. The removed bullet from the fatal shot was a fully expanded 5.56 mm (.223 caliber) rifle bullet.<br><br>Haag ¶ 14 | Undisputed. |
| 180. Only Sergeant Kee and Officer Blackwood were armed with firearms that deployed .223 caliber rifle bullets.<br><br>Haag ¶ 11 | Undisputed. |
| 181. Because only Kee and Blackwood had .223 caliber rifle bullets, the fatal wound that caused Puga's death was fired by either Kee or Blackwood.<br><br>Haag ¶ 14 | Undisputed. |
| 182. Deputy Adams is therefore excluded as having caused the fatal injury.<br><br>Haag ¶ 15 | **Disputed**.<br><br>Puga sustained a gunshot wound to the lower left back with a trajectory of back-to-front, left-to-right, and upward.<br><br>Ex. 18 to Le Decl., Jong Dep. 13:17-20, 14:14-16. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | The gunshot wound to the lower left back could have also been fatal after a longer period of time. |
| | Ex. 18 to Le Decl., Jong Dep. 30:7-31:2. |
| | Just prior to Puga going to the ground, he was staggering as if he had been struck by gunfire. |
| | Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:4. |
| | There were gunshots immediately before Puga went to the ground. |
| | Ex. 5 to Le Decl., Vaccari Dep. 53:5-7. |
| | Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner. |
| | Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13. |
| | Several shots were fired at Puga after he fell to the ground. |
| | Ex. 1 to Le Decl., Kee Dep. 68:17-24; Ex. 3 to Le Decl., 25:8-12; Ex. 5 to Le Decl., Vaccari Dep. 43:11-24; Ex. 10 to Le Decl., Mangerino Cellphone |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Video at 0:01:04-01:12; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 0:42:37-42:45.<br><br>After Puga fell to the ground, several shots are fired and there is a pause before the final two, almost simultaneous volleys of shots from two different firearms are heard.<br><br>Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:02-01:10.<br><br>As the last volleys are going off, Puga can be seen jerking on the ground as if struck by the gunshots.<br><br>Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:06-01:10. |
| 183. Deputy Adams firearm used 9mm ammunition.<br><br>Clarke Decl. ¶ 9, Ex. T – Adams Depo. 31:18-32:2; Haag Decl. ¶ 11 | Undisputed. |
| 184. Only two 9mm bullets were recovered from Puga during the autopsy.<br><br>Haag ¶ 16 | Undisputed. |
| 185. The 9mm bullets were associated with gunshot wounds to the right flank and left thigh.<br><br>Haag ¶ 16 | Undisputed. |
| 186. The wounds to the right flank and left thigh were identified as non-fatal per the coroner. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Haag ¶ 16 | |
| 187. These bullets both ricocheted before striking Puga.<br><br>Haag ¶ 17 | **Disputed**.<br><br>There are no bullet wounds that appear to have been caused by a bullet striking an intermediary object or ricocheting before striking Puga's body.<br><br>Ex. 19 to Le Decl., Jong Dep. 47:15-48:2. |
| 188. Because of the general upward flight path of ricocheted bullets and general wound path, these wounds were sustained prior to Puga falling to the ground.<br><br>Haag ¶ 18 | **Objection**. Vague as to "these wounds."<br><br>**Disputed** that the wounds to Puga's right flank and left thigh were caused by ricocheted bullets and sustained prior to Puga falling to the ground.<br><br>There are no bullet wounds that appear to have been caused by a bullet striking an intermediary object or ricocheting before striking Puga's body.<br><br>Ex. 19 to Le Decl., Jong Dep. 47:15-48:2.<br><br>The trajectories of the gunshot wounds to the left thigh are consistent with the body going towards the ground or away from the shooter.<br><br>Ex. 19 to Le Decl., Jong Dep. 16:22-17:2. |
| 189. Maria Cadena is the mother to minor L.C. | Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 15, Ex. Z – Cadena Depo 11:23-12:20 | |
| 190. Cadena testified that Cadena and Hector Puga were not in a relationship by the time Plaintiff L.C. was born.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 12:21-13:2, 25:17-19 | <u>Undisputed</u>. |
| 191. L.C. was born in 2013.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 12:19-20 | <u>Undisputed</u>. |
| 192. Puga was not listed as the father on L.C.'s birth certificate.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 34:16-21 | <u>Undisputed</u>. |
| 193. Puga was not listed on L.C.'s birth certificate because Puga did not want to be responsible for L.C.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 34:19-35:1 | **<u>Disputed</u>**.<br><br>After L.C. was born, Puga desperately wanted to see L.C.<br><br>Ex. 21 to Le Decl., Cadena Dep. 37:16-22.<br><br>At some point, Puga approached L.C.'s mother and told her that he would voluntarily support L.C. because she was his child.<br><br>Ex. 21 to Le Decl., Cadena Dep. 38:3-7.<br><br>Puga told L.C.'s mother that he would buy L.C. whatever she needed or whatever L.C.'s mother needed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 21 to Le Decl., Cadena Dep. 38:8-12. |
| 194. Puga did not have an issue with another person being listed on the certificate as the father.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 34:19-35:1, 37:24-38:2 | **Objection**. The cited evidence does not support the alleged fact. |
| 195. Cadena never let Puga see Plaintiff L.C.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 26:6-10 | **Disputed**.<br><br>Cadena was aware that Puga would see L.C. whenever L.C. visited her grandmother, Puga's mother.<br><br>Ex. 21 to Le Decl., Cadena Dep. 26:6-13, 26:14-17, 27:10-13, 28:4-7. |
| 196. Cadena did not get along with Puga.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 27:14-17 | Undisputed. |
| 197. She was concerned about his drinking if he were to be around L.C.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 27:21-23 | Undisputed. |
| 198. Cadena was also concerned about his verbally abusive behavior.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 35:16-23 | **Disputed** to the extent that this suggests Cadena did not want Puga around L.C. because she was concerned about Puga's verbally abusive behavior around L.C.<br><br>Cadena did not want Puga to be verbally aggressive with her around L.C. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 35:16-23 |
| 199. Throughout L.C.'s life up to the incident, Puga only spoke to L.C. about 3 times.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 28:21-24 | **Disputed**.<br><br>Puga would see L.C. at times when L.C. visited her grandmother, Puga's mother.<br><br>Ex. 21 to Le Decl., Cadena Dep. 26:6-13, 28:4-7.<br><br>L.C. visited Puga's mother approximately seven times.<br><br>Ex. 21 to Le Decl., Cadena Dep. 26:14-17, 27:10-13.<br><br>L.C. spoke to Puga over the phone approximately three times.<br><br>Ex. 21 to Le Decl., Cadena Dep. 28:21-24.<br><br>In the two years before Puga' passing, Puga would see L.C. at times when L.C. visited her aunt Susie, Puga's sister.<br><br>Ex. 22 to Le Decl., Salas Dep. 30:10-20; 31:2-16, 81:6-10. |
| 200. L.C. never received anything from Puga.<br><br>Clarke Decl. ¶ 15, Ex. Z – Cadena Depo. 38:13-16 | Undisputed. |
| 201. There were no plans for L.C. to see Puga in the future prior to Puga dying. | Undisputed to the extent that there was no specific plan in place for L.C. to see Puga at the time of Puga's death. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Clarke Decl. ¶ 15, Ex. Z – Cardena Depo. 29:6-8 | |
| 202. The Estate of Hector Javier Puga submitted his tort claim to the County of San Bernardino on November 23, 2021.<br><br>Clarke Decl. ¶ 4, Ex. O – Estate of Puga Tort Claim | Undisputed. |
| 203. Antonia Salas Ubaldo submitted her tort claim to the County of San Bernardino on November 23, 2021.<br><br>Clarke Decl. ¶ 5, Ex. P – Ubaldo Tort Claim | Undisputed. |
| 204. I.H. submitted the tort claim to the County of San Bernardino on November 23, 2021.<br><br>Clarke Decl. ¶ 6, Ex. Q – I.H. Tort Claim | Undisputed. |
| 205. A.L. submitted the tort claim to the County of San Bernardino on November 23, 2021.<br><br>Clarke Decl. ¶ 7, Ex. R – A.L. Tort Claim | Undisputed. |
| 206. L.C. submitted the tort claim to the County of San Bernardino on November 23, 2021.<br><br>Clarke Decl. ¶ 8, Ex. S – L.C. Tort Claim | Undisputed. |
| 207. The tort claim from the Estate of Hector Javier Puga alleges on "February 17, 2021, at approximately 1:42 a.m., California Highway Patrol | **Objection**. Compound.<br><br>Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| officers and County of San Bernardino sheriff's deputies encountered Mr. Puga on a street in Hesperia, California. In a populated, residential area, officers and deputies fired approximately 31 shots at Mr. Puga, thereby using excessive force against him. The shots struck three innocent bystanders and fatally wounded Mr. Puga. At the time of the shooting and other undiscovered uses of force, Mr. Puga did not pose an immediate threat of death or serious bodily injury to any person. After the shooting, the involved officers and deputies failed to timely summon medical attention for or provide medical aid to Mr. Puga, thereby further contributing to the injuries and death. As a result of the shooting and other uses of force, Mr. Puga endured severe pain and suffering, and lost his life and earning capacity. At all relevant times, the involved officers and deputies were acting under color of state law and in the course and scope of their employment with the State of California and County of San Bernardino, respectively." Clarke Decl. ¶ 4, Ex. O – Estate of Puga Tort Claim | |
| 208. The tort claim from Antonia Salas Ubaldo alleges on "February 17, 2021, at approximately 1:42 a.m., California Highway Patrol officers and County of San Bernardino sheriff's deputies encountered Mr. Puga on a street in | **Objection**. Compound. Undisputed. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Hesperia, California. In a populated, residential area, officers and deputies fired approximately 31 shots at Mr. Puga, thereby using excessive force against him. The shots struck three innocent bystanders and fatally wounded Mr. Puga. At the time of the shooting and other undiscovered uses of force, Mr. Puga did not pose an immediate threat of death or serious bodily injury to any person. After the shooting, the involved officers and deputies failed to timely summon medical attention for or provide medical aid to Mr. Puga, thereby further contributing to the injuries and death. As a result of the shooting and other uses of force, Mr. Puga endured severe pain and suffering, and lost his life and earning capacity. At all relevant times, the involved officers and deputies were acting under color of state law and in the course and scope of their employment with the State of California and County of San Bernardino, respectively." <br><br> Clarke Decl. ¶ 5, Ex. P – Ubaldo Tort Claim | |
| 209. The tort claim from I.H. alleges on "February 17, 2021, at approximately 1:42 a.m., California Highway Patrol officers and County of San Bernardino sheriff's deputies encountered Mr. Puga on a street in Hesperia, California. In a populated, residential area, officers and deputies fired approximately 31 shots at Mr. | **<u>Objection</u>**. Compound. <br><br> <u>Undisputed</u>. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Puga, thereby using excessive force against him. The shots struck three innocent bystanders and fatally wounded Mr. Puga. At the time of the shooting and other undiscovered uses of force, Mr. Puga did not pose an immediate threat of death or serious bodily injury to any person. After the shooting, the involved officers and deputies failed to timely summon medical attention for or provide medical aid to Mr. Puga, thereby further contributing to the injuries and death. As a result of the shooting and other uses of force, Mr. Puga endured severe pain and suffering, and lost his life and earning capacity. At all relevant times, the involved officers and deputies were acting under color of state law and in the course and scope of their employment with the State of California and County of San Bernardino, respectively."<br><br>Clarke Decl. ¶ 6, Ex. Q – I.H. Tort Claim | |
| 210. The tort claim from A.L. alleges on "February 17, 2021, at approximately 1:42 a.m., California Highway Patrol officers and County of San Bernardino sheriff's deputies encountered Mr. Puga on a street in Hesperia, California. In a populated, residential area, officers and deputies fired approximately 31 shots at Mr. Puga, thereby using excessive force against him. The shots struck three innocent bystanders and fatally | **Objection**. Compound.<br><br><u>Undisputed</u>. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| wounded Mr. Puga. At the time of the shooting and other undiscovered uses of force, Mr. Puga did not pose an immediate threat of death or serious bodily injury to any person. After the shooting, the involved officers and deputies failed to timely summon medical attention for or provide medical aid to Mr. Puga, thereby further contributing to the injuries and death. As a result of the shooting and other uses of force, Mr. Puga endured severe pain and suffering, and lost his life and earning capacity. At all relevant times, the involved officers and deputies were acting under color of state law and in the course and scope of their employment with the State of California and County of San Bernardino, respectively." Clarke Decl. ¶ 7, Ex. R – A.L. Tort Claim | |
| 212. Pepper balls are not mentioned in any of the tort claims. See Clarke Decl. ¶ 4, Ex. O – Estate of Puga Tort Claim; Clarke Decl. ¶ 5, Ex. P – Ubaldo Tort Claim; Clarke Decl. ¶ 6, Ex. Q – I.H. Tort Claim; Clarke Decl. ¶ 7, Ex. R – A.L. Tort Claim; Clarke Decl. ¶ 8, Ex. S – L.C. Tort Claim | Undisputed to the extent that pepper balls are not specifically mentioned in any of the tort claims. **Disputed** that pepper balls are not included as "other undiscovered uses of force" in Plaintiffs' Government Tort Claims. *See* Ex. O to Clarke Decl., Estate of Puga Tort Claim at bates stamp 00224; Ex. P to Clark Decl., Ubaldo Tort Claim at bate stamp 00230; Ex. Q to Clark Decl., I.H. Tort Claim at bates stamp 237; Ex. R to Clark Decl., A.L. Tort Claim at bates stamp 00243; Ex. S |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | to Clarke Decl., L.C. Tort Claim at bates stamp 249. |
| 213. Tasers are not mentioned in any of the tort claims.<br><br>See Clarke Decl. ¶ 4, Ex. O – Estate of Puga Tort Claim; Clarke Decl. ¶ 5, Ex. P – Ubaldo Tort Claim; Clarke Decl. ¶ 6, Ex. Q – I.H. Tort Claim; Clarke Decl. ¶ 7, Ex. R – A.L. Tort Claim; Clarke Decl. ¶ 8, Ex. S – L.C. Tort Claim | <u>Undisputed</u> to the extent that Tasers are not specifically mentioned in any of the tort claims. **<u>Disputed</u>** that Tasers are not included as "other undiscovered uses of force" in Plaintiffs' Government Tort Claims.<br><br>*See* Ex. O to Clarke Decl., Estate of Puga Tort Claim at bates stamp 00224; Ex. P to Clark Decl., Ubaldo Tort Claim at bate stamp 00230; Ex. Q to Clark Decl., I.H. Tort Claim at bates stamp 237; Ex. R to Clarke Decl., A.L. Tort Claim at bates stamp 00243; Ex. S to Clarke Decl., L.C. Tort Claim at bates stamp 249. |
| 214. Neighbor Tammy Goodson saw Puga withdraw a gun from his waistband.<br><br>Clarke ¶ 19, Ex. BB – Goodson Depo. 26:10-17 | **<u>Objection</u>**. Vague as to time.<br><br>**<u>Disputed</u>**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Puga never had a gun in his hand.

Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

None of the videos capturing the incident show Puga with a gun in his hand.

Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18.

Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband.

Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21.

There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone.

Clark Decl. ¶ 16a |
| 215. Neighbor Edward Mengerino testified he saw smoke coming from Puga's hand giving him the impression Puga had a gun.

Clarke ¶ 20, Ex. CC – Edward Mangerino Depo. 35:2-36:3 | **Objection**. Vague as to time.

**Disputed**.

As soon as Puga turned to run, officers shot at Puga.

Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never pointed his hand or a weapon in any specific direction or at any officer. |
| | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| | Puga never fired a weapon at any officer. |
| | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Neither smoke nor any muzzle flash ever came from Puga. |
| | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos capturing the incident show Puga ever pointing a gun at anyone. |
| | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| | None of the videos capturing the incident show Puga ever firing a gun. |
| | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| | None of the videos capturing the incident show any muzzle flash coming from the area Puga was at. |
| | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19 |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. |
| | Clark Decl. ¶ 16a |
| 216. Sergeant Kee saw Puga withdraw the firearm.<br><br>Clarke Decl. ¶ 11, Ex. V Kee Depo. 82:14-24; | **Objection**. Vague as to time.<br><br>**Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15- |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.

Puga never grabbed or aggressively reached for anything prior to the shots.

Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

Puga never had a gun in his hand.

Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.

None of the videos capturing the incident show Puga with a gun in his hand.

Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18.

Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband.

Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21.

Kee claims that as he approached the electrical pole, he could only see a portion of Puga's body in front of the vehicle.

Ex. 1 to Le Decl., Kee Dep. 29:20-23.

Kee claims he could not see Puga's waistband while Puga was standing in front of the vehicle. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 1 to Le Decl., Kee Dep. 81:6-19.<br><br>There was an electrical pole on the southwest corner of the intersection that was almost parallel to the front of the Expedition.<br><br>Ex. 1 to Le Decl., Kee Dep. 26:22-27:9; Ex. 15 to Le Decl., Photograph of Scene.<br><br>In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame.<br><br>Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:29-00:53.<br><br>Erin Mangerino was unable to see any officers standing on her side of Peach Street.<br><br>Ex. 7 to Le Decl., Mangerino Dep. 53:11-22. |
| 217. Sergeant Vaccari saw Puga withdraw the firearm.<br><br>Clarke Decl. ¶ 10, Ex. U – Vaccari Depo. 64:4-12 | **Objection**. Vague as to time.<br><br>**Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25- |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| | Puga never grabbed or aggressively reached for anything prior to the shots. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | Puga never had a gun in his hand. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | When Adams approached the vehicle, Puga was standing in the front close to the driver's side headlight and Adams could only see Puga from chest up. |
| | Ex. 4 to Le Decl., Adams Dep. 40:16-22, 41:2-12, 45:11-16. |
| | The passenger door of the Expedition was still open when Adams and Vaccari approached from the passenger side. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 4 to Le Decl., Adams Dep. 73:2-6; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:49. <br><br> Adams and Vaccari had only reached the part where the painted curb meets the unpainted curb when the shots started, which is near the rear door of the Expedition. <br><br> Ex. 4 to Le Decl., Adams Dep. 76:1-19; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:46-46:49; Ex. 16 to Le Decl., Photograph of Expedition at Curb. |
| 218. Officer Rubalcava saw Puga withdraw a firearm. <br><br> Clarke Decl. ¶ 12, Ex. W – Rubalcava Depo. 79:11-13 | **Objection**. Vague as to time. <br><br> **Disputed**. <br><br> As soon as Puga turned to run, officers shot at Puga. <br><br> Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. <br><br> Puga never grabbed or aggressively reached for anything prior to the shots. <br><br> Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. <br><br> Puga never had a gun in his hand. |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| 219. Officer Blackwood saw Puga had a firearm in his hand.<br><br>Clarke Decl. ¶ 13, Ex. X – Blackwood Depo. 53:14-16 | **Objection**. Vague as to time.<br><br>**Disputed**.<br><br>As soon as Puga turned to run, officers shot at Puga.<br><br>Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31.<br><br>Puga never grabbed or aggressively reached for anything prior to the shots.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12.<br><br>Puga never had a gun in his hand.<br><br>Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | None of the videos capturing the incident show Puga with a gun in his hand. |
| | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| | Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. |
| | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |
| | Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. |
| | Ex. 3 to Le Decl., Blackwood Dep. 24:10-13, 30:23-31:11, 45:23-46:2. |
| | During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. |
| | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| 220. Plaintiffs never set forth any claims about the use of pepper balls and/or tasers nor did they set forth that any pre-shooting tactics were the basis of their claims.<br><br>Clarke Decl. ¶ 2, Ex. M – TAC | **Disputed**.<br><br>Plaintiffs alleged "negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence (TAC, Doc. No. 68 ¶ 107(b)) and "negligent use of force, including deadly force, against DECEDENT" (TAC, Doc. No. 68 ¶ 107(c)). |

