SHANNON L. GUSTAFSON (SBN 228856)
sgustafson@lynberg.com
AMY R. MARGOLIES (SBN 283471)
amargolies@lynberg.com
ANITA K. CLARKE (SBN 321015)
aclarke@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendant, COUNTY OF SAN BERNARDINO, ROBERT VACCARI, and JAKE ADAMS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive,<br><br>                    Defendants. | CASE NO. 5:22-cv-00949-KK-(SHKx)<br><br>*Assigned for All Purposes to:*<br>*Hon. Kenly K. Kato – Courtroom 3*<br><br>**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**<br><br>*[Concurrently Filed with Objections to Plaintiffs' Evidence]*<br><br>Date:           March 20, 2025<br>Time:           9:30 a.m.<br>Courtroom:   3<br><br>*Trial Date:    June 2, 2025*<br><br>*Complaint filed: 06/07/2022*<br>*FAC filed: 10/18/22*<br>*SAC filed: 01/13/23*<br>*TAC filed: 05/12/23* |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...................................................................8

II.  FOURTH CLAIM FOR FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS AS TO  DEPUTY ADAMS .................8

    A.  No Interference with Familial Relationship by Adams ..................8

    B.  Deputy Adams Shooting at Puga did Not Shock Conscience .........10

III.  PLAINTIFFS CANNOT RECOVER WRONGFUL DEATH DAMAGES FROM THE COUNTY DEFENDANTS ...............................12

IV.  L.C. DID NOT HAVE A COGNIZIABLE RELATIONSHIP WITH PUGA ....................................................................................13

V.  COUNTY DEFENDANTS DID NOT USE EXCESSIVE FORCE..........14

    A.  ADAMS' USE OF HIS FIREARM ....................................................14

    B.  SERGEANT VACCARI'S LESS-LETHAL FORCE .....................17

        1.  Less-Lethal Force is Not an Allegation in Plaintiffs' TAC ....................................................................................17

        2.  Vaccari's Use of the Pepper Ball Launcher was Reasonable ...........................................................................19

        3.  Vaccari's Use of the Taser was Reasonable ..........................20

    C.  COUNTY DEPUTIES ARE ENTITLED TO QUALIFIED IMMUNITY.......................................................................................20

    D.  PLAINTIFFS DO NOT HAVE EVIDENCE TO SUPPORT THEIR STATE CLAIMS......................................................................23

    A.  Reasonableness of Force Disposes with State Claims.....................23

    B.  THERE IS NO EVIDENCE THE COUNTY DEFENDANTS' PRE-SHOOTING TACTICS WERE NEGLIGENT ...............................................................................24

    C.  PLAINTIFFS DID NOT SUBSTANTIALLY COMPLY WITH THE TORT CLAIMS ACT ................................................26

VI.  CONCLUSION ...................................................................................27

COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

Page(s)

Cases

512 F. Supp. 3d 1030 (C.D. Cal 2021) ..........................................................11, 12, 17

*A.D. v. California Highway Patrol,*
    712 F.3d 446 (9th Cir. 2013) ...............................................................................12

*A.K.H. by and through Landeros v. City of Tustin,*
    2014 WL 12672480 (C.D. Cal. 2014) ..................................................................10

*Alford v. Humboldt County,*
    785 F.Supp.2d 867 ........................................................................................19, 23

*Ashcroft v. al–Kidd,*
    563 U.S. 731 (2011)........................................................................................21, 22

*Baldridge v. City of Santa Rosa,*
    1999 WL 66141 (N.D. Cal.1999) .........................................................................15

*Bernal v. Sacramento Cnty. Sheriff's Dep't,*
    73 F.4th 678 (9th Cir. 2023) ................................................................................15

*Brown v. Ransweiler,*
    171 Cal.App.4th 516 (2009) ...........................................................................24, 25

*Brumley v. FDCC California, Inc.,*
    156 Cal.App.4th 312 (2007) .................................................................................12

*City of Escondido, Cal. v. Emmons,*
    139 S. Ct. 500 (2019)............................................................................................21

*Cnty. of Orange,*
    874 F.3d 1072 (9th Cir. 2017) .............................................................................22

*Coleman v. Quaker Oats Co.,*
    232 F.3d 1271 (9th Cir. 2000) .............................................................................18

*Corona v. Time Warner Cable, Inc.,*
    No. CV135521PSGVBKX, 2014 WL 11456535 (C.D. Cal. Oct. 16, 2014)........18

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

*Cruz v. City of Anaheim*,
  765 F.3d 1076 (9th Cir. 2014) ............................................................... 15

*Curnow By & Through Curnow v. Ridgecrest Police*,
  952 F.2d 321 (9th Cir. 1991) ................................................................. 21

*Davis v. Scherer*,
  468 U.S. 183, (1984)............................................................................. 20

*District of Columbia v. Wesby*,
  138 S.Ct. 577 (2018)............................................................................ 20

*Dixon v. City of Livermore*,
  127 Cal.App.4th 32 (2005) .................................................................. 26

*Donaldson v. United States*,
  2018 WL 1089986 (S.D. Cal. 2018)..................................................... 24

*Dunbar-Kari v. United States*,
  2010 WL 4923556 (E.D. Cal., Nov. 29, 2010) ..................................... 8

*Est. of Risher v. City of Los Angeles*,
  2020 WL 5377306 (C.D. Cal. July 29, 2020) ...................................... 22

*Estate of Chivrell v. City of Arcata*,
  694 F.Supp.3d 1218 (N. D. Cal. 2023).................................................. 10

*Fewell v. California*,
  2017 WL 6043080 (C.D. Cal. 2017) .................................................... 10

*Foster v. City of Indio*,
  908 F.3d 1204 (9th Cir. 2018) ......................................................... 12, 23

*Gonzalez v. City of Anaheim*,
  747 F.3d 789 (9th Cir. 2014) ............................................................... 10

*Hamby v. Hammond*,
  821 F.3d 1085 (9th Cir. 2016) ............................................................. 20

*Hayes v. v. Co. of San Diego*,
  736 F.3d 1223 (9th Cir. 2013) ............................................................. 11

*In Re Citric Acid Litigation*,
  191 F.3d 1090 (9th Cir. 1999) ............................................................... 8

**4**

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

*Lopez v. City of Los Angeles,*
   196 Cal.App.4th 675 (2011) ................................................................... 13

*Lopez v. City of Riverside,*
   2023 WL 8433959 (9th Cir. Dec. 5, 2023) ........................................... 22

*Mattos v. Agarano,*
   661 F.3d 433 (9th Cir. 2011) ................................................................. 15

*Moore v. City of Berkley,*
   2016 WL 6024530 (N.D. Cal. 2016) ..................................................... 23

*Munoz v. City of Union City,*
   120 Cal. App 4th, 1077 (2004) .............................................................. 13

*Murillo v. City of Los Angeles,*
   707 F. Supp. 3d 947 (C.D. Cal. 2023) .................................................. 22

*Nelson v. Pima Community College,*
   83 F.3d 1075 (9th Cir. 1996) ................................................................. 10

*Newton v. American Debt Services, Inc.,*
   75 F.Supp.3d 1048 (N.D. Cal. 2014) .................................................... 18

*Orn v. City of Tacoma,*
   949 F.3d 1167 (9th Cir. 2020) ............................................................... 21

*Page v. MiraCosta Community College Dist.,*
   180 Cal.App.4th 471 (2009) .................................................................. 27

*Peck v. Montoya,*
   51 F.4th 877 (9th Cir. 2022) .................................................................. 11

*Porter v. Osborn,*
   546 F.3d 1131 (9th Cir. 2008) ............................................................... 11

*Quiroz v. Seventh Ave. Center,*
   140 Cal.App.4th 1256 (2006) ................................................................ 12

*Reynolds v. County of San Diego,*
   858 F.Supp. 1064 (S.D. Cal. 1994) ....................................................... 21

*S.R. Nehad v. Browder,*
   929 F.3d 1125 (9th Cir. 2019) ............................................................... 16

5

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

*San Diego Gas & Electric Co. v. Superior Court*,
146 Cal.App.4th 1545 (2007) ................................................................. 12

*Sanchez v. Client Servs., Inc.*,
520 F. Supp. 2d 1149 (N.D. Cal. 2007) .................................................. 16

*Saucier v. Katz*,
533 U.S. 194 (2001) ................................................................................. 20

*Sharp v. County of Orange*,
871 F.3d 901 (9th Cir. 2017) ................................................................. 20

*Singh v. City of Phoenix*,
124 F.4th 746 ........................................................................................... 16

*Smith v. City of Hemet*,
394 F.3d 689 (9th Cir. 2005) ................................................................. 15

*Sorgen v. City & County of San Francisco*,
2006 WL 2583683 (N.D. Cal. 2006) ...................................................... 24

*Susag v. City of Lake Forest*,
94 Cal.App.4th 1401 (2002) ................................................................... 24

*Watkins v. City of San Jose*,
2017 WL 1739159 (C.D. Cal 2017) .................................................. 15, 24

*Westcon*,
152 Cal.App.4th .................................................................................... 27

*White v. Pauly*,
137 S.Ct. 548 (2017) ............................................................................... 20

*White v. Superior Court*,
225 Cal.App.3d 1505 (1990) ................................................................. 26

*Wilkinson v. Torres*,
610 F.3d 546 (9th Cir. 2010) ........................................................... 15, 20

Codes

42 U.S.C. §1983 ................................................................. 10, 23, 24

Cal. Civ. Code § 52.1 ................................................................. 23

6

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

California Penal Code 196...........................................................................................24

Rules

Fed. R. Civ. P.  56..................................................................................................27

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    PRELIMINARY STATEMENT

3

Unfortunately, as is too often the case when opposing summary judgment,

4 Plaintiffs have chiefly responded with mounds of paperwork aimed at quarrelling over

5 semantics with County Defendants' separate statement and then following up by

6 inundating this Court with an additional 269 largely immaterial facts of their own that

7 either restate the same sequence of events and/or represent inadmissible speculative

8 opinions of their expert. *In Re Citric Acid Litigation*, 191 F.3d 1090, 1102 (9th Cir.

9 1999) ("[a]n expert report cannot be used to prove the existence of facts set forth

10 therein."); *Dunbar-Kari v. United States*, 2010 WL 4923556 *4 (E.D. Cal., Nov. 29,

11 2010) ("An expert's speculations do not rise to the status of contradictory evidence,

12 and a court is not bound by expert opinion that is speculative or conjectural.").

13

However, when this unnecessary word game is removed from the equation,

14 what is plain is that the undisputed material facts confirm that Defendants are entitled

15 to summary judgment.

16

## II.    FOURTH CLAIM FOR FOURTEENTH AMENDMENT

17

## SUBSTANTIVE DUE PROCESS AS TO DEPUTY ADAMS

18

### A. No Interference with Familial Relationship by Adams

19

Plaintiffs pontificate that "there is evidence to support a finding that

20 Adams **or** Rubalcava was the cause of Puga's gunshot wound to the lower left back,

21 which would have been fatal if Puga had not sustained the gunshot wound to the mid

22 left back." (Opp. 29:20-22). Tellingly, there is not a single evidentiary cite following

23 this statement of counsel as to what this evidence is, because it does not exist.

24

Rather the undisputed material evidence confirms Defendant Adams did ***not***

25 fire the fatal shot. Plaintiffs concede that the shot to the mid left back was the ***fatal***

26 shot (UMF 175) and further that this ***fatal*** shot was fired by either Kee or Blackwood,

27 not Adams. (UMF 179-181). Then incredibly, without any admissible evidence,

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**

Plaintiffs contend Adams may have also fired a fatal shot because there was also a wound to Puga's lower back. (UMF 182). This feigned dispute fails on two fronts. First, there is ***no*** admissible evidence that Adams fired the shot to Puga's lower back and second no admissible evidence that this shot was indeed fatal.

Defendants have put forth clear ***undisputed*** admissible evidence that based on the bullet recovery at autopsy, only two ***recovered*** bullets belonged to Adams, neither of which came from Puga's lower back, and both of which caused non-fatal wounds. (UMF 183-186- UNDISPUTED). None of Plaintiffs' cited evidence supports that the lower back gunshot wound was caused by Adams 9mm bullets, because again no such evidence exists.[1]

Second, even if Plaintiffs could tie the bullet in the lower back to Adams, there is still no admissible evidence that this shot was fatal. Rather the shot to the mid back occurred and it killed Puga- a point nobody disputes (UMF 168- The bullet that caused the death entered through the mid-left back- Undisputed). Plaintiffs cannot rewrite history solely to keep Deputy Adams in on certain claims. Plaintiffs' argument that the "gunshot wound to the lower left back ***could*** have also been fatal ***after*** a longer period of time" does not create a triable issue. (UMF 182- as disputed by Plaintiffs). We know what killed Puga and it is nothing more than speculation to argue that had the fatal shot not occurred, Puga may have ***possibly*** died later from an ***infection*** to the lower back wound if not treated properly, which was the testimony of the coroner. (Plaintiff' Ex. 18, Dr. Jong, 30:7-21). Nobody can say whether Puga would have actually developed this hypothetical infection or even whether that infection would

---

[1] A bullet was recovered from the lower back at autopsy. (Plaintiff's Ex. 18, Dr. Jong Depo. 13:17-14:10). And as set forth by Mr. Haag only two bullets from autopsy belonged to Adams, neither of which came from this wound. (UMF 179-181). Plaintiffs' speculations that there was a lower back wound and that it was caused by either Rublacava or Adams, without more, does not create a triable issue in light of the overwhelming physical evidence.

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**

1    have caused death. *Nelson v. Pima Community College,* 83 F.3d 1075, 1081–82 (9th

2    Cir. 1996)("[M]ere allegation and speculation do not create a factual dispute for

3    purposes of summary judgment." ).

4         Plaintiffs L.C., I.H. , A.L. and Antonia Ubaldo do not dispute that their claim

5    under 42 U.S.C. §1983 for Violation of their Fourteenth Amendment rights is

6    premised on the loss of Mr. Puga's life. *Estate of Chivrell v. City of Arcata*, 694

7    F.Supp.3d 1218, 1231 (N. D. Cal. 2023) (To state a claim for loss of familial

8    association, a plaintiff must show that official conduct "'shocks the conscience' ***in***

9    ***depriving family members of a liberty interest in the companionship and society*** of

10   a family member." ).  Because Deputy Adams did not cause this loss, Plaintiffs' L.C.,

11   I.H., A.L. and Ubaldo's Fourth Claim for Substantive Due Process based on

12   interference with familial relationship must be dismissed.

13        **B. Deputy Adams Shooting at Puga did Not Shock Conscience**

14        Plaintiffs' Fourteenth Amendment Substantive Due Process claim as to Deputy

15   Adams also fails as to the Estate of Puga and the individuals, because he did not

16   engage in the requisite conscience shocking behavior to maintain this claim.

17   Established case law is clear, "where a law enforcement officer makes a snap

18   judgment because of an ***escalating*** situation, his conduct may only be found to shock

19   the conscience if he acts with a ***purpose to harm*** unrelated to legitimate law

20   enforcement objectives." *A.K.H. by and through Landeros v. City of Tustin*, 2014

21   WL 12672480, at *6–7 (C.D. Cal. 2014).  "Where, [ ] the officers did not have time

22   to deliberate, a use of force shocks the conscience only if the officers had a "purpose

23   to harm" the decedent for reasons unrelated to legitimate law enforcement

24   objectives." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014).

25   "'Legitimate law enforcement objectives [include] arrest, self-defense, or the defense

26   of others." *Fewell v. California*, 2017 WL 6043080, at *6 (C.D. Cal. 2017) (internal

27   quotation omitted).

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1    "We apply the purpose-to-harm standard when officials were required to make
2    "repeated split-second decisions" about how best to respond to a risk, such as during
3    a high-speed car chase or ***when confronting a threatening, armed suspect***." *Peck v.*
4    *Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) citing *Porter v. Osborn*, 546 F.3d 1131,
5    1139 (9th Cir. 2008); *Hayes v. v. Co. of San Diego*, 736 F.3d 1223, 1230 (9th Cir.
6    2013).

7         Plaintiffs have not submitted anything to even remotely suggest that Deputy
8    Adams shot at Puga for the purpose to harm without any legitimate law enforcement
9    objective and instead places their focus on claiming this standard does not apply.
10    However, as set forth in *Diaz v. Cnty of Ventura,* the fact of an hour-long stand-off
11    after a lengthy car chase does not foreclose use of the purpose to harm standard.  512
12    F. Supp. 3d 1030, 1047 (C.D. Cal 2021).  Instead, here like in *Diaz* the court must
13    look to the moments before the lethal shooting where events occurred in a matter of
14    seconds when the video evidence clearly shows Puga rapidly moving his arm down
15    towards his waistband in a much different manner then the times before when he
16    slowly adjusted his pants.  (*See,* Ex. J – Mangerino Video 00:05-00:06 and 00:25-
17    00:27 where Puga's arm fell to adjust his pants compared to 00:50-00:53 when he
18    reached for the gun in his waistband); *Diaz,* 512 F. Supp. 3d at 1047 ("There is no
19    evidence from which an inference can be drawn that, when officers finally began to
20    advance towards Diaz to attempt to end the standoff, that [defendant] had any purpose
21    to harm that was unrelated to a legitimate law enforcement objective. . . . [a]t most a
22    jury could conclude that [defendant] irrationally panicked out of a false sense of fear
23    of a man behaving erratically, who had been described as 'armed and dangerous.'
24    This reaction does not satisfy the purpose to harm standard, so the Court grants the
25    MSJ as to the substantive due process claim).  Much like in *Diaz,* even if it is found
26    that Deputy Adams overreacted when Puga rapidly reached toward his waistband,
27    there was not a purpose to harm and Plaintiffs' substantive due process claim must

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1  fail or at minimum he is entitled to qualified immunity on this claim given the *Diaz*

2  decision.

3  Plaintiffs then cite only to *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th

4  Cir. 2018) wherein there was a triable issue whether the officer violated the suspect's

5  Fourth and Fourteenth Amendment rights when he shot a fleeing, potentially unarmed

6  suspect in back, and *A.D. v. California Highway Patrol*, 712 F.3d 446, 458 (9th Cir.

7  2013) wherein a suspect rammed a police car and the officer shot suspect and

8  continued to shoot suspect even though his supervisor ordered him to stop and the

9  other officers did not feel threatened. *A.D.* is not at all controlling for the situation

10 presented here where Puga reached for his waistband and drew a handgun. In *Foster*,

11 the appellant only claimed there was insufficient evidence to create a triable issue, not

12 that it was reasonable to shoot an unarmed suspect in the back, thus Plaintiffs' rely

13 only on dicta in *Foster*. *Foster*, 908 F.3d at 1212.

14 **III.   PLAINTIFFS CANNOT RECOVER WRONGFUL DEATH**

15 **DAMAGES FROM THE COUNTY DEFENDANTS**

16 Plaintiffs appear to be arguing that because their Fifth Claim for Battery and

17 Sixth Claim for Negligence include both wrongful death and survival theories

18 summary adjudication of these claims must be denied. However, the law is well

19 settled that survival claims by the Estate are legally separate and distinct from claims

20 by the heirs for wrongful death. *San Diego Gas & Electric Co. v. Superior Court*,

21 146 Cal.App.4th 1545, 1550-51 (2007) (the heirs' claims for personal injury and the

22 survival claims are separate and distinct); *Brumley v. FDCC California, Inc.*, 156

23 Cal.App.4th 312, 323-24 (2007) (same); *Quiroz v. Seventh Ave. Center*, 140

24 Cal.App.4th 1256 (2006) (same).

25 As such, even if the claims on behalf of Mr. Puga for Battery and Negligence

26 survive due to the use of the pepper ball and taser by Sergeant Vaccari and the non-

27 lethal gunshot wounds inflicted by Deputy Adams, this does ***not*** salvage the claims

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY**
**ADJUDICATION**

by the individual Plaintiffs for wrongful death merely because these two separate and distinct claims were lumped together in the Third Amended Complaint.

The Fifth Claim for Battery and Sixth Claim for Negligence were asserted by "All Plaintiffs" which include Plaintiffs L.C., I.H., A.L. and Antonia Ubaldo as individuals.   This is evidenced by the allegations contained therein where Plaintiffs assert claims both individually and as successors in interest under ***both*** Negligence and Battery and request wrongful death type damages.[2]  (TAC- Battery ¶¶ 101-104, and Negligence- ¶¶ 111-114).

However, to the extent that Plaintiffs are making individual wrongful death claims in either the Fifth Claim for Battery and/or Sixth Claim for Negligence, such claims must be dismissed because as set forth above and in the County's moving papers, neither Vaccari nor Adams killed Puga.  *See, Lopez v. City of Los Angeles,* 196 Cal.App.4th 675, 682, 688 (2011) ("It is undisputed that Gallegos, Perez, or Sanchez fired the fatal shot.   Therefore appellant cannot establish liability for negligence or ***wrongful*** death based on O'Sullivan's shot) citing *Munoz v. City of Union City*, 120 Cal. App 4th, 1077, 1093 (2004) (negligence cause of action requires evidence that breach was proximate or legal cause of resulting injury).

## IV.    L.C. DID NOT HAVE A COGNIZIABLE RELATIONSHIP WITH PUGA

As further briefed in the concurrently filed objections to Plaintiffs' separate statement, L.C.'s mother, Maria Cadena specifically stated that L.C. was born in 2013 (UMF 190-191 – undisputed), she ***never*** permitted Puga to see L.C. because she was concerned about his drinking and verbal abuse. (UMF 195, 197-198).  At most, taking Plaintiffs' statement as true that L.C. ***may*** have seen Puga when L.C. visited Antonia

---

[2] In contrast, Plaintiffs' Seventh Claim under § 52.1 makes clear that the claim is only being brought by the Plaintiffs as successors in interest and only for survival damages. (TAC ¶ 129).

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

Ubaldo, it would have been a maximum of 7 times in a span of 8 years.  (*See* PAMF 485-486).  Maria Cadena herself testified that this ***may*** have possibly occurred but she cannot actually confirm L.C. saw Puga. Likewise, Salas testified ***maybe*** Puga saw L.C. when L.C. was with her sister "Susy."  But, Salas does not recall when this would have happened. (*See* PAMF 492).

There is no evidence to support any speculative statement that L.C. saw Puga. A maximum of ***maybe*** seven times in eight years is a far cry from what Plaintiffs are claiming as a "consistent relationship."  L.C. never received anything from Puga (UMF 200 – undisputed) and the evidence (without speculation) is simply that Puga spoke to L.C. approximately 3 times.  (UMF 199).    There was simply no close relationship between Puga and L.C. that could have been interfered with by his death.

## V.    COUNTY DEFENDANTS DID NOT USE EXCESSIVE FORCE

### A. ADAMS' USE OF HIS FIREARM

The evidence established Puga was wanted for being involved in a shooting and according to the ***video*** evidence, when the shooting occurred, his hand went to his waistband.  All of the law enforcement officers in a position to see this, have testified what he drew from his waistband was a firearm. The shooting began and within a moment, Puga turned to run, straight towards residences.  The County Defendants' Exhibit J (Mangerino video – lodged with Motion) clearly shows Puga's hand dropped a second before the shooting.  The County Defendants' Exhibit H shows Puga running with a shiny object in his hand.  County Defendants' Exhibit J and H show Puga was running straight towards the residences.  There is absolutely no established case authority that provides under these circumstances that Deputy Adams was required to wait until Puga discharged his firearm to react.

The real questions are – (1) was deadly force reasonable when Puga dove his hand to his waistband and withdrew a firearm, and (2) was it reasonable to continue shooting when Puga turned and ran towards residences, gun in hand.  The Ninth

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

Circuit has repeatedly emphasized that "the most important *Graham* factor" is whether the individual posed an immediate threat to safety. *Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 692 (9th Cir. 2023) (characterizing the threat to the officer as "minimal and quickly mitigated" when officer was standing momentarily behind an operational vehicle); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). Established law holds that it is reasonable to use deadly force, as a matter of common sense, on an armed suspect because an armed suspect represents the paradigm threat to officer safety. *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (en banc) ("[W]here a suspect threatens an officer with a weapon…, the officer is justified in using deadly force."); *Watkins v. City of San Jose*, 2017 WL 1739159, at *8 (C.D. Cal 2017). Indeed, "where the totality of the circumstances could cause a reasonable police officer to conclude ***that a suspect is reaching for a gun***, the officer's use of deadly force in self-defense is justified." *Baldridge v. City of Santa Rosa*, 1999 WL 66141, at *7 (N.D. Cal.1999); *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ("'the Fourth Amendment does not require omniscience,' and absolute certainty of harm need not precede an act of self-protection.") (citation omitted). "[F]or a judge ruling on the officers' motion for summary judgment, this translates to a different question: Could any reasonable jury find it more likely than not that Cruz *didn't* reach for his waistband?" *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (emphasis in original).

Following the incident, Puga's firearm was found underneath his body, not in a pocket or a holster, supporting exactly what the law enforcement officers testified to – Puga pulled a gun and ran with it in his hand. (UMF 141-142, 145, 153, 158-159). To dispute facts that Puga had a firearm out, he drew it, etc. is ignoring the obvious evidence of the gun that was found. Plaintiffs rely solely on the testimony of Betzabeth Gonzalez (Opp 16:16-20) who had a different version of events than ***all*** five law enforcement officers, Erin Mangerino, Edward Mangerino, and Tammy

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1    Goodson.  However, Plaintiffs have failed to lay the foundation that Betzabeth was in

2    a position to see Puga's waistband at the time of the shooting, when her own cell

3    phone video conclusively confirms she was not in such a position.  (*See,* Exhibit 13-

4    Betzabeth Gonzalez Cell Phone video).  Plaintiffs cannot create a triable issue as to

5    Betzabeth's testimony years later describing events that her video confirms she could

6    not have possibly seen. *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1164

7    (N.D. Cal. 2007)(where certain statements are contradicted by other credible

8    evidence, the court may reject the evidence if it is so "undermined as to be

9    incredible.")

10       Further, the undisputed facts are that Vaccari never discharged his firearm

11    Additionally, although Adams may have fired when Puga turned to run and bullets

12    may have made contact with Puga's back, Plaintiffs have provided no evidence that

13    Adams continued firing on Puga after he was on the ground or that Puga was no longer

14    a threat on the ground with the gun still underneath him.

15       The cases cited by Plaintiffs are distinguishable.  In *Singh v. City of Phoenix*,

16    124 F.4th 746, 752, Decedent was armed with a knife and was not actively resisting

17    when officers arrived, it was additionally known he was suicidal and/or having a

18    mental health issue.  In the case at bar, Puga was armed with a firearm and refusing

19    to comply with commands to surrender, ran to the front of his vehicle concealing his

20    waistband and then rapidly pulled something from his waistband.  Similarly in *S.R.*

21    *Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019), a suspect who brandished a

22    knife earlier stated he wanted to hurt people, police were called, and when the officer

23    arrived, suspect walked towards the officer and was shot.  The Court found a jury

24    could find the force used was unreasonable because the suspect did not resist arrest,

25    he was not engaged in a serious crime when the officer arrived, and the suspect was

26    not aggressive and did not make any sudden movements.  In contrast to *Nehad*, Puga

27    was resisting arrest by not surrendering and his hand darted down to his waistband to

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1  remove a gun.

2      Plaintiffs further cite to *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1044

3  (C.D. Cal. 2021) wherein a suspect armed with a knife was ordered to surrender, less

4  lethal force was used causing the suspect to fall backwards with his legs up in the air,

5  then different accounts were given whether Decedent got up and advanced on officers,

6  but lethal force was used.  The Court found a reasonable jury could find that use of

7  lethal force on a suspect either on the way to the ground or on the ground was

8  excessive.  In contrast, Puga was armed and was not on the ground when officers

9  began firing and there is no evidence Adams fired at Puga after he was on the ground.

10  **B. SERGEANT VACCARI'S LESS-LETHAL FORCE**

11      **1.  Less-Lethal Force is Not an Allegation in Plaintiffs' TAC**

12      Plaintiffs Third Amended Complaint set forth the following, "Vaccari pointed

13  his firearm and intentionally discharged his firearm at DECEDENT" and then

14  "Vaccari continued to discharge his firearm at DECEDENT" as decedent ran away.

15  (TAC ¶¶ 32, 38).  Plaintiffs then alleged Defendants "had less lethal alternatives

16  available" but instead used deadly force. (TAC ¶ 47).  These allegations are thereafter

17  reincorporated into every cause of action.  However, Plaintiffs did not stop there, as

18  part of the Second Claim for Excessive Force Plaintiffs again alleged "Defendant

19  Vaccari … used excessive force against DECEDENT when he shot him several

20  times." (TAC   ¶ 61).  Plaintiffs further explain "Vaccari continued to fire at

21  DECEDENT while DECEDENT was running away, moving away from Defendant

22  Vaccari, was not facing Defendant Vaccari and had both hands visible.  Defendant

23  Vaccari continued to fire at Decedent after Decedent had fallen to the ground after

24  sustaining several gunshot wounds.  (TAC ¶ 62).  Knowing that the evidence confirms

25  Vaccari never fired a shot, rather than dismissing him based on the allegations of the

26  operative complaint, Plaintiffs now seek to rewrite their claims against Sgt. Vaccari

27  by arguing that he used excessive force through use of the pepper ball gun and the

28

**17**

1 | taser, even though there are no accompanying allegations in the Complaint.

2 | Plaintiffs may not use an opposition to a motion for summary judgment as a

3 | "procedural second chance to flesh out inadequate pleadings." *Newton v. American*

4 | *Debt Services, Inc.*, 75 F.Supp.3d 1048, 1063 (N.D. Cal. 2014).

5 | Plaintiffs' attempt to excuse their failure to plead by arguing "[t]o rely on a

6 | theory at summary judgment, plaintiffs are required to either (1) plead the additional

7 | theory in their complaints, or (2) to make known during discovery their intention to

8 | pursue recovery on the theory omitted from their complaints." *Corona v. Time*

9 | *Warner Cable, Inc.*, No. CV135521PSGVBKX, 2014 WL 11456535, at *4 (C.D. Cal.

10 | Oct. 16, 2014) (cleaned up) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294

11 | (9th Cir. 2000)).  (Opp. 31:3-9).

12 | Plaintiffs, however, misinterpret *Corona v. Time Warner Cable, Inc.*  The Court

13 | specifically stated the "[t]he typical place for explaining the basis of a lawsuit is the

14 | complaint – "[a] complaint guides the parties' discovery, putting the defendant on

15 | notice of the evidence it needs to adduce in order to defend against the plaintiff's

16 | allegations." *Corona*, 2014 WL 11456535, at *4 citing *Coleman* at 1292.  The Ninth

17 | Circuit thereafter "suggested", but did not so hold, that Plaintiffs may provide notice

18 | of an additional theory during discovery but conceded the "criteria for sufficient

19 | notice in the post-pleadings context is not very developed in the case law." *Corona*,

20 | 2014 WL 11456535, at *4.

21 | Even applying the dicta in *Corona*, Plaintiffs did not expressly put County

22 | Defendants on any notice that they were pursuing another theory of liability at any

23 | point during discovery.  Merely stating they asked a few questions of Sergeant

24 | Vaccari concerning his use of the pepper ball launcher and the taser is entirely

25 | insufficient. As this Court is aware, parties may ask many questions during deposition

26 | testimony in an attempt to understand a situation; every question posed cannot be

27 | taken as establishing a new theory of liability.  As for the expert report, it was

28 |

**18**

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**

1    produced on January 30, 2025, a mere 21 days before the last day for County

2    Defendants to file their Motion for Summary Judgment.  As the Court stated, this

3    avenue of providing a new theory of liability outside of the pleadings is not developed,

4    but certainly it will not be the case that opposing parties may wait until the final

5    moments of discovery before offering a new theory of liability.

6        County Defendants only knew that negligent tactics may be an area Plaintiffs

7    would explore in their opposition because of the meet and confer efforts that occurred

8    between the parties pursuant to Local Rule 7-3 prior to County Defendants filing their

9    Motion for Summary Judgment.

10        On the other hand, Plaintiffs very clearly pled only one theory against Sergeant

11    Vaccari – that he used excessive force solely through the discharge of a firearm.  As

12    such, Plaintiffs' Fourth Amendment Excessive Force Claim and state law claim for

13    Battery should be dismissed as to Sergeant Vaccari as it is based on entirely different

14    set of facts that used pepper balls and a taser in an excessive manner.

15        **2.  Vaccari's Use of the Pepper Ball Launcher was Reasonable**

16        Even if properly pled, Plaintiffs' Excessive Force claim as to Sergeant Vaccari

17    still falls short.  It has been held that officers are entitled to qualified immunity for

18    use of chemical agents to extract a barricaded suspect potentially armed with a lethal

19    weapon.  *Alford v. Humboldt County*, 785 F.Supp.2d 867, 872, 877-79.  This was the

20    exact situation presented to Vaccari – a suspect was refusing to leave his vehicle who

21    was involved in a shooting earlier and was believed to be armed.  Plaintiffs' expert

22    stating Vaccari's use of pepper balls was not in compliance with standard police

23    practices does not make it so.  (PAMF 443[3]).  Plaintiffs do not cite to any case law

24    that prohibits the use of a pepper ball gun under these circumstances.  Further,

25

26        [3] Roger Clark, without citation to any evidence except SBSD guidelines states in

27    a declaration that Sergeant Vaccari violated standard police practices when he

28    deployed pepper balls to strike Puga.  (Clark Decl. ¶ 12).

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1    Plaintiffs' claims that the use of the pepper ball launcher violated San Bernardino

2    policies is not sufficient to create a triable issue of a constitutional claim or to

3    overcome qualified immunity.   *Davis v. Scherer*, 468 U.S. 183, 194, (1984)

4    ("Officials sued for constitutional violations do not lose their qualified immunity

5    merely because their conduct violates some [local] statutory or administrative

6    provision.").

7            **3.  Vaccari's Use of the Taser was Reasonable**

8            The taser was used when Puga had fallen on his hands and did not comply with

9    commands and still believed to be in possession of a firearm.   There is no case law

10   that indicates use of a taser when a suspect is still be armed is unreasonable.   The law

11   does not require Defendants to wait to see what action Plaintiff may take next.   *See*,

12   *Wilkinson*, 610 F.3d at 553 ("'the Fourth Amendment does not require omniscience,'

13   and absolute certainty of harm need not precede an act of self-protection.") (citation

14   omitted).

15   **C. COUNTY DEPUTIES ARE ENTITLED TO QUALIFIED**

16   **    IMMUNITY**

17           A Section 1983 plaintiff must point to case law that states "a clearly established

18   rule prohibiting the [public employee] from acting as he did . . . [i]n the ***circumstances***

19   ***presented*** to the [employee]."  *Saucier v. Katz*, 533 U.S. 194, 209 (2001) (emphasis

20   added).  "This requires a high 'degree of specificity'" (*District of Columbia v. Wesby*,

21   138 S.Ct. 577, 590 (2018))(citations omitted), inasmuch as qualified immunity is a

22   "fact-specific, highly contextualized" inquiry.  *Hamby v. Hammond*, 821 F.3d 1085,

23   1092 (9th Cir. 2016); *see*, *White v. Pauly*, 137 S.Ct. 548, 552 (2017) ("As this Court

24   explained decades ago, the clearly established law must be 'particularized' to the facts

25   of the case."); *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017)

26   ("Plaintiffs must point to prior case law that articulates a constitutional rule specific

27   enough to alert these [public employees] *in this case* that *their particular conduct* was

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

unlawful.") (italics original).    A plaintiff must cite ***pre-incident*** case law whose factual particulars and holdings made the illegality of the public employee's conduct "beyond debate" at the time s/he acted.  *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011); *see*, *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504 (2019)("existing precedent must place the lawfulness of the particular [action] beyond debate . . . ")

While Plaintiffs broadly claim that an officer cannot shoot a suspect in the back, the cases cited are divorced from the realities presented by Puga here.  There is simply no precedent that indicates a deputy cannot fire upon a person who draws his firearm and has not vocalized his surrender in any way.  *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1072 (S.D. Cal. 1994) ("[A]n officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack.  In these circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer.").  There is likewise no case law that requires warnings be given when a suspect reaches in his waistband and pulls out a firearm nor were there any facts presented her that a warning was feasible.

There is also no clearly established case law that would prohibit Deputy Adams from firing at a suspect who was running away or even on the ground but still holding his firearm with the ability to shoot it and/or take hostages.  *Orn v. City of Tacoma,* 949 F.3d 1167, 1174 (9th Cir. 2020)(officers may use force in fleeing suspect where the suspect still poses a threat of serious physical harm, either to the officer or to others.)

Further, the evidence is clear that Deputy Adams' shots did not strike Puga once on the ground.  (UMF 183-188).

Plaintiffs cite to *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) that qualified immunity should be denied.  In *Curnow* there were several material issues of fact from the initial reason to enter the house, for which

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

the victim said no crime was committed, to the reason the officer fired upon the suspect, for which the victim also said the suspect did not arm himself until the officer fired upon him.  This case is starkly different given the video evidence, all five police officers, and all lay witnesses in a position to see gave the exact same account that Puga reached for his waistband and then law enforcement fired.  Plaintiffs also cite to *Lopez v. City of Riverside*, 2023 WL 8433959, at *1 (9th Cir. Dec. 5, 2023)[4], however in *Lopez*, the body worn camera confirmed that the suspect put his empty hands up before being fired upon.

Plaintiffs also cite to *Est. of Risher v. City of Los Angeles*, 2020 WL 5377306, at *10 (C.D. Cal. July 29, 2020), however, in this case the suspect was running away from the officers during the entire foot pursuit, with no evidence of a gun.

Plaintiffs next cite to *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1076-77 (9th Cir. 2017).  In *Zion*, the suspect stabbed a deputy in the arms and ran away.  Lethal force was used, and the suspect fell down, but the deputy then ran and shot the suspect multiple times, emptying his weapon and stomped on his head three times.  Nothing even close occurred here.

Next in *Murillo v. City of Los Angeles*, 707 F. Supp. 3d 947, 964 (C.D. Cal. 2023)[5] the Court found the *Graham* factors weighed in favor of officers using deadly force against a suspect who was threatening the safety of his family and armed with at least a knife, however, the final shot was discharged after the decedent was already on the ground, which created a triable issue.  In the case at bar, there is no evidence Adams fired any shots after Puga was already on the ground nor that Puga was impacted by any of Adams shots when he was on the ground or that a suspect with a

---

[4] *Lopez* occurred after the incident involving Puga, therefore cannot be relied upon to defeat qualified immunity. *Ashcroft*, 563 U.S. at 741.

[5] *Murillo* occurred after the incident involving Puga, therefore cannot be relied upon to defeat qualified immunity.  *Ashcroft*, 563 U.S. at 741.

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1  gun as opposed to a knife cannot still be a threat while on the ground.

2  Lastly, in *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018) that

3  Plaintiffs cite, when the suspect ran and was shot in the back, he did not reach for or

4  display a firearm.

5  Likewise, there is no clearly established case law that would have put Vaccari

6  on notice that using pepper balls to extract a non-compliant Puga from the vehicle

7  was inappropriate when case law is to the contrary. *Alford v. Humboldt County*, 785

8  F.Supp.2d 867, 872, 877-79 (Court found deputies entitled to qualified immunity for

9  using chemical agents to evacuate a barricaded suspect potentially armed with a lethal

10  weapon).  Plaintiffs repeatedly state Vaccari intentionally shot Puga with the pepper

11  balls but the undisputed evidence is that Vaccari would deploy pepper balls, then

12  provide Puga time to comply with commands, and when he did not Vaccari would

13  deploy more pepper balls to get him to evacuate the vehicle.  (UMF 69-71 – all

14  undisputed).  Further, Vaccari stopped firing pepper balls as soon as there was any

15  indication Puga may have been hit by a pepper ball.  (UMF 74-75 – undisputed).

16  **D. PLAINTIFFS DO NOT HAVE EVIDENCE TO SUPPORT THEIR**
17  **STATE CLAIMS**

18  **A. Reasonableness of Force Disposes with State Claims**

19  Plaintiffs have presented no evidence nor case law that holds County

20  Defendants liable for excessive force pursuant to 42 U.S.C. § 1983, as detailed above,

21  therefore their state claims for Battery, Negligence, and Bane Act/Cal. Civ. Code §

22  52.1 must also fail.  Consistent with a wealth of federal authority, summary judgment

23  affirming the reasonableness of force used dispenses with each of these concomitant

24  state law claims. *See, e.g,. Moore v. City of Berkley*, 2016 WL 6024530, at *7 (N.D.

25  Cal. 2016) ("In California, state law claims for wrongful death and battery at the hands

26  of the police rise and fall with federal Section 1983 claims. [Citations]. The same is

27  true for a Bane Act claim, which requires a civil rights violation 'by threat,

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY**
**ADJUDICATION**

1  intimidation, or coercion.' [Citation].  Because the arrest and use of force did not

2  violate Moore's Fourth Amendment rights, all three claims fall away."); *Donaldson*

3  *v. United States*, 2018 WL 1089986, at *13 (S.D. Cal. 2018) ("As with negligence,

4  claims of excessive force under California law are analyzed under the same standard

5  of objective reasonableness used in Fourth Amendment claims.") (citations omitted);

6  *Sorgen v. City & County of San Francisco*, 2006 WL 2583683, at *9 (N.D. Cal. 2006)

7  ("[T]he law governing Plaintiff's state law claim for assault and battery/excessive

8  force is the same as that used to analyze Plaintiff's [federal] claim for excessive

9  force…. Accordingly, Plaintiffs' claim of battery under state law fails for the same

10 reasons [as his federal claim]…."); *Watkins v. City of San Jose*, 2017 WL 1739159,

11 at *20 (N.D. Cal., 2017) ("The California Court of Appeal has held that a

12 determination that an officer's use of deadly force is objectively reasonable under §

13 1983 precludes negligence, assault, and battery claims.") (citing *Brown v. Ransweiler*,

14 171 Cal.App.4th 516, 533 (2009) (finding that negligence and assault and battery

15 claims were defeated through an analysis identical to the § 1983 standard)); *Watkins*,

16 2017 1739159, at *20 (Moreover, negligence and assault claims are both subject to

17 California Penal Code 196 [concerning justifiable homicide]….  'There can be no

18 civil liability under California law as the result of a justifiable homicide.'") (citing

19 *Brown*, 171 Cal.App.4th at 533)); *accord Susag v. City of Lake Forest*, 94 Cal.App.4th

20 1401, 1412-1413 (2002) ("[I]t appears unsound to distinguish between Section 1983

21 and state law claims arising from the same alleged misconduct.").

22     Because Plaintiffs have presented no evidence nor case law that holds County

23 Defendants liable for excessive force pursuant to 42 U.S.C. § 1983, their state claims

24 likewise should be dismissed.

25  **B. THERE IS NO EVIDENCE THE COUNTY DEFENDANTS' PRE-**

26      **SHOOTING TACTICS WERE NEGLIGENT**

27     None of the laundry list of negligent tactics put forth here with respect to Sgt.

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

Vaccari and/or Adams, places their conduct outside the realm of reason.  This issue is not whether a "better" approach could have been used, but whether the conduct was reasonable.  *Brown v. Ransweiler,* 171 Cal. App. 4th 516, 537-538 (2009) ("As long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in successful apprehension of a violent suspect, in order to avoid liability for negligence"); *see Golick,* 82 App. 5th at 1148 ("'In volatile situations, one can always argue that the arrival of police officers caused incremental increase in tension at the scene, and thus increased the risk of injury occurring, and whenever tragedy ensues one can argue that a different police response would have produced a better outcome.  But this sort of speculative, after-action critique falls short" in subjecting an officer to tort liability for negligence).

For example, Plaintiffs argue that CHP and County Defendants were negligent in not developing a tactical plan of what to do when Puga exited the car.  However, it would have been impossible to develop a plan that would or could account for all the variables such as Puga running to the front of the vehicle.  Further it is undisputed that the County Defendants did in fact formulate a plan as to how to approach Puga once he was out of the vehicle. (UMF 118-Undisputed).  Developing a plan of approach based on Puga's conduct was clearly within the realm of reason.

Next Plaintiffs argue that Sergeant Vaccari was negligent because he did not call SWAT.  Setting aside the pure speculation that SWAT would have arrived in time or engaged Puga differently, it was again not outside of the realm of reason for five officers to engage a single suspect, without waiting for SWAT or additional units.  Likewise, Plaintiffs contend that the officers erred by not evacuating the neighborhood again without any evidence that it was outside the realm of reason to leave individuals inside their homes instead of outside and exposed.  Finally, it was

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

1  not outside the realm of reason for the officers to leave cover and approach Puga when

2  he moved to a position of advantage in front of the vehicle where they could no longer

3  see him clearly.  Finally, it was not outside the realm of reason to fail to give a warning

4  when the officers did not know Puga would reach down and pull out a gun.

## C. PLAINTIFFS DID NOT SUBSTANTIALLY COMPLY WITH THE TORT CLAIMS ACT

7  Plaintiffs argue they substantially complied with the Tort Claims Act, however,

8  unlike the cases cited, Plaintiffs entirely omit any mention of less lethal force or tactics

9  used, which is a large part of their theory of liability against the County Defendants,

10  and their only theory of liability against Sergeant Vaccari specifically.

11  If a plaintiff "relies on more than one theory of recovery against the

12  [governmental entity], each cause of action must have been reflected in a timely claim.

13  In addition, the factual circumstances set forth in the written claim must correspond

14  with the facts alleged in the complaint." *Dixon v. City of Livermore*, 127 Cal.App.4th

15  32, 40 (2005).  A claim for Negligence in the shooting of Puga is not the same as a

16  claim for negligent pre-shooting tactics and the use of entirely different levels of

17  force.

18  Plaintiffs cite to *White v. Superior Court*, 225 Cal.App.3d 1505, 1507, 1508,

19  1511 (1990) to claim they substantially complied with the Tort Claims Act

20  presentation requirements.  In *White*, the same facts were relied upon in the

21  government tort claim and the additional claim Plaintiff later wanted to bring.

22  However, in the case at bar, major facts are missing from the tort claim, including any

23  mention of the pepper ball launcher and the taser, which is an entirely different theory

24  of liability than what is contained within the tort claim concerning the shooting.

25  "The claim filing requirement of the Government Claims Act serves several

26  purposes: (1) to provide the public entity with sufficient information to allow it to

27  make a thorough investigation of the matter; (2) to facilitate settlement of meritorious

28

**COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION**

claims; (3) to enable the public entity to engage in fiscal planning; and (4) to avoid similar liability in the future." *Page v. MiraCosta Community College Dist.*, 180 Cal.App.4th 471, 493 (2009) (quoting *Westcon*, 152 Cal.App.4th at 202). The County was deprived of this opportunity to investigate.

As to the use of the taser and the pepper ball launcher, such theories of liability were also omitted from the Third Amended Complaint as already detailed above and in Defendants' moving papers.

## VI.   CONCLUSION

For the reasons stated herein and the reasons stated in the County Defendants moving papers, this Court should grant summary judgment and enter judgment in favor of Defendants.  Fed. R. Civ. P.  56.

DATED:  March 6, 2025                       **LYNBERG & WATKINS**
                                            A Professional Corporation


                                    By:  /s/ Shannon L. Gustafson
                                         **SHANNON L. GUSTAFSON**
                                         **AMY R. MARGOLIES**
                                         **ANITA K. CLARKE**
                                         Attorneys for Defendant,
                                         COUNTY OF SAN BERNARDINO
                                         ROBERT VACCARI, and JAKE ADAMS

1

## **CERTIFICATE OF COMPLIANCE**

2    The undersigned, counsel of record for County of San Bernardino, Deputy

3 Jake Adams, and Sergeant Robert Vaccari certify that this brief contains 7,000

4 words, which:

5    ▉ complies with the word limit of L.R. 11-6.1.

6    ☐ complies with the word limit set by court order dated _____.

7 DATED:  March 6, 2025             **LYNBERG & WATKINS**
                                   A Professional Corporation
8

9

10                           By:   /s/ Shannon L. Gustafson
                                   Shannon L. Gustafson
11                                 Amy R. Margolies
                                   Anita K. Clarke
12                                 Attorneys for Defendants, COUNTY OF
                                   SAN BERNARDINO, ROBERT
13                                 VACCARI and JAKE ADAMS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY
ADJUDICATION