SHANNON L. GUSTAFSON (SBN 228856)
sgustafson@lynberg.com
AMY R. MARGOLIES (SBN 283471)
amargolies@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendant, COUNTY OF SAN BERNARDINO, ROBERT VACCARI, and JAKE ADAMS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Mr. Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Mr. Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Mr. Puga; and ANTONIA SALAS UBALDO, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive, <br><br> Defendants. | CASE NO. 5:22-cv-00949-KK-(SHKx) <br><br> *Assigned for All Purposes to:* <br> Hon. Kenly K. Kato – Courtroom 3 <br><br> **COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT REGARDING PORTIONS OF ROGER CLARK'S OPINIONS; MEMORANDUM OF POINTS AND AUHTORITIES** <br><br> Date:  May 15, 2025 <br> Time:  9:30 a.m. <br> Courtroom:  3 <br><br> *Trial Date:*  June 2, 2025 <br><br> *Complaint filed: 06/07/2022* <br> *FAC filed:  10/18/22* <br> *SAC filed:  01/13/23* <br> *TAC filed:  05/12/23* |

1

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT REGARDING ROGER CLARK'S OPINIONS; MEMORANDUM OF POINTS AND AUHTORITIES**

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at the Pretrial Conference on May 15, 2025[1] at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, located at 3470 12th Street, Riverside, CA 92501, Defendant's COUNTY OF SAN BERNARDINO, ROBERT VACCARI, and JAKE ADAMS (hereinafter "County Defendants") will, and hereby do, move the Court *in limine*, before jury selection or commencement of trial, for an order that Plaintiffs and Plaintiffs' counsel be precluded from referring to, or using any pleading, testimony, remarks, questions, or arguments which might inform the jury of portions of Roger Clark's opinions or report, preclude Roger Clark from testifying, and exclude Roger Clark's expert report as to the matters addressed in this Motion.

## DEFENDANTS' MOTION IS MADE ON EACH OF THE FOLLOWING GROUNDS:

Certain opinions offered by Roger Clark's report do not meet the standard of admissibility for expert testimony and/or are not relevant to any of the issues being decided in this case and are therefore excludable. *Fed. R. Evid.* 702, 401 and 403.

Defendants' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Shannon L. Gustafson and exhibits, the papers and records on files herein, and upon such further oral and documentary evidence as may properly come before the Court.

---

[1] County Defendants' (County of San Bernardino, Jake Adams, and Robert Vaccari) have reached a tentative resolution subject to Board of Supervisor approval on April 29, 2025, as set forth in the parties Joint Report on Settlement. However, in an abundance of caution because the trial date is still set for June 2, 2025, County Defendants are submitting this filing to be in compliance with the Court's Scheduling Order in the event that the tentative settlement is not finalized.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which included Defense counsel sending email correspondence on April 7, 2025, which detailed the grounds for their motions *in limine* which was then followed up with a video conference with all parties on April 11, 2025. Plaintiffs' counsel opposes this motion *in limine*.

DATED: April 17, 2025

**LYNBERG & WATKINS**
A Professional Corporation

By: */s/Shannon L. Gustafson*
**SHANNON L. GUSTAFSON**
**AMY R. MARGOLIES**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO
ROBERT VACCARI, and JAKE ADAMS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs have retained purported police practices expert, Roger Clark to opine that the tactics used by Defendants prior to and during the shooting did not comport with accepted standards of practice that would be expected from a reasonably well trained officer confronted with the circumstances here. However, through Roger Clark's opinions as stated in his Rule 26 report and confirmed during his deposition, he intends to far exceed the scope of his permissible expert testimony in several key respects on matters that he is either not qualified as an expert and/or are outside the bounds of permissible expert testimony by invading the province of the jury and/or concerning matters that are irrelevant. As such, for the reasons set forth herein, such opinions should be excluded.

## II. LEGAL STANDARD

Fed. R. Evid. Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. Rule 702 also provides that a witness may be qualified as an expert if "the testimony is based on sufficient facts or data." "Where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). If the testimonial evidence fails in this regard, the expert opinion is inadmissible. *Id.* In short, expert testimony must be both helpful and reliable.

"In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence." *In re Countrywide Fin. Corp. Mortgage-Backed Sec.*

*Litig.*, 984 F.Supp.2d 1021, 1026 (C.D. Cal. 2013); (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  The offering party must show by a preponderance of the evidence, that (1) the expert is **_qualified_** to render the opinion; and (2) the opinion offered has adequate factual and scientific support for that opinion. *Daubert*, 509 U.S. at 592-93. "[A] witness may offer an expert opinion so long as it meets the "scientific knowledge" and relevance requirements of Rule 702 and Daubert." *Beard v. United States Postal Service*, 2019 WL 257978 (N.D. Cal. Jan. 18, 2019) at *3.  However, "expert testimony 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *Beard v. United States Postal Service*, 2019 WL 257978 (N.D. Cal. Jan. 18, 2019) (quoting *Daubert*, 509 U.S. at 595 (citation omitted).  Accordingly, in *Daubert v. Merrell Dow Pharms.*, *Inc*., 509 U.S. 579, 589 (1993), the Supreme Court directed trial judges to exercise their "gatekeeping responsibility" to ensure that expert testimony be "not only relevant, but reliable."  "The proponent of the witness bears the burden of establishing an expert's qualifications, reliability, and helpfulness." *In Re REMEC Inc. Securities Litigation*, 702 F.Supp.2d 1202, 1217 (S.D. Cal. 2010).  "Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported **_speculation and subjective beliefs_**." *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001)(emphasis added); *see Daubert*, 509 U.S. at 590.

Further, even if the standards are met under *Daubert* and Fed.R.Evid. 702, "[o]therwise admissible expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay." *CFM Communications, LLC v. Mitts Telecasting Co.*, 424 F.Supp.2d 1229, 1236 (E.D. 2005) citing *United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir.1993); *see* Fed. R. Evid. 403.

Several of Clark's opinions as set forth below, fail to meet this standard.

### III. CLARK'S PEPPER BALL OPINIONS SHOULD BE EXCLUDED

It is undisputed that in their efforts to have Puga exit his vehicle, Sergeant Vaccari deployed several volleys of pepper balls into the vehicle at various times. When this was ineffective, Sergeant Vaccari attempted to strike Puga with a pepper ball to gain compliance. While Sergeant Vaccari testified that he was not aiming for Puga's head, Puga exclaimed on the video that he was struck in the eye and another witness indicated that they saw an injury above Puga's eye later when he exited the vehicle. From this evidence, Clark has offered his Opinion 1 that "[i]n consideration of all the evidence reviewed, Sergeant Vaccari's deployment of the pepper balls to strike Mr. Puga violated standard police practices and training." (Gustafson Decl. ¶2- Exhibit A). To reach this conclusion, Clark merely regurgitated what he read in the San Bernardino policies compared it to the evidence he reviewed and then then opined that the evidence as he understood it, does not comply with what he read in the policies. (Exhibit A- Opinion 1).

However, Clark candidly admitted at deposition that he has ***no*** specialized knowledge or training with respect to the use of a pepper ball launcher and therefore cannot qualify as an expert to render any opinions regarding the proper use of this particular weapon. *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001)("Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs.").

While Clark has set forth his opinion that Sergeant Vaccari's deployment of the pepper balls to strike Puga violated ***standard police practice and training***, he has not established that he has any specialized knowledge in the standard practice and training for the use of that particular weapon. Specifically, Clark has ***zero*** experience in how

a pepper ball launcher operates, the effective range, or its accuracy to support his opinions that Vaccari's use of it was inappropriate here. Rather, Clark candidly admitted at deposition that pepper ball launchers were not in use when he was a law enforcement officer and that he has never even taken a class as to how the weapon is used. (Exhibit B – Clark Deposition: 27:11-16, 31:14-17). In fact, Clark's **_singular_** experience with an actual pepper ball launcher came when he test fired it once over ten years ago. (Exhibit B- Clark Depo 27:14-28:5)[2]. Again his "test fires" more than a decade ago, do not establish he has any specialized knowledge of the standards in police practices in training for this weapon sufficient to opine on them. Clark's only other stated experience comes in the form of shooting paint ball guns with his grandkids, but he cannot state how a recreational paint ball gun is different from an approved law enforcement pepper ball launcher, like the one used by Sergeant Vaccari. (Exhibit B- Clark Depo- 28:6-30:13). Respectfully, Clark's recreational activities with a paint ball gun make him no more qualified than a juror to assess the actions of Sergeant Vaccari.

The jury can read the policy of the San Bernardino Sheriff's Department, the same as Clark, and evaluate the witness testimony, the same as Clark, and decide for themselves whether the use of force was reasonable based on this Court's jury instructions on the law. There is no special expertise that Clark has on this subject. On the other hand, allowing Clark to testify as a credentialed retirement law enforcement officer gives undue weight to his opinions even though he has no

---

[2] Clark claimed that his one time testing was accepted by the 9th Circuit. However, the two 9th Circuit opinions involving *Nelson v. City of Davis* which are over ten years old, do not include any analysis as to Clark's qualifications as an expert and therefore it is unclear if his qualifications were even challenged under Fed.R.Evid. 702, let alone approved by the court. *See, Nelson v. City of Davis* 685 F.3d 867 (9th Cir. 2012) and *Nelson v. City of Davis* 571 F.3d 924 (9th Cir. 2009)

7
**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT REGARDING ROGER CLARK'S OPINIONS; MEMORANDUM OF POINTS AND AUHTORITIES**

expertise in this area and would therefore be unfairly prejudicial to Sergeant Vaccari. *See,* Fed. R. Evid. 702, 403.

Further, Clark should not be allowed to simply regurgitate the testimony of other witnesses and then speculate that Puga must have been shot in the eye. The witnesses themselves can provide their testimony for the jury to assess whether Puga was struck in the eye with a pepper ball, without Clark's assistance. *Fed. R. Evid*. 403.

## IV.    CLARK'S LEGAL CONCLUSIONS SHOULD BE EXCLUDED

By rule, "an expert witness cannot give an opinion as to [his] *legal conclusion*, which is effectively an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis in original). Courts thus frequently bar experts from "employ[ing] judicially defined and/or legally specialized terms in expressing [their] opinions." *See, Monroe v. Griffin*, 2015 WL 5258115, at *6–7 (N.D. Cal. 2015) (preventing Roger Clark from using terms such as "grossly unlawful, **unnecessary,** and excessive violence")(emphasis added); *Valtierra v. City of Los Angeles*, 99 F.Supp.3d 1190, 1198 (C.D. Cal. 2015) (preventing Clark from testifying that "the use of force was 'excessive' or 'unreasonable,' under the circumstances"). This is so because such "opinions" generally are not helpful to the trier of fact. *Valtierra, supra*, 99 F.Supp.3d at 1198 (finding "several of [Roger] Clark's opinions, as currently formulated, are not helpful to the jury because they constitute impermissible legal conclusions."). In the context of "excessive force" cases like this one, "an expert's 'opinion as to what "current law" "mandates" or whether defendants were "legally" "justified" in using the force applied against [the plaintiff] usurps the jury's role.'" *Godinez v. Huerta,* 2018 WL 2018048, at *5 (S.D. Cal. 2018) (internal citations omitted).

Unfortunately, this is not the first time Clark has attempted to invade the province of the jury by telling them which result to reach through legal conclusions

couched as "opinions." Thankfully, district courts have been diligent in limiting his attempts to offer impermissible "opinion" evidence. *Cooke v. City of Stockton*, 2017 WL 5447999, at *5 (E.D. Cal. 2017) ("[Roger] Clark may not use judicially defined or legally specialized terms in providing his opinions. Thus, Clark may not opine as to whether the officers used 'excessive force,' or whether their use of force was 'unreasonable under the circumstances.' These are legal conclusions drawn from disputed facts; in other words, they preemptively answer questions the jury, not Clark, must resolve."); *Godinez, supra*, 2018 WL 2018048, at *5 (precluding Roger Clark from expressing any opinions in "use of force" case "using judicially defined or legally specialized terms"); *Colbert v. Cty. of Kern*, 2015 WL 8214204, at *2 (E.D. Cal. 2015) (precluding Roger Clark from "testify[ing] that using the taser in the circumstances confronting [the defendant] was excessive or unreasonable or the like."); *accord Rascon v. Brookins*, 2018 WL 739696, *4 (D. Ariz. Feb. 7, 2018) (cautioning that "[Mr. Clark] should not volunteer an opinion that the officers acted unconstitutionally or exercised excessive force. Legal opinions or conclusions are excluded from Clark's testimony").

This Court should follow the lead of the many district courts cited herein and preclude Clark from using similar terms during his testimony here that are riddled throughout the opinions in his expert report and will undoubtedly be uttered at trial:

1) Opinion 1: Puga did not pose an ***immediate threat*** of death or serious bodily injury" when the pepper balls were deployed.

2) Opinion 3: Puga "***did not present an immediate threat or serious bodily injury***" as he was running, and an officer's "overreaction" in using deadly force is "***excessive force.***"

3) Opinion 4: Puga was "***no longer an immediate threat of death or serious bodily injury***" after he had fallen to the ground.

9
**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT REGARDING ROGER CLARK'S OPINIONS; MEMORANDUM OF POINTS AND AUHTORITIES**

4) Opinion 6: he repeatedly referenced the officers' "***unnecessary use***" of lethal force.

(Gustafson Decl. ¶ 2, Exhibit A – Opinion 1, 3, 4, and 6)

It is for the jury to determine whether Puga was an ***imminent threat*** and whether the use of force was ***excessive or unnecessary***, not Clark. This Court should therefore order Clark to not use specialized legal terms that are for the jury to decide such as whether the force was excessive, unnecessary or unreasonable or whether Puga posed an imminent threat and instead he should be ordered to limit his opinions as to what would be expected of a reasonably trained officer under the circumstances.

V.  **CLARK'S COMMENTARY ON THE VIDEO ARE INADMISSIBLE**

Clark's purported "expertise" is police practices, not forensic video analysis and editing. (Gustafson Decl. ¶ 4, Exhibit C –Clark's CV). As such, he is not qualified to opine as an expert in video analysis and yet several of opines sound it large part as to what he himself hears or sees on the video. *See Fed. R. Evid*. 702.

For example, Clark has offered the opinion that there were 15 rounds fired ***after*** Puga fell to the ground based only on the ***sounds*** he heard in the video. (Exhibit B – Clark Deposition: 124-25:125:21, Exhibit A- Opinion 4). However, even Plaintiff's "video" expert could not confirm that all the sounds equate to gunshots. (Exhibit G- Kimmis Depo 91:9-17; 95:10-20; 99: 20-25; 100:1-20). If Plaintiff's video expert cannot make this leap, certainly Clark should be excluded from offering any testimony as to the number of shots fired ***after*** Puga was on the ground. There are also other examples of Clark merely narrating the video in his opinions which should not be permitted as follows:

1) Opinion 3- "The video shows Mr. Puga running straight ahead, with both arms pumping back and forth in a running motion, never turning around towards the officers and never pointing either had back toward the officers." The jury can see

Puga's actions and make their own determinations.

2) Clark testified on several occasions that he cannot see the gun in the video, despite testimony of the law enforcement officers and other witnesses that there was a gun in Puga's hand, essentially replacing his video review observations for the witness testimony. (Exhibit B- Clark Depo- 66:2-11; 67:2-15; 73:5-17). The jury can review the video and listen to the witness testimony and make their own determination.

3) "In the video, Deputy Adams appears to reach the portion of the curb where the painted curb meets the unpainted curb at the time the shots started and the front passenger door was open during their approach and during the shooting. Subsequent pictures taken of the scene show the part where the painted curb meets the unpainted curb lines up with the rear of the right back tire of the Expedition." (Exhibit A- Clark Report)- Again Clark is not a video expert and distances in videos and photographs can be distorted. As such, Clark should not be permitted to use his personal observations of the video and photos to opinion on the position of Adams or Vaccari at the time of the shooting. This is outside his area of expertise.

Because the jury can plainly see and hear for themselves, Clark's narrations when he has no specialized video expertise are far from helpful and should be excluded. See *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 843 (9th Cir. 1995) (expert testimony "as to what could be heard in a tape-recorded conversation" was properly excluded because "hearing is within the ability and experience of the trier of fact."); *United States v. Fernandez*, 134 F.3d 379, *4 (9th Cir. 1998) (unpublished) (affirming exclusion of expert testimony because "[a] jury would be just as capable of examining a still photo.")

Clark should be limited to providing opinions as to what a reasonably well trained officer would be expected to do through hypothetical questions as opposed to

providing testimony about the evidence based on his review of the video.

## VI. CLARK'S OPINION 4 IS SPECULATIVE

Clark offers his conclusory opinion 4 that "Office Rublacava, Officer Blacwood, Sergeant Kee **and** Deputy Adams violated standard police practices and training when they shot at Mr. Puga after he had fallen to the ground." (Exhibit A- Opinion 4). This opinion implies that all four officers fired shots during this time frame. However, Clark confirmed at deposition that he ***could not state*** which officers fired after Puga was on the ground. (Exhibit B – Clark Deposition: 77:11-13). As such, this opinion is speculative and he should not be permitted to opine that all four officers continued to shoot after Puga was on the ground.

## VII. CLARK'S OPINIONS 8, 9, 10 ARE IRRELEVANT

Clark's opinions 8, 9, and 10 refer to the Bottens, which have filed a separate lawsuit against Defendants. Indeed, Plaintiffs' attempt to consolidate these cases were previously rejected by the court. (Gustafson Decl. ¶ 5, Exhibit D – Civil Minutes Order regarding Consolidation). Despite the court's articulation that consolidating the cases for trial would not promote judicial convenience and any convenience is outweighed by prejudice and confusion, Plaintiff is trying to reinsert their claims through the opinions of Clark.

During the meet and confer, Plaintiffs conceded that Opinion 8 was largely irrelevant, except that they still intended to use the portion where Clark opines "a reasonable officer facing the facts and circumstances confronting the involved officers knew or should have known that there were innocent bystanders in the residential homes surrounding the incident location in the middle of the night." (Gustafson Decl. ¶ 6, Exhibit E – Email). However, even this limited opinion is unnecessary to assist the trier of fact. The jury will see through photographs that there are homes in close proximity to the shooting and will be advised this occurred in the

early morning, when people are typically at home.

As to opinions 9 and 10 Plaintiff refused to stipulate to exclude them on the grounds that they "relate to the officers' tactics." (Exhibit E). However, Clark's opinions reference the tactics leading up to the shooting of Puga are already extensively set out in Opinion 6. In contrast, Opinion 9 deals specifically with an opinion that Defendants did not clear their background such that the Bottens were injured and Opinion 10 focuses on the failure to evacuate the neighborhood and set up a perimeter again resulting in injuries to the Bottens. (Exhibit A).

However, whether the officers used "bad" tactics generally or with regard specifically to the safety of the Botten family simply has no relevance to this matter where the jury is being asked to decide whether the officers used excessive force on **_Puga_** and/or whether their pre-shooting tactics were negligent thereby causing **_Puga_** to be shot. There is nothing in the failure to clear background, or to set up a perimeter that bears on these issues. The relevant inquiry under *Graham v. Connor*, 490 U.S. 386 (1989), is whether the force used against Puga a was objectively reasonable under the totality of the circumstances confronting the defendants at the time. Whether the Bottens felt free to leave their residence, the Bottens' injuries themselves, and Defendants' alleged failure to evacuate the neighborhood, are entirely irrelevant and an undue consumption of time. *See Fed. R. Evid.* 403. Moreover, should the focus be on the Bottens and their injuries, as well as expert testimony as to what could have been done to prevent it, the jury may become angry over what happened with the Bottens and conclude in hindsight the shooting of Puga was not justified resulting in unfair prejudice. Fed. R. Evid. 403.

VIII. **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion *in limine*

COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT REGARDING ROGER CLARK'S OPINIONS; MEMORANDUM OF POINTS AND AUHTORITIES

DATED: April 17, 2025

**LYNBERG & WATKINS**
A Professional Corporation

By: */s/Shannon L. Gustafson*
**SHANNON L. GUSTAFSON**
**AMY R. MARGOLIES**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO
ROBERT VACCARI, and JAKE ADAMS

**COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT REGARDING ROGER CLARK'S OPINIONS; MEMORANDUM OF POINTS AND AUHTORITIES**

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of San Bernardino and Deputy Breana Fite, certifies that this brief contains 3,236 words, which:

x complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated .

DATED: April 17, 2025            **LYNBERG & WATKINS**
                                 A Professional Corporation

                                 By: /s/ Shannon L. Gustafson
                                 **SHANNON L. GUSTAFSON**
                                 **AMY R. MARGOLIES**
                                 Attorneys for Defendant,
                                 COUNTY OF SAN BERNARDINO
                                 ROBERT VACCARI, and JAKE ADAMS

15
COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE, ARGUMENT REGARDING ROGER CLARK'S OPINIONS; MEMORANDUM OF POINTS AND AUHTORITIES