|   |   |
|---|---|
| 1 | ROB BONTA<br>Attorney General of California |
| 2 | NORMAN D. MORRISON<br>Supervising Deputy Attorney General |
| 3 | DIANA ESQUIVEL<br>Deputy Attorney General |
| 4 | State Bar No. 202954 |
| 5 | 1300 I Street, Suite 125<br>P.O. Box 944255 |
| 6 | Sacramento, CA 94244-2550<br>Telephone: (916) 210-7320 |
| 7 | Facsimile: (916) 322-8288<br>E-mail: Diana.Esquivel@doj.ca.gov |
| 8 | *Attorneys for Defendants State of California, by and through the California Highway Patrol, Blackwood,* |
| 9 | *Kee, and Rubalcava* |

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN-RIVERSIDE DIVISION

| | |
|---|---|
| **L.C.,**<br><br>                                Plaintiffs,<br><br>    v.<br><br>**STATE OF CALIFORNIA, et al.,**<br><br>                                Defendants. | No. 5:22-cv-00949 KK-SHKx<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT MATTHEW KIMMINS AND TO EXCLUDE HIS VIDEOS; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION**<br><br>Date:            May 15, 2025<br>Time:           9:30 a.m.<br>Courtroom:  3 (3rd Floor)<br>Judge:          Honorable Kenly Kiya Kato<br>Trial Date:   June 2, 2025<br>Action Filed: June 7, 2022 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 15, 2025, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the above-entitled court, before the Honorable Kenly Kiya Kato, Defendants will move the Court, pursuant

| | |
|---|---|
| 1 | to Federal Rule of Evidence 702, for an order to exclude or limit the testimony and |
| 2 | opinions of Plaintiffs' video analysis/graphics expert, Matthew Kimmins, and the |
| 3 | two video compilations he created, on the grounds that his testimony and opinions |
| 4 | are speculative, unreliable, lack foundation, and will not be helpful to the jury. |

The motion is based on this Notice, the attached Memorandum of Points and Authorities, the attached Declaration of Diana Esquivel, the pleadings, records, and files in this action, and such other matters as may properly come before the Court.

**Informal resolution efforts**. As required under the Court's Standing Order in Civil Actions and Local Rule 7-16, the parties met and conferred prior to the filing of this motion. (Esquivel Decl. ¶ 2.)

Dated: April 17, 2025

Respectfully submitted,

R OB B ONTA
Attorney General of California
N ORMAN D. M ORRISON
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

D IANA E SQUIVEL
Deputy Attorney General
*Attorneys for Defendants State of Cal., by and through the Cal. Highway Patrol, Blackwood, Kee, and Rubalcava*

LA2022603031
38956023.docx

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Decedent Hector Puga, wanted for shooting a gun at a complete stranger during a road-rage incident on the freeway, led law enforcement in an hour-long pursuit through residential neighborhoods at speeds ranging from 50 to 90 mph. Puga then orchestrated an hour-long standoff where law enforcement exhausted less lethal force and employed various negotiation tactics to no avail. Puga eventually exited his vehicle and then pulled a gun from his waistband and fired at the officers. Law enforcement returned fire. Puga died at the scene. Law enforcement dashcams and individuals residing in the area using their cellphones captured video footage of the incident.

Plaintiffs retained video analysis and graphics expert, Matthew Kimmins, to create two videos using the available footage of the incident which Plaintiffs seek to introduce into evidence or show to the jury at trial. (Kimmins Report, attached as Ex. A at pp. 5-6.) The first video, entitled "Puga Compilation Video R6.mp4" (Timeline-Composition video), depicts the incident from different angles simultaneously. (*Id*.) However, this video includes the following commentary which Mr. Kimmins believes is being depicted at the times specified:

| Video Timer | Comments Appearing in Video |
|---|---|
| 0:00:00-0:00:24 | 02:59 Hector Puga is currently stopped by Police after a chase |
| 0:04:59-05:29 | 03:04 Pepper Balls are deployed, disorienting Puga |
| 0:26:06-26:28 | 03:32 Puga screams in pain and wipes his eyes due to gas |
| 0:28:43-29:05 | 03:35 Puga wipes his eyes due to gas |
| 0:31:00-31:45 | 03:37 Puga throwing out clothes he used to wipe his eyes |
| 0:32:31-32:55 | 03:38 Puga continues to wipe his eyes with clothing |
| 0:34:57-35:35 | 03:40 Puga slowly gets out of the vehicle |
| 0:35:46-36:23 | 03:42 Puga steps out of the vehicle |

| Video Timer | Comments Appearing in Video |
|---|---|
| 0:37:41-38:21 | 03:43 With his hands up, Puga walks to the front of the vehicle |
| 0:38:57-39:20 | 03:45 Puga complies with commands to put his hands on his head |
| 0:41:49-42:12 | 03:47 Puga drops his right hand down to his waist before bringing it back up again |
| 0:42:15-42:37 | 03:48 Police fires at Puga |
| 0:42:37-42:48 | 03:49 Puga is downed |
| 0:42:50-43:39 | 03:50 Screams are heard, 3 People have been shot |
| 0:43:41-44:31 | 03:51 Son, mom, and dad have been shot, "Blood Everywhere" |

The second video, entitled "Post Fall Bullet Count Video R1.mp4" (Shot-Count video), is Mr. Kimmins' attempt to count the number of shots fired at Puga after he went down to the ground. (*Id.* at p. 6.)

Defendants move to exclude both videos and Mr. Kimmins' opinions as to what the videos are depicting and his opinion of the number of gunshot fired after Puga went down to the ground because his testimony, commentary, and Shot-Count video are unreliable, speculative, and are not helpful to the jury. As Mr. Kimmins' report and deposition make clear, he is merely commenting on what he sees occurring in the incident footage without any video enhancement, and he is simply guessing at the number of shots heard in the original footage.

## ARGUMENT

Federal Rule of Evidence 702 authorizes the use of expert testimony where the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993), the Supreme Court held that expert scientific testimony is admissible under Rule 702 if it is both relevant and reliable. *See also, Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (extending *Daubert* to all expert testimony where the testimony is based on technical and other specialized

knowledge). The trial court acts as a "gatekeeper" in determining whether the two-prong *Daubert* test has been met and, in so doing, the focus of the inquiry must be on the principles and methodology underlying an expert's testimony, not on his conclusion. *Daubert*, at 580. "The expert's testimony must be based on 'scientific knowledge' which implies 'a grounding in the methods and procedures of science,' that is, it must connote 'more than subjective belief or unsupported speculation.'" *Id*. at 590. The Ninth Circuit described the gatekeeping function concerning the reliability factor as "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Kennedy v. Collagen Corp*., 161 F.3d 1226, 1228 (9th Cir. 1998), *cert. denied* 526 U.S. 1099 (1999). Simply stated, an expert should be excluded if he lacks "good grounds" for his conclusions. *In re Paoli R.R. Yard PCB Lit*., 35 F.3d 717, 746 (3d Cir. 1994).

"The reliability threshold requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Messick v. Novartis Pharm. Corp*., 747 F.3d 1193, 1197 (9th Cir. 2014), quoting *Kumho Tire Co., Ltd*., 526 U.S. at 149. Expert opinion or evidence is deemed reliable if the principles and methodology used by the expert proffering it are grounded in the methods of science. *Daubert*, 509 U.S. at 592-95. In *Daubert*, the Supreme Court provided a non-exhaustive list of factors for determining whether expert testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id*. at 593-94.

The relevant prong for expert testimony is satisfied if the testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995). An expert's testimony must assist

the trier of fact and relate to, or "fit," the underlying facts of the case. *Daubert*, 509 U.S. at 591. Critical to the determination of whether expert testimony is relevant is whether it is helpful to the jury. *U.S. v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993); *U.S. v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986) ("The general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony."). Expert testimony is unnecessary "if all the primary facts can be accurately and intelligibly described to the jury, and if they . . . are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). In other words, "[c]ourts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 609 (8th Cir. 2020) (internal quotation marks and citation omitted). This "safeguards against the risk that the jury might defer to the expert simply because of the expert's expertise in other areas." *Id*. As the Court in *Barillas v. City of L.A.*, No. CV 18-08740-CJC (ASx), 2021 WL 4434977, at *9 (C.D. Cal. Apr. 12, 2021), recognized:

> Expert testimony is admissible when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is not helpful to the trier of fact and is thus inadmissible when it does not rely on scientific, technical, or other specialized knowledge. Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc., 2020 WL 2553181, at *6 (S.D. Cal. May 20, 2020) ("Expert testimony is inadmissible if it addresses lay matters which a jury is capable of understanding and deciding without the expert's help.").

The proponent of the expert testimony has the burden of proving admissibility. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Here, Mr. Kimmins concedes that his commentary in the Timeline-Composition video is his description of what an average juror or judge would see or hear when watching the video and that he was not "drawing or trying to draw any type of conclusion, just note what we are observing." (Kimmins Dep. 45:18-46:12, 109:16-113:1, attached as Ex. B.) He did not enhance, filter, or change the original videos. (*Id*. 103:7-19, 108:6-9.) He further concedes that the number of gunshots reflected in the Shot-Count video is not accurate and is simply his "best educated guess" because of the echo in the audio recordings; he admits that a forensic audio expert is needed to achieve an accurate count. (*Id*. 91:9-95:8, 99:15-101:18.)

Mr. Kimmins' opinions, including his testimony about what he believes certain video footage shows, derives merely from human observation, not any specialized skill. A narration of video footage that a jury can plainly see and hear for themselves falls far short of helpful, and thus admissible, "expert" testimony. *Beech Aircraft Corp. v. U.S.*, 51 F.3d 834, 843 (9th Cir. 1995) (expert testimony "as to what could be heard in a tape-recorded conversation" was properly excluded because "hearing is within the ability and experience of the trier of fact."); *see also, U.S. v. Fernandez*, 134 F.3d 379, *4 (9th Cir. 1998) (unpublished) (affirming exclusion of expert testimony because "[a] jury would be just as capable of examining a still photo.") Indeed, in *Choate v. City of Gardner*, 2020 U.S. Dist. WL 774097 (D. Kan. Feb. 18, 2020), the district court in Kansas was presented with a similar motion in limine to exclude the testimony of both the plaintiff and defense experts, including Jason Latham, on the ground that the "jury can decide what the videos and photographs shows as easily as the experts can." *Id*. at * 2; *see also National R.R. Passenger Corp. v. Cimarron Crossing Feeders*, 2018 WL 5962876 at * 30 (D. Kan. Nov. 14, 2018) (subjective impression of what is seen in a video, if unsupported by scientific data or testing, is not helpful to the jury).

The Timeline-Composition and Shot-Count videos fall within the same category of evidence as that in the above cases. Mr. Kimmins' commentary and

1. shot count simply reflect his observation of the video footage, without enhancement or modification, and "educated guess" as to the number of shots fired, which he admits he is not qualified to accurately provide. Because Mr. Kimmins' opinions and commentary are not based on any scientific or technical methodology, they are not helpful to the trier of fact. It should be up to the jury to decide what they are seeing and hearing, and they should not be told by an expert what they should see or hear.

## CONCLUSION

Mr. Kimmins' opinions and commentary about what the incident videos depict or show are neither relevant nor reliable. The Court should therefore exclude his videos and exclude or limit Mr. Kimmins' testimony about the incident footage depicts.

Dated: April 17, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants State, Blackwood, Kee, and Rubalcava*

LA2022603031
38956023.docx

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants State of California, Blackwood, Kee, and Rubalcava, certifies that this brief contains 2,543 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 17, 2025                    */s/ Diana Esquivel*
                                        Diana Esquivel

# DECLARATION OF DIANA ESQUIVEL

I, Diana Esquivel, declare:

1. I am admitted to practice law in California and before this Court, and am a Deputy Attorney General with the Office of the Attorney General for the State of California, attorneys of record for Defendants State of California, by and through the California Highway Patrol, Michael Blackwood, Isaiah Kee, and Bernardo Rubalcava (State Defendants).

2. As required in the Court's Standing Order and Local Rule 7-16, the parties meet and conferred on the issues presented in this motion as well as the other issues the parties identified as matters that would be subject to motions in limine. On April 7, 2025, the parties exchanged e-mails, listing the motions in limine they intended to file. The parties discussed the factual and legal basis for their respective motion by video conference on April 11. Over the course of the following days, the parties exchanged additional e-mails concerning their position on certain issues. The parties were unable to agree on the issues raised in this motion in limine.

3. Exhibit A is a copy of the relevant portion of Mr. Kimmins' expert report disclosed in this matter. In addition to the report, Plaintiffs also produced two videos (entitled "Pl Expert1-Post Fall Bullet Count Video R1.mp4" and "Pl Expert2-Puga Compilation Video R6.mp4") that Mr. Kimmins created, as referenced in his report. True copies of these videos are being manually lodged with the Court.

4. Exhibit B are excerpts of the relevant portions of the condensed transcript of Mr. Kimmins' deposition testimony, taken on March 4, 2025, in this matter.

///
///
///
///

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing statements are true and correct.

Dated:  April 17, 2025                    */s/ Diana Esquivel*
                                                              Diana Esquivel