**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
L.C., I.H., A.L., and Antonia Salas Ubaldo

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive, <br><br> Defendants. | Case No. 5:22-cv-00949-KK-SHK <br><br> *Honorable Kenly Kiya Kato* <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, ALLEGED GANG AFFILIATION, AND POTENTIAL CHARGES AND SENTENCING HAD DECEDENT SURVIVED** <br><br> DATE:       May 15, 2025 <br> TIME:       10:30 a.m. <br> CTRM:      3 <br><br> TRIAL:      June 2, 2025 |

1  **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS**

2  **OF RECORD:**

3      **PLEASE TAKE NOTICE THAT** that Plaintiffs hereby move *in limine* for

4  an order excluding any evidence, testimony, argument, or reference at trial to Hector

5  Puga's ("Mr. Puga") criminal history, prior contacts with law enforcement, alleged

6  gang affiliation and specific details of any alleged crime that was unknown to the

7  involved at the time of the incident and any potential criminal charges that could

8  have been brought had Mr. Puga survived and related terms of sentencing and

9  incarceration under Federal Rules of Evidence 401, 402, 403, and 404.

10      **Statement of Local Rule 7-3 Compliance**: This motion is made following a

11  conference of counsel during which no resolution could be reached.

12      This Motion is based on this Notice of Motion, the Memorandum of Points

13  and Authorities, the records and files of this Court, and upon such other oral and

14  documentary evidence as may be presented at the time of the hearing.

15

16  DATED:  April 17, 2025          LAW OFFICES OF DALE K. GALIPO

17

18                                By_____/s/ Hang D. Le_____
                                     Dale K. Galipo
19                                   Hang D. Le
                                     Attorneys for Plaintiffs
20

21

22

23

24

25

26

27

28

# I.    **INTRODUCTION**

This civil rights case arises out of the officer-involved incident with Hector Puga on February 17, 2021, that resulted in Mr. Puga's death. None of the involved officers had ever encountered Mr. Puga nor knew anything about him except that he matched the description of a suspect in a prior freeway shooting. Plaintiffs—Mr. Puga's children and his mother—are proceeding to trial on claims for (1) Excessive Force under the Fourth Amendment, pursuant to 42 U.S.C. 7 1983; (2) Unlawful Interference of Familial Relationship under the Fourteenth Amendment, pursuant to 42 U.S.C. 7 1983; (3) Battery under California law; (4) Negligence under California law; and (5) Violation of California Civil Code section 52.1 (Bane Act). As explained herein, the jury's evaluation of Plaintiffs' core claims can only be based on the information known to the defendant officers at the time they used force.

Accordingly, through this Motion, Plaintiffs seek to exclude at trial evidence and argument regarding details of Mr. Puga's criminal history, prior contacts with law enforcement, court cases and restraining orders related to this criminal history and these law enforcement contacts, periods of incarceration, and speculative opinions regarding criminal charges Mr. Puga could have faced and his sentencing exposure based on the charges and his criminal history. Among other things, Plaintiffs anticipate that Defendants will seek to introduce evidence that Mr. Puga had previously been arrest and convicted for a number of charges; had a previous encounter with the Los Angeles Police Department in which he allegedly kidnapped his then-wife Yobanna, was involved in a vehicle pursuit, pulled a fake gun and pointed it at officers, was shot by officers, and was subsequently convicted as a result of the incident and sentenced to six years in prison; had experienced periods of incarceration due to the other convictions; was on active parole at the time of the incident; had two active court ordered restraining orders against him at the time of the incident; and had three active warrants for his arrest for felon in possession of ammunition, convict in possession of a firearm, and a parole violation at the time of

the incident. Plaintiffs further anticipate that Defendants will seek to introduce evidence regarding Mr. Puga's encounter with law enforcement approximately two days prior to the incident, Mr. Puga's contact with his sisters, Nancy Juarez and Gabriela Salas relating to the law enforcement encounter, and law enforcement's subsequent contact with the sisters related to the encounter; as well as testimony regarding the details of the alleged freeway shooting that occurred on January 16, 2021 from the victim and responding officer that were not relayed to the involved officers and thus, unknown to the involved officers at the time of the incident.

Such information was unknown to the officers during their encounter with Mr. Puga, is likely to unduly prejudice the jury against Mr. Puga and Plaintiffs, and constitutes improper character evidence. Accordingly, Plaintiffs seek to exclude the references to or argument concerning the following evidence and related details[1] contained therein, at trial:

- July 2005, December 2005, and December 2006 arrests with Long Beach Police Department (LBPD) when Mr. Puga was a minor.
- August 2007, October 2007, and April 2008 arrests with LBPD.
- May 2008 arrest with LBPD and related conviction.
- January 2010 arrest with LBPD and related conviction.
- April 2011 arrest with LBPD and related citation.
- May 2011 arrest with LBPD and related conviction.
- July 2011 arrest with LBPD and related conviction.
- October 2012 contact with Los Angeles County Sheriff's Department (LASD) and resulting citation.
- January 2013 contact with LBPD and resulting citation.

---

[1] The details of some of the encounters Mr. Puga had with law enforcement are also subject a separate motion *in limine* on the basis that the evidence was disclosed after the fact-discovery cut-off.

- March 2014 contact with California Highway Patrol (CHP) and resulting citation.
- May 2014 and June 2014 contacts with Los Angeles Police Department (LAPD) and resulting citations.
- July 2014 conviction.
- March 2015 encounter and arrest with LAPD and related conviction.
- July 2018 arrest with LASD.
- January 2019 conviction.
- December 2020 contact with LBPD.
- Restraining orders issued against Mr. Puga.
- Active warrants at the time of Mr. Puga's death and details of the offenses for the warrants.
- Periods of incarceration, parole, and probation, including that Mr. Puga was on active parole with the California Department of Corrections (CDC) at the time of his death.
- Alleged gang affiliation and related "AKAs" and monikers.
- Mr. Puga's encounter with LASD a few days prior to the incident, Mr. Puga subsequent contact with his sisters related to the LASD encounter, and Mr. Puga's sisters' subsequent contact with LASD related to the encounter.
- Details of the alleged freeway shooting that occurred on February 16, 2021, that was unknown to the officers at the time of the incident.
- Speculative opinions from defense expert Joshua Peter Visco, Esq. regarding the criminal charges Mr. Puga could have faced related to the incident had he survived, including the likelihood of sentencing ranges and sentencing exposure.[2]
- Defense experts' opinions related to or based on Mr. Puga's criminal history or prior contacts with law enforcement.

---

[2] Mr. Visco's opinions rely in part on evidence that was produced after the fact-discovery cut-off, which is the subject of a separate motion *in limine*.

## II.    **ARGUMENT**

### A. Information Unknown to Defendant Officers is Not Relevant

Under Federal Rule of Evidence 401, evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action." Fed. R. Evid. 401(a). Evidence that is not relevant is inadmissible. Fed. R. Evid. 402. In determining whether an officer's use of force was objectively reasonable, trial courts and juries must confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). The "reasonableness" standard is an objective one. *Kingsley v. Hendrickson*, 576 U. S. 389, 402 (2015).

The Ninth Circuit has held that information unknown to an officer at the time of his use of force — including information acquired after the incident by investigators or during discovery — cannot be considered. *Glenn v. Washington County*, 673 F.3d 864, 873 (9th Cir. 2011). In *Glenn*, unbeknownst to the shooting officer at the time of the incident, a witness had told a 911 operator that the suspect "was threatening to kill everybody" and might "run at the cops with a knife." *Id.* The Ninth Circuit flatly rejected the district court's "suggestion that . . . these statements provided 'uncontroverted evidence demonstrat[ing] that the officers' safety concerns were not at odds with information provided to law enforcement." *Id.* at 873 n.8. The Court explained that "[w]e cannot consider evidence of which the officers were unaware--the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." *Id.* (quoting *Graham*, 490 U.S. at 396). Accordingly, juries in the Ninth Circuit are expressly instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene," based on "the facts known to the officer." Ninth

Circuit Model Jury Instruction 9.25.

The relevant legal issue is thus whether Defendants' use of force against Mr. Puga was "'objectively reasonable' in light of the facts and circumstances confronting them." *See Graham*, 490 U.S. at 397. The reasonableness analysis must be based only "upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001); *see Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) ("[W]e can only consider the circumstances of which [the officers] were aware when they employed deadly force"). Here, the defendant officers pursued and attempted to apprehend Mr. Puga based on the Mr. Puga and his vehicle matching the description of a suspect of an earlier freeway shooting. The Defendants did not know Mr. Puga prior to January 17, 2021, and they had no knowledge of any other aspects of his criminal history or of any other prior bad acts, arrests, law enforcement contacts, or court records. Presentation to the jury of evidence or argument on these subjects would allow the jury to expand the scope of its excessive force analysis, which is impermissible under *Graham* and related precedent, and therefore is not relevant and should be excluded.

### B. Evidence of Decedent's Criminal History, Prior Contacts with Law Enforcement is Unfairly Prejudicial

Exposing the jury to information that was unknown to the officers at the time of the shooting would unduly prejudice Plaintiffs by creating a substantial risk of a decision by the jury on an improper basis. Rule 403 provides for the exclusion even of relevant evidence "if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, [and/or] misleading the jury..." Evidence is unfairly prejudicial if it creates an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *see Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

1    Evidence regarding a party's negative criminal history is particularly

2  susceptible to improper use or consideration by juries. "As the Ninth Circuit has

3  explained, 'evidence of other crimes or wrong acts is not looked upon with favor

4  and must be carefully scrutinized to determine probative value.'" *Hermosillo v.*

5  *County of San Bernardino*, 2017 WL 5479645, at *2 (C.D. Cal. Feb. 16, 2017)

6  (quoting *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1979)); *see id.*

7  (finding "that any probative value regarding [decedent's] prior arrests (as opposed to

8  convictions) or the nature of the outstanding warrant would be substantially

9  outweighed by the significant risk of unfair prejudice to plaintiffs"); *see also*

10  *Jackson v. City of Gahanna*, 2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011)

11  ("Allowing evidence of the illegal items seized from the Plaintiff . . . would

12  undermine the protections of the Fourth Amendment by permitting the jury to infer

13  that the Plaintiff's culpability or status as a presumed drug dealer justify the

14  Defendant's use of force against him."). "[E]ven a murderer has a right to be free

15  from [civil rights violations] and the correlative right to present his claim[s] of

16  [violations] to a jury that has not been whipped into a frenzy of hatred." *Wilson v.*

17  *City of Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993).

18    Details regarding Mr. Puga's criminal history and prior contacts with law

19  enforcement of which the defendant officers were unaware at the time they used

20  force against him are likely to lead the jury to an improper, emotional decision.

21  Allowing the jury to hear testimony or evidence regarding unrelated arrests,

22  convictions, periods of incarceration, and encounters with law enforcement —

23  details that are wholly irrelevant, as explained above — would create a significant

24  risk of prejudice based on jurors' views of the propriety of Mr. Puga's past decisions

25  or what they perceive to be his morals or quality of character. Introduction of such

26  evidence risks the jury impermissibly deciding the reasonableness of the officers'

27  force based on its view of who Mr. Puga was as a person, or based on a desire to

28  punish Mr. Purga (or not "reward" Plaintiffs, his heirs), rather than on the

circumstances facing and known to the officers at the time. *See Engman v. City of Ontario*, 2011 WL 2463178, at *10 (C.D. Cal. June 20, 2011) ("even if the evidence of plaintiffs' prior convictions and bad acts were admissible for a non-character purpose, the probative value of such evidence is substantially outweighed by the unfair prejudice to plaintiffs" under Rule 403); *Hosey v. City of Los Angeles*, 2011 WL 13213573, at *5 (C.D. Cal. Feb. 25, 2011) (explaining, in § 1983 case arising from domestic violence call, that evidence plaintiff had been in prior domestic arguments "that involved 'some shoving'" was "substantially prejudicial" and that "[t]here is a substantial risk that the jury may infer from th[at] fact ... that plaintiff engaged in acts of domestic violence on the day of the incident," and excluding evidence under Rule 403 after "[b]alancing the substantial risk of unfair prejudice against the minimally probative value of the evidence").

Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *see Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (en banc). The central factual dispute in this case is whether Mr. Puga posed an immediate threat of death or serious bodily injury to anyone when the officers fired at Mr. Puga. Refuting the inferences of criminal liability and character deficits would necessitate several mini trials on collateral issues that have nothing to do with the central factual dispute, thereby "confusing the issues, misleading the jury," Fed. R. Evid. 403, "turn[ing] the trial of defendants into a trial of [decedent]," *Wilson*, 6 F.3d at 1236, and depriving Plaintiff of a fair trial, *Blancha*, 972 F.2d at 516.

### C. Decedent's Criminal History, Prior Contacts with Law Enforcement are Improper Character Evidence

Under the Federal Rules of Evidence, Rule 404, many of the foregoing items of evidence Plaintiffs seek to exclude cannot be used to prove that Mr. Puga acted in

conformity with some general "bad character" during the incident. Rule 404(a)(1) specifically prohibits character evidence, stating that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Further, Ninth Circuit case law is clear that character evidence is normally not admissible in a civil rights case. *See Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," *i.e.*, an essential element of a charge, claim, or defense, for character evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002). Character is not an essential element in any claim or defense to be tried in this matter. For example, testimony or evidence from information gathered after the incident relating to any unknown history or other crimes, wrongs, or acts, or investigative findings poses a danger that the jury will (1) improperly infer that defendant officers knew this information, (2) improperly infer that Mr. Puga had the propensity to act violently or recklessly toward the defendant officers, and (3) reach a verdict that does not reflect the circumstances facing the officers at the time.

Rule 404 is most implicated by Defendants' intention to introduce evidence of (a) details regarding Mr. Puga's 2015 encounter with LAPD in which he allegedly shot a fake gun with blanks at officers, was shot by officers, and resulting conviction and incarceration; (b) details regarding Mr. Puga's encounter with LAPD approximately two days prior to the incident in which he allegedly had a gun and fled from officers, and related interactions Mr. Puga's sisters had with Mr. Puga and LAPD; (c) and details regarding the February 16, 2021 freeway shooting that was not relayed to the involved officers. Such evidence cannot be used to show Decedent's character or that he acted in conformity therewith. *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) (excluding "any circumstantial evidence that requires an inference of a person's character to make it relevant"). Moreover, any argument that this evidence is admissible under Rule 404(b)(2) or

406 is unavailing. Admission of the information unknown, including as listed
herein, would be nothing more than a backdoor attempt to tarnish Decedent's
character and pollute the jury against him.

To the extent that Defendants argue such evidence is relevant pursuant to
*Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009), subsequent
cases within the Ninth Circuit have limited *Boyd*'s holding to a specific set of
circumstances that are not present here. As another court in this district recognized,
"[i]n Boyd, we have a traumatic life-changing event that caused the amputation of
both of the decedent's legs 'that could be tied to police action,' which made it more
likely that [the decedent] resolved to place liability for his death on the police, and
"there was evidence that [the decedent] was arrested three days prior while
performing a 'practice run' during which he exclaimed "kill me," and the decedent
"was aware of the substantial damages his family could receive if the police were
found liable for his death." *Shirar v. Guerrero*, No. EDCV13906JGBDTBX, 2017
WL 6001270, at *10 (C.D. Cal. Aug. 2, 2017). And, "[s]ince *Boyd*, the Ninth Circuit
appears to have retreated somewhat from its holding." *Estate of Tindle v. Mateu*,
No. 18-CV-05755-YGR, 2020 WL 5760287, at *11 (N.D. Cal. Sept. 28, 2020)
(citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013);
*Glenn.*, 673 F.3d at 873 n.8; *see Morad v. City of Long Beach*, No.
CV166785MWFAJWX, 2018 WL 11352372, at *6 (C.D. Cal. June 15, 2018)
(recognizing that it was "apparent that the Ninth Circuit has clarified its position on
unknown, preshooting knowledge, holding that it is inadmissible to establish the
reasonableness of an officer's conduct."); *Ruvalcaba v. City of Los Angeles*, No.
2:12-CV-06683-ODW, 2014 WL 4426303, at *2 (C.D. Cal. Sept. 8, 2014) (same).
Additionally, this incident was captured on video from several different sources, at
several different angles, which will allow the jury to decide for themselves as to
whether the officers correctly perceived Mr. Puga to be an imminent threat at the
time of the shooting, without the need for extrinsic evidence. *See Estate of Tindle*,

2020 WL 5760287, at *12 (finding that *Boyd* did not require the admission of evidence unknown to the officer that the decedent possessed or fired a gun just prior to the officer's arrival because the officer's body camera captured the entire incident such that there was no material dispute as to the conduct of decedent and the officers before and at the time of the shooting, and therefore, information unknown to the officer had little to no probative value on the question of whether the officer correctly perceived the decedent to be an imminent threat).

Therefore, the above-mentioned evidence regarding details of Mr. Puga's criminal history that were unknown to the officers are not a permitted exception to the general rule against character evidence and should be excluded. *See* Fed. R. Evid. 405, Adv. Comm. Notes (stating specific instances of conduct "possess the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time").

### D. Conditional Request for Bifurcation of Liability and Damages

Should the Court find that some evidence of Mr. Puga's criminal history, or evidence related to his criminal history or possible charges and sentencing had he survived may have some relevance on the basis of damages, Plaintiffs request that the Court bifurcate trial into to phases: liability and damages. The Ninth Circuit has observed that "where…graphic and prejudicial evidence about the victim has little, and in large part no, relevant to the liability issue, district courts should bifurcate to avoid [prejudicial error]"). *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016)

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' Motion in Limine No. 1 to exclude criminal history, prior contacts with law enforcement, alleged gang affiliation and specific details of any alleged crime that was unknown to the involved at the time of the incident and any potential criminal charges that could have been brought had Mr. Puga survived and related terms of sentencing and incarceration in its entirety.

1    DATED:  April 17, 2025              LAW OFFICES OF DALE K. GALIPO

2

3                                        By _____ /s/ Hang D. Le _____
                                            Dale K. Galipo
4                                           Hang D. Le
                                            Attorneys for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28