**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
L.C., I.H., A.L., and Antonia Salas Ubaldo

# UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually;<br><br>                    Plaintiffs,<br>vs.<br><br>STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive,<br><br>                    Defendants. | Case No. 5:22-cv-00949-KK-SHK<br><br>*Honorable Kenly Kiya Kato*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE REGARDING DECEDENTS' ALLEGED HISTORY OF DRUGS AND ALCOHOL USE THAT WAS UNKNOWN TO THE OFFICERS**<br><br>DATE:  May 15, 2025<br>TIME:  10:30 a.m.<br>CTRM:  3<br><br>TRIAL: June 2, 2025 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that Plaintiffs hereby move *in limine* for an order excluding any evidence, testimony, argument, or reference at trial to Hector Puga's ("Decedent") Mr. Puga's history of drugs and alcohol use that was unknown to the involved officers at the time of the incident, including the toxicology report findings, Mr. Puga's alleged frequency of alcohol consumption, any prior drug and/or alcohol related law enforcement contacts, and any defense expert opinions related to or based on Mr. Puga's alleged use of drugs or alcohol that was unknown to the officers under Federal Rules of Evidence 401, 402, 403, and 404.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which no resolution could be reached.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: April 17, 2025                LAW OFFICES OF DALE K. GALIPO

                                     By            */s/ Hang D. Le*
                                        Dale K. Galipo
                                        Hang D. Le
                                        Attorneys for Plaintiffs

## I. INTRODUCTION

The defendant officers who encountered Mr. Puga on February 17, 2021 had never encountered him before and did not know anything about him prior to what they observed during the incident—with the exception of limited information they received regarding an alleged freeway shooting that occurred the day prior and that Mr. Puga and the vehicle he was driving possibly matched the description of the vehicle and suspect involved in the freeway shooting. As explained herein, the jury's evaluation of Plaintiffs' core claims can only be based on the information known to the defendant officers at the time they used force.

Accordingly, through this Motion, Plaintiffs seek to exclude at trial evidence, argument, and references to the following:

- Mr. Puga's history of drugs and alcohol use that was unknown to the involved officers at the time of the incident;
- Toxicology report findings;
- Mr. Puga's alleged frequency of alcohol consumption;
- Any prior drug and/or alcohol related law enforcement contacts;
- Any and all defense expert opinions related to or based on Mr. Puga's alleged use of drugs or alcohol that was unknown to the officers, which includes:
  - County defense psychologist expert Dr. Kris Mohandie's opinions that Mr. Puga had an alcohol use disorder; tested positive for alcohol at a level above the legal limit; his chronic use of alcohol increased the risk of a suicide attempt; Mr. Puga was under the influence of methamphetamine and tested positive for recent and significant methamphetamine use; his behavior was consistent with intoxication and a significant and severe methamphetamine addiction; his documented behavior is consistent with his methamphetamine and alcohol intoxication; Mr. Puga's homicidal and suicidal state of mind and unwillingness to submit to arrest was fueled by methamphetamine and alcohol intoxication; and at the time of his death, Mr. Puga likely had a severe

methamphetamine use disorder and severe alcohol use disorder (*see* Mohandie Report at 29, 35, 36-37, 39);

o County defense police practices expert Ken Hubb's opinion that Mr. Puga's actions were consistent with chronic drug abuse, he displayed symptoms of stimulant drug use, he displayed symptoms of methamphetamine psychosis, and that the postmortem toxicology analysis showed that he tested positive for the presence of methamphetamine and alcohol (*see* Hubbs Report at 67-68); and

o County defense toxicologist expert Dr. Richard Clark's opinions regarding the behavioral, psychological, and toxic effects of methamphetamines and alcohol on Mr. Puga based on Dr. Clark's review of the toxicology report. (*See* Clark Report).

Such information was unknown to the officers during their encounter with Mr. Puga, is likely to unduly prejudice the jury against Mr. Puga and Plaintiffs, and constitutes improper character evidence. The only information the involved officers had related to this category of evidence was that they allegedly observed Mr. Puga consuming alcohol while he was inside his disabled SUV and observed Mr. Puga throwing out empty cans and cartons of beer. Anything outside of what the involved officers knew at the time of the incident and observed during the incident related to alcohol and drugs should be excluded.

**II.      ARGUMENT**

**A. Information Unknown to Defendant Officers is Not Relevant**

Under Federal Rule of Evidence 401, evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action." Fed. R. Evid. 401(a). Evidence that is not relevant is inadmissible. Fed. R. Evid. 402. In determining whether an officer's use of force was objectively reasonable, trial courts and juries must confine their inquiry to the information known to the officer at the

time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). The "reasonableness" standard is an objective one. *Kingsley v. Hendrickson*, 576 U. S. 389, 402 (2015).

The Ninth Circuit has held that information unknown to an officer at the time of his use of force — including information acquired after the incident by investigators or during discovery — cannot be considered. *Glenn v. Washington County*, 673 F.3d 864, 873 (9th Cir. 2011). In *Glenn*, officers used a beanbag gun to shoot a man with a knife who was threatening suicide. Unbeknownst to the shooting officer at the time of the incident, a witness had told a 911 operator that the suspect "was threatening to kill everybody" and might "run at the cops with a knife." *Id.* The Ninth Circuit flatly rejected the district court's "suggestion that . . . these statements provided 'uncontroverted evidence demonstrat[ing] that the officers' safety concerns were not at odds with information provided to law enforcement." *Id.* at 873 n.8. The Court explained that "[w]e cannot consider evidence of which the officers were unaware--the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." *Id.* (quoting *Graham*, 490 U.S. at 396). Accordingly, juries in the Ninth Circuit are expressly instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene," based on "the facts known to the officer." Ninth Circuit Model Jury Instruction 9.25.

The relevant legal issue is thus whether Defendants' use of force against Mr. Puga was "'objectively reasonable' in light of the facts and circumstances confronting them." *See Graham*, 490 U.S. at 397. The reasonableness analysis must be based only "upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001); *see Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) ("[W]e can only consider the circumstances of

which [the officers] were aware when they employed deadly force").

Here, the defendant officers pursued and attempted to apprehend Mr. Puga based on the Mr. Puga and his vehicle matching the description of a suspect of an earlier freeway shooting. The Defendants did not know Mr. Puga prior to January 17, 2021, and they had no knowledge of his alleged history of drug or alcohol use nor did they know the level of drugs or alcohol in his system at the time of the incident.

To the extent that Defendants argue such evidence is relevant pursuant to *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009), to argue that such evidence is relevant to show intent or motive where what the officer perceived just prior to the use of force is in dispute, subsequent cases within the Ninth Circuit have limited *Boyd*'s holding to a specific set of circumstances that are not present here. As another court in this district recognized, "[i]n Boyd, we have a traumatic life-changing event that caused the amputation of both of the decedent's legs 'that could be tied to police action,' which made it more likely that [the decedent] resolved to place liability for his death on the police, and "there was evidence that [the decedent] was arrested three days prior while performing a 'practice run' during which he exclaimed "kill me," and the decedent "was aware of the substantial damages his family could receive if the police were found liable for his death." *Shirar v. Guerrero*, No. EDCV13906JGBDTBX, 2017 WL 6001270, at *10 (C.D. Cal. Aug. 2, 2017). And, "[s]ince *Boyd*, the Ninth Circuit appears to have retreated somewhat from its holding." *Estate of Tindle v. Mateu*, No. 18-CV-05755-YGR, 2020 WL 5760287, at *11 (N.D. Cal. Sept. 28, 2020) (citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013); *Glenn.*, 673 F.3d at 873 n.8; *see Morad v. City of Long Beach*, No. CV166785MWFAJWX, 2018 WL 11352372, at *6 (C.D. Cal. June 15, 2018) (recognizing that it was "apparent that the Ninth Circuit has clarified its position on unknown, preshooting knowledge, holding that it is inadmissible to establish the reasonableness of an officer's conduct."); *Ruvalcaba*

*v. City of Los Angeles*, No. 2:12-CV-06683-ODW, 2014 WL 4426303, at *2 (C.D. Cal. Sept. 8, 2014) (same).

To the extent that Defendants argue that evidence regarding Mr. Puga's alleged use of drugs and alcohol should be admissible under under *Boyd* because found in *Boyd* that the district court did not abuse its discretion in admitting of evidence that the decedent was on drugs in order to corroborate the officers' observations of his alleged erratic behavior in relation to the defense's suicide by cop theory that was disputed by the plaintiffs, courts have declined to extend *Boyd* to cases where video recording of the incident and relevant conduct in dispute exists such that prejudicial evidence would have little to no probative value. In *Estate of Tindle v. Mateu*, the district court found that *Boyd* did not require the admission of evidence unknown to the officer that the decedent possessed or fired a gun just prior to the officer's arrival because the officer's body camera captured the entire incident such that there was no material dispute as to the conduct of decedent and the officers before and at the time of the shooting, and therefore, information unknown to the officer had little to no probative value on the question of whether the officer correctly perceived the decedent to be an imminent threat at the time of the shooting. 2020 WL 5760287, at *11-12. In *Estate of O'Brien v. City of Livingston*, the district court found that any probative value of the toxicology report regarding the decedent's blood alcohol and methamphetamine levels was substantially outweighed by the risk of unfair prejudice and misleading the jury because there was no significant dispute as to what occurred during the decedent's encounter with law enforcement officers due to video from the officer's dash camera capturing the almost the entire incident. *Est. of O'Brien v. City of Livingston*, No. CV 18-106-BLG-TJC, 2021 WL 3565574, at *2 (D. Mont. Aug. 12, 2021). The *Estate of O'Brien* court further conclude that "[t]he reason *why* O'Brien may have acted as he did has little probative value relative to all the facts and circumstances surrounding the shooting." *Id.* (emphasis in original). Lastly, in *I.H. v. State of California*, the

district court concluded that evidence of the decedent's use of drugs and alcohol on the day of the incident had almost no probative value to support the officers' testimony that the decedent was driving erratically in light of video footage of the pursuit that was entered into evidence and played for the jury. *I.H., et al v. State of California, et al.*, No. 2:19-cv-02343-DAD-AC, 2025 WL 661995 (E.D. Cal. Feb. 18, 2025).

This incident—from the pursuit to the shooting—was captured on video, from several different sources, at several different angles, which will allow the jury view the conduct the officers alleged to be erratic and to decide for themselves as to whether the officers correctly perceived Mr. Puga to be an imminent threat of death or serious bodily at the time of the shooting. Thus, evidence of Mr. Puga's history of drug and/or alcohol use that was unknown to the officers, including the toxicology report, has no likelihood of proving any material facts relevant to Plaintiffs' claims and would be highly prejudicial. As such, such evidence of information unknown to the officers at the time they detained and used force against Mr. Puga is not relevant and should be excluded, as it would not make any fact of consequence in determining this action more or less probable. Fed R. Evid. 401.

### B. Evidence of Decedent's Alleged History of Drug and/or Alcohol Use is Unfairly Prejudicial

Exposing the jury to information regarding Mr. Puga's alleged history of drug and/or alcohol use that was unknown to the officers at the time of the incident would unduly prejudice Plaintiffs by creating a substantial risk of a decision by the jury on an improper basis. Rule 403 provides for the exclusion even of relevant evidence "if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, [and/or] misleading the jury..." Evidence is unfairly prejudicial if it creates an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *see Larez v. City of Los Angeles*, 946 F.2d 630, 642

n.5 (9th Cir. 1991) (evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *see Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (en banc). The central factual dispute in this case is whether Mr. Puga posed an immediate threat of death or serious bodily injury to anyone when the officers fired at Mr. Puga.

Refuting the inferences that Defendants may attempt to raise regarding Mr. Puga's consumption of alcohol or drug use will necessitate a mini-trial on collateral issues that have nothing to do with the central factual dispute, which will unduly consume this Court's and the jury's time. There would also be a substantial risk of an additionally mini-trial regarding any past use of drugs and/or alcohol. This evidence will further distract the jury from the central issues at hand, confuse the jury as to what the issues are, and mislead the jury in making a finding based on irrelevant collateral issues.

Further, evidence of history of drugs and/or alcohol use can only serve to unjustly inflame a jury's passions and prejudices against Mr. Puga. The inflammatory evidence is likely to mislead or confuse the jury into reaching a verdict that reflects its consideration of Mr. Puga's history of drugs and/or alcohol use as a reason justifying the use of force against him, or limiting Plaintiffs' damages on an improper basis. Mr. Puga is not on trial and Defendants' attempt to alter the focus of the jury's deliberation on information unknown to the involved officers during the incident, instead of on the reasonableness of officers' actions, should not be permitted.

//

### C. Decedent's Alleged History of Drug and/or Alcohol Use are Improper Character Evidence

Under Rule 404, evidence of Mr. Puga's history of prior drug and/or alcohol consumption cannot be used to prove that Mr. Puga acted in some general "bad character" on the day in question. Rule 404(a) provides that "Evidence of a person's character or a trait of a character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Plaintiffs also contend that any reference to Mr.Puga's alleged history of drug and/or alcohol consumption at trial would suggest an improper inference based on character evidence, to the extent that the jury might infer from the fact that Mr. Puga engaged in bad conduct on another occasion and thereby made it somehow reasonable for the involved officers use force against him and to shoot him. *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) ("The federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant . . . .").

Ninth Circuit case law is clear that "'Character evidence' is normally not admissible in a civil rights case." *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," i.e., an essential element of a charge, claim, or defense, for character evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002). Character is not an essential element of the charge that the police used excessive force against Mr. Puga. Since any drug and/or alcohol history related evidence in this case would require an inference as to Mr. Puga's character to make it relevant, it should be excluded from evidence at the time of trial.

### D. Conditional Request for Bifurcation of Liability and Damages

Should the Court find that some evidence of Mr. Puga's history of drugs and alcohol use that was unknown to the involved officers at the time of the incident, including the toxicology report findings, Mr. Puga's alleged frequency of alcohol consumption, any prior drug and/or alcohol related law enforcement contacts, and/or

any defense expert opinions related to or based on Mr. Puga's alleged use of drugs or alcohol that was unknown to the officers may have some relevance on the basis of damages, Plaintiffs request that the Court bifurcate trial into to phases: liability and damages. The Ninth Circuit has observed that "where…graphic and prejudicial evidence about the victim has little, and in large part no, relevant to the liability issue, district courts should bifurcate to avoid [prejudicial error]"). *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016)

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' Motion in Limine No. 2 to exclude evidence of Mr. Puga's alleged history of drugs and alcohol use that was unknown to the involved officers at the time of the incident, including the toxicology report findings, Mr. Puga's alleged frequency of alcohol consumption, any prior drug and/or alcohol related law enforcement contacts, and any defense expert opinions related to or based on Mr. Puga's alleged use of drugs or alcohol that was unknown to the officers in its entirety.

DATED: April 17, 2025          LAW OFFICES OF DALE K. GALIPO

                                                     By  */s/ Hang D. Le*
                                                        Dale K. Galipo
                                                        Hang D. Le
                                                        Attorneys for Plaintiffs