**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
L.C., I.H., A.L., and Antonia Salas Ubaldo

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually; <br><br> Plaintiffs, <br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive, <br><br> Defendants. | Case No. 5:22-cv-00949-KK-SHK <br><br> *Honorable Kenly Kiya Kato* <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 4 TO PRECLUDE CERTAIN OPINIONS AND TESTIMONY OF DEFENDANTS' POLICE PRACTICES EXPERT GREG MEYER AND KEN HUBBS** <br><br> DATE: May 15, 2025 <br> TIME: 10:30 a.m. <br> CTRM: 3 <br><br> TRIAL: June 2, 2025 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that Plaintiffs hereby move *in limine* for an order precluding Defendants' police practices expert from offering improper opinions/testimony that are outside the scope of their expertise, are speculative and not based on any evidence or witness testimony, and are not helpful to the trier of fact. Plaintiff makes this motion pursuant to *Daubert Merrell Dow Pharms.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which no resolution could be reached.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: April 17, 2025          LAW OFFICES OF DALE K. GALIPO

By  */s/ Hang D. Le*
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiffs

## I. INTRODUCTION

In the early morning hours of February 17, 2021, near the area of Peach Avenue and Catalpa Street in Hesperia, California, Defendants California High Patrol Officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava ("Officer Defendants") and County of San Bernardino Sheriff's Deputies Robert Vaccari and Jake Adams ("Deputy Defendants") used excessive force and were negligent in their conduct when detained Hector Puga and ultimately discharged their firearms at Mr. Puga, killing Mr. Puga. Several video sources captured portions of the incident, from several different angles. By way of this Motion, Plaintiffs move to preclude State Defendants' police practices expert, Greg Meyer, and County Defendants' police practices expert, Ken Hubbs, from offering improper opinions/testimony that are outside the scope of their expertise, are speculative and not based on any evidence or witness testimony, and are not helpful to the trier of fact.

## II. ARGUMENT

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court has a "gatekeeping role" to screen expert testimony, and judges have discretion to determine whether such testimony is admissible, depending on its reliability and relevance. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-97 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). "[T]he law grants the [court] broad latitude" in analyzing

and determining the reliability of proffered expert witness testimony. *Kumho*, 526 U.S. at 139, 142. "The inquiry [under Rule 702] is a flexible one[,]" and its focus "must be solely on principles and methodology, not on the conclusions [the expert] generate[s]." *Daubert*, 509 U.S. at 594-95. Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," whereas relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–593. "[A]ny step that renders the analysis unreliable…renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PC Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994). Consequently, the Court may exclude an expert's opinions based on obvious mistake in the expert's investigation or reasoning process, *see* E.E.O.C. v. Freeman, 778 F.3d 463, 467 (4th Cir. 2015), when there are analytical gaps between the data and the opinion, *Conde v. Velsicol Chem. Corp.*, 24 F.3d 809 (6th Cir. 1994), or where the opinion is purely speculative, *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001), among other things.

Ultimately, Defendants have the burden for laying the proper foundation for the admission of their police practices experts' opinions and must do so by a preponderance of evidence. *Daubert*, 509 U.S. at 592. When objections are made, the Court must make a preliminary determination regarding the admissibility of such opinion and qualifications of the person attempting to officer such evidence. Fed. Rule Evid. 104(a); Fed. Rule Evid. 702, Advisory Comm.

### III.   ARGUMENT

#### A. Opinions Outside the Scope of The Expert's Expertise Should Be Excluded

Mr. Meyer is not a video expert, yet, he offers several opinions regarding video recordings that capture the incident, including his interpretations of certain images in the video. Specifically, Mr. Meyer claims that in the Blackwood MVARS video, he can see a shiny object in Mr. Puga's hand on three occasions: once while

he steps away from the SUV at the time the shooting commences, and twice while Mr. Puga is running away. (Meyer Report at 6, 11, 17). Mr. Meyer further claims that he is able to see a handgun in Mr. Puga's right waistband in a video taken by Edward Mangerino. (Meyer Report at 11, 17). Because Mr. Meyer is not a video expert, Mr. Meyer should not be able to offer opinons/testimony regarding his interpretation of what can and cannot be seen on the video recordings that capture the incident and what he believes the videos show. *See* Fed. R. Evid. 702; *Newmaker v. City of Fortuna*, No. C 12-4675 PJH, 2013 WL 6774098, at *11 (N.D. Cal. Dec. 23, 2013) (finding video opinions by experts who neither have expertise, training, or experience in forensic video analysis or is qualified to identify what images are captured by the video to be inadmissible under 702), *rev'd on other grounds by Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016); *Dominguez v. City of Los Angeles*, Case No. CV 17-4557-DMG (PLAx), 2018 WL 6164278, at *7-8 (C.D. Cal. 2018) (expert must be qualified in the area of the opinion).

Relatedly, at his deposition, Mr. Meyer provided rebuttal opinions to Plaintiffs' video analyst and graphics expert, Matthew Kimmins, contending that Mr. Kimmins' bullet count video is unreliable because Mr. Meyer could not see Mr. Puga as he falls, because "you can see he starts to fall, and then he kind of disappears on that video because of whatever smokey haze was there." (Meyer Dep. 81:7-82:1). Mr. Meyer also took issue with Mr. Kimmins' compilation video and the reliability of the captions provided in the video. (Meyer Dep. 82:2-14). Again, as Mr. Meyer is not a video expert, he should be precluded from offering rebuttal opinions to Plaintiffs' video analyst and graphics expert.

Mr. Meyer further offers opinions regarding perception/reaction despite not being qualified to do so. At his deposition, Mr. Meyer stated with regards to the shots at Mr. Puga after he had gone to the ground:

> And you factually just don't know until it's time to, you know—the gunfire stops and it's time to move up there and you see. And then we get into what you and I both know is, you know, after the whole physical and psychological or biomechanical process of when your brain tells you that its time to stop shooting, in rapid fire, you're still going to get off a few more shots, typically, before your finger gets the message from your brain to stop.

(Meyer Dep. 35:24-36:7).

Later, in rebuttal to Plaintiffs' police practices expert's opinion that officers are train to reassess before firing the next shot, Mr. Meyer states:

> We've talked about three assessment process a couple of times, especially in a rapid-fire, breaking situation. And also, on page 16, in opinion 4, we talked about all this. That's – the studies have shown that when you decide that it's time to stop shoot in a rapid-fire situation, very often you'll fire additional shots before your – your brain signal gets to your finger and you actually physically stop shooting.

(Meyer Dep. 77:23-78:6). He discusses it again later in his deposition. (Meyer Dep. 91:23-92:7). Mr. Meyer is not an expert in human factors, human behavior, or perception/reaction time and is not qualified to offer such expert opinions in these areas. Accordingly, he should be precluded from offering any opinions/testimony regarding perception/reaction time related to the shooting.

      Mr. Hubbs, a police practices expert, does not purport to be an expert on "suicide by cop," only that he has be involved in incidents involving suicidal persons and that POST provides a definition for "Suicide by Cop." Yet, Mr. Hubbs provides opinions outside the realm of his expertise in stating that Mr. Puga's actions on the date of the incident, and on the prior March 2015 incident with law enforcement are consistent with actions of a person attempting to commit suicide by cop. (Hubbs Report at 71-72). Further, County Defendants already have a forensic psychologist who offers opinions regarding Mr. Puga's actions and whether they are in conformity with suicide by cop. Thus, not only are Mr. Hubbs' opinions outside the scope of his expertise, they are cumulative of Dr. Mohandie's opinions on this

subject matter. Accordingly, Mr. Hubbs' should be precluded from offering opinion or testimony regarding suicide by cop.

### B. Speculative Opinions/Testimony Should Be Excluded

"Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *see Daubert*, 509 U.S. at 590. In *Guidroz*, the Ninth Circuit upheld the trial court's exclusion of the proffered testimony of three expert witnesses due to insufficiencies in the factual bases for their opinions. 254 F.3d at 830-32.

At his deposition, Mr. Meyer testified that he believed there was "reasonable fear in play about whether [Mr. Puga was] still shooting," if he's still shooting at them, if he still has a gun in his hand and if he's been subdued yet due to the cloud of dust surrounding Mr. Puga as he goes to the ground. (Meyer Dep. 35:12-23). Mr. Meyer opines that because you cannot see what Mr. Puga was doing on the ground due the cloud of dust, it was reasonable for the officers to continue to shoot. (Meyer Dep. 36:8-13). However, he later concedes that "You would have to ask the officers what they saw while he was on the ground and what their timing of their decision to stop shooting was when he was on the ground" and that just because Mr. Meyer could not see Mr. Puga did not necessarily mean that the officers could not see Mr. Puga on the ground at the time of the incident. (Meyer Dep. 92:16-93:1). Thus, Mr. Meyer did not know what the officers saw and therefore does not have a sufficient basis to form an opinion regarding whether the shooting at Mr. Puga while he was on the ground was appropriate under standard police practices and standards. Accordingly, Mr. Meyer should be precluded from offering opinion or testimony that the shots fired at Mr. Puga after he went to the ground were appropriate or conformed with standard police practices and training.

In Mr. Hubbs' Report, Mr. Hubbs speculates on the number of shots that Mr. Puga may have fired purely based on the magazine capacity of the gun found near

Mr. Puga and the number of bullets left in the gun. Mr. Hubbs states, "It is conceivable that Puga may have fired as many as five rounds." (Hubbs Report at 34). This is pure speculation based on insufficient evidence. No witness ever claims to have heard or seen Mr. Puga fire as many as five rounds. Additionally, only *one* spent cartridge matching the bullets found in the gun was found at the scene and it was found right next to the gun, not near the SUV where the officers alleged Mr. Puga fired the gun. (Hubbs Report at 35, Figure 10). Based on his reliance on only the number of rounds found in the gun and the capacity of the magazine, Mr. Hubbs should be precluded from offering opinion or testimony regarding whether or not Mr. Puga ever fired a gun and the number of shots Mr. Puga theoretically fired.

### C. Opinions that Invade the Province of the Jury Should Be Excluded

Mr. Hubbs has offered several improper opinions pretaining to factual disputes in this case. The parties dispute that Mr. Puga was trying to lure the officers to a position where he could shoot them and that he was preparing to go down in a gunfight to avoid going back to prison. However, in his report, Mr. Hubbs states that he agrees with (1) Deputy Adams' assessment that Puga was attempting to get to a position where he could fire at the officers, and that Puga was attempting to manipulate the officers into a position where he could ambuse and shoot the officers; (2) Officer Rubalcava's belief that Mr. Puga was preparing for a gunfight and planned to go fown with gunfire to avoid being sent back to prison; and (3) Officer Blackwood's assessment that Mr. Puga was attempting to manipulate Sergeant Kee into a position where Mr. Puga had an advantage and could shoot Sergeant Kee. (Hubbs Report at 32-33).

Determining the credibility of the witnesses is the jury's task. Mr. Hubbs' opinions unfairly adopts the truth of the officers' statements and testimony thereby buttressing their credibility, which is impermissible. *Godinez v. Huerta*, Case No. 16-cv-0236-BAS-NLS, 2018 WL 2018048, at *6 (S.D. Cal. May 1, 2018). An expert should not offer an opinion that vouches for the credibility of a witness. *Est.*

*of Cruz-Sanchez by & through Rivera v. United States*, Case No. 17-cv-569-AJB-NLS, 2019 WL 4450686, *3 (S.D. Cal. 2019). Accordingly, these opinions/testimony should be excluded.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court enter an order excluding Defendants' police practices experts, Greg Meyer and Ken Hubbs, from offering opinions/testimony as discussed above.

DATED: April 17, 2025            LAW OFFICES OF DALE K. GALIPO

By _____*/s/ Hang D. Le*_____
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiffs