JONATHAN WAYNE BOTTEN, SR., ET AL. vs STATE OF CALIFORNIA, ET AL.
Timothy Jong, M.D. on 01/02/2025

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4    JONATHAN WAYNE BOTTEN, SR.; TANJA      )
      DUDEK-BOTTEN; ANNABELLE BOTTEN; and    )
 5    J.B., a minor by and through his       )
      guardian JONATHAN WAYNE BOTTEN, SR.,   )
 6                                           )
                  Plaintiffs,                )
 7                                           )
                  vs.                        ) Case No.
 8                                           ) 5:22-CV-00949-KK-SHK
      STATE OF CALIFORNIA; COUNTY OF SAN     )
 9    BERNARDINO; ISAIAH KEE; MICHAEL        )
      BLACKWOOD; BERNARDO RUBALCAVA; ROBERT  )
10    VACCARI; JAKE ADAMS; and DOES 1-10,    )
      inclusive,                             )
11                                           )
                  Defendants.                )
12    _____)

13

14

15

16          REMOTE VIDEOCONFERENCE DEPOSITION OF

17                    TIMOTHY JONG, M.D.

18                 THURSDAY, JANUARY 2, 2025

19

20

21

22

23    Reported Stenographically By:

24    Jinna Grace Kim, CSR No. 14151

25    Job No.:   127502
```

www.huseby.com            Huseby Global Litigation            800-333-2082

Ex. C - 1

### Page 2

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
 4   JONATHAN WAYNE BOTTEN, SR.; TANJA    )
     DUDEK-BOTTEN; ANNABELLE BOTTEN; and  )
 5   J.B., a minor by and through his    )
     guardian JONATHAN WAYNE BOTTEN, SR., )
 6                                       )
             Plaintiffs,                 )
 7                                       )
         vs.                             ) Case No.
 8                                       ) 5:22-CV-00949-KK-SHK
     STATE OF CALIFORNIA; COUNTY OF SAN  )
 9   BERNARDINO; ISAIAH KEE; MICHAEL     )
     BLACKWOOD; BERNARDO RUBALCAVA; ROBERT)
10   VACCARI; JAKE ADAMS; and DOES 1-10, )
     inclusive,                          )
11                                       )
             Defendants.                 )
12   _____)
13
14
15
16       The remote videoconference deposition of TIMOTHY
17   JONG, M.D., taken on behalf of the Plaintiffs, beginning at
18   2:05 p.m., and ending at 3:34 p.m., on Thursday, January 2,
19   2025, before Jinna Grace Kim, Certified Stenographic
20   Shorthand Reporter No. 14151.
21
22
23
24
25
```

### Page 3

```
 1   APPEARANCES OF COUNSEL:
 2
     For the Plaintiffs:
 3
             LAW OFFICES OF DALE K. GALIPO
 4       BY:  DALE K. GALIPO, ESQ.
         BY:  HANG D. LE, ESQ.
 5       21800 Burbank Boulevard, Suite 310
         Woodland Hills, California 91367
 6       Tel:  818-347-3333
         Fax:  818-347-4118
 7       E-mail:  dalekgalipo@yahoo.com
         E-mail:  hle@galipolaw.com
 8
 9   For the Defendants:
10       DEPUTY ATTORNEY GENERAL
         BY:  DIANA ESQUIVEL, ESQ.
11       1300 I Street, Suite 125
         P.O. Box 944255
12       Sacramento, California 94244
         E-mail:  diana.esquivel@doj.ca.gov
13
14       LYNBERG & WATKINS
         BY:  AMY MARGOLIES, ESQ.
15       1100 W. Town & Country Road, Suite 1450
         Orange, California 92868
16       E-mail:  amargolies@lynberg.com
17
18
19
20
21
22
23
24
25
```

### Page 4

```
 1                      INDEX
 2   WITNESS:                                       PAGE
 3   TIMOTHY JONG, M.D.
 4     BY: MR. GALIPO                                  5
 5     BY: MS. ESQUIVEL                               24
 6     BY: MS. MARGOLIES                              35
 7     BY: MR. GALIPO                                 44
 8     BY: MS. ESQUIVEL                               48
 9     BY: MS. MARGOLIES                              50
10
                        EXHIBITS
11
     MARKED FOR IDENTIFICATION                      PAGE
12
                         (None)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

### Page 5

```
 1                       CALIFORNIA
 2                THURSDAY, JANUARY 2, 2025
 3                        2:05 P.M.
 4                     TIMOTHY JONG,
 5   called as a witness on behalf of the Plaintiffs, having been
 6   first duly sworn remotely via videoconference, was examined
 7   and testified as follows:
 8                      EXAMINATION
 9   BY MR. GALIPO:
10       Q.  Can you state your full name.
11       A.  Name is Timothy, last name is Jong, J-o-n-g.
12       Q.  Thank you.  Are you able to hear me okay so far?
13       A.  Yes.
14       Q.  And if you have any trouble hearing me at any time,
15   will you please let me know?
16       A.  Yes.
17       Q.  And if I ask you a question that's poorly phrased
18   and you do not understand it, will you please let me know so
19   I can try to ask it in a better way?
20       A.  Sure.
21       Q.  I don't plan to be too long, but if you need to take
22   a break at any time, just let me know and we'll take a break.
23           If I go more than an hour, I'll take a break at the
24   hour mark for sure, but I'm hoping to be within that time
25   frame.
```

Page 14

1  it also passed through one of the hip bones, the large bowel,
2  and it lodged -- the projectile lodged in the fat of the
3  front of the abdomen.
4       Q.   And that bullet was also recovered?
5       A.   Yes.
6       Q.   And were you able to determine with the two
7  recovered bullets so far, whether they were from a handgun or
8  a rifle, or is that beyond your area of expertise?
9       A.   I would defer to the handgun analysis expert on
10 that.
11      Q.   Okay.  And so also, that wound did not have an exit;
12 is that correct?
13      A.   That's correct.
14      Q.   And that direction would have also been
15 back-to-front, left-to-right, and upward?
16      A.   Yes.
17      Q.   And the gunshot wound to the right buttock, where
18 was that generally in terms of the right buttock?
19           Was it more in the middle, or somewhere else?
20      A.   It was middle, slightly to the upper right.
21      Q.   And what did that pass through after entering the
22 body?
23      A.   It only passed through the soft tissues.
24      Q.   And that bullet was also recovered?
25      A.   Yes.

Page 15

1       Q.   And that had a left-to-right and upward
2  trajectory?
3       A.   Yes.
4       Q.   And you listed the associated injuries?
5       A.   Yes.
6       Q.   So there would be at least the first three shots
7  would have all entered the back of the body; is that
8  correct?
9       A.   Yes.
10      Q.   And then you have a wound to the thigh.
11           Where did that enter?
12      A.   A clarification question:  Are you referring to the
13 left where the Page 4, the -- gunshot wound?
14      Q.   Yes.  I'm sorry.  I didn't realize until I turned
15 the page that there were more than one thigh shots.
16           Yeah.  So let's go chronological.  Thank you.
17      A.   Sure.  So to answer your question, the wound itself
18 was on the front, to the side, more to the side with midline
19 being closer to the midline.  It was closer to the front
20 outer part of the thigh.
21      Q.   And what did that bullet pass through?
22      A.   That bullet only passed through skin and soft
23 tissue.
24      Q.   How about the wound to the anterior left thigh, the
25 next one listed at the top of Page 5.

Page 16

1       A.   So the gunshot wound of the anterior left thigh
2  passed through the skin and soft tissue.
3       Q.   And that had a upward trajectory?
4       A.   Yes.
5       Q.   One moment.  I'm assuming the shot to the thighs in
6  your opinion were not fatal; is that correct?
7       A.   That's correct.
8       Q.   And then we have the next one, the posterior left
9  thigh.
10           Where did that enter?
11      A.   So that entered on the back of the left thigh.
12      Q.   Okay.  That would have been another wound to the
13 back of the body?
14      A.   Yes.
15      Q.   And what did that pass through?
16      A.   So that gunshot wound passed through the skin and
17 soft tissue.
18      Q.   That had a back-to-front trajectory?
19      A.   Yes.
20      Q.   Also left-to-right and upward?
21      A.   Yes.
22      Q.   If one is getting upward trajectories in the legs,
23 if you know, is that consistent with the body going towards
24 the ground or away from the shooter, to be shot in the leg
25 and have the bullet go upward?

Page 17

1       A.   The possibility of that scenario, the possibility
2  exists, yes.
3       Q.   Okay.  And then you have the gunshot wound to the
4  lateral left knee?
5       A.   Yes.
6       Q.   You described that at the bottom of Page 5?
7       A.   Yes.
8       Q.   And tell us about the path of that bullet and
9  whether it had an exit.
10      A.   So the path of that bullet it went through the skin
11 and soft tissue, and it exited on the anterior or the front
12 portion of the left thigh.
13      Q.   Did that also have a back-to-front direction?
14      A.   Yes.
15      Q.   And also upward?
16      A.   Yes.
17      Q.   And the associated injuries would essentially be the
18 hemorrhaging in the wound track?
19      A.   Yes.
20      Q.   And then we have a gunshot wound to the anterior
21 right lower leg, and you listed it as number one; is that
22 right?
23      A.   Yes.
24      Q.   Did you do that because there were two separate
25 wounds to the anterior right lower leg?

Page 18

```
 1    A.   Yes.
 2    Q.   And did you determine both of those wounds were
 3 entry wounds?
 4    A.   Yes.
 5    Q.   And obviously, you have training in determining or
 6 distinguishing between an entry wound and an exit wound, for
 7 example?
 8    A.   Yes.
 9    Q.   Without getting into too many specifics, I'm trying
10 to remember my forensic pathology basics.
11         But are entry wounds generally more circular than
12 exit wounds, and sometimes have an abrasion collar?
13    A.   Generally speaking, yes, that's correct.
14    Q.   I'm sure that's very basic.
15         That's some of what I remember.
16         What was the direction of the wound to the anterior
17 right lower leg, number one?
18    A.   The direction was slightly front-to-back,
19 right-to-left, and upward.
20    Q.   Where on the leg did that actually enter?
21    A.   It was on the front of the right lower leg towards
22 the bottom.
23    Q.   Towards the ankle?
24    A.   Yes.
25    Q.   And it entered there and went upward in the leg?
```

Page 19

```
 1    A.   Yes.
 2    Q.   So what I'm trying to imagine, if the shooter is on
 3 ground level shooting at chest level, what type of body
 4 position would the person have to be in to get shot in the
 5 lower right leg and have it go upward?
 6         It seems like it would have to be something other
 7 than standing straight up; is that fair?
 8    A.   The possibility exists.  There are obviously very
 9 many scenarios in terms of hypotheticals which could occur.
10    Q.   Let me ask you this:  Is it consistent with the
11 person being on the ground in some fashion, getting shot in
12 the lower leg and having it traveling upward?
13    A.   May I ask a clarification question?
14    Q.   Of course.
15    A.   Are they completely lying flat on the ground with
16 their leg against the ground?
17    Q.   No.  Just on the ground in some manner with their
18 leg somewhat elevated?
19    A.   Leg somewhat elevated --
20         MS. ESQUIVEL:  Objection.  Lacks foundation; calls
21 for speculation.
22 BY MR. GALIPO:
23    Q.   You may answer.
24    A.   The possibility exists that that could occur.
25    Q.   Okay.  And that anterior right lower leg number one
```

Page 20

```
 1 wound had an exit; is that correct?
 2    A.   Yes.
 3    Q.   And the anterior right lower leg number two, was
 4 that close in area in terms of the entrance wound to right
 5 lower leg number one?
 6    A.   Yes.
 7    Q.   And had similar direction including an upward
 8 direction?
 9    A.   Yes.
10    Q.   What were the associated injuries with that wound?
11    A.   So the associated injuries with the wound on the
12 anterior right lower leg number two were fractures of the
13 bones of the lower leg with hemorrhage throughout the wound
14 track.
15    Q.   And which bones were fractured?
16    A.   The right tibia and right fibula.
17    Q.   And remind me again, where is the tibia?
18    A.   So the tibia is -- well, it starts near your knee
19 and ends all the way at the level of pretty much above your
20 foot.
21    Q.   And how about the fibula?
22    A.   Same thing for the fibula.  It's a little bit to the
23 side of the tibia, but it starts at the level of the knee and
24 goes all the way down to the level of the ankle.
25    Q.   And then there was a gunshot wound to the right
```

Page 21

```
 1 foot?
 2    A.   Yes.
 3    Q.   And did that strike in the area of the fifth toe?
 4    A.   Yes.
 5    Q.   And where did that travel after striking the toe or
 6 the area of the fifth toe?
 7    A.   The area that the projectile traveled through was
 8 the skin and the soft tissue of the right foot.
 9    Q.   Did that also have an upward trajectory?
10    A.   Yes.
11    Q.   And what were the associated injuries?
12    A.   The associated injuries of that wound included the
13 laceration which is a tear with surrounding hemorrhaging into
14 the soft tissue which is the ecchymosis on the sole of the
15 fourth toe of the right foot as well as another tear on the
16 anterior aspect of the right foot which is the front aspect
17 between the third and fourth toes, and there was also
18 hemorrhage throughout the wound track.
19    Q.   So were there ten entry wounds altogether?
20    A.   Yes.
21    Q.   And multiple shots to the backside of the body?
22    A.   That's correct.
23    Q.   And your opinion, the fatal shot was the wound to
24 the mid left back that we started off by describing?
25    A.   Yes.
```