SHANNON L. GUSTAFSON (SBN 228856)
sgustafson@lynberg.com
AMY R. MARGOLIES (SBN 283471)
amargolies@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendant, COUNTY OF SAN BERNARDINO, ROBERT VACCARI, and JAKE ADAMS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually,<br><br>            Plaintiffs,<br><br>      vs.<br><br>STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive,<br><br>            Defendants. | CASE NO. 5:22-cv-00949-KK-(SHKx)<br><br>*Assigned for All Purposes to:*<br>*Hon. Kenly K. Kato – Courtroom 3*<br><br>**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**<br><br>Date:        May 15, 2025<br>Time:       10:30 a.m.<br>Dept.:       3<br><br>*Trial Date:      June 2, 2025*<br><br>*Complaint filed: 06/07/2022*<br>*FAC filed:  10/18/22*<br>*SAC filed:  01/13/23*<br>*TAC filed: 05/12/23* |

## I.    INTRODUCTION

Plaintiffs' Motion in Limine to exclude evidence disclosed or produced after the discovery cut-off aims to shield the jury from highly relevant and probative information that directly undermines Plaintiffs' claims and requests for damages.  The timing of the production is substantially justified and harmless, as Plaintiffs themselves had knowledge and equal access to these records which detail Mr. Puga's extensive, violent, criminality, which Plaintiffs disavowed knowledge of during deposition, prompting Defendants to obtain the at issue records.

These records are critical to assessing Plaintiffs' credibility, rebutting their wrongful death and loss of familial relationship claims and establishing liability.  It is anticipated that Plaintiffs will argue that Mr. Puga was scared or confused during the pursuit, standoff, and gun fire exchange with police; yet, Mr. Puga's criminal record reflects a near identical prior pursuit, standoff, and gun fire exchange with police, revealing a pattern of calculated, confrontational behavior and familiarity with police procedures. Excluding this evidence would unfairly prejudice Defendants and deny the jury essential context on Plaintiffs' credibility, damages, and Mr. Puga's culpability.   Finally, Plaintiffs are unable to show any prejudice, let alone any prejudice that outweighs the materials' probative value.  And, exclusion of the records would be a harsh remedy and unduly prejudice Defendants.

## II.   ARGUMENT

To oppose a motion to exclude evidence disclosed or produced after discovery cut-off, a party must show the delay was substantially justified or harmless under Federal Rule of Civil Procedure 37(c)(1).

### A. <u>Delay was Substantially Justified</u>

Substantial justification exists when the party failing to disclose can provide a reasonable explanation for the delay. The at issue subpoena records to the third parties was issued on December 6, 2024, as soon as their need became apparent, still

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED
OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

1  nearly a month before the January 2, 2025, discovery cut-off but regrettably not

2  within the 45-days before the cut-off as directed in the Court's civil trial scheduling

3  order. (Margolies Decl. ¶2). Courts have found substantial justification in situations

4  where the delay was due to circumstances beyond the party's control, such as

5  difficulties in obtaining necessary information from third parties or changes in

6  representation and the Court considers the opposing side's delay in objecting. (See,

7  *Babcock v. Rezak*, 2002 WL 31654995 (2002) at ¶ 6, Court found failure to disclose

8  an expert timely was substantially justified based on new counsel, having difficulty

9  obtaining files, and because defendant waited a month and a half after disclosure to

10 file motion in limine objecting).  Here, Defendants have substantial justification for

11 the delay: Defendants could not have anticipated the need for these records earlier

12 and acted promptly to obtain them from third parties once their necessity became

13 clear. Moreover, Plaintiffs waited over four months after learning of the December

14 2024 subpoenas to raise any "timeliness" concerns, effectively waiving their

15 objection and conceding the adequacy of their disclosure.

16       Plaintiffs Block Earlier Depositions of Plaintiffs

17       As admitted by Plaintiffs in their moving papers, Mr. Puga's extensive violent

18 criminal history was disclosed and available to all parties in October 2023 when

19 "Defendants produced Mr. Puga's criminal history, including his prior arrests and

20 encounters with law enforcement and his convictions and periods of incarceration."

21 (Dkt. #136, 5:16-20).  The need for the subpoenaed records became apparent after

22 the first deposition of Plaintiff, wherein Plaintiff Antonia Salas Ubaldo, Decedent's

23 mother, feigned ignorance as to Mr. Puga's well documented violent criminal

24 conduct, despite testifying they were very close, attended trials and visited him in

25 jail, and each Plaintiff thereafter also denied or minimized their knowledge thereby

26 necessitating the need for more detailed criminal records to address Plaintiffs'

27 credibility. (Margolies Decl. ¶ 3).  Importantly, Plaintiffs blocked Defendants'

28

**3**
**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED**
**OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

efforts to depose a single Plaintiff before December 3, 2024, insisting no Plaintiff would appear until all Defendant depositions concluded in late November, despite Defendants' attempts to schedule Plaintiffs depositions as early as October. (Margolies Decl. ¶ 4, Ex. A, October 18, 2024, email thread and NODs).

Plaintiffs' Deposition Testimony which Necessitated the Records

At Plaintiffs' earliest deposition date on December 3, 2024[1], Plaintiff Ms. Ubaldo repeatedly denied knowledge of Mr. Puga's violent history, despite claiming they were "very close," and that she attended court and trials for him, making it clear Defendants needed more detailed criminal records to address her credibility. (Margolies Decl. ¶ 5, Ex. B Ubaldo CT 88:14-22).

Plaintiff Antonia Ubaldo

Q: Can you tell me any of the reasons that Hector has been arrested?
A: I don't remember why he was arrested. I had been in court for him, but I don't remember why.
(Id. at 50:9-12).

Q: Did he ever tell you the reasons that he was in jail?
A: I don't remember.
(Id. at 52:21-23).

Q: So did Hector ever get arrested as a result of this fight that you have been describing? "Yes," "no," or "I don't know"?
A: No.
Q: Has Hector ever been arrested for any type of domestic violence?
A: I don't remember if he was.
(Id. at 49:14-20).

Q: Did you ever learn during that trial that he beat her with a gun?
A: No.
(Id. at 94:24-95:1).

---

[1] Plaintiffs A.L.'s GAL Lidia Lopez was deposed on December 4, 2024; L.C.'s GAL Maria Cadena's and I.H.'s GAL Jasmine Hernandez on December 11, 2024. And, Mr. Puga's sisters Gabriela Salas and Nancy Juarez were deposed on December 19, 2024. (Margolies Decl. ¶ 4)

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED
OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

Q: My question was a little more specific. My question -- well, let me back up. You were aware that Hector was sentenced to seven years in prison as a result of the incident between him and Yobanna. Is that correct?

A: No.

(Id. at 95:10-15).

After these denials, Defendants same day requested a rush order and the subpoenas to the facilities were served on December 6, 2024 (Margolies Decl. ¶ 6).

In addition, the three biological mothers and guardian ad litems of each of the minor Plaintiffs, all denied or feigned knowledge of Mr. Puga's violent criminal history, despite one who specifically sought a restraining order as she "feared for [her]self and family" because Mr. Puga had "threatened to kill [her]." (Margolies Decl. ¶3 and ¶10, Ex. F, Cadena Restraining Order COSB9583).

Plaintiff I.H.'s GAL Jasmine Hernandez

Q: Did you ever talk to Hector about what happened that day when he shot at the police? [referring to the 2015 shooting with LAPD]

A: No.

Q: Why not?

A: I believed his affairs were his affairs and my affairs were my affairs.

Q: If I understand you correctly, it's fair to say that you never talked to Hector about the reasons that he was running from police or shooting at police?

A: No. He would never discuss that with me.

(Margolies Decl. ¶ 7, Ex. C, Hernandez CT 34:21-35:5).

Plaintiff A.L.'s GAL Lidia Lopez

Q: Were you aware that Hector had been arrested before he was in a relationship with you?

A: Not that I recall.

Q: Did he ever tell you that he had been arrested?

A: Yeah, but I don't know why.

Q: Did you ever ask him why he had been arrested in the past?

A: No.

Q: Were you concerned at all that he had been arrested previously?

A: No.

Q: Why not?

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

A: I just didn't think of asking him why. I mean, he was out, and that's all I cared for.
Q: Were you aware that he had been in jail in prison?
A: Not that I recall.
Q: Did Hector ever tell you that he had spent time in prison?
A: No.
Q: Is me asking the question the first time you learned that he had previously been to prison?
A: I mean, I've heard it around, but that's as much as I know about it.
Q: And what do you mean you heard it around?
A: I mean, people talk, Facebook. I mean, there's internet.

(Margolies Decl. ¶ 8, Ex. D, Lopez CT 43:23-44:25).

<u>Plaintiff L.C.'s GAL Maria Cadena's</u>

At deposition, Plaintiff L.C.'s GAL Maria Cadena also feigned ignorance, specifically as it relates to Mr. Puga's history of domestic violence despite herself filing a restraining order against him in which she specifically advised the Court of Mr. Puga's  violence and past domestic violence convictions against other women.

Q: Do you know if he ever spent any time in prison or jail?
A: No.
(Margolies Decl. ¶ 9, Ex. E, Cadena CT 23:18-20).

Q: When you were with Hector, were you aware of any time that he had been arrested?
A: No.
Q: Were you aware -- or are you aware that he's ever been arrested of domestic violence?
A: No.
(Id. at 22:16-21).

In the restraining order Ms. Cadena's sought and obtained, she detailed how Mr. Puga had "threatened to kill [her]… [how] he ha[d] been stocking [sp] [her]…. [how his] behavior [was] irrational and scary" and she fear[ed] for [her]self and family." (Margolies Decl. ¶ 9, Ex. F, Cadena Restraining Order COSB9583). Further, she states that Mr. Puga "has a history of past violence against another women… is currently on summary probation [and] was convicted for 'Domestic

**6**

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED
OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

1    Battery,' 'Contempt of Court,' and 148(A)(1) PC Misdemeanor." (Id.).

2        Defendants had no choice but to seek these records still a month before the

3    discovery deadline and provided Plaintiffs copies as requested and as detailed below.

4        <u>Plaintiffs Objected and then Withdrew their Objection to the Records</u>

5        Following the above depositions, on December 17, 2024, in direct response to

6    duly issued subpoenas, Plaintiffs sent "objection letters" to each facility, threatening

7    that because they intended to file a motion to quash, the facilities were prohibited

8    from releasing any documents absent court approval. (Margolies Decl. ¶ 11, Ex. G,

9    pgs. 5-15).  In swift response, Defendants sent a detailed correspondence to

10   Plaintiffs advising that unless the improper objection letters were immediately

11   withdrawn, Defendants would seek ex parte relief, including an order compelling

12   production and/or extending the discovery cut off to resolve the issue. (Id. at pgs. 2-

13   4).  Specifically, Defendants advised Plaintiffs:

14       … these records are proportionate… Given that Mr. Puga's family have all
         testified and essentially claimed ignorance of his criminal history, drug history
15       or alcohol history, we were left with no choice but to seek out these records
         directly from the entities to expose these credibility issues and to introduce
16       evidence of Mr. Puga's lifestyle.  …there is no other means to obtain this
         information that Puga's mother and girlfriends deny exist. (Id.).
17

18

19       The following morning, Plaintiffs responded:

20       …we do recognize that this issue may be a close call in terms of wrongful
         death damages.  Accordingly… we are ***willing to withdraw our objections***
21       and send out letters notifying the agencies so, ***if you are willing to supply us***
         ***with a copy of the records once you receive them***.
22

23       (Margolies Decl. ¶ 12, Ex. H re Plaintiffs agreement to withdraw objections).

24

25       Defendants agreed to provide copies and Plaintiffs withdrew their objections

26   to each facility. (Margolies Decl. ¶¶ 13 and14, Ex. I and Ex. J).  And, Defendants

27   promptly provided Plaintiffs with all records upon receipt. (Margolies Decl. ¶ 15).

28
                                        **7**
                **COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
         **MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED**
                **OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

Notably, Plaintiffs' only objection to the subpoenas was based on relevance and at no point did they raise any concern regarding timing or violation of the Court's scheduling order. (Margolies Decl. ¶ 16).  Had Plaintiffs raised any timeliness concerns back in December 2024 when the subpoenas were issued, Defendants would have immediately, as stated, filed an Ex Parte to seek Court intervention and fully brief the issue. (Id.).  Relying on Plaintiffs' agreement to withdraw their objections provided they receive copies of the materials, Defendants believed this matter was settled. (Id.).  In fact, several of Defendants' experts relied on these records and authored reports reflecting the same and at no time did Plaintiffs offer any rebuttal or objection to these records until the instant motion in limine. (Id.).

### B.  <u>Delay was Harmless</u>

When considering whether a violation of Rule 26(a) is justified or harmless, courts analyze the following four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

First, Plaintiffs were neither prejudiced nor surprised by the discovery as they acknowledged in their moving papers that Mr. Puga's violent criminal history "including his prior arrests and encounters with law enforcement and his convictions and periods of incarceration" were disclosed as early as October 2023. (Dkt. #136, 5:16-20). Courts have found that delays in disclosure do not cause prejudice when the opposing party had access to the materials. *(See, Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*, 627 F. Supp. 3d 408, 417 (S.D.N.Y. 2022) where the court found that a two-week delay in disclosure did not cause prejudice, especially since the opposing party had many of the documents in

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

its possession for years; see also, *Sosa v. Dollar Gen. Corp.*, No. CV 15-1790, 2016 WL 8266425, at *2 (E.D. La. Apr. 11, 2016, where the Court concluded that plaintiffs could not claim the records were uniquely within Defendant's control or otherwise previously unavailable to plaintiffs nor did plaintiffs adequately state what prejudice they faced from the late disclosure given that they had access to the records for a full month prior to trial.)  Similarly, Plaintiffs had knowledge of these records since October 2023, they were not uniquely in Defendants' control, Plaintiffs could have subpoenaed earlier, and the bulk were produced in January 2025, five months before trial; accordingly, no prejudice or surprise resulted.

Second, any potential prejudice, though denied by Defendants, was cured when Defendants promptly provided Plaintiffs with all subpoenaed records upon receipt, as Plaintiffs requested several months ago. (Margolies Decl. ¶ 15).  Third, the discovery will not disrupt the trial as only relevant information will be addressed[2]. (Margolies Decl. ¶ 17).  Fourth, Defendants acted in good faith. Subpoenas were requested within the discovery cut-off, though admittedly after the Court's civil trial scheduling order.   However, they were requested only after their need became apparent following Plaintiffs delayed depositions wherein, they denied knowledge of Mr. Puga's well documented criminal history.  Defendants sought the records promptly after the first Plaintiff deposition and provided them to Plaintiffs as soon as they were received. (Margolies Decl. ¶ 15).

---

[2] While Defendants maintain that all the records at issue should not be excluded for the reasons stated herein, Defendants do not intend to use several of the records.  In particular, County Defendants do not intend to use the following materials:

- Los Angeles County Sheriff's Department records from Temple Street, produced on January 15, 2025 (17 pages)
- Los Angeles County Sheriff's Department Twin Towers Correctional Facility Records, produced on January 17, 2025 (17 pages)
- CDCR Archives Incarceration records, produced on January 17, 2025 (8 pages)
- East Angeles County Sheriff's Station records, produced on January 24, 2025 (8 pages)

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED
OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

1   **C. Disclosures are Relevant and Probative to Liability; their Exclusion**

2   **Would be a Harsh Remedy and Unduly Prejudice Defendants**

3   Finally, as is always critical, the materials are both relevant and probative and

4   exclusion would be a harsh remedy, irreparably prejudicing Defendants.  Mr. Puga's

5   are directly relevant to his liability and apportionment of fault.  The records show

6   this was not his first encounter with law enforcement; he had a history of violent

7   felonies, prison time, and conduct consistent with his actions during the incident.

8   (Margolies Decl. ¶ 18). As Defendants' experts will testify, Mr. Puga's behavior fits

9   a clear pattern. Two months prior, per the publicly available criminal complaint, Mr.

10  Puga was charged in the Central District for being a felon in possession of a loaded

11  AR-15 assault rifle and ammunition. (Margolies Decl. ¶ 19, Ex. K, Criminal

12  Complaint).  Two days before the incident, he fled a police stop, and was seen by his

13  sister with a gun matching the description of the gun he fired at officers. (Margolies

14  Decl. ¶ 20).  And the night before the incident, he shot at a stranger on the freeway;

15  hours later, he led police on a high-speed chase through residential areas before his

16  vehicle was disabled. (Margolies Decl. ¶ 21).  After failed negotiations and non-

17  lethal attempts, he exited, lured officers close, and opened fire.  These events mirror

18  a 2015 incident, previously disclosed, in which he led police on a pursuit and then

19  fired at them. (Margolies Decl. ¶ 22).  The additional subpoenaed at issue records

20  and disclosures are relevant and probative, and excluding them would unduly

21  prejudice Defendants for the reasons stated herein.

22  **D. Disclosures are Relevant and Probative to the Claims and Damages**

23  Simply, Plaintiffs cannot have it both ways: Plaintiffs may not seek millions

24  of dollars and then block any information related to who Mr. Puga was.  Introduction

25  of a Decedent's criminal history is also grounded in basic notions of fairness and the

26  recognition that litigation is a search for the truth.  *See*, *Agosto v. Trusswal Systems*

27  *Corp.*, 142 F.R.D. 118, 120 (E.D. Pa. 1992) ("It is Plaintiff's choice to pursue claims

28

**10**

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED
OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

1  that necessitate the introduction of life expectancy information and basic fairness

2  dictates that Plaintiff should not be allowed to make a potentially large recovery

3  against [the defendant] based on an average life span when, in reality, Plaintiff may

4  well have a shorter than average life expectancy."); *see also, Lewis v. District of*

5  *Columbia,* 793 F.2d 361, 363 (D.C. Cir. 1986) (affirming district court's order

6  admitting evidence of past drug use *and arrests* when the evidence was probative in

7  aiding the jury to fairly measure the extent of damages for the alleged police

8  "excessive force" claim and that its prejudicial effect did not substantially outweigh

9  its probative value).  Furthermore, Mr. Puga's prior incarcerations are relevant to

10  damages, as Defendants' expert will testify that, had he survived, he would likely

11  have been sentenced to life in prison, significantly limiting the "society and

12  comfort" he could have provided to Plaintiffs. (Margolies Decl. ¶ 23). (*Peraza v.*

13  *Dalmeter*, 722 F.2d 1455, 1457 (9th Cir. 1984); *Castro v. Cty. of Los Angeles*, No.

14  2:13-cv-06631, 2015 WL 4694070, at *4 (C.D. Cal. 2015).

15      **E. CONCLUSION**

16      Accordingly, Plaintiffs' Motion in Limine No. 3 to exclude the above

17  evidence should be denied.

18

19  DATED: April 24, 2025           **LYNBERG & WATKINS**
                                    A Professional Corporation

20

21

22                      By:  /s/ *Amy R. Margolies*
                            **SHANNON L. GUSTAFSON**
23                          **AMY R. MARGOLIES**
                            Attorneys for Defendant,
24                          COUNTY OF SAN BERNARDINO
                             ROBERT VACCARI, and JAKE ADAMS
25

26

27

28
                                    **11**
              **COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
         **MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED**
                **OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for County Defendants certifies that this brief contains 3,026 words, which:

X complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated_____.

DATED: April 24, 2025                    **LYNBERG & WATKINS**
A Professional Corporation


By:  /s/ *Amy R. Margolies*
**SHANNON L. GUSTAFSON**
**AMY R. MARGOLIES**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO
ROBERT VACCARI, and JAKE ADAMS

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE DISCLOSED
OR PRODUCED AFTER FACT DISCOVERY CUT-OFF**