1

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
2  dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
3  hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
4  Woodland Hills, California, 91367
Telephone: (818) 347-3333
5  Facsimile: (818) 347-4118

6  Attorneys for Plaintiffs
L.C., I.H., A.L., and Antonia Salas Ubaldo

7

8            **UNITED STATES DISTRICT COURT FOR THE**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  L.C., a minor by and through her
guardian *ad litem* Maria Cadena,
12  individually and as successor-in-interest
to Hector Puga; I.H., a minor by and
13  through his guardian *ad litem* Jasmine
Hernandez, individually and as
14  successor-in-interest to Hector Puga;
A.L., a minor by and through her
15  guardian *ad litem* Lydia Lopez,
individually and as successor-in-interest
16  to Hector Puga; and ANTONIA SALAS
UBALDO, individually;
17

18

19              Plaintiffs,
         vs.
20

21  STATE OF CALIFORNIA; COUNTY
OF SAN BERNARDINO; S.S.C., a
22  nominal defendant; ISAIAH KEE;
MICHAEL BLACKWOOD;
23  BERNARDO RUBALCAVA; ROBERT
VACCARI; JAKE ADAMS; and DOES
24  6-10, inclusive,
25

26              Defendants.

27

28

Case No. 5:22-cv-00949-KK-SHK

*Honorable Kenly Kiya Kato*

**PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT MATTHEW KIMMINS AND TO EXCLUDE HIS VIDEOS**

5:22-cv-00949-KK-SHK

## I.    MR. KIMMINS' VIDEOS AND OPINIONS ARE HELPFUL TO THE TRIER OF FACT

The central dispute in this case is whether Mr. Puga posed an immediate threat of death or serious bodily injury at the time of the shooting. There are several facts in this case, some of which are in dispute, that will assist the jury in determining whether Mr. Puga posed an immediate threat and ultimately, whether the officers' use of deadly force was justified. For example, Plaintiffs contend that after exiting his vehicle, Mr. Puga's hands were visibly empty, that he repeatedly raised his hands to comply with commands and to show he was not a threat, but that he dropped his hands a number of times while he was outside of his vehicle in order to wipe his face to alleviate himself of the effects from the pepper balls or to pull up his pants. For all the times Mr. Puga dropped his hands to wipe his face or pull up his pants with the exception of the last time when the shooting occurred, the involved officers did not use force and in fact, admitted that they recognized he was dropping his hands to wipe his face and to pull up his pants. Moreover, Plaintiffs contend that Mr. Puga was shot multiple times after he had fallen to the ground, during which the officers conceded that he no longer posed an immediate threat of death or serious bodily injury. Plaintiffs further contend that the *number* of shots after Mr. Puga had fallen to the ground is important to evaluating the reasonableness of the officers' use of deadly force.

There are several video sources that capture the incident, including the shooting, from different angles, thereby capturing different, important aspects of the incident. However, no one video is able to accurately capture the entirety of Mr. Puga's movements due to certain obstructions based on the angle of the camera. Thus, Plaintiffs' video analyst and graphics expert, Matthew Kimmins, was tasked with synchronizing videos that captured relevant, key portions of the incident in order to give the trier of fact a more comprehensive view of what occurred that night, including what the involved officers were able to or should have been able to

PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MIL NO. 1

1    observe, that was not captured on certain video sources due to their distance, angle,

2    and quality.

3         First, it is important to note that Defendants do not take issue with Mr.

4    Kimmins' qualifications to identify sound recordings or to synchronize video records.

5    Nor do Defendants take issue with the accuracy or reliability of Mr. Kimmins'

6    synchronization of the videos. Instead, Defendants seek to exclude the entirety of the

7    composite video, which synchronized relevant videos of the incident from different

8    video sources in order to provide a comprehensive view of the incident, on the sole

9    basis that the timestamp descriptions contained in the video are not helpful to the

10   jury. However, as expressed in Mr. Kimmins' expert report and deposition testimony,

11   the timeline descriptions contained in the composite video reflect the specific,

12   significant visual/audio cues that assisted Mr. Kimmins in the synchronization of the

13   videos. For example, the description, "03:43 With his hands up, Puga walks to the

14   front of the vehicle" reflects the one of the specific visual cues Mr. Kimmins relied

15   on in synchronizing the video from Officer Michael Blackwood's MVARS video,

16   witness Erin Magerino's cell phone video, and witness Betzabeth Gonzalez's cell

17   phone video. (Ex. A to Esquivel Decl., Kimmins Report at 5). Indeed, Mr. Kimmins

18   testified at his deposition that the timestamp descriptions were "not in any attempt to

19   infer bias, guilt, innocence, anything, just what I was going to see." (Ex. B to

20   Esquivel Decl., Kimmins Dep. 113:13-114:1). Such testimony regarding how a video

21   expert synchronized video recordings are generally deemed admissible. *See Jones v.

22   City of Los Angeles*, No. 2:20-CV-11147-FWS-SK, 2023 WL 2559230, at *3 (C.D.

23   Cal. Feb. 24, 2023) (video expert's testimony as to his observations of what is

24   depicted in the video are admissible and helpful to the jury as they were necessary to

25   explain the basis for his expert opinions regarding his video analysis and editing and

26   how he came to form his opinions); *United States v. Astarita*, No. 3:17-CR-00226-

27   JO, 2018 WL 3097012, at *4 (D. Or. June 20, 2018) (video expert's testimony

28   identifying sounds on recordings and synchronizing video recordings depicting the

1  same content from different vantage points was admissible). Accordingly, Mr.

2  Kimmins' composite video, which includes the timestamp descriptions, is relevant

3  and helpful to the trier of fact as it provides a more comprehensive depiction of the

4  incident, assisting the jury in determining more accurately the conduct of Mr. Puga

5  and the involved-officers during the incident and in understanding how the videos

6  were accurately synchronized, and thus is admissible at trial. *Cf. T.D.P. v. City of*

7  *Oakland*, No. 3:16-CV-04132-LB, 2019 WL 913840, at *3 (N.D. Cal. Feb. 24, 2019)

8  (finding video expert's accurate description of the what is depicted in the video

9  admissible due to the poor quality of the video, the plaintiffs' inability to have a

10  sponsoring witness talk about the images in the video because the suspect in the

11  video is dead, and the descriptions being consistent with the officers' accounts of the

12  incident).

13         Additionally, Mr. Kimmins' bullet count video is reliable and will be helpful

14  to the trier of fact in determining the reasonableness of the use of deadly force after

15  Mr. Puga had gone to the ground. While Mr. Kimmins concedes that he could not

16  give an *exact* count of the shots that occurred after Mr. Puga went to the ground and

17  such determination should be left to a forensic audio expert, Mr. Kimmins testified

18  that he was able to give an fair *estimate* of the number of shots that occurred after Mr.

19  Puga fell to the ground because Blackwood's MVARS video contained two audio

20  forms—one from the exterior of the vehicle and one from the interior—and that when

21  he isolated the audio channel from the interior of the vehicle, he was able to see (in

22  WAV form) and hear more distinctive peaks of sounds, giving more clarity to the

23  number of shots that were fired after Mr. Puga went to the ground. (Ex. B to Esquivel

24  Decl., Kimmins Dep. 91:18-94:20, 99:20-100:20). The accuracy of his count and

25  whether he can determine the *exact* number of shots based on his review of the audio

26  files goes to the weight of his testimony, not admissibility. Accordingly, Mr.

27  Kimmins' bullet count video is reliable and should be admitted as it is helpful to the

28  trier of fact in determining the reasonableness of the officers' use of force.

## II.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny State Defendants' Motion in Limine No. 1 to Exclude Portions of the Testimony of Plaintiffs' Expert Matthew Kimmins and to Exclude his Videos in its entirety.

Respectfully Submitted,

Dated: April 24, 2025                    **LAW OFFICES OF DALE K. GALIPO**

                                        By:   */s/   Hang D. Le*
                                              Dale K. Galipo
                                              Hang D. Le
                                              *Attorneys for Plaintiffs L.C., I.H., A.L., and Antonia Salas Ubaldo*

1

**Certificate of Compliance**

2

3          The undersigned, counsel of record for Plaintiffs L.C., I.H., A.L., and Antonia

4    Salas Ubaldo, certifies that this brief contains **1,142** words, which complies with the

5    7,000 word limit of L.R. 11-6.1.

6

7    Dated: April 24, 2025                            **LAW OFFICES OF DALE K. GALIPO**

8                                        By:    */s/   Hang D. Le*

9                                               Dale K. Galipo

10                                              Hang D. Le
                                                *Attorneys for Plaintiffs L.C., I.H., A.L., and*
11                                              *Antonia Salas Ubaldo*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28