1 **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
2 dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
3 hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
4 Woodland Hills, California, 91367
Telephone: (818) 347-3333
5 Facsimile: (818) 347-4118

6 Attorneys for Plaintiffs
L.C., I.H., A.L., and Antonia Salas Ubaldo
7

8 **UNITED STATES DISTRICT COURT FOR THE**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 L.C., a minor by and through her guardian *ad litem* Maria Cadena, | Case No. 5:22-cv-00949-KK-SHK |
| 12 individually and as successor-in-interest to Hector Puga; I.H., a minor by and | *Honorable Kenly Kiya Kato* |
| 13 through his guardian *ad litem* Jasmine Hernandez, individually and as | **PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' MOTION** |
| 14 successor-in-interest to Hector Puga; A.L., a minor by and through her | **IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, EVIDENCE** |
| 15 guardian *ad litem* Lydia Lopez, | **ARGUMENT REGARDING PORTIONS OF ROGER CLARK'S** |
| 16 individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS | **OPINIONS** |
| 17 UBALDO, individually; | |
| 18 | |
| 19 Plaintiffs, | |
| 20 vs. | |
| 21 STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a | |
| 22 nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; | |
| 23 BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES | |
| 24 6-10, inclusive, | |
| 25 | |
| 26 Defendants. | |

27

28

## I.      INTRODUCTION

Plaintiffs' retained police practices expert, Roger Clark, is a twenty-seven-year veteran of the Los Angeles County Sheriff's Department, who has served as a police practices expert on thousands of cases since his retirement from the force. Indeed, the Ninth Circuit as well as district courts within the Ninth Circuit, have generally accepted Mr. Clark's qualifications to opine on police officer standard practices and training. *See, e.g., Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1127 (9th Cir. 2021) (crediting Mr. Clark's opinions regarding whether a reasonable officer in the defendant officer's position, acting with consistent standard police practices and training, would have or should have known the decedent was mentally ill); *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1199 (C.D. Cal. 2015) (finding Mr. Clark to be a qualified expert on police training and procedures); *Godinez v. Huerta*, No. 16-CV-0236-BAS-NLS, 2018 WL 2018048, at *3 (S.D. Cal. May 1, 2018) (recognizing that courts have found Mr. Clark to be qualified as an expert in police training, standards, and policies); Vaughn v. City of Los Angeles, No. CV1603086ABAJWX, 2017 WL 8786868, at *4 (C.D. Cal. Oct. 30, 2017) (after reviewing Mr. Clark's qualifications, finding that Mr. Clark is qualified to offer expert testimony regarding policies and procedures regarding law enforcement use of the taser and hobble restraint and bullet trajectories). Mr. Clark was retained in this case to offer opinions regarding the involved-officers' conduct, tactics, and use of force as it relates to standard officer practices and training.

Defendants now move *in limine* to exclude certain testimony from Mr. Clark, contending that they are inadmissible pursuant to *Daubert*. For the reasons discussed below, Plaintiffs oppose Defendants' Motion in its entirety.

//

//

//

//

1   **II.    MR. CLARK'S OPINIONS REGARD REGARDING SERGEANT**

2   **VACCARI'S DEPLOYMENT OF THE PEPPERBALL LAUNCHER**

3   **ARE ADMISSIBLE**

4   Defendants mischaracterize Mr. Clark's opinions relating to the deployment of

5   the pepper ball launcher in arguing that these opinions should be excluded because

6   Mr. Clark has no specialized training in the pepper ball launcher. Mr. Clark's

7   opinions regarding Sergeant Vaccari's *intentional* deployment of pepper balls to

8   *strike* Mr. Puga as an impact weapon and subsequent striking of Mr. Puga in the

9   head/face with pepper balls *does not* require specialized knowledge regarding pepper

10   ball launchers. Mr. Clark does not attempt to offer opinions based on how the pepper

11   ball launcher works. Rather, he offers admissible general police practices and training

12   opinions regarding officer situational awareness, the deployment of pepper balls as an

13   impact weapon to a suspect's head/face, and under what context impacts or

14   strikes/blows to the head/face are appropriate based on his expertise in POST and law

15   enforcement standards, as well as his review of specific County of San Bernardino

16   training and guidance regarding the deployment of the pepper ball launcher as an

17   impact weapon. *See Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1197

18   (C.D. Cal. 2015) (finding that although Mr. Clark is not an expert in the features and

19   use of the taser and thus is not qualified to opine on the effects of the taser, he is

20   qualified to opine on "whether tasers may cause bodily injury and when taser

21   deployment is an appropriate use of force…to the extent that such testimony is based

22   on Clark's expertise in POST and other law enforcement standards).

23   Additionally, while Plaintiffs contend that Mr. Clark does not need specialized

24   expertise regarding the pepper ball launcher to offer his opinions regarding whether

25   the deployment of the pepper ball launcher to intentionally strike a suspect, especially

26   in the head/face, is appropriate under the circumstances pursuant to standard police

27   practices and training, Mr. Clark has been accepted as a qualified expert regarding

28   specific use and training of the pepper ball launcher in *Nelson v. City of Davis*, 709 F.

1  Supp. 2d 978, 982 n.2 (E.D. Cal. 2010), aff'd, 685 F.3d 867 (9th Cir. 2012). In

2  *Nelson*, the district court overruled defendants' objections regarding Mr. Clark's

3  opinions with respect to the accurate range of pepper ball launchers and risks

4  surrounding the deployment of such weapon in striking unintended targets and

5  vulnerable body areas, finding that his opinions are consistent with the training. *Id*.

6  As Mr. Clark has acquired specialized knowledge regarding the pepper ball launcher

7  through his work as a police practices expert, including his work in the *Nelson* case

8  and his review of County of San Bernardino's training and guidance on the use of the

9  pepper ball launcher, Mr. Clark is qualified to offer opinions regarding the use of the

10  pepper ball launcher. *See A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020

11  WL 4430971, at *3–4 (S.D. Cal. July 31, 2020) (finding Clark to be qualified to offer

12  opinions regarding the taser despite his limited experience with the taser because his

13  opinions were based on specialized knowledge that he acquired through promulgated

14  taser standards and training, including the defendant county's own training).

15       Lastly, Mr. Clark does not *speculate* as to whether Mr. Puga was shot in the

16  eye. He simply offers an opinion that deployment of the pepper ball launcher to strike

17  Mr. Puga in the head/face is inappropriate under police practices and training, and

18  there is evidence in the record—through numerous witness testimony regarding Mr.

19  Puga's statements of being hit in the eye during a pepper ball deployment and

20  observations of Mr. Puga bleeding from around the eye area when he exited the

21  vehicle—that Sergeant Vaccari's deployment of the pepper ball launcher under

22  assumed facts was inappropriate and violated standard police practices and training.

23  *See Hyeer v. City & Cnty of Honolulu*, 118 F.4th 1044, 1056–58 (9th Cir. 2024)

24  (holding the district court abused its discretion in excluding expert reports for lacking

25  sufficient facts or data because the opinions contained in those reports were based on

26  assumption of facts supported by evidence found in the record, despite those facts

27  being in disputed).

28

1   **III.   MR. CLARK'S IDENTIFIED OPINIONS ARE NOT LEGAL**
2   **CONCLUSIONS**

3   Defendants also seek to exclude certain opinions from Mr. Clark as improper

4   legal conclusions, but the opinions identified by Defendants in their argument are *not*

5   *legal conclusions*. An expert's "opinion is not objectionable just because it embraces

6   an ultimate issue." Fed. R. Evid. 704(a). However, Courts have found police practices

7   opinions on the threat posed by a suspect to be admissible, and not a legal conclusion.

8   *See Willis v. City of Fresno*, 680 F. App'x 589, 591 (9th Cir. 2017) (finding that the

9   court did not abuse its discretion in admitting plaintiffs' police practices expert's

10   testimony that the suspect no longer pose a threat when the officer fired the final

11   shots); *Est. of Elkins v. Pelayo*, No. 1:13-CV-1483 AWI SAB, 2022 WL 1123117, at

12   *3 (E.D. Cal. Apr. 14, 2022) (finding that Clark was opined on the threat posed by

13   decedent so long as Clark had a basis in fact and law enforcement understanding,

14   practices, and standards to give any opinion regarding the threat, or lack thereof,

15   posed by the decedent); Castro v. Cnty. of Los Angeles, No. 2:13–CV–06631–

16   CAS(SSX), 2015 WL 4694070, at *14 (C.D. Cal. Aug. 3, 2015) (finding plaintiff's

17   police practices expert's opinion, that a similarly trained officer would not have

18   considered the decedent to be a lethal threat, was not an impermissible legal

19   conclusion).

20   Similarly, Defendants' identified opinions regarding "excessive force" and

21   "unnecessary force" are not legal opinions. At no point does Mr. Clark ever opine

22   that any use of force was "excessive force." Rather, he states that officers are *trained*

23   that an overreaction is excessive force and thus, an officer's overreaction in using

24   deadly force is also excessive force. (Clark Report, Opinions 2, 3). Lastly, Mr.

25   Clark's statement regarding the officers' use of unnecessary lethal force is offered in

26   the context of their negligent tactics and conduct leading up to the use of force,

27   limiting their tactical options, and their failure to utilize other reasonable, available

28

1    means. Essentially, the officers would not have been in a position to use lethal force

2    had they utilized proper police tactics and training.

3           Accordingly, Mr. Clark's opinions and statements identified by Defendants are

4    not impermissible legal conclusions and therefore, admissible at trial.

5    **IV.   <u>MR. CLARK'S STATEMENTS REGARDING THE VIDEO EVIDENCE</u>**

6           **<u>ARE NOT OPINIONS AND ARE ADMISSIBLE</u>**

7           Contrary to Defendants' representations, Mr. Clark does not attempt to offer

8    opinions regarding what the video evidence shows. Instead, the statements Mr. Clark

9    makes regarding the video evidence are in the context of what he reviewed and relied

10   upon in forming his opinions. For example, Mr. Clark does not attempt to definitively

11   opine what can be seen in the video while Mr. Puga is running, rather, he states Mr.

12   Puga's running actions and lack of turning motion *as a basis* for his opinion

13   regarding the officers' use of lethal force while Mr. Puga was running away. *See A.B.*

14   *v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982, at *2 (S.D. Cal.

15   July 31, 2020) ("*A.B.* II") (allowing defendants' police practices expert to testify to

16   what he observed in the videos because those formed the basis for his opinions as to

17   whether the officers acted appropriately). Similarly, Mr. Clark's testimony regarding

18   whether he can see a gun in any of the videos is *not* an opinion, rather, it was merely

19   an observation he gave in response to specific deposition questions posed to him

20   regarding whether a gun can be seen in any of the videos, *see A.B.*, 2020 WL

21   4430971, at *4 (finding Clark's statement regarding the amount of time the taser

22   made contact with the decedent was not an opinion but "merely an observation he

23   gave in response to a deposition question"), and his assumption that Mr. Puga was

24   not holding a gun based on his viewing of the videos forms the basis for some of his

25   opinions, *cf. Lam v. City of San* Jose, No. 14-CV-00877-PSG, 2015 WL 6954967, at

26   *2 (N.D. Cal. Nov. 10, 2015) (allowing an expert to provide opinions based on a

27   party's version of the facts because Rule 704 encourages expert opinions on ultimate

28   issues and an expert cannot opine on an ultimate issue without relying on a particular

1    version of the facts). Lastly, Mr. Clark's observation of whether Deputy Adams was

2    positioned at the time the shots started is *not* a proffered opinion; such statement was

3    simply included in his "Brief Overview of Events," which contained evidence he

4    reviewed and observed in forming his opinions. Accordingly, Mr. Clark's

5    observations regarding the video evidence are admissible as they are assumptions of

6    facts, supported by the evidence, which help form the basis of his opinions.

7    **V.    MR. CLARK'S OPINION 4 IS NOT SPECULATIVE**

8         Mr. Clark's fourth opinion *does not* imply that all four officers shot while Mr.

9    Puga was on the ground. He does not attempt to resolve this fact. Instead, his opinion

10   is based on the officers' testimony that they discharged their weapons at Mr. Puga

11   and that it was undisputed that shots were fired at Mr. Puga after he had gone to the

12   ground. Mr. Clark concedes that "no officer admitted to firing at Mr. Puga after he

13   had gone to the ground," but because all four officers did admit to shooting at Mr.

14   Puga and it is undisputed that shots were fired at Mr. Puga while he was on the

15   ground, Mr. Clark *assumes* that at least one, if not all four officers, shot while Mr.

16   Puga was on the ground for the purposes of his opinion regarding whether those shots

17   were appropriate pursuant to standard police practice and training.

18   **VI.   MR. CLARK'S OPINIONS 8, 9, AND 10 ARE RELEVANT**

19        Mr. Clark's opinions regarding the officers' conduct and tactics as it relates to

20   the subsequent injuries sustained by the Bottens are "highly relevant" to the excessive

21   force inquiry. *See Ymelda Elena, et al. v. City of Los Angeles, et al*, No. CV 22-7651-

22   KK-KSX, 2025 WL 1144824, at *2 (C.D. Cal. Mar. 19, 2025) (denying motion in

23   limine to exclude evidence relating to the death of an innocent bystander as a result

24   of the officers' use of lethal force against the decedent because such evidence was

25   "highly relevant to the objective reasonableness standard, including whether

26   defendant [officer's] actions were reasonable"). In *Boyd v. Benton County*, 374 F.3d

27   773 (9th Cir. 2004), the Ninth Circuit explained that the presence of innocent

28   bystanders and the risk of harm to those bystanders by the officers' use of force may

1  be relevant to the totality of the circumstances under the excessive force inquiry. 374

2  F.3d at 779. Relying on *Boyd*, several courts have considered "whether innocent

3  bystanders may be injured in addition to the targets of force" in the excessive force

4  analysis. *Xiong v. Chavez*, No. 1:13-CV-00083-SKO, 2016 WL 345609, at *5 (E.D.

5  Cal. Jan. 28, 2016); *see also Bailey v. County of San Joaquin*, 671 F.Supp.2d 1167,

6  1173 (E.D. Cal. 2009) (a reasonable jury could find the officer's use of deadly force

7  to be unreasonable where there was evidence that he was aware there were innocent

8  bystanders nearby and nonetheless "fired his gun under circumstances in which he

9  could not predict where the bullet would likely travel or if fragmented, who might be

10 injured," injuring said bystanders); *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d

11 972, 990 (D. Ariz. 2012); *Tuggle v. City of Tulare*, No. 1:19-CV-01525-JLT-SAB,

12 2023 WL 4273900, at *18 (E.D. Cal. June 29, 2023). Moreover, under Plaintiffs'

13 negligence claim, police officers "have a duty to act reasonably when using deadly

14 force, a duty that extends to the totality of the circumstances surrounding the

15 shooting, including the officers' preshooting conduct." *Hayes v. Cnty. of San Diego*,

16 57 Cal. 4th 622, 638 (2013). Thus, Mr. Clark's opinions regarding whether the

17 officers knew or should have known that there were innocent bystanders in the

18 residential homes surrounding the incident location in the middle of the night and the

19 officers' failure to follow standard police practices and training to ensure the safety

20 of those individuals, resulting in serious injuries to the Bottens, is relevant to the

21 evaluation of the reasonableness of the officers' conduct leading up to their use of

22 deadly force as well as their use of deadly force.

23 **VII.**  **CONCLUSION**

24     For the foregoing reasons, Plaintiffs respectfully request the Court deny

25 County Defendants' Motion in Limine No. 2 to Exclude Testimony, Evidence,

26 Argument Regarding Portions of Roger Clark's Opinions in its entirety.

27 //

28 //

PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' MIL NO. 2

1 | Respectfully Submitted,

2

3 | Dated: April 24, 2025      **LAW OFFICES OF DALE K. GALIPO**

4

5 |      By:    */s/   Hang D. Le*

6 |      Dale K. Galipo
     Hang D. Le

7 |      *Attorneys for Plaintiffs L.C., I.H., A.L., and*
     *Antonia Salas Ubaldo*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     5:22-cv-00949-KK-SHK

PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' MIL NO. 2

1

**Certificate of Compliance**

2

3        The undersigned, counsel of record for Plaintiffs L.C., I.H., A.L., and Antonia

4    Salas Ubaldo, certifies that this brief contains **2,387** words, which complies with the

5    7,000 word limit of L.R. 11-6.1.

6

Dated: April 24, 2025                    **LAW OFFICES OF DALE K. GALIPO**

7

8                                By:    */s/   Hang D. Le*

9                                       Dale K. Galipo
10                                      Hang D. Le
                                        *Attorneys for Plaintiffs L.C., I.H., A.L., and*
11                                      *Antonia Salas Ubaldo*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' MIL NO. 2