SHANNON L. GUSTAFSON (SBN 228856)
sgustafson@lynberg.com
AMY R. MARGOLIES (SBN 283471)
amargolies@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendant, COUNTY OF SAN BERNARDINO, ROBERT VACCARI, and JAKE ADAMS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive,<br><br>Defendants. | CASE NO. 5:22-cv-00949-KK-(SHKx)<br><br>*Assigned for All Purposes to:*<br>*Hon. Kenly K. Kato – Courtroom 3*<br><br>**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE REGARDING DECEDENT'S DRUG HISTORY AND ALCOHOL USE UNKNOWN TO OFFICERS**<br><br>*Trial Date:   June 2, 2025*<br><br>*Complaint filed: 06/07/2022*<br>*FAC filed: 10/18/22*<br>*SAC filed: 01/13/23*<br>*TAC filed: 05/12/23* |

1

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE REGARDING DECEDENT'S DRUG HISTORY AND ALCOHOL USE UNKNOWN TO OFFICERS**

## I. INTRODUCTION

It cannot be credibly disputed that decedent Hector Puga had a significant and well documented history of drug and alcohol abuse. It is equally undisputed that Puga was under the influence of both drugs and alcohol at the time of the shooting, as confirmed by the post-mortem toxicology reports. Plaintiffs now seek to whitewash the facts, by excluding any and all such references to drugs and alcohol solely on the grounds that Puga's history and the post-mortem toxicology reports were not available to the Defendants at the time of the shooting. Specifically, Plaintiffs argue that "the central factual dispute in this case is whether Mr. Puga posed an immediate threat of death or serious bodily injury to anyone when the officers fired at Mr. Puga." (Mtn pg. 9). From this overly simplistic premise, the entirety of Plaintiffs' arguments focuses on the argument that such evidence is not relevant to determining that singular issue. First, Plaintiffs' representation is contrary to the holding in *Boyd v. City & County of San Francisco,* 576 F.3d 983 (2009), which remains good law and was not effectively distinguished. Second, Plaintiffs' analysis fails to account for many other significant issues that the jury will be considering during their deliberations of which Puga's drug and alcohol history are extremely probative, including Plaintiffs' negligence theory, pre death pain and suffering, loss of life and interference with familial relationship claims. *See, Johnson v. General Mills Inc.,* 2012 WL 13015023, at *1 (C.D. Cal. 2012) ("A party cannot use a motion in limine to sterilize the other party's presentation of the case.").

## II. PUGA'S DRUG AND ALCOHOL HISTORY IS RELEVANT TO THE EXCESSIVE FORCE ANALYSIS PURSUANT TO *BOYD*

A peace officer is permitted to introduce evidence of facts that were unknown to him at the time of the incident where such facts corroborate or increase the likelihood of the existence of facts that were observed and relied upon by the officer in the officer's decision to use force during the incident. *Boyd v. City and County of*

*San Francisco,* 576 F.3d 938 (9th Cir. 2009); *see also, Graham, v. Connor,* 490 U.S. 385, 399, n. 2 (1980); 399, n. 12 (factfinder may consider outside evidence "in assessing the credibility of an officer's account of the circumstances that prompted the use of force"); *Estate of Chum v. City of Los Angeles*, 585 Fed.Appx. 435, 436 (9th Cir. 2014) (citing *Boyd, supra*, 576 F3d at 943-945 ("Because the challenged testimony made [defendant's] account ***more probable***, the testimony was relevant, and the district court did not abuse its discretion by admitting it")(emphasis added). Thus, in an excessive force case, "where what the officer perceived ***just prior to the use of force*** is in dispute, evidence that may support one version of events over another is relevant and admissible." *Boyd, supra,* 576 F.3d at 944 (emphasis added). In particular, the Ninth Circuit specifically upheld the trial court's ruling that allowed evidence from Defendants' expert that decedent had been on ***drugs*** at the time of a police shooting and was attempting suicide by cop because the evidence was "highly probative of decedent's conduct, particularly in light of [the decedent's] erratic behavior." *Id.* at 949.

While Plaintiffs go to great lengths to distinguish *Boyd* on the grounds that there is video, their arguments fall flat. Much like in *Boyd,* what the officers perceived immediately prior to the shooting is hotly contested by Plaintiffs who contend that despite law enforcement and third-party testimony, Puga never pulled a gun from his waistband. Despite having multiple angles, not a single video shows Puga's waist at the time of the shooting and therefore like *Boyd,* what the officers perceived at the time of the shooting is disputed. Likewise, even though multiple witnesses testified Puga had a gun in his hand and a gun was found under him after the shooting, the poor quality of the video makes it difficult to see the gun and therefore Plaintiffs intend to also dispute that Puga had a gun still in his hand as he ran. To address whether the accounts of the officers are more probably true than not, much like the testimony allowed in *Boyd,* Defendants seek to admit testimony of their expert that

3
**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE REGARDING DECEDENT'S DRUG HISTORY AND ALCOHOL USE UNKNOWN TO OFFICERS**

the actions of Puga were an attempt to commit suicide cop which would be consistent with him pulling out a gun as testified to by the Deputies but disputed by the Plaintiffs.

Further, just as in *Boyd,* Plaintiffs have offered no scientific challenge to Defendants' suicide by cop evidence and like in *Boyd* this court should find that the evidence of Decedent's drug use in the context of this theory is highly relevant and more probative than prejudicial. *Boyd,* 576 F.3d at 948-949. Moreover, as set forth by the Court in *Boyd,* when considering the issue, "admission of evidence in support of the suicide by cop theory falls within the exception for otherwise inadmissible character evidence carved out in Rule 404(b)." *Boyd supra,* 576 F.3d 938 (suicide by cop properly considered as evidence of plan, intent and motive).

As such, Defendants suicide by cop evidence as supported by the drugs and alcohol in decedent's system, make it more probable that decedent was trying to provoke a police shooting rather than acting upon fear. *Boyd, supra,* at 944-945; *Castro v. Cnty of LA,* 2015 WL 4694070 *5 (C.D. Cal. 2015)(evidence of intoxication admissible to corroborate Defendants' version of events, where "pre-shooting conduct is disputed");*Cotton v. City of Eureka, Cal.,* No. CV 08–04386, 2010 WL 5154945, at *7 (N.D. Cal.) (admitting evidence of LSD in decedent's system where witnesses "observed that the Decedent's behavior ... at the time of his arrest was erratic and abnormal, and possibly the result of the influence of illegal drugs.").

### III. PUGA'S DRUG AND ALCOHOL ABUSE IS CRUCIAL TO REFUTING PLAINTIFF'S EVIDENCE AS TO STATE OF MIND

Immediately before Puga ran to the front of his vehicle, choosing escalation over surrender, he made the statement that he heard a click and that he thought the officers were trying to shoot him. Plaintiffs have telegraphed that they intend to use Puga's statements on scene, as well as the testimony of third-party witness Betzabeth Gonzalez, that Puga appeared scared, to justify Puga's conduct. (Plaintiffs' Opposition to Motion for Summary Judgment- Dkt. 111- pg 10 - "Puga expressed

concerns to the officers that he thought the officers were going to shoot him" and "he sounded scared of being shot by police" and pg. 23 - "he likely turned to run because he panicked at seeing several officers quickly approaching him and was scared he was going to be shot"). In short, Plaintiffs seek to interject Puga's subjective intent throughout this trial while simultaneously requesting that any theory to the contrary is irrelevant.

To refute these claims that Puga's statements and actions were born from fear alone, Defendants have retained the services of renowned forensic psychologist who has offered the opinion that Puga's actions are entirely consistent with an individual who is intent on committing suicide by cop. (Plaintiff's Exhibit A - Dr. Mohandie's report) Notably, Plaintiffs have not challenged the exemplary qualifications of Defendants' expert to state his suicide by cop opinions nor have they challenged the sufficiency of the facts or data upon which his opinions were based or the reliability of the methods he used. *Fed.R.Evid* 702, *Daubert, v. Merrell Dow Pharm, Inc.* 509 U.S. 579, 597; *Boyd v. City and County of San Francisco,* 576 F.3d 938, 946 (9th Cir. 2009)(Plaintiff "provides no scientific opinions challenging or refuting" Defendants suicide by cop evidence)[1]

Rather, Plaintiffs' entire challenge is that portions of his opinions should be sanitized because they are not relevant and/or prejudicial. In particular, as part of his opinion that Puga's actions were consistent with an attempt to commit suicide by cop, Dr. Mohandie relied on the fact that Puga was under the influence of alcohol at the time of the shooting as evidence that he was building "chemical courage". (Plaintiff's Ex. A- page 28). This portion of Dr. Mohandie's opinion was drawn largely from the toxicology report. Likewise, Dr. Mohandie supports his suicide-by-cop opinions with evidence that Puga was under the influence of methamphetamine, reference the

---

[1] Similarly, there has been no Daubert challenge made to Defendants' toxicologist expert, Dr. Clark, or Defendants' police practices expert Ken Hubbs.

5
**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE REGARDING DECEDENT'S DRUG HISTORY AND ALCOHOL USE UNKNOWN TO OFFICERS**

toxicology report, as well as the significant criminal history supporting methamphetamine addiction, which again is associated with heightened suicide risk. (Plaintiff's Exhibit A- pg 29-30). From Puga's documented alcohol and drug history coupled with the postmortem toxicology reports, Dr. Mohandie is able to reach the opinion that "overall Mr. Puga demonstrates numerous empirical indicators that reliably categorize this incident as suicide by cop". (*Id.*). Plaintiff should not be permitted to excise two of these critical empirical indicators and effectively block Defendants attempts to explain Puga's conduct as something other than fear.

### IV. PUGA'S DRUG AND ALCOHOL HISTORY AND TOXICOLOGY FINDINGS ARE RELEVANT TO NEGLIGENCE

In addition to asserting excessive force claims under § 1983, Plaintiffs have also set forth a Negligence claim arguing the tactics used by Defendants prior to the shooting caused the shooting itself. In this regard, Plaintiffs' police practices expert Roger Clark has offered a number of opinions, including for example that SWAT should have been called to negotiate with Puga and that the officers should not have moved in to take Puga into custody, all of which he contends caused the shooting.

For Defendants to be held responsible under a negligence theory for pre-shooting tactics, such as those described by Mr. Clark, the tactics must still be the ***proximate cause*** of the shooting. *County of Los Angeles v. Mendez,* 137 S.Ct. 1539(2017)(ordering district court to "revisit whether proximate cause permits respondents to recover damages for their shooting injuries based on the deputies' failure to secure a warrant at the outset."). Defendants must therefore be able to present an alternative theory to the jury through the testimony of Dr. Mohandie, that given Puga's documented history of drug abuse and toxicology findings "there was no ability to reason with or deescalate Puga" in his current state to challenge Plaintiffs' theory that pre-shooting tactics were the proximate cause of the shooting as speculated by Mr. Clark. (Plaintiff's Exhibit A- pg. 35-36).

Further, the comparative negligence of the decedent is also a factor for the jury

to consider here. In this regard, juries are instructed when considering comparative fault, they should consider the negligence of the decedent. (CACI Jury Instruction 407). In determining Decedent's negligence, the jury is instructed that they should assess "how a reasonably careful person would have acted' and that "people who drink alcohol or take drugs must act just as carefully as those who do not." (CACI Jury Instruction 401- Basic Standard of Care and 404- Intoxication). As such, the amount of drugs and alcohol consumed by Decedent is a highly relevant factor for the jury to consider as to his comparative negligence. *See, Pittman v. Bovien,* 249 Cal. App. 2d 207, 217 (1967)(it is for the jury to consider whether intoxication was a contributing cause of injury).

As such, Dr. Clark's review of the toxicology report and resulting opinion that "the levels of methamphetamine and alcohol measured in Mr. Puga's blood suggests with a reasonable degree of medical certainty that his non-compliant and violent behavior during his encounter with the officers was caused by or contributed to his intoxication with methamphetamine and alcohol at the time." (Plaintiff's Exhibit C- Clark Report pg. 3). The opinions by Dr. Clark and Dr. Mohandie regarding decedent's drug and alcohol intoxication strike at the very heart at Decedent's comparative fault, including his efforts to commit suicide by cop.

## V. HUBBS' OPINIONS ARE RELEVANT TO THE USE OF FORCE

Plaintiffs also seek to exclude any opinions from retained police practices expert Mr. Hubbs who will opine that Puga's actions are consistent with chronic drug abuse, stimulant drug use, and that Puga displayed symptoms of methamphetamine psychosis. (Plaintiff's Exhibit D- Hubbs pg 67). However, the basis for these opinions was founded **_not_** in Puga's drug and alcohol **_history_**, but in the actions that Puga took on February 16 and 17, 2021 which were **_known_** to the officers and/or observed by them. As such, Plaintiff has zero basis to exclude Hubbs Opinion #6, which analyzes information that would have been known to a reasonable officer and explains to the

jury that a reasonable officer would properly conclude based on their training and experience that Puga displayed symptoms of stimulant use and/or methamphetamine psychosis as set forth in his report and respond accordingly.

## V. PUGA'S DRUG AND ALCOHOL HISTORY AND ARE RELEVANT TO DAMAGES

Plaintiffs are seeking three types of damages in this case- pre death pain and suffering, loss of Puga's life, and interference with their familial relationship/wrongful death damages. Puga's drug and alcohol use are again highly relevant to the assessment of all three.

### 1) Pre Death Pain and Suffering

Plaintiffs intend to argue that Puga suffered significantly before his death when he was struck by a pepper ball, shot by Defendants and tased after the shooting. As such, Dr. Clark's opinions based on the toxicology report are again highly relevant. As set forth in Dr. Clark's opinions, meth intoxication causes individuals to appear to have "superhuman strength or ***pain*** tolerance, likely the result of their brans not recognizing pain in the same fashion when not intoxicated with these drugs." (Plaintiff's Exhibit C- Clark pg. 4). Given what Plaintiffs will undoubtedly argue was excruciating pain experienced by Puga, despite the lack of any expert testimony on this subject, Defendants must be permitted to put forth their expert's opinions as to methamphetamine use and its impact on pain tolerance.

### 2) Wrongful Death Damages

Again, Defendants anticipate Plaintiffs will ask the jury for significant damages for the loss of Puga's life and separately for the loss of their familial relationship with their son and father. These damages simply cannot be evaluated without due consideration as to Puga's drug and alcohol history and the fact that he may have been attempting suicide that night to end his life.

Indisputably, Decedent's life expectancy is at issue in this "wrongful death"

case. *See*, *Francis v. Sauve*, 222 Cal. App. 2d 102, 121 (1963); *see also*, *Parsons v. Easton*, 184 Cal. 764, 770-771 (1921) ("It is the shorter expectancy of life that is to be taken into consideration [in computing wrongful death damages]; for example; if as in the case here, the expectancy of life of the parents is shorter than that of the son, the benefits to be considered are those only which might accrue during the life of the surviving parents."); *see also, McAsey v. U.S. Department of Navy,* 201 F.Supp.2d 1081, 1097 (N.D. Cal. 2002) ("In wrongful death actions, damages for pecuniary loss are limited by the life expectancy of the decedent immediately before he sustained the injuries which caused his death.") (internal citations omitted); *Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980) ("The life expectancy of the deceased is a question of fact for the jury to decide considering all relevant factors including the deceased's **health**, **lifestyle** and occupation") (emphasis added); *Boyd v. City and County of San Francisco*, 2006 WL 1390423, at *2 (N.D. Cal. 2006) ("In particular, California law allows a jury to consider the decedent's life expectancy, taking into account his **health, habits** and lifestyle as well as any…***self-destructive impulses*** in determining these amounts.") (emphasis added).

These cases are grounded in the commonsense reality that drug and alcohol abuse can (and do) impact relationships and life expectancy. *See*, CACI Jury Instruction No. 3921 (wrongful death damages calculations require the jury to evaluate decedent's "**health**, habits, ***activities*** [and] ***lifestyle***….") (emphasis added); *Benwell v. Dean,* 249 Cal.App.2d 345, 353 (1967) ("'It is always proper to make proof of the relations of the decedent to the person for whose benefit the action is being maintained, because such proof has a bearing upon the pecuniary loss suffered by the person entitled to recovery . . . '"); *Agosto v. Trusswal Systems Corp.*, 142 F.R.D. 118, 120 (E.D. Pa. 1992) ("It is Plaintiff's choice to pursue claims that necessitate the introduction of life expectancy information and basic fairness dictates that Plaintiff should not be allowed to make a potentially large recovery against [the defendant]

based on an average life span when, in reality, Plaintiff may well have a shorter than average life expectancy."); *see also, Lewis v. District of Columbia,* 793 F.2d 361, 363 (D.C. Cir. 1986) (affirming district court's order admitting evidence of **past drug use** and arrests when the evidence was probative in aiding the jury to fairly measure the extent of damages for the alleged police "excessive force" claim and that its prejudicial effect did not substantially outweigh its probative value).

Likewise, more than just a biological link is needed to establish a claim under the Fourteenth Amendment. "Parents can bring a Fourteenth Amendment due process claim only if they demonstrate 'consistent involvement in a child's life and participation in child-rearing activities.' [Citation]. **Children must make the same showing**." See, Ninth Circuit Model Civil Jury Instruction No. 9.32, "Due Process-- Interference with Parent/Child Relationship, "Comment, § I (citing Wheeler, supra, 894 F.3d at 1058). "When there is no consistent contact or assumption of some parenting role, *no relationship actually exists, and there is nothing for the Fourteenth Amendment to protect*." *See, Pelayo, supra*, 2022 WL 1123117, at *24 (citing *Wheeler*, supra, 894 F.3d 1046) (emphasis added). Puga's chosen lifestyle bears on these fundamental questions.

Such evidence is particularly needed here because despite decedent's documented history of arrests and incarcerations involving drug and alcohol use, as well as the toxicology findings, Plaintiffs adamantly denied any knowledge of the same. (Gustafson Decl. ¶2-4, Exhibit 1-3). *See, Nelson v. County of Los Angeles*, 113 Cal.App.4th 783, 793 (2003) (reducing heirs' damages in light of evidence showing that heirs did not know decedent well: "[A]t the time of [decedent's] death in 1998, neither [heir] knew…he had been incarcerated for substantial periods of time…"); *Chatham v. Parkhill,* 2013 WL 5912154, at *1 (S.D. Ill. 2013) (proper for defendants to present "evidence of the decedents criminal history and daily drug use in order to rebut evidence regarding the decedent's relationship with his son."); *Benwell, supra*,

249 Cal.App.2d at 350 ("[I]f it is proper for the beneficiary to produce evidence of the attitude and affection on the part of the decedent for the beneficiaries…then defendant should properly be able to rebut or negate such evidence.").

Here Defendants seek to offer Puga's drug and alcohol history, as well as his mental state in attempting suicide by cop, as it bears directly on his life expectancy, as well as the quality and character of his relationship with his heirs. *Castro v. Cnty of LA,* 2015 WL 4694070 *7 (C.D. Cal. 2015)("decedent's history of drug is relevant to proof both economic and non economic damages.").

## VI. THE COURT SHOULD NOT EXCLUDE THIS RELEVANT EVIDENCE

All relevant evidence is inherently prejudicial, but it is only "unfair" prejudice that can tip the scales to provide a basis for exclusion. *U.S. v.Hankey,* 203 F.3d 1160,1172 (9th Cir. 2000). Here the scales are not so tipped as without this evidence, for the reasons already argued, Defendants would be severely hindered in opposing Plaintiffs' explanation for Puga's non-compliance, as well as be precluded from providing the jury with key evidence for them to evaluate comparative negligence and/or damages.

Further, there will be no undue consumption of time because the bulk of the evidence will be offered through Dr. Mohandie. Likewise, Dr. Clark's testimony as to the toxicology findings will be brief.

Even if bifurcation were ordered as suggested by Plaintiffs, this only addresses the evaluation of damages but still handicaps Defendants in refuting Plaintiffs' state of mind claims and/or ensuring the jury properly evaluates Plaintiffs' negligence theory. Thus, even if the Court finds that the evidence is prejudicial, the appropriate remedy should be a limiting instruction, not exclusion or bifurcation. *Castro v. Cnty of LA,* 2015 WL 4694070 *5 (C.D. Cal. 2015)("with a proper limiting instruction to the jury, the risk of unfair prejudice to plaintiffs does not substantially outweigh the probative value" of evidence regarding decedent's intoxication).

DATED: April 24, 2025

**LYNBERG & WATKINS**
A Professional Corporation

By: /s/ Shannon L. Gustafson
**SHANNON L. GUSTAFSON**
**AMY R. MARGOLIES**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO
ROBERT VACCARI, and JAKE ADAMS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for County Defendants, certifies that this brief contains 3,349 words, which:

x complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: April 24, 2025

**LYNBERG & WATKINS**
A Professional Corporation

By: /s/ Shannon L. Gustafson
**SHANNON L. GUSTAFSON**
**AMY R. MARGOLIES**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO
ROBERT VACCARI, and JAKE ADAMS

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE REGARDING DECEDENT'S DRUG HISTORY AND ALCOHOL USE UNKNOWN TO OFFICERS**