SHANNON L. GUSTAFSON (SBN 228856)
sgustafson@lynberg.com
AMY R. MARGOLIES (SBN 283471)
amargolies@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendant, COUNTY OF SAN BERNARDINO, ROBERT VACCARI, and JAKE ADAMS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive, <br><br> Defendants. | CASE NO. 5:22-cv-00949-KK-(SHKx) <br><br> *Assigned for All Purposes to:* <br> Hon. Kenly K. Kato – Courtroom 3 <br><br> **COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, GANG AFFILIATIONS AND POTENTIAL CHARGES AND SENTENCING HAD DECDENT SURVIVED** <br><br> Trial Date:   June 2, 2025 <br><br> Complaint filed: 06/07/2022 <br> FAC filed: 10/18/22 <br> SAC filed: 01/13/23 <br> TAC filed: 05/12/23 |

1

COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, GANG AFFILIATIONS AND POTENTIAL CHARGES AND SENTENCING HAD DECDENT SURVIVED

## I. INTRODUCTION

When Decedent Hector Puga was stopped by law enforcement on February 17, 2021, this was far from his first such violent encounter. Puga's criminal history, as summarized in Plaintiffs' Motion in Limine No. 1, is as consistent as it is extensive. Puga has been arrested, charged and convicted multiple times for offenses involving drugs, alcohol, violence against law enforcement and violence against others. This information is not only highly relevant to the jury's assessment of Puga's conduct on the date of the shooting, but also for the jury's assessment of the apportionment of fault on Plaintiff's Negligence claim and to address the significant damages being requested herein. Plaintiffs now seek to sanitize the record by requesting this Court exclude all reference to any criminal activity by Puga. Relevant case law and the facts and circumstances of this case foreclose such a broad exclusion. *See, Johnson v. General Mills Inc.,* 2012 WL 13015023, at *1 (C.D. Cal. 2012) ("A party cannot use a motion in limine to sterilize the other party's presentation of the case.").

## II. PUGA'S CRIMINALITY IS RELEVANT AND ADMISSIBLE UNDER *BOYD*

A peace officer is permitted to introduce evidence of facts that were unknown to him at the time of the incident where such facts corroborate or increase the likelihood of the existence of facts that were observed and relied upon by the officer in the officer's decision to use force during the incident. *Boyd v. City and County of San Francisco,* 576 F.3d 938 (9th Cir. 2009); *see also, Graham, v. Connor,* 490 U.S. 385, 399, n. 2 (1980); 399, n. 12 (factfinder may consider outside evidence "in assessing the credibility of an officer's account of the circumstances that prompted the use of force"); *Estate of Chum v. City of Los Angeles*, 585 Fed.Appx. 435, 436 (9th Cir. 2014) (citing *Boyd, supra,* 576 F3d at 943-945 ("Because the challenged testimony made [defendant's] account more probable, the testimony was relevant, and

the district court did not abuse its discretion by admitting it"). Thus, in an excessive force case, "where what the officer perceived ***just prior to the use of force*** is in dispute, evidence that may support one version of events over another is relevant and admissible." *Boyd, supra,* 576 F.3d at 944 (emphasis added).

In particular, the Ninth Circuit specifically upheld the trial court's ruling that decedent's alleged "resistance to the police is also made more probable by evidence, in the form of expert testimony, that his actions were consistent with an attempt to commit ***suicide by cop***." *Boyd, supra,* 576 F.3d at 944. Likewise, Decedents' actions here as supported through his criminal history, in particular his prior suicide by cop attempt in 2015 and his criminal activity in the days leading up to the shooting, make it more probable that his actions were an attempt to commit suicide by cop.

Contrary to Plaintiffs' arguments, much like in *Boyd,* what the officers perceived immediately prior to the shooting is hotly contested by Plaintiffs who contend that despite law enforcement and third-party testimony, Puga never pulled a gun from his waistband. And unfortunately, not a single video shows Puga's waist at the time of the shooting and therefore like *Boyd,* what the officers perceived at the time of the shooting is disputed. Likewise, even though multiple witnesses testified Puga had a gun in his hand and a gun was found under him after the shooting, the poor quality of the video makes it difficult to see the gun and therefore Plaintiffs intend to dispute that Puga also had a gun still in his hand as he ran. However, Defendants suicide by cop evidence as supported by his prior suicide by cop attempt and criminal activity in days leading up to the shooting, make it more probable that decedent was trying to provoke a police shooting rather than acting upon fear. *Boyd, supra,* at 948.

Further, just as in *Boyd,* Plaintiffs have offered no scientific challenge to Defendants' suicide by cop evidence and like in *Boyd* this court should find that the

3

**COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, GANG AFFILIATIONS AND POTENTIAL CHARGES AND SENTENCING HAD DECDENT SURVIVED**

evidence of Decedent's criminal history in the context of this theory is highly relevant and more probative than prejudicial. *Boyd,* 576 F.3d at 948-949. Moreover, as set forth by the Court in *Boyd,* when considering the issue, "admission of evidence in support of the suicide by cop theory falls within the exception for otherwise inadmissible character evidence carved out in Rule 404(b)." *Boyd supra,* 576 F.3d 938 (suicide by cop properly considered as evidence of plan, intent and motive).

### III. PUGA'S CRIMINAL HISTORY IS RELEVANT TO LIABILITY

To begin, Plaintiffs intend to present evidence that all Puga's actions at the time of the shooting can be explained away because he was "scared." (Plaintiff's Opposition to Motion for Summary Judgment- Dkt. 111- pg. 10-"Puga expressed concerns to the officers that he thought the officers were going to shoot him" and "he sounded scared of being shot by police" and pg. 23- "he likely turned to run because he panicked at seeing several officers quickly approaching him and was scared he was going to be shot"). Plaintiffs further intend to call their expert Roger Clark to offer opinions that the Defendants' tactics were ill conceived and pushed Puga into reacting. Clark will testify that if Defendants would have called SWAT, developed a better tactical plan, and not left cover to approach Puga, this shooting would have never occurred. (Gustafson Decl. ¶2, Exhibit 1- Clark Opinion 6). In short, through Clark, Plaintiffs will argue that Defendants were negligent and that if different tactics were used there would have been no shooting. Defendants must therefore be permitted to present through their expert Dr. Kris Mohandie, evidence that Puga's action that night were born out of his desire to commit suicide by cop and this plan coupled with his intoxication would have made it highly unlikely that the situation could be deescalated by Defendants.

At the outset, Plaintiffs do not challenge Dr. Mohandie's exemplary qualifications, nor have they challenged the sufficiency of the facts or data upon

which his opinions were based upon or the reliability of the methods he used. *Fed.R.Evid* 702, *Daubert, v. Merrell Dow Pharm, Inc.* 509 U.S. 579, 597; *Boyd v. City and County of San Francisco,* 576 F.3d 938, 946 (9th Cir. 2009)(Plaintiff "provides no scientific opinions challenging or refuting" Defendants suicide by cop evidence).[1]

In order to reach his opinions that Puga's behavior was consistent with an individual that was intent on committing suicide by cop, Dr. Mohandie relies in part on undisputed aspects of Puga's criminal history. These pieces of Puga's criminal history are not being offered to "tarnish" Puga's reputation as claimed by Plaintiffs, but are instead part of the evaluation by Defendants' retained psychologist to explain the context of Puga's actions.

First, there is ample evidence, including a video recording from 2015, wherein Puga engaged in markedly similar behavior which is also characterized as a suicide by cop attempt by Dr. Mohandie. In particular, Puga led LASD on a long pursuit and at the conclusion of that pursuit pulled a gun and shot at deputies, before fleeing to a nearby residence. It was later discovered that the gun used in that case was actually fake. Puga admitted in his interview with police afterwards that he had nothing to live for and that he **_wanted the police to kill him_**. (Plaintiff's Exhibit A- pg 8). As explained by Dr. Mohandie, among the empirical indicators of suicide cop are past suicidal ideations, past suicidal cop attempts, shooting at police and other non - compliant behavior involving law enforcement, all of which were on display in this 2015 incident. (Plaintiff's Exhibit A- pg. 30).

Likewise, Puga stated very clearly at the scene of the shooting that he was not going back to prison, he had served time and was a third striker. (Plaintiffs' Exhibit

---

[1] Similarly, there has been no Daubert challenge made to Defendants' police practices expert Ken Hubbs nor to Defendants' criminal law expert Joshua Visco.

A", page 9). These statements not only informed Dr. Mohandie's suicide by cop assessment but were also known to the officers at the scene and would have been a factor they would have had to consider as part of the totality of the circumstances. Puga's statements cannot be discarded merely because they suggest he has been to prison and committed crimes.

Similarly, Dr. Mohandie relies on the fact that Puga was the subject of a current no bail warrant for violating parole and that this coupled with his criminal history and conduct on February 16-17, 2021, made it a virtual certainty that Puga was going back to jail, another key assessment in the suicide by cop analysis. (Plaintiff's Exhibit A-page 9-10).

Further, Puga's violent acts leading up to the shooting are relevant again to establish that de-escalation was unlikely regardless of the list of tactics that Clark claims should have been used to prevent the shooting. As set forth by Dr. Mohandie "there were a number of high-risk indicators present in this case that indicated a low likelihood of a successful verbal outcome, the most significant being Mr. Puga's homicidal and suicidal state of mind (death wish)[2], his unwillingness to submit to arrest and return to prison[3], fueled by methamphetamine and alcohol intoxication, which rendered him unwilling and incapable of being reasoned with." (Exhibit A-pgs. 36-37). This opinion is directly on point to refute the evidence that will be offered by Plaintiffs that Puga was scared and that if better tactics were used deadly force would not have been needed. Further, Defendants suicide by cop evidence is also essential for the jury's evaluation of Puga's comparative negligence. (CACI 407-

---

[2] Supported by the 2015 shooting with Los Angeles County Sheriff's Department.
[3] Supported by facts that Mr. Puga evaded officers just days before the shooting, when they attempted to stop him for a DUI and was now on the run.

Negligence of Decedent is considered, 401- Standard of Care- "Negligence is the failure to use reasonable care **_to prevent harm to oneself_** or others.").

IV. **PUGA'S CRIMINAL HISTORY IS RELEVANT TO DAMAGES**

Plaintiffs are seeking damages for the loss of Puga's life and interference with their familial relationship. These types of damages demand that the jury be provided evidence as to the lifestyle that Puga led.

"The mere existence of a biological link between parent and child is **_not_** a sufficient basis to support a Fourteenth Amendment claim for loss of familial relationship rights." See, Ninth Circuit Model Civil Jury Instruction No. 9.32, "Due Process--Interference with Parent/Child Relationship, "Comment, § I (citing *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018)) (emphasis added). Instead, "[j]udicially enforceable Fourteenth Amendment interests require enduring relationships reflecting assumption of parental responsibility and stem from the emotional attachments that derive form the intimacy of daily association…." *Wheeler, supra,* 894 F.3d at 1058; see, Ninth Circuit Model Civil Jury Instruction No. 9.32, "Due Process--Interference with Parent/Child Relationship, "Comment," § I ("In order to bring a Fourteenth Amendment due process claim, the parent and child must have relationships 'which reflect some assumption 'of parental responsibility.'") (quoting *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016)). Likewise, state wrongful death claims require an evaluation of the loss of the value of the relationship with decedent for the jury to value the loss of the love, companionship, comfort care, assistance, protection, society, and moral support of decedent, as well as the loss of decedent's training and guidance. *See,* CACI Jury Instruction 3921.

These types of damages simply cannot be assessed if the jury is stripped from receiving any information as to who Puga really was as portrayed through his

COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, GANG AFFILIATIONS AND POTENTIAL CHARGES AND SENTENCING HAD DECDENT SURVIVED

extensive and violent criminal past, which resulted in lengthy incarcerations away from his family.

Indisputably, Decedent's life expectancy is at issue in this "wrongful death" case. *See, Francis v. Sauve*, 222 Cal.App.2d 102, 121 (1963); *see also, McAsey v. U.S. Department of Navy*, 201 F.Supp.2d 1081, 1097 (N.D. Cal. 2002) ("In wrongful death actions, damages for pecuniary loss are limited by the life expectancy of the decedent immediately before he sustained the injuries which caused his death.") (internal citations omitted); *Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980) ("The life expectancy of the deceased is a question of fact for the jury to decide considering all relevant factors including the deceased's **health**, **lifestyle** and occupation") (emphasis added); *Boyd v. City and County of San Francisco*, 2006 WL 1390423, at *2 (N.D. Cal. 2006) ("In particular, California law allows a jury to consider the decedent's life expectancy, taking into account his **health, habits** and lifestyle as well as any…**self-destructive impulses** in determining these amounts.") (emphasis added). It is a commonsense reality that criminal activity presents lifestyle risks that can (and do) impact relationships and life expectancy.

Introduction of a decedent's criminal history is also grounded in basic notions of fairness and the recognition that litigation is a search for the truth. *See, Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009) (affirming district court's admission of decedent's criminal history as relevant and highly probative to the issue of damages); *see also, Lewis v. District of Columbia,* 793 F.2d 361, 363 (D.C. Cir. 1986) (affirming district court's order admitting evidence of past drug use *and arrests* when the evidence was probative in aiding the jury to fairly measure the extent of damages for the alleged police "excessive force" claim and that its prejudicial effect did not substantially outweigh its probative value).

That the **entirety** of Decedent's adult life was marked by arrests and

incarcerations goes directly to his "health, habits, and lifestyle" as contemplated by California's "wrongful death" damages instruction. *See*, CACI 3291 (wrongful death damages calculations require the jury to evaluate decedent's "**health**, habits, **activities** [and] *lifestyle*….") (emphasis added). His criminal past is also directly relevant to the relationship he maintained—or did not maintain—with Plaintiffs. *See, Nelson v. County of Los Angeles*, 113 Cal.App.4th 783, 793 (2003) (reducing heirs' damages in light of evidence showing that heirs did not know decedent well: "[A]t the time of [decedent's] death in 1998, neither [heir] knew…he had been incarcerated for substantial periods of time…"); *see also, Cobige v. City of Chicago*, 651 F.3d 780, 784 (7th Cir. 2011) (arrest record admissible because such evidence "potentially affect[s]…the damages recoverable by [the estate] for loss of companionship…"); *Chatman v. City of Chicago*, 2014 WL 1813172, at *1 (N.D. Ill. 2014) ("[T]he decedent's records are relevant because his criminal history may affect the amount of damages his mother might recover because of his death."); *Chatham v. Parkhill,* 2013 WL 5912154, at *1 (S.D. Ill. 2013) (proper for defendants to present "evidence of the decedents criminal history and daily drug use in order to rebut evidence regarding the decedent's relationship with his son."). This is true whether Plaintiffs admit to knowledge of Decedent's arrests and incarceration, or attempt to disclaim knowledge, as was done here. *See, Nelson, supra,* 113 Cal.App.4th at 793-794 (finding that plaintiffs' lack of knowledge of decedent's criminal history was a relevant factor in reversing their "wrongful death" damages award).[4]

To date, Plaintiffs have attempted to paint as favorable view as they can of Decedent and his contributions. Defendants are therefore entitled present evidence to the jury that rebuts these claims by highlighting the not-so-favorable parts of

---

[4] On this point, Plaintiffs largely feigned ignorance as to Decedent's extensive criminal past. (Gustafson Decl. ¶¶3-6, Exhibits 2-5).

Decedents life, including facts impacting the nature, depth, and quality of Plaintiffs' relationship with him. *See, Soto v. BorgWarner Morse TEC Inc.*, 239 Cal.App.4th 165, 201 (2015) (in wrongful death cases, "[f]actors such as the closeness of a family unit, the depth of their love and affection,… are proper considerations for a jury assessing noneconomic damages."); *Benwell, supra*, 249 Cal.App.2d at 349 ("It is well established in this state…that evidence of the nature of the personal relationship that existed between the decedent and the beneficiaries of a wrongful death action has a bearing on the compensation for loss of society, comfort and protection, and is therefore ordinarily admissible in such an action.").

Decedent's criminal history must be admitted for a proper assessment of the valuation of damages here. As explained by Dr. Mohandie, Decedent's history, along with other factors establishes that he likely suffered from disorders that were associated with "premature death due to overdose, accidents due to high risk behavior, multiple health conditions that shorten life and result in sudden death violence directed towards others, arrests and incarcerations, employment difficulties, family and interpersonal relationship disruption and mortality by suicide (as occurred in this case). (Plaintiff's Exhibit A, pg. 39). Clearly Dr. Mohandie's diagnosis of decedent and the factual basis for it are largely based on Puga's criminal history. And this opinion is essential to refuting claims of a close family relationship and related life expectancy issues.

Finally, Plaintiffs seek to exclude the testimony of expert Visco, an experienced criminal law attorney, whose qualifications are again not challenged by Plaintiffs. Mr. Visco reviewed Plaintiff's extensive criminal history and the reports of his conduct leading up to his death, which included fleeing a DUI investigation, engaging in a high-speed pursuit, and ultimately pointing a gun at Defendants. Based on his review of the material and significant experience, Mr. Visco intends to offer opinions as to

10
COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, GANG AFFILIATIONS AND POTENTIAL CHARGES AND SENTENCING HAD DECDENT SURVIVED

the potential charges Puga would face and the likely sentence he would receive if convicted. (Plaintiff's Exhibit B- Visco Report). Again, this opinion and the facts that support it are highly relevant for the jury's assessment of the valuation of the future relationship with the Decedent had he lived, including that there was a high degree of certainty that Puga would spend the remainder of his life in prison.

Finally, Defendants' introduction of Puga's criminal history will not result in any undue consumption of time, as the bulk of the evidence will be offered through Dr. Mohandie, who would still be called to testify that Puga's actions were consistent with suicide by cop based on other factors, albeit he would be unfairly limited in his ability to explain that Puga displayed extensive additional factors that support the opinion. Likewise, Mr. Visco's testimony would be brief.

## V.     CONCLUSION

For all of the reasons set forth above, the Court should not exclude Puga's criminal history from evidence. Further, bifurcation of damages, does not fully address the issue because Decedent's criminal history is integral to explaining liability including all the factors that confirm for Dr. Mohandie that Mr. Puga committed suicide by cop.

DATED: April 24, 2025                    **LYNBERG & WATKINS**
                                         A Professional Corporation


By:  /s/ Shannon L. Gustafson
     **SHANNON L. GUSTAFSON**
     **AMY R. MARGOLIES**
     Attorneys for Defendant,
     COUNTY OF SAN BERNARDINO
     ROBERT VACCARI, and JAKE ADAMS

**11**
COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, GANG AFFILIATIONS AND POTENTIAL CHARGES AND SENTENCING HAD DECDENT SURVIVED

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for County Defendants, certifies that this brief contains 3,091 words, which:

x complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: April 24, 2025

**LYNBERG & WATKINS**
A Professional Corporation

By: /s/ Shannon L. Gustafson
**SHANNON L. GUSTAFSON**
**AMY R. MARGOLIES**
Attorneys for Defendant,
COUNTY OF SAN BERNARDINO
ROBERT VACCARI, and JAKE ADAMS

12

COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF DECEDENT'S CRIMINAL HISTORY, PRIOR CONTACTS WITH LAW ENFORCEMENT, PERIODS OF INCARCERATION, GANG AFFILIATIONS AND POTENTIAL CHARGES AND SENTENCING HAD DECDENT SURVIVED