| Moving Party's (County) Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 221. Plaintiffs state in ¶ 47 of the TAC "On information and belief, DECEDENT did not pose an immediate threat of serious bodily injury or death to anyone at the time of the shooting. OFFICER DEFENDANTS and DEPUTY DEFENDANTS were not faced with an immediate or imminent defense of life situation and had less than lethal alternatives available to subdue DECEDENT and to take DECEDENT into custody."<br><br>Clarke ¶ 2, Ex. M – TAC (Dkt. 68) | Undisputed. |
| 222. Plaintiffs state in ¶ 106 of the TAC "Police officers, including Defendants, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort."<br><br>Clarke ¶ 2, Ex. M – TAC (Dkt. 68) | Undisputed. |
| 223. The TAC sets forth that deputies should have utilized less lethal alternatives to take Puga into custody.<br><br>Clarke ¶ 2, Ex. M – TAC ¶¶ 47, 106 (Dkt. 68). | **Objection**. Vague as to time.<br><br>Paragraph 47 of the TAC specifically states that the deputies should have utilized less-lethal alternatives to take Puga into custody *at the time of the shooting*. |

1

## PLAINTIFFS' ADDITIONAL MATERIAL FACTS

2

3

| Plaintiffs' Additional Material Facts | Supporting Evidence |
|---|---|
| 224. On February 17, 2021, CHP officers Bernardo Rubalcava and Michael Blackwood initiated a pursuit of a white Expedition due to it matching the description of a vehicle that had been involved in a prior freeway shooting. | Ex. 1 to Le Decl., Kee Dep. 14:6-9, 75:3-17; Ex. 3 to Le Decl., Blackwood Dep. 51:3-10. |
| 225. CHP Sergeant Isaiah Kee also joined the pursuit. | Ex. 1 to Le Decl., Kee Dep. 75:13-17. |
| 226. San Bernardino County Sheriff's Department received a call from dispatch requesting assistance with the pursuit. | Ex. 5 to Le Decl., Vaccari Dep. 18:23-19:3. |
| 227. SBSD Sergeant Robert Vaccari and Deputy Jake Adams joined the pursuit to assist. | Ex. 4 to Le Decl., Adams Dep. 9:12-13; Ex. 5 to Le Decl., Vaccari Dep. 18:17-19:3. |
| 228. CHP requested that SBSD take over the pursuit but Vaccari declined because he did not know the details of the alleged crime and did not know what CHP's policies and procedures were for trading or taking over a pursuit and did not want CHP to drop out of the pursuit in the event he agreed to take over. | Ex. 6 to Le Decl., Vaccari Int. 12:22-13:3. |
| 229. There was little to no traffic on the road and no passing pedestrians during the pursuit. | *See* Ex. D to Esquivel Decl., Blackwood MVARS, Part 1; Ex. E to Esquivel Decl., Blackwood MVARS, Part 2. |
| 230. The white Expedition never targeted any of the officers nor | *See* Ex. D to Esquivel Decl., Blackwood MVARS, Part 1; Ex. E to Esquivel Decl., Blackwood MVARS, Part 2. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| forced other vehicles off the road during the pursuit. | |
| 231.   The white Expedition's speed during the pursuit was fast but not outrageous as even on the freeway, the Expedition was only going 80 miles per hour. | Ex. 6 to Le Decl., Vaccari Int. 13:22-24; Ex. 4 to Le Decl., Adams Dep. 12:3-13. |
| 232.   At some point during the pursuit, Vaccari requested SBSD's police helicopter to join the pursuit and the helicopter did join the pursuit. | Ex. 6 to Le Decl., Vaccari Int. 15:6-11. |
| 233.   As the pursuit continued down the dirt road, the Expedition's driving was not erratic. | Ex. 6 to Le Decl., Vaccari Int. 16:6-8. |
| 234.   The officers did not see any weapon in the white Expedition during the pursuit. | Ex. 1 to Le Decl., Kee Dep. 16:16-18; Ex. 4 to Le Decl., Adams Dep. 12:14-17. |
| 235.   Spike strips were successfully deployed on the Expedition around Main Street. | Ex. F to Esquivel Decl. at 8:25; Ex. 6 to Le Decl., Vaccari Int. 17:2-3. |
| 236.   The Expedition then turned north onto Peach and slowed down significantly, traveling approximately 5 to 10 miles per hour before coming to a stop at the intersection of Peach and Catalpa. | Ex. F to Esquivel Decl. at 8:25-9:12; Ex. 6 to Le Decl., Vaccari Int. 17:4-6, 17:15-19; Ex. 1 to Le Decl., Kee Dep. 16:22-24. |
| 237.   The helicopter continued to orbit overhead for approximately 30 minutes, illuminating the middle of the intersection where the two streets cross and the four homes on the corners. | Ex. 1 to Le Decl., Kee Dep. 28:7-15; Ex. 3 to Le Decl., Blackwood Dep. 59:23-61:1. |
| 238.   The house on the northeast corner, ("Botten Residence") had its porch light on and the helicopter's | Ex. C to Esquivel Decl., 12:56-13:13, 13:41-13:46, 14:15-14:25; Ex. 7 to Le Decl., Mangerino Dep. 56:1-10. |

| | |
|---|---|
| spotlight would occasionally illuminate the entire house while it orbited overhead. | |
| 239.    There was also a streetlight on the corner of Peach and Catalpa as well as the patrol vehicle's spotlights and red and blue lights illuminating the area. | Ex. 2 to Le Decl., Rubalcava Dep. 37:8-15; Ex. 7 to Le Decl., Mangerino Dep. 40:17-41:6. |
| 240.    At the time of the incident, the officers were aware they had stopped in a residential neighborhood. | Ex. 1 to Le Decl., Kee Dep. 18:10-12; Ex. 2 to Le Decl., Rubalcava Dep. 20:13-16; Ex. 4 to Le Decl., Adams Dep. 44:12-18; Ex. 5 to Le Decl., Vaccari Dep. 37:17-22. |
| 241.    At the time of the incident, Blackwood, Adams, and Vaccari were aware that there were houses on each of the four corners of the intersection. | Ex. 3 to Le Decl., Blackwood Dep. 59:23-61:1; Ex. 4 to Le Decl., Adams Dep. 44:12-18; Ex. 5 to Le Decl., Vaccari Dep. 37:17-22. |
| 242.    Kee never considered evacuating the people in the nearby homes nor did he ever discuss it with the SBSD deputies. | Ex. 1 to Le Decl., Kee Dep. 61:14-24. |
| 243.    Vaccari never considering alerting the nearby residences of potential harm or evacuating the people in the homes on the four corners of the intersection. | Ex. 5 to Le Decl., Vaccari Dep. 37:17-38:6. |
| 244.    At some point, a female exited the vehicle and was taken into custody, after which she informed Adams that the driver, later identified as Hector Puga, of his first name and that he was a new father and wanted to call his wife. | Ex. 4 to Le Decl., Adams Dep. 13:4-25 |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 245.   The officers had never seen Puga before and did not have any specific knowledge regarding Puga's criminal history. | Ex. 2 to Le Decl., Rubalcava Dep. 32:2-6; Ex. 4 to Le Decl., Adams Dep. 14:6-13. |
| 246.   The officers also did not have any specific information that Puga had injured anyone. | Ex. 2 to Le Decl., Rubalcava Dep. 31:18-32:1; Ex. 3 to Le Decl., Blackwood Dep. 16:8-10. |
| 247.   The officers did not have any specific information as to whether Puga was under the influence of drugs or alcohol. | Ex. 2 to Le Decl., Rubalcava Dep. 32:7-9. |
| 248.   For a period of time, the officers attempted to get Puga out of the vehicle but he was not coming out. | Ex. 1 to Le Decl., Kee Dep. 19:10-13. |
| 249.   At some point, Kee considered calling in the SWAT Team and spoke to Vaccari about it. | Ex. 1 to Le Decl., Kee Dep. 19:17-20:2. |
| 250.   Kee made the request because from his experience, SWAT sometimes comes out for barricaded suspects. | Ex. 1 to Le Decl., Keep Dep. 20:12-17. |
| 251.   Kee was told that SWAT would not come out for something of this nature. | Ex. 1 to Le Decl., Kee Dep. 20:3-6. |
| 252.   Kee saw Vaccari go back to his car and get on a cell phone but does not know whether Vaccari actually called to inquire about SWAT. | Ex. 1 to Le Decl., Kee Dep. 20:7-11. |
| 253.   Vaccari did not have his cell phone to call SWAT and claims he told Kee this. | Ex. 5 to Le Decl., Vaccari Dep. 26:8-14. |
| 254.   Vaccari had forgotten his cell phone at the station. | Ex. 6 to Le Decl., Vaccari Int. 20:1-6. |

| | |
|---|---|
| 255.    Vaccari has dealt with barricaded suspects in homes before and has called SWAT to come assist with those suspects. | Ex. 5 to Le Decl., Vaccari Dep. 12:14-15. |
| 256.    When SWAT is called, they would sometimes give suggestions or advice and other times they would come out. | Ex. 5 to Le Decl., Vaccari Dep. 13:5-13. |
| 257.    There were also times when SWAT would give suggestions or advice and when Vaccari recontacted them, SWAT would come out. | Ex. 5 to Le Decl., Vaccari Dep. 13:14-17. |
| 258.    Vaccari does not know what SWAT's criteria was in order for them to come out for a barricaded suspect. | Ex. 5 to Le Decl., Vaccari Dep. 13:18-23. |
| 259.    If SWAT had responded, Kee would have let them handle the situation. | Ex. 1 to Le Decl., Kee Dep. 48:12-21. |
| 260.    The officers never developed a tactical plan. | Ex. 4 to Le Decl., Adams Dep. 19:10-21; Ex. 5 to Le Decl., 36:20-25. |
| 261.    At some point, a decision was made that pepper balls would be helpful in trying to get Puga to come out. | Ex. 1 to Le Decl., Kee Dep. 20:18-21. |
| 262.    Kee attempted to break the car's window with a beanbag shotgun to facilitate getting the pepper balls into the car but was unsuccessful. | Ex. 1 to Le Decl., Kee Dep. 20:22-21:11. |
| 263.    Vaccari then successfully used glass break balls to break open the back window. | Ex. 1 to Le Decl., Kee Dep. 21:12-22; Ex. 5 to Le Decl., Vaccari Dep. 29:17-30:9. |

| | |
|---|---|
| 264.    Kee then directed Vaccari to deploy pepper balls. | Ex. 1 to Le Decl., Kee Dep. 21:23-22:6. |
| 265.    Approximately 120 to 150 pepper balls were deployed into the Expedition over a period of 30 to 45 minutes. | Ex. 4 to Le Decl., Adams Dep. 16:3-7; Ex. 5 to Le Decl., Vaccari Dep. 30:22-24, 31:19-21. |
| 266.    Adams observed Puga twisting and turning his body, reaching around, leaning over, and reaching back at different periods of time while Puga was inside the vehicle. | Ex. 4 to Le Decl., Adams Dep. 16:17-22. |
| 267.    Puga reacted to the pepper balls by coughing and complaining that his eyes were burning and that he could not see. | Ex. 4 to Le Decl., Adams Dep. 18:10-13; Ex. 8 to Le Decl., Gonzalez Dep. 93:10-15. |
| 268.    After deploying the pepper balls for approximately 30 minutes, Vaccari thought about contacting SWAT by having Dispatch send their phone number to his screen and using someone else's phone. | Ex. 6 to Le Decl., Vaccari Int. 27:26-28:3. |
| 269.    Vaccari then made the decision to intentionally hit Puga with pepper balls to try to motivate Puga with pain to come out. | Ex. 6 to Le Decl., Vaccari Int. 28:11-20. |
| 270.    When Vaccari was deploying the pepper balls, he observed that Puga would get his head down low in the window. | Ex. 6 to Le Decl., Vaccari Int. 28:20-23. |
| 271.    Vaccari deployed pepper balls and struck Puga in the right eye, which is extremely painful. | Ex. 1 to Le Decl., Kee Dep. 23:2-10; Ex. 3 to Le Decl., Blackwood Dep. 14:24-15:6; Ex. 5 to Le Decl., Vaccari Dep. 32:14-18; Ex. 6 to Le Decl., Vaccari Int. 28:25-29:4; Ex. 7 to Le Decl., Mangerino Dep. 25:23-26:1. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 272.    Puga sustained a cut to the area of his forehead right above his right eye, which Blackwood associated with being hit in the right eye by pepper balls. | Ex. 3 to Le Decl., Blackwood Dep. 13:24-14:10. |
| 273.    Puga eventually exited the vehicle from the driver's side. | Ex. 1 to Le Decl., Kee Dep. 23:14-19. |
| 274.    The officers were treating Puga as if he had a firearm when Puga exited the vehicle. | Ex. 5 to Le Decl., Vaccari Dep. 34:2-6. |
| 275.    Puga did not have a shirt on when he exited the vehicle. | Ex. 1 to Le Decl., Kee Dep. 23:18-22. |
| 276.    Puga did not appear to have a gun or weapon in his hand, waistband, or pocket when he exited the vehicle. | Ex. 1 to Le Decl., Kee Dep. 24:15-17; Ex. 2 to Le Decl., Rubalcava Dep. 37:25-38:4; Ex. 3 to Le Decl., Blackwood Dep. 34:4-6; Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25; Ex. 9 to Le Decl., Edward Mangerino Video; Clark Decl. ¶ 15. |
| 277.    Puga stood near the driver's side of the car for a period of time and during that time, the officers were able to see Puga's hands. | Ex. 1 to Le Decl., Kee Dep. 23:23-24:3. |
| 278.    Puga's hands were raised for the majority of the time he was positioned near the driver's side of the vehicle. | Ex. 1 to Le Decl., Kee Dep. 24:3-6; Ex. 3 to Le Decl., Blackwood Dep. 15:7-12; Ex. 5 to Le Decl., Vaccari Dep. 34:7-9. |
| 279.    Puga did not have anything in his hands and he never reached for any weapon while he was standing near the driver's side of the vehicle. | Ex. 1 to Le Decl., Kee Dep. 24:7-9; Ex. 2 to Le Decl., 38:8-20 Ex. 3 to Le Decl., Blackwood Dep. 15:25-16:2. |
| 280.    Puga did not appear to have a weapon in his hands or on his person while he stood next to the driver's side of the vehicle. | Ex. 3 to Le Decl., Blackwood Dep. 33:25-34:3; Ex. 4 to Le Decl., Adams Dep. 21:22-22:2. |

| | |
|---|---|
| 281.   The officers never formulated a tactical plan for what to do once Puga exited the vehicle. | Ex. 1 to Le Decl., Kee Dep. 24:21-25 Ex. 3 to Le Decl., Blackwood Dep. 19:16-22, 31:19-23. |
| 282.   While Puga was standing at the driver's side of the vehicle, there was no discussion about a tactical plan. | Ex. 4 to Le Decl., Adams Dep. 22:9-12. |
| 283.   Kee did not assign any CHP officer to be less-lethal nor did he know whether any sheriff's deputy had been assigned less-lethal | Ex. 1 to Le Decl., Kee Dep. 25:1-6. |
| 284.   Puga had on a baggy pair of jeans when he exited the vehicle. | Ex. 1 to Le Decl., Kee Dep. 11:4-14. |
| 285.   While Puga was positioned next to the driver's side of the vehicle, Puga would at times raise his hands and then lower them back down. | Ex. 4 to Le Decl., Adams Dep. 21:2-8. |
| 286.   Puga was continually reaching down to pull up his pants because they were loose and kept falling. | Ex. 1 to Le Decl., Kee Dep. 11:15-23; Ex. 4 to Le Decl., Adams Dep. 42:12-17, 43:5-13, 43:23-44:5; Ex. 8 to Le Decl., Gonzalez Dep. 105:11-25. |
| 287.   Puga expressed concerns to the officers that he thought the officers were going to shoot him. | Ex. 1 to Le Decl., Kee Dep. 52:2-5; Ex. 5 to Le Decl., Vaccari Dep. 34:22-35:4; Ex. 2 to Le Decl., Rubalcava Dep. 39:7-9; Ex. 8 to Le Decl., Gonzalez Dep. 40:23-41:11. |
| 288.   Puga sounded scared of being shot by police. | Ex. 8 to Le Decl., Gonzalez Dep. 103:13-23. |
| 289.   Puga said something about hearing a click and being afraid that somebody was getting ready to shoot him. | Ex. 1 to Le Decl., Kee Dep. 52:9-11. |
| 290.   Puga then walked to the front of the white Expedition. | Ex. 8 to Le Decl., Gonzalez Dep. 42:21-25; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 37:48-37:50. |

| | |
|---|---|
| 291.    After Puga went to the front of the vehicle, the officers still did not have any discussion regarding a tactical plan. | Ex. 4 to Le Decl., Adams Dep. 25:2-11. |
| 292.    Puga had his hands up while he was positioned near the front of the Expedition. | Ex. 2 to Le Decl., Rubalcava Dep. 40:3-5. |
| 293.    When Puga was in front of the Expedition, Puga did not have anything in his. | Ex. 2 to Le Decl., Rubalcava Dep. 40:6-8. |
| 294.    Puga occasionally would drop his hands to pull up his pants while he was standing near the front of the vehicle. | Ex. 4 to Le Decl., Adams Dep. 61:3-62:3; Ex. 8 to Le Decl., Gonzalez Dep. 42:18-25. |
| 295.    The bystander cell phone video taken by Erin Mangerino shows Puga with his hands up and briefly dropping his right hand to his waistband to adjust his pants before raising his hand up again, twice, before the shooting. | Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:03-00:07; 0:00:20-00:27. |
| 296.    At some point, Kee and Rubalcava decided to approach Puga to take him into custody. | Ex. 1 to Le Decl., Kee Dep. 25:17-18; Ex. 2 to Le Decl., Rubalcava Dep. 40:12-22. |
| 297.    Kee and Rubalcava did not coordinate with the SBSD Sheriffs' deputies regarding any plan to approach and take Puga into custody. | Ex. 1 to Le Decl., Kee Dep. 28:16-19; Ex. 2 to Le Decl., Rubalcava Dep. 40:23-25; Ex. 5 to Le Decl., Vaccari Dep. 36:16-19. |
| 298.    As Kee and Rubalcava were approaching Puga, they did not have any cover. | Ex. 2 to Le Decl., Rubalcava Dep. 41:14-16. |

| | |
|---|---|
| 299.    Kee and Rubalcava were not aware that Vaccari and Adams were also approaching Puga. | Ex. 1 to Le Decl., Kee Dep. 28:20-22; Ex. 2 to Le Decl., Rubalcava Dep. 41:8-11. |
| 300.    Vaccari was still treating Puga as if he was armed with a weapon while Puga was standing near the front of the vehicle. | Ex. 5 to Le Decl., Vaccari Dep. 36:12-15 |
| 301.    When Vaccari and Adams saw Kee and Rubalcava move towards the shoulder of Peach Street, they thought they were moving to just get a better view of Puga, not to approach Puga. | Ex. 4 to Le Decl., Adams Dep. 26:21-27:3; Ex. 5 to Le Decl., Vaccari Dep. 37:1-11, 38:7-12. |
| 302.    Vaccari wanted to move up the passenger side of the vehicle to cut off an avenue of escape for Puga. | Ex. 5 to Le Decl., Vaccari Dep. 39:6-20. |
| 303.    The only cover Vaccari and Adams had when moving up was the passenger's side of Puga's vehicle. | Ex. 5 to Le Decl., Vaccari Dep. 39:21-25. |
| 304.    Prior to approaching, Vaccari and Adams had discussed the possibility of using the Taser on Puga because Puga was a good candidate for the Taser due to him being shirtless, but Vaccari ultimately decided to utilize the 40-mm less-lethal instead. | Ex. 5 to Le Decl., Vaccari Dep. 40:3-16. |
| 305.    As Vaccari approached from the dirt shoulder, he did not have any cover. | Ex. 5 to Le Decl., Vaccari Dep. 41:14-24. |
| 306.    There was an electrical pole on the southwest corner of the intersection that was parallel to the | *See* Ex. 15 to Le Decl., Photograph of Scene; Ex. 16 to Le Decl., Photograph of Expedition at Curb. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| back passenger doors of the Expedition. | |
| 307. In the Erin Mangerino cellphone video of the incident, moments before the shooting, two figures can be seen standing without cover in the street, partially obscured by the utility pole before backing away in a southern direction, away from the utility pole, and out of frame. | Ex. 10 to Le Decl., E. Mangerino Cellphone Video at 0:00:29-00:53. |
| 308. Erin Mangerino was unable to see any officers standing on her side of Peach Street. | Ex. 7 to Le Decl., Mangerino Dep. 53:11-22. |
| 309. Kee claims that as he approached the electrical pole, he could only see a portion of Puga's body in front of the vehicle. | Ex. 1 to Le Decl., Kee Dep. 29:20-23. |
| 310. Kee claims he could not see Puga's waistband while Puga was standing in front of the vehicle and could only see Puga's waistband once he moved past the front of Puga's vehicle. | Ex. 1 to Le Decl., Kee Dep. 81:6-19. |
| 311. As soon as Puga started to turn to run, officers shot at Puga. | Ex. 2 to Le Decl., Rubalcava Dep. 60:20-61:1; Ex. 5 to Le Decl., Vaccari Dep. 42:24-43:2, 47:5-14; Ex. 7 to Le Decl., Mangerino Dep. 34:3-9, 36:15-17, 37:11-13; Gonzalez Dep. 42:25-43:1, 55:1-4, 97:5-11, 97:12-15; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:00:51-00:54; Ex. 13 to Le Decl., Gonzalez Cellphone Video at 0:06:24-06:31. |
| 312. Puga never grabbed or aggressively reached for anything prior to the shots. | Ex. 8 to Le Decl., Gonzalez Dep. 16:1-3; Ex. 14 to Le Decl., Botten Dep. 129:13-25, 130:6-12. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 313.    Puga never had a gun in his hand. | Ex. 8 to Le Decl., Gonzalez Dep. 97:16-25, 83:21-24. |
| 314.    Puga never pointed his hand or a weapon in any specific direction or at any officer. | Ex. 5 to Le Decl., Vaccari Dep. 64:8-17; Ex. 8 to Le Decl., Gonzalez Dep. 97:1-6. |
| 315.    Puga never fired a weapon at any officer. | Ex. 7 to Le Decl., Mangerino Dep. 37:14-16; Ex. 8 to Le Decl., Gonzalez Dep. 132:22-24. |
| 316.    Neither smoke nor any muzzle flash ever came from Puga. | Ex. 3 to Le Decl., Blackwood Dep. 20:10-12; Ex. 4 to Le Decl., Adams Dep. 36:12-18; Ex. 5 to Le Decl., Vaccari Dep. 48:14-20; Ex. 8 to Le Decl., Gonzalez Dep. 99:8-25. |
| 317.    None of the videos capturing the incident show Puga with a gun in his hand. | Ex. 1 to Le Decl., Kee Dep. 7:16-18; Ex. 5 to Le Decl., Vaccari Dep. 9:15-18. |
| 318.    None of the videos capturing the incident show Puga pointing a gun at anyone. | Ex. 1 to Le Decl., Kee Dep. 7:22-24; Ex. 5 to Le Decl., Vaccari Dep. 9:19-21. |
| 319.    None of the videos capturing the incident show Puga firing a gun. | Ex. 1 to Le Decl., Kee Dep. 7:19-21. |
| 320.    None of the videos capturing the incident show any muzzle flash coming from the area Puga was. | Ex. 1 to Le Decl., Kee Dep. 92:14-16; Ex. 2 to Le Decl., Rubalcava Dep. 93:17-19. |
| 321.    As Puga was running, he never turned around to look at the officers. | Ex. 8 to Le Decl., Gonzalez Dep. 100:13-17; Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 0:42:23-42:47; Kee MVARS Part 2 at 46:47-47:07. |
| 322.    Gonzalez saw Puga's waistband when he turned to take off running and never saw a gun in his waistband. | Ex. 8 to Le Decl., Gonzalez Dep. 95:15-25, 115:18-21. |

| | |
|---|---|
| 323.    While Puga was running, his hands were moving in a running motion. | Ex. 8 to Le Decl., Gonzalez Dep. 116:16-21. |
| 324.    None of the videos that captured the shooting ever show Puga turn back towards the officers or point his hand back towards the officers. | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 0:00:50-01:44; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 0:42:23-42:47; Kee MVARS Part 2 at 46:47-47:07. |
| 325.    When Puga reached the northwest corner, he changed directions and started running north instead of towards the house on the corner. | Ex. 4 to Le Decl., Adams Dep. 50:15-21; Ex. 7 to Le Decl., Mangerino Dep. 34:3-12. |
| 326.    Just prior to Puga going to the ground, he was staggering as if he had been struck by gunfire. | Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:4. |
| 327.    There were gunshots immediately before Puga went to the ground. | Ex. 5 to Le Decl., Vaccari Dep. 53:5-7. |
| 328.    Puga then fell forward onto his chest and stomach and onto the ground with his hands beside him on the northwest shoulder near the southbound lane, some distance from the northwest corner. | Ex. 1 to Le Decl., Kee Dep. 37:10-13; Ex. 5 to Le Decl., Vaccari Dep. 53:11-21; Ex. 7 to Le Decl., Mangerino Dep. 60:9-61:13. |
| 329.    Puga's head was oriented north and his feet were to the south after he fell. | Ex. 5 to Le Decl., Vaccari Dep. 53:22-25. |
| 330.    Puga's hands were next to him when he was on the ground. | Ex. 7 to Le Decl., Mangerino Dep. 61:7-13. |
| 331.    There was no gun in either of Puga's hands immediately after Puga went to the ground. | Ex. 4 to Le Decl., Adams Dep. 52:18-22. |

| | |
|---|---|
| 332.    Puga did not pose a threat to anyone after falling to the ground and appeared incapacitated. | Ex. 1 to Le Decl., Kee Dep. 37:17-38:3; Ex. 4 to Le Decl., Adams Dep. 52:1-6. |
| 333.    Several shots were fired at Puga after he fell to the ground. | Ex. 1 to Le Decl., Kee Dep. 68:17-24; Ex. 3 to Le Decl., 25:8-12; Ex. 5 to Le Decl., Vaccari Dep. 43:11-24; Ex. 10 to Le Decl., Mangerino Cellphone Video at 0:01:04-01:12; Ex. 11 to Le Decl., Blackwood MVARS Part 4 at 0:42:37-42:45. |
| 334.    Immediately after Puga fell onto the ground, Puga slightly raised his right leg. | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 1:00-1:05. |
| 335.    Gunshots were going off as Puga raised his right leg immediately after he fell to the ground. | Ex. 10 to Le Decl., Erin Mangerino Cellphone Video at 1:00-1:05. |
| 336.    After Puga fell to the ground, several shots are fired and there is a pause before the final two, almost simultaneous volleys of shots from two different firearms are heard. | Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:02-01:10. |
| 337.    As the last volleys are going off, Puga can be seen jerking on the ground as if struck by the gunshots. | Ex. 10 to Le Decl., Erin Magerino Cellphone Video at 01:06-01:10. |
| 338.    After Puga went down, Kee did not find any other object on or around Puga's body other than the gun allegedly found near Puga. | Ex. 1 to Le Decl., Kee Dep. 89:8-10. |
| 339.    Throughout the incident, Puga wore a polished, silver watch on his left wrist. | *See* Ex. 19 to Le Decl., Photograph of Puga's Hands after Shooting. |
| 340.    Puga sustained ten gunshot wounds to his body, altogether. | Ex. 18 to Le Decl., Jong Dep. 21:19-20. |
| 341.    There were multiple shots to Puga's backside | Ex. 18 to Le Decl., Jong Dep. 21:21-22. |

| 342. Death was not instantaneous as a result of Puga's gunshot wounds. | Ex. 18 to Le Decl., Jong Dep. 21:23-22:11. |
|---|---|
| 343. Many of the gunshots wounds have a back-to-front trajectory. | Ex. 18 to Le Decl., Jong Dep. 45:25-46:4. |
| 344. Some of the gunshot wounds had an upward trajectory. | Ex. 18 to Le Decl., Jong Dep. 46:5-8. |
| 345. Puga sustained a gunshot wound that entered the mid left back with a trajectory of back-to-front, left-to-right, and upward. | Ex. 18 to Le Decl., Jong Dep. 9:2-4, 9:22-10:4, 10:25-11:2. |
| 346. The gunshot wound to the mid left back was fatal. | Ex. 18 to Le Decl., Jong Dep. 11:13-14. |
| 347. In order to get the gunshot wound to the mid left back, the back would have had to been exposed to the muzzle of the gun. | Ex. 18 to Le Decl., Jong Dep. 11:22-13:23. |
| 348. The upward trajectory of the gunshot wound to the mid left back is consistent with the body leaning forward or falling forward when sustaining that wound. | Ex. 18 to Le Decl., Jong Dep. 13:6-16. |
| 349. Puga sustained a gunshot wound to the lower left back with a trajectory of back-to-front, left-to-right, and upward. | Ex. 18 to Le Decl., Jong Dep. 13:17-20, 14:14-16. |
| 350. The gunshot wound to the lower left back is consistent with Puga's back directly facing the shooter. | Ex. 18 to Le Decl., Jong Dep. 31:7-13. |
| 351. The gunshot wound to the lower left back could have also been fatal after a longer period of time. | Ex. 18 to Le Decl., Jong Dep. 30:7-31:2. |

| | |
|---|---|
| 352.  Puga sustained a gunshot wound to the middle right buttock. | Ex. 18 to Le Decl., Jong Dep. 14:17-20. |
| 353.  Puga sustained two gunshot wounds to the left thigh that entered the side of the thigh and the front of the thigh. | Ex. 18 to Le Decl., Jong Dep. 15:10-16:2. |
| 354.  The gunshot wound to the front of the left thigh had an upward trajectory. | Ex. 18 to Le Decl., Jong Dep. 16:3-4. |
| 355.  Puga sustained a gunshot wound to the back of the left thigh with back-to-front, left-to-right and upward trajectory. | Ex. 18 to Le Decl., Jong Dep. 16:8-21. |
| 356.  Puga sustained a gunshot wound to the lateral left knee with a back-to-front and upward trajectory | Ex. 18 to Le Decl., Jong Dep. 17:3-16. |
| 357.  Puga sustained two gunshot wounds to the anterior right lower leg with front-to-back, right-to-left, and upward trajectories | Ex. 18 to Le Decl., Jong Dep. 17:20-18:19, 20:3-9. |
| 358.  The trajectories of the gunshot wounds to the anterior right lower leg are consistent with the body being on the ground with the leg somewhat elevated. | Ex. 18 to Le Decl., Jong Dep. 19:2-24. |
| 359.  The gunshot wounds to the anterior right lower leg fractured the right tibia and right fibula with hemorrhage throughout | Ex. 18 to Le Decl., Jong Dep. 20:10-24. |
| 360.  Puga sustained a gunshot wound to the right foot with an upward trajectory | Ex. 18 to Le Decl., Jong Dep. 20:25-21:10. |
| 361.  There are no bullet wounds that appear to have been caused by a | Ex. 18 to Le Decl., Jong Dep. 47:15-48:2. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| bullet striking an intermediary object before striking Puga's body. | |
| 362.   Kee was the first officer to shoot and did not hear any shots fired before he fired his first shot. | Ex. 1 to Le Decl., Kee Dep.  9:4-9. |
| 363.   Kee claims he fired two volleys of shots; one volley of 5 to 8 shots while Puga at the front of the vehicle and another volley of 10 to 13 shots at Puga's backside while Puga was running in a northwest direction. | Ex. 1 to Le Decl., Kee Dep. 8:4-9, 9:24-10:3, 30:7-9, 34:12-23, 35:2-20, 35:24-36:5, 46:11-18. |
| 364.   When Kee fired his first shot, he could see both of Puga's hands. | Ex. 1 to Le Decl., Kee Dep. 60:10-12. |
| 365.   Puga did not have a gun in his hand when Kee fired his first volley. | Ex. 1 to Le Decl., Kee Dep. 12:2-25. |
| 366.   Kee was trained to consider his background or backdrop when firing because if there are residences or businesses in the background, innocent people could get shot. | Ex. 1 to Le Decl., Kee Dep. 54:16-24. |
| 367.   Kee was aware that there were residences in Puga's background when Kee was firing both volleys. | Ex. 1 to Le Decl., Kee Dep. 55:1-19. |
| 368.   After the first volley, Kee retreated to the dirt shoulder parallel to the side of the CHP vehicle and went down prone. | Ex. 1 to Le Decl., Kee Dep. 31:11-32:9, 42:23-43:5. |
| 369.   Approximately 3 to 5 seconds elapsed between the last shot in Kee's first volley and when Kee went down into prone position in the dirt. | Ex. 1 to Le Decl., Kee Dep. 32:10-16. |

| | |
|---|---|
| 370.   Kee did not keep a visual on Puga while he was repositioning. | Ex. 1 to Le Decl., Kee Dep. 43:14-18. |
| 371.   Kee's back was to Puga while he repositioned to the dirt area. | Ex. 1 to Le Decl., Kee Dep. 45:22-46:1. |
| 372.   Approximately 5 to 8 seconds elapsed between Kee's first volley and when he started firing his second volley. | Ex. 1 to Le Decl., Kee Dep. 54:5-9. |
| 373.   Kee was not struck by any gunshots. | Ex. 1 to Le Decl., Kee Dep. 33:3-11. |
| 374.   Kee never mentioned in his interview with detectives that he thought he had been struck. | Ex. 1 to Le Decl., Kee Dep. 44:3-7. |
| 375.   When Kee looked down at his left arm, which he claims is where he thought he had been struck, the fabric was not torn. | Ex. 1 to Le Decl., Kee Dep. 65:19-24. |
| 376.   Rubalcava heard two shots being fired before he fired his first shot. | Ex. 2 to Le Decl., Rubalcava Dep. 16:5-10. |
| 377.   Rubalcava was side by side and to the right of Kee while they were approaching and when Kee started firing. | Ex. 1 to Le Decl., Kee Dep. 29:10-19, 30:16-22. |
| 378.   Puga was near the front of the vehicle when Rubalcava fired his first volley. | Ex. 2 to Le Decl., Rubalcava Dep. 15:7-10. |
| 379.   Rubalcava heard shots coming from the passenger's side of the vehicle. | Ex. 2 to Le Decl., Rubalcava Dep. 47:12-17. |
| 380.   Rubalcava was not aware that at the time he was firing his first | Ex. 2 to Le Decl., Rubalcava 68:10-15. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| volley, Adams was also firing from the other side. | |
| 381.   Rubalcava claims he fired approximately 5 shots during his first volley and 5 to 10 shots during his second volley. | Ex. 2 to Le Decl., Rubalcava Dep. 14:2-8. |
| 382.   Rubalcava was trained to consider his background when he shoots because if his bullets miss, they may hit innocent people. | Ex. 2 to Le Decl., Rubalcava Dep. 20:20-21:1. |
| 383.   Rubalcava now knows that there were homes in the background when he fired his first volley. | Ex. 2 to Le Decl., Rubalcava Dep. 21:7-9. |
| 384.   Rubalcava claims would not have shot as many shots if he had known there was a home in the northeast corner at the time of the shooting. | Ex. 2 to Le Decl., Rubalcava Dep. 92:21-93:1. |
| 385.   Rubalcava was firing in a northeast direction during his first volley. | Ex. 2 to Le Decl., Rubalcava Dep. 21:16-19. |
| 386.   Rubalcava claims that there was an approximately 5 to 10 second pause between Rubalcava's first volley and second volley. | Ex. 2 to Le Decl., Rubalcava Dep. 14:12-18. |
| 387.   Rubalcava took out his magazine and reloaded before firing a second volley of shots. | Ex. 2 to Le Decl., Rubalcava Dep. 22:20-22, 97:13-18. |
| 388.   Puga was running away when Rubalcava fired his second volley. | Ex. 2 to Le Decl., Rubalcava Dep. 18:18-20. |
| 389.   Rubalcava was aiming at Puga's back during the second volley. | Ex. 2 to Le Decl., Rubalcava Dep. 18:21-19:1 |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 390.   When asked during his interview with detectives after the incident as to what caused Rubalcava to fire his second volley, Rubalcava answered that Puga was still fleeing but that Puga was not doing anything with any alleged weapon. | Ex. 2 to Le Decl., Rubalcava Dep. 55:8-22. |
| 391.   There was enough light for Rubalcava to see Puga while Puga was running away. | Ex. 2 to Le Decl., Rubalcava Dep. 92:10-12. |
| 392.   Rubalcava does not know whether he fired shots at Puga after Puga went to the ground. | Ex. 2 to Le Decl., Rubalcava Dep. 75:9-13. |
| 393.   Rubalcava concedes it would not have been appropriate to shoot at Puga if he merely saw a gun in Puga's waistband. | Ex. 2 to Le Decl., Rubalcava Dep. 97:19-22. |
| 394.   Based on Rubalcava's training, if Puga had not pointed a gun at Rubalcava, Rubalcava would not have shot. | Ex. 2 to Le Decl., Rubalcava Dep. 103:7-18. |
| 395.   Blackwood heard approximately 2 to 3 shots coming from his left before he fired and Kee and Rubalcava were to Blackwood's left. | Ex. 3 to Le Decl., Blackwood Dep. 11:3-6, 20:13-15, 46:23-47:8. |
| 396.   Blackwood fired his first volley of shots due north while Puga was in the front of the car, near the driver's side. | Ex. 3 to Le Decl., Blackwood Dep. 28:9-19. |
| 397.   Puga had just cleared the front of the vehicle when Blackwood started firing. | Ex. 3 to Le Decl., Blackwood Dep. 28:20-23. |

| 398.   Blackwood was firing at Puga's left side while Puga was hunched over as if he had been struck by gunshots. | Ex. 3 to Le Decl., Blackwood Dep. 29:9-20. |
|---|---|
| 399.   When Blackwood saw Puga bending over, he believed Puga had been shot. | Ex. 3 to Le Decl., Blackwood Dep. 34:18-23. |
| 400.   Blackwood was aiming at Puga's back while Puga was running away. | Ex. 3 to Le Decl., Blackwood Dep. 29:25-30:2. |
| 401.   Blackwood was trying to assess while he was firing by looking for a gun but could not see Puga's hands and therefore never saw Puga with a gun while Puga was running away. | Ex. 3 to Le Decl., Blackwood Dep. 24:10-13, 30:23-31:11, 45:23-46:2. |
| 402.   Blackwood claims he fired at Puga while Puga was running because he did not see any gun on the ground and believed Puga was still in possession of a gun. | Ex. 3 to Le Decl., Blackwood Dep. 54:7-14. |
| 403.   Blackwood fired ten shots during his first volley, paused when he saw Puga stumble, and then fired ten more shots when Puga caught himself and continued to run. | Ex. 3 to Le Decl., Blackwood Dep. 36:21-37:7. |
| 404.   Blackwood came off his sights and paused when he saw Puga stumbling, and when Puga did not go to the ground, Blackwood got back up on his sights and fired ten more shots. | Ex. 3 to Le Decl., Blackwood Dep. 37:12-38:5. |
| 405.   When Blackwood saw Puga stumble, he believed that some shots he fired may have struck Puga. | Ex. 3 to Le Decl., Blackwood Dep. 39:24-40:3. |

| | |
|---|---|
| 406.    During the time Blackwood was shooting at Puga, Blackwood could not see Puga's hands. | Ex. 3 to Le Decl., Blackwood Dep. 36:18-20. |
| 407.    Blackwood is not sure whether he fired any shots at Puga while Puga was going to the ground. | Ex. 3 to Le Decl., Blackwood Dep. 40:18-20. |
| 408.    Blackwood claims he stopped firing when he saw Puga stop moving. | Ex. 3 to Le Decl., Blackwood Dep. 30:11-13. |
| 409.    When Adams approached the vehicle, Puga was standing in the front close to the driver's side headlight and Adams could only see Puga from chest up. | Ex. 4 to Le Decl., Adams Dep. 40:16-22, 41:2-12, 45:11-16. |
| 410.    The passenger door of the Expedition was still open when Adams and Vaccari approached from the passenger side. | Ex. 4 to Le Decl., Adams Dep. 73:2-6; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:42-46:49. |
| 411.    As Adams was approaching from the passenger's side of the expedition, he heard shots. | Ex. 4 to Le Decl., Adams Dep. 35:12-14. |
| 412.    Adams and Vaccari had only reached the part where the painted curb meets the unpainted curb when the shots started, which is near the rear door of the Expedition. | Ex. 4 to Le Decl., Adams Dep. 76:1-19; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:46-46:49; Ex. 16 to Le Decl., Photograph of Expedition at Curb. |
| 413.    Adams heard shots before he fired. | Ex. 4 to Le Decl., Adams Dep. 35:15-17. |
| 414.    After hearing the gunshots, Adams ducked and then stepped over a high curb before firing. | Ex. 4 to Le Decl., Adams Dep. 38:1-4. |

| | |
|---|---|
| 415.    Adams yelled at Puga to get on the ground and simultaneously heard shots. | Ex. 4 to Le Decl., Adams Dep. 37:3-6. |
| 416.    Adams fired his first shot when Puga had already started running. | Ex. 4 to Le Decl., Adams Dep. 37:10-12. |
| 417.    Adams fired ten shots altogether. | Ex. 4 to Le Decl., Adams Dep. 37:13-14. |
| 418.    Adams fired three volleys of shots with two distinct pauses between the volleys. | Ex. 4 to Le Decl., Adams Dep. 37:15-18. |
| 419.    Adams fired three shots during his first volley, four shots during his second volley, and three shots during his third volley. | Ex. 4 to Le Decl., Adams Dep. 37:19-22, 38:5-7, 39:10-12. |
| 420.    Adams claims he was aiming at Puga's back and side during all three volleys. | Ex. 4 to Le Decl., Adams Dep. 39:13-20. |
| 421.    Adams had moved closer to the passenger side of the vehicle and was behind the open passenger door for cover when he fired his second volley. | Ex. 4 to Le Decl., Adams Dep. 50:3-10, 74:3-9; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:55-47:02. |
| 422.    Puga was still running away when Adams fired his second volley. | Ex. 4 to Le Decl., Adams Dep. 38:8-9. |
| 423.    One of Adams' concern with being in a residential neighborhood was innocent people being struck due to the number of shots fired. | Ex. 4 to Le Decl., Adams Dep. 55:19-22. |
| 424.    Adams is not sure whether he fired any shots after Puga went to the ground. | Ex. 4 to Le Decl., Adams Dep. 52:7-17. |

| | |
|---|---|
| 425. At no time did anyone provide a verbal warning that deadly force was going to be used. | Ex. 2 to Le Decl., Rubalcava Dep. 94:13-15; Ex. 3 to Le Decl., Blackwood Dep. 24:17-25; Ex. 5 to Le Decl., Vaccari Dep. 63:4-6 |
| 426. Vaccari remained on target with the 40-millimeter as Puga ran away and later dropped the 40-millimeter and unholstered his firearm but did not use it because Puga was going down or already down. | Ex. 5 to Le Decl., Vaccari Dep. 51:4-10; Ex. 12 to Le Decl., Kee MVARS Part 2 at 46:47-47:05. |
| 427. Vaccari's impression what that as Puga was running, he had been struck by gunfire because it appeared that Puga was staggering. | Ex. 5 to Le Decl., Vaccari Dep. 52:19-53:1. |
| 428. When Adams and Vaccari approached Puga after the shooting, Puga was still breathing. | Ex. 4 to Le Decl., Adams Dep. 55:23-56:9; Ex. 5 to Le Decl., Vaccari Dep. 54:4-6. |
| 429. Vaccari then decided to deploy the Taser at Puga. | Ex. 4 to Le Decl., Adams Dep. 57:16-19; Ex. 5 to Le Decl., Vaccari Dep. 54:10-13. |
| 430. Vaccari did not give Puga a verbal warning that he was going to deploy the Taser before deploying it. | Ex. 5 to Le Decl., Vaccari Dep. 63:23-25. |
| 431. The probes made contact and there was tensing and muscle reaction and Puga appeared to lock up. | Ex. 4 to Le Decl., Adams Dep. 57:20-25; Ex. 5 to Le Decl., Vaccari Dep. 55:6-9. |
| 432. No one went in to handcuff Puga during the first Taser cycle. | Ex. 5 to Le Decl., Vaccari Dep. 62:23-25. |
| 433. Vaccari later concedes during his interview with detectives that it would have been a much better option to go in and handcuff Puga while he was under the power of the | Ex. 6 to Le Decl., Vaccari Dep. 90:3-11. |

| | |
|---|---|
| initial Taser deployment instead of activating the Taser a second time. | |
| 434.  Vaccari tased Puga a second time. | Ex. 5 to Le Decl., Vaccari Dep. 56:20-22. |
| 435.  Puga's body also locked up during the second Taser activation. | Ex. 4 to Le Decl., Adams Dep. 58:4-10. |
| 436.  After the shooting, the officers heard someone exclaim about being shot coming from the northeast corner house | Ex. 5 to Le Decl., Vaccari Dep. 57:16-24. |
| 437.  The officers learned that three people from the house on the northeast corner had been shot: an adult male, and adult female, and a juvenile. | Ex.1 to Le Decl., 56:22-57:6; Ex. 2 to Le Decl., Rubalcava Dep. 59:1-17, 59:18-22 |
| 438.  The Botten family, consisting of father Jonathan Wayne Botten, Sr., mother Tanja Dudek-Botten, daughter Annabelle Botten, and son J.B., were inside their house when the shooting happened. | Ex. 15 to Le Decl., Botten Dep. 63:4-64:2, 64:16-19. |
| 439.  J.B. sustained three gunshot wounds to his chest that resulted in a collapsed lung on his left side, a ruptured spleen, and a lot damage to his internal organs due to the spreading of the bullets. | Ex. 15 to Le Decl., Botten Dep. 96:19-97:13. |
| 440.  Dudek-Botten sustained gunshot wounds to her face, chest, and right shoulder. | Ex. 15 to Le Decl., Botten Dep. 85:20-86:3, 86:7-14, 109:18-110:4. |
| 441.  Botten, Sr. sustained gunshot wounds to his right arm, left arm, left hand, and right leg. | Ex. 15 to Le Decl., Botten Dep. 70:5-9, 71:20-72:5, 74:7-15, 75:14-20, 76:1-7 |

| | |
|---|---|
| 442. There were bullet strikes to the front of the Botten residence, the screen door of the residence, one of the bedroom windows, and the side of the residence. | Ex. 17 to Le Decl., Ripley Dep. 31:16-33:19. |
| 443. Vaccari violated standard police practices and training when he deployed pepper balls to strike Puga and struck Puga in the face. | Clark Decl. ¶ 12. |
| 444. SBSD guidelines directs deputies to anticipate that a suspect will lower his head and to target from the upper torso down or alternatively, target surrounding objects. | Clark Decl. ¶ 12. |
| 445. SBSD guidelines directs its deputies to not shoot at the head, neck, or spine unless a deadly force situation exists. | Clark Decl. ¶ 12. |
| 446. It is undisputed that Puga did not pose an immediate threat of death or serious bodily injury at the time Vaccari deployed the pepper ball launcher and struck Puga in the eye | Clark Decl. ¶ 12. |
| 447. Had Sergeant Vaccari exercised better tactics, Mr. Puga would not have suffered injuries to his eye from the pepper ball launcher | Clark Decl. ¶ 12. |
| 448. Officers are trained that they are responsible for their tactical decisions when they resort to the use of lethal force. | Clark Decl. ¶ 13a. |
| 449. The officers' failure to follow standard police practices and training in dealing with barricaded | Clark Decl. ¶ 13. |

| | |
|---|---|
| subjects, poor tactics, and rushing to take Puga into custody once he was outside of the vehicle all contributed to the officers' unnecessary use of lethal force. | |
| 450.   The officers failed to formulate a safe tactical plan, made poor tactical decisions, and limited their tactical options, ultimately leading to their unnecessary use of lethal force. | Clark Decl. ¶ 13b. |
| 451.   POST Learning Domain 23, "Crimes in Progress," advises officers that if available, officers should request specialized units and resources as soon as it has been determined that the suspect has taken a barricaded position. | Clark Decl. ¶ 13c. |
| 452.   SWAT specifically trains to respond to incidents where subject(s) may be armed, barricaded, and refusing to submit to arrest. | Clark Decl. ¶ 13c. |
| 453.   The utilization of San Bernardino Sheriff's Department SWAT would have been a safer alternative. SWAT is equipped with special training, equipment, and tools, which can help resolve the situation of a barricaded subject without escalating the situation. | Clark Decl. ¶ 13c. |
| 454.   Given that the officers believed that Puga was involved in a prior freeway shooting, was still armed, was refusing to exit his vehicle, and was situated in a residential neighborhood, Vaccari's failure to request for SWAT to respond when | Clark Decl. ¶ 13d. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| initially requested by Kee and after initial less-lethal force was unsuccessful were poor tactical decisions that contributed to the officers' use of unnecessary lethal force. | |
| 455.   Among the "Fatal Errors" listed by POST Learning Domain 23, "Crimes in Progress," is poor positioning due to rushing or poor tactics. | Clark Decl. ¶ 13e. |
| 456.   The officers' decision to leave cover and enter an open-air environment to take Puga into custody, when the officers stated that they still believed Puga to be armed and dangerous, and Kee stated that he was in fear for his life at the time he made the decision to approach and take Puga into custody, was a tactically poor decision. | Clark Decl. ¶ 13e. |
| 457.   The situation did not call for an urgent response at the time the officers approached Puga. | Clark Decl. ¶ 13e. |
| 458.   Officers are trained that deadly force is only justified when there is an objectively reasonable belief that the suspect poses an immediate threat of death or serious bodily injury. | Clark Decl. ¶ 14. |
| 459.   Officers are trained that subjective fear is insufficient to justify the use of deadly force. | Clark Decl. ¶ 14. |

| | |
|---|---|
| 460.    Officers are also trained that an overreaction is excessive force. | Clark Decl. ¶ 15. |
| 461.    Under the facts and circumstances as alleged by Kee at the time he initially shot Puga that Kee violated standard police practices and training when he shot at. Puga when he saw Puga drop his right hand from a raised position. | Clark Decl. ¶ 16. |
| 462.    Kee overreacted when he saw Puga drop his right hand from a raised position. | Clark Decl. ¶ 16. |
| 463.    The percipient witness' cell phone video, labeled COSB0001459, shows Puga's frontside as he exits the car and there appears to be no weapon on or near Puga's waistband. | Clark Decl. ¶ 16. |
| 464.    Rubalcava, Blackwood, Kee, and Adams violated standard police practices and training when they shot at Puga while he was running away. | Clark Decl. ¶ 17. |
| 465.    Puga did not present an immediate threat of death or serious bodily injury as he was running and the officers failed to reassess and overreacted when they fired subsequent volleys when Puga was running. | Clark Decl. ¶ 17. |
| 466.    Officers are trained that deadly force may only be used in an immediate defense of life situation. | Clark Decl. ¶ 17a. |

| | |
|---|---|
| 467.    There was no immediate defense of life situation while Mr. Puga was running away. | Clark Decl. ¶ 17a. |
| 468.    There were no bullet impacts or casings found near the area of the initial shooting that would support the allegation that Mr. Puga fired a weapon at anyone. | Clark Decl. ¶ 17a. |
| 469.    Officers are trained that they may use deadly force against a fleeing suspected felon to prevent escape only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others. | Clark Decl. ¶ 17c. |
| 470.    There is evidence that this was likely a situation of contagious fire. | Clark Decl. ¶ 17d. |
| 471.    Officer Rubalcava, Officer Blackwood, Sergeant Kee, and Deputy Adams violated standard police practices and training when they shot at Mr. Puga after he had fallen to the ground. | Clark Decl. ¶ 18. |
| 472.    Mr. Puga was not an immediate threat of death or serious bodily injury after he had fallen to the ground. | Clark Decl. ¶ 18a. |
| 473.    The officers had time to provide Mr. Puga with a warning that deadly force was going to be used prior to the shooting and time to provide an additional warning that deadly force was going to be used in between | Clark Decl. ¶ 19. |

| | |
|---|---|
| their first and subsequent volleys of shots. | |
| 474.    Officer Rubalcava, Officer Blackwood, Sergeant Kee, and Deputy Adams violated standard police practices and training when they failed to consider their background prior to utilizing deadly force, resulting in the serious injuries of innocent bystanders. | Clark Decl. ¶ 20. |
| 475.    The officers violated standard police practices and training in failing to request backup to set up a perimeter and evacuate uninvolved individuals from the area in order the ensure the safety of these uninvolved individuals. | Clark Decl. ¶ 21. |
| 476.    Sergeant Vaccari's two-time deployment of the Taser at Mr. Puga after he had been shot twice and was clearly incapacitated without prior verbal warning violated standard police practices and training. | Clark Decl. ¶ 22. |
| 477.    The San Bernardino Sheriff's Department Manual advises its deputies that a Taser may only be used when objective facts indicate that the suspect poses an immediate threat to the safety of the officer or a member of the public. | Clark Decl. ¶ 22a. |
| 478.    Officers are also trained on the concept of "cuffing under power" in which an officer can safely go in and handcuff a suspect while the suspect is under effects of the | Clark Decl. ¶ 22b. |

| | |
|---|---|
| neuromuscular incapacitation of the Taser. | |
| 479.  The second Taser deployment violated standard police practices and training because it was clear from the first Taser deployment that Mr. Puga was incapacitated when his muscles responded to the Taser deployment but he did not respond, no verbal warning was given prior to the second Taser deployment, and Sergeant Vaccari admits that the second deployment would have been unnecessary had he considered at the time to go in and handcuff Mr. Puga while he was under the power of the Taser during the first Taser deployment. | Clark Decl. ¶ 22b. |
| 480.  L.C. was born in 2013. | Ex. 21 to Le Decl., Cadena Dep. 12:19-20. |
| 481.  After L.C. was born, Puga desperately wanted to see L.C. | Ex. 21 to Le Decl., Cadena Dep. 37:16-22. |
| 482.  At some point, Puga approached L.C.'s mother and told her that he would voluntarily support L.C. because she was his child. | Ex. 21 to Le Decl., Cadena Dep. 38:3-7. |
| 483.  Puga told L.C.'s mother that he would buy L.C. whatever she needed or whatever L.C.'s mother needed. | Ex. 21 to Le Decl., Cadena Dep. 38:8-12. |
| 484.  After L.C. was born, Puga was incarcerated for three to four years and then again from approximately 2019 to shortly before his death. | Ex. 22 to Le Decl., Salas Dep. 23:12-14; Ex. 23 to Le Decl., Hernandez Dep. 31:14-21, 35:13-15. |

| | |
|---|---|
| 485.   Puga would see L.C. at times when L.C. visited her grandmother, Puga's mother. | Ex. 21 to Le Decl., Cadena Dep. 26:6-13, 28:4-7. |
| 486.   L.C. visited Puga's mother approximately seven times. | Ex. 21 to Le Decl., Cadena Dep. 26:14-17, 27:10-13. |
| 487.   L.C. spoke to Puga over the phone approximately three times. | Ex. 21 to Le Decl., Cadena Dep. 28:21-24. |
| 488.   Puga would have preferred to see L.C. more often. | Ex. 22 to Le Decl., Salas Dep. 30:10-20. |
| 489.   L.C.'s mother saw Puga the Friday before he died and Puga asked about how L.C. was doing. | Ex. 21 to Le Decl., Cadena Dep. 15:16-16:6. |
| 490.   Puga would regularly follow the bus L.C.'s mother drove for work whenever Puga was in Long Beach and ask about L.C. | Ex. 21 to Le Decl., Cadena Dep. 16:7-14. |
| 491.   Puga had previously contacted L.C.'s mother about seeing L.C. | Ex. 21 to Le Decl., Cadena Dep. 28:11-13. |
| 492.   In the two years before Puga' passing, Puga would see L.C. at times when L.C. visited her aunt Susie, Puga's sister. | Ex. 22 to Le Decl., Salas Dep. 30:10-20; 31:2-16, 81:6-10. |
| 493.   In Plaintiffs' police practices expert Roger Clark's Rule 26 Expert Report, he opined on the reasonableness of Vaccari's deployment of the pepperball projectile that struck Puga's eye and Vaccari's subsequent deployments of the Taser. | *See* Ex. 24 to Le Decl., Roger Clark Rule 26 Report. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS