1   ROB BONTA
    Attorney General of California
2   NORMAN D. MORRISON
    Supervising Deputy Attorney General
3   DIANA ESQUIVEL
    Deputy Attorney General
4   State Bar No. 202954
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone: (916) 210-7320
      Facsimile: (916) 322-8288
7     E-mail: Diana.Esquivel@doj.ca.gov
    *Attorneys for Defendants State of California, by and*
8   *through California Highway Patrol, Blackwood,*
    *Kee, and Rubalcava*
9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                EASTER-RIVERSIDE DIVISION

13

14  | **L.C., et al.,** | No. 5:22-cv-00949 KK-SHKx |
15  | | |
    | Plaintiffs, | **STATE DEFENDANTS'** |
16  | | **MEMORANDUM OF** |
    | | **CONTENTIONS OF FACT AND** |
17  | **v.** | **LAW** |
    | | |
18  | **STATE OF CALIFORNIA, et al.,** | Date:        May 15, 2025 |
    | | Time:        10:30 a.m. |
19  | Defendants. | Courtroom:  3 (3rd Floor) |
    | | Judge:       Hon. Kenly Kiya Kato |
20  | | Trial Date:  June 2, 2025 |
    | | Action Filed: June 7, 2022 |
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. Plaintiffs' Claims ........................................................................... 6

    A. Legal Theories ................................................................... 6

    B. Elements of Plaintiffs' Claims ......................................... 7

    C. Defendants' Evidence in Opposition ............................... 14

II. Defendants' Affirmative Defenses .............................................. 15

    A. Legal Theories ................................................................. 15

    B. Elements of Affirmative Defenses ................................. 16

    C. Defendants' Evidence in Support of Affirmative Defenses ............... 18

III. Third Parties .............................................................................. 19

IV. Anticipated Evidentiary Issues ................................................. 19

V. Other Germane Issues of Law ................................................... 20

VI. Bifurcation of Issues ................................................................ 22

VII. Jury Trial ................................................................................ 22

VIII. Attorney's Fees ..................................................................... 22

IX. Abandonment of Issues ............................................................ 22

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Creighton*
    483 U.S. 635 (1987) ................................................................ 16, 21

*Brouseau v. Haugen*
    543 U.S. 194 (2004) ..................................................................... 16

*Cruz v. Cty. of Anaheim*
    765 F.3d 1076 (9th Cir. 2014) ..................................................... 21

*Earley v. Pacific Elec. Ry. Co.*
    176 Cal. 79 (1917) ....................................................................... 12

*Edson v. Cty. of Anaheim*
    63 Cal. App. 4th 1269 (1998) ...................................................... 17

*Est. of Strickland v. Nevada Cnty.*
    69 F.4th 614 (9th Cir. 2023) ........................................................ 21

*Graham v. Connor*
    490 U.S. 386 (1989) .............................................................. 7, 8, 11

*Hayes v. Cnty. of San Diego*
    57 Cal. 4th 622 (2013) ................................................................ 13

*Hernandez v. Cty. of Pomona*
    46 Cal. 4th. 501 (2009) ............................................................... 11

*Hilts v. Cnty. of Solano*
    265 Cal.App.2d 161 (1968) ......................................................... 16

*Johnson v. Breeden*
    280 F.3d 1308 (11th Cir. 2002) ............................................... 20, 21

*Justus v. Atchison*
    19 Cal.3d 564 (1977) ................................................................... 12

*Kirkpatrick v. Cnty. of Washoe*
    843 F.3d 784 (9th Cir. 2016) (en banc) ........................................ 10

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Lampkins v. Thompson*

4

337 F.3d 1009 (8th Cir. 2003) ............................................................. 21

5

*Mansor v. Flores*

6

No. 5:23-cv-00486 MWF-MAA, 2023 WL 8870587 (C.D. Cal. Aug. 9, 2023) ................................................................................... 18

7

*Nehad v. Browder*

8

929 F.3d 1125 (9th Cir. 2019) ............................................................... 8

9

*Orn v. Cty. of Tacoma*

10

949 F.3d 1167 (9th Cir. 2020) ............................................................... 9

11

*Ortiz v. Jordan*

12

562 U.S. 180 (2011) ............................................................................. 16

13

*Reese v. Cnty. of Sacramento*

14

888 F.3d 1030 (9th Cir. 2018) ............................................................. 14

15

*Reynolds v. Cnty. of San Diego*

16

858 F. Supp. 1064 (S.D. Cal. 1994) .................................................... 16

17

*Rosenbaum v. Washoe County*

654 F.3d 1001 (9th Cir. 2011) ............................................................. 16

18

*S.B. v. Cty. of San Diego*

19

864 F.3d 1010 (9th Cir. 2017) ............................................................... 9

20

*Saucier v. Katz*

21

533 U.S. 194 (2001) ............................................................................. 21

22

*Scott v. Harris*

23

550 U.S. 372 (2007) ............................................................................... 8

24

*Stephenson v. Doe*

25

332 F.3d 68 (2d Cir. 2003) .................................................................. 21

26

*Tatum v. Cty. & Cnty. of S.F.*

441 F.3d 1090 (9th Cir. 2006) ............................................................... 7

27

28

iii

# TABLE OF AUTHORITIES
### (continued)

Page

*Tennessee v. Garner*
    471 U.S. 1 (1985) ................................................................. 8, 9

*Tuuamalemalo v. Greene*
    946 F.3d 471 (9th Cir. 2019) ................................................. 9

*Wheeler v. Cty. of Sta. Clara*
    894 F.3d 1046 (9th Cir. 2018) ............................................... 10

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010) ................................................. 9


**STATUTES**

42 U.S.C. § 1983 ........................................................... 6, 7, 15

Cal. Civ. Proc. Code § 377.22 ................................................ 12

Cal. Civ. Proc. Code § 377.32 ................................................ 11

Cal. Civ. Proc. Code § 377.60 ................................................ 12

Cal. Penal Code § 196(b) ...................................................... 18

Cal. Penal Code § 835a(c) ..................................................... 18


**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amendment XIV ................................................. 10


**OTHER AUTHORITIES**

CACI 406 ........................................................................... 17

CACI 441 ........................................................................... 13

CACI 1304 ......................................................................... 17

# TABLE OF AUTHORITIES
## (continued)

Page

CACI 1305B ............................................................................................... 11

CACI 3066 ............................................................................................... 14

Defendants State of California, by and through California Highway Patrol,
Michael Blackwood, Isaiah Kee, and Bernardo Rubalcava (State Defendants)
submit this Memorandum of Contentions of Fact and Law as required under Local
Rule 16-4.

## I.    PLAINTIFFS' CLAIMS

Plaintiffs, the minor children and mother of decedent Hector Puga (Puga), are
pursuing claims that relate to the reasonableness of Defendants California Highway
Patrol (CHP) Officers Michael Blackwood, Isaiah Kee, and Bernardo Rubalcava's
use of lethal force against Puga on February 17, 2021.[1] Plaintiffs' remaining claims
in the Third Amended Complaint are:

### A.    Legal Theories[2]

1.    The Second Claim for Relief under the Fourth Amendment for excess
force (42 U.S.C. § 1983) was brought by the minor Plaintiffs.

2.    The Fourth Claim for Relief for deprivation of the familial relationship
was brought by all the Plaintiffs under the Substantive Due Process Clause of the
Fourteenth Amendment (42 U.S.C. § 1983).

3.    The Fifth Claim for Relief for battery under state law was brought by all
the Plaintiffs.

4.    The Sixth Claim for Relief for negligence under state law was brought by
all the Plaintiffs.

5.    The Seventh Claim for Relief for violation of the Bane Act (Cal. Civ.
Code § 52.1) was brought by the minor Plaintiffs.

---

[1] Plaintiffs also sued San Bernardino County Sheriff's Department Deputies
Vaccari and Adam for their use of lethal and non-lethal force. Only the claims
against the State Defendants are addressed here.

[2] Plaintiffs voluntarily dismissed the First and Third Claims for Relief for
unlawful detention and arrest and denial of medical care, respectively, and agreed
not to pursue any state-law claim based on a theory that Defendants denied Puga
medical care. (ECF No. 101).

**B.    Elements of Plaintiffs' Claims**

1.    The elements for a section 1983 excessive-force claim arising under the Fourth Amendment are:

        a.    The officer acted under color of state law;

        b.    The officer deprived Puga of his constitutional right to be free of excessive force;

        c.    The use of force was objectively unreasonable under all of the circumstances;

        d.    The use of force caused Puga harm; and

        e.    The minor Plaintiffs are successors-in-interest to Puga.

*See* Ninth Circuit Model Civil Jury Instrs. 9.3, 9.20, 9.25*; Graham v. Connor,* 490 U.S. 386, 395 (1989); *Tatum v. Cty. & Cnty. of S.F.,* 441 F.3d 1090, 1100 n.2 (9th Cir. 2006) ("[T]he decedent's 'successor in interest' may prosecute [a section 1983] survival action if the person … satisfies the requirements of California law.").

In determining whether the officer used excessive force, all of the circumstances known to the officer on the scene must be considered, including:

(1) the nature of the crime or other circumstances known to the officer at the time force was applied;

(2) whether Puga posed an immediate threat to the safety of the officer or others;

(3) whether Puga was actively resisting arrest or attempting to evade arrest by flight;

(4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the relationship between the need for the use of force and the amount of force used;

(6) any effort made by the officer to temper or to limit the amount of force;

(7) the severity of the security problem at issue;

(8) the availability of alternative methods to subdue Puga;

(9) whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

(10) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(11) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

Ninth Circuit Model Civil Jury Inst. 9.25 (modified).

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as applied in *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham*, 490 U.S. at 397, *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the fact-finder should give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citation omitted). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or

others." *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. Cty. of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-established that where a suspect threatens an officer with a weapon or where the officer has probable cause to believe that the suspect poses a threat of death or serious physical harm to the officer or others, the officer is justified in using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres,* 610 F.3d 546, 546 (9th Cir. 2010).

2.    The elements for a Fourteenth Amendment claim for deprivation of the familial relationship are:

a.    Puga and the Plaintiff had a cognizable relationship, that is, a relationship which reflected some assumption of parental responsibility, consistent involvement in a child's life, and participation in child-rearing activities;

b.    The officer acted with a purpose to harm Puga for reasons unrelated to legitimate law enforcement objectives, or the officer acted with deliberate indifference to Puga; and

c.    The officer's conduct caused harm to Puga.

Which standard in paragraph (b) applies turns on whether the officers had time to deliberate their conduct. If the encounter at issue escalated so quickly that the officer had to make a snap judgment, such that actual deliberation was not practical, the Plaintiffs must show the officer acted with a "purpose to harm." That is, the Plaintiff must prove that the officer's purpose was to cause harm unrelated to the legitimate law enforcement objective. On the other hand, if the situation evolved within a time frame that allowed officers to reflect before acting, the Plaintiff must show the officer acted with "deliberate indifference." An officer acts with deliberate indifference if he recognizes the unreasonable risk and actually intends to expose the person to such risk without regard of the consequences to the person.

Ninth Circuit Model Civil Jury Inst. 9.32 Comment (2017, rev. 11/2024); U.S.
Const. Amend. XIV; *Wheeler v. Cty. of Sta. Clara*, 894 F.3d 1046, 1058 (9th Cir.
2018); *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016) (en banc).

3. The elements of a claim for battery by a peace officer under California
law are:

A peace officer may use deadly force only when necessary in defense of
human life. Plaintiffs claim that the State Defendants unnecessarily used deadly
force on Puga. To establish this claim, Plaintiffs must prove all of the following:

a. That the officer intentionally touched Puga or caused Puga to be
touched;

b. That the officer used deadly force on Puga;

c. That the officer's use of deadly force was not necessary to defend
human life;

d. That Puga was killed;

e. That the officer's use of deadly force was a substantial factor in
causing Puga's death; and

f. That Plaintiffs are successors-in-interest to Puga.

A State Defendant's use of deadly force was necessary to defend human life
only if a reasonable officer in the same situation would have believed, based on the
totality of the circumstances known to or perceived by the officer at the time, that
deadly force was necessary to defend against an imminent threat of death or serious
bodily harm to the officer.

A person being arrested/detained has a duty not to use force to resist the peace
officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of
causing death or serious bodily injury, including, but not limited to, the discharge of
a firearm.

1   A threat of death or serious bodily injury is "imminent" when, based on the

2   totality of the circumstances, a reasonable officer in the same situation would

3   believe that a person has the present ability, opportunity, and apparent intent to

4   immediately cause death or serious bodily injury to the peace officer or another

5   person. An imminent harm is not merely a fear of future harm, no matter how great

6   the fear and no matter how great the likelihood of the harm, but is one that, from

7   appearances, must be instantly confronted and addressed.

8   "Totality of the circumstances" means all facts known to the peace officer at

9   the time, including the conduct of the officer and Puga leading up to the use of

10  deadly force. In determining whether the officer's use of deadly force was

11  necessary in defense of human life, the jury must consider the officer's tactical

12  conduct and decisions before using deadly force on Puga and whether the officer

13  used other available resources and techniques as an alternative to deadly force, if it

14  was reasonably safe and feasible to do so.

15  A peace officer who makes or attempts to make an arrest does not have to

16  retreat or stop because the person being arrested is resisting or threatening to resist.

17  Tactical repositioning or other de-escalation tactics are not retreat. A peace officer

18  does not lose the right to self-defense by use of objectively reasonable force to

19  effect the arrest or to prevent escape or to overcome resistance. A peace officer

20  does, however, have a duty to use reasonable tactical repositioning or other de-

21  escalation tactics.

22  CACI 1305B.

23  The same *Graham* factors apply to the reasonableness of the use of force as

24  under a Fourth Amendment claim. *Hernandez v. Cty. of Pomona*, 46 Cal. 4th. 501,

25  514 (2009). As with Fourth Amendment claims, a claim for battery is a personal

26  right that may not be vicariously asserted. Cal. Civ. Proc. Code § 377.32. While the

27  Plaintiffs may step into Puga's shoes to prosecute this claim on his behalf, they

28  have no standing to do so for themselves because the State Defendants did not

1  commit a battery against Plaintiffs. Indeed, it has been established that "wrongful

2  death" damages compensate a Plaintiff for his or her own independent pecuniary

3  injury suffered by loss of the decedent, and are separate and distinct from any

4  damages recoverable by the decedent had he or she survived. Cal. Civ. Proc. Code

5  §§ 377.22, 377.60; *Earley v. Pacific Elec. Ry. Co*., 176 Cal. 79, 81 (1917); *Justus v.*

6  *Atchison*, 19 Cal.3d 564, 572, 573 (1977).

7      4.    The elements for a negligence claim against a peace officer for use of

8  deadly force are:

9          a.    The State Defendant was a peace officer;

10          b.    The officer used deadly force on Puga;

11          c.    The officer's use of deadly force was not necessary to defend

12  human life;

13          d.    Puga was killed; and

14          e.    The officer's use of deadly force was a substantial factor in causing

15  Puga's death.

16      The State Defendant's use of deadly force was necessary to defend human life

17  only if a reasonable officer in the same situation would have believed, based on the

18  totality of the circumstances known to or perceived by the officer at the time, that

19  deadly force was necessary to defend against an imminent threat of death or serious

20  bodily injury to the officer.

21      A person being arrested/detained has a duty not to use force to resist a peace

22  officer unless the peace officer is using unreasonable force.

23      A threat of death or serious bodily injury is "imminent" if, based on the

24  totality of the circumstances, a reasonable officer in the same situation would

25  believe that a person has the present ability, opportunity, and apparent intent to

26  immediately cause death or serious bodily injury to the peace officer or to another

27  person. An imminent harm is not merely a fear of future harm, no matter how great

28

the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of the State Defendant and Puga leading up to the use of deadly force. In determining whether the officer's use of deadly force was necessary in defense of human life, you must consider the officer's tactical conduct and decisions before using deadly force on Puga and whether the officer used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

CACI 441.

Plaintiffs contend that the State Defendants are liable for negligence based on alleged tactical mistakes prior to the shooting. Under California law, negligence liability "can arise if the tactical conduct and decisions leading up to the use of deadly force [by law enforcement] show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 626 (2013). The California Supreme Court has held that:

> [W]here the preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, the reasonableness of the officers' preshooting conduct should not be considered in isolation. Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable.

*Hayes*, 57 Cal. 4th at 632.

5.     The elements for a claim under the Bane Act are:

    a.     One or more officer used excessive force against Puga;

    b.     The officer intended to violate Puga's right to be free of excessive force;

    c.     That Puga was harmed; and

    d.     That the officer's conduct was a substantial factor in causing Puga's harm.

The officer's intent to violate the constitutional right of another may be demonstrated by a reckless disregard of those rights where the officer's actions constitute a purposeful deprivation of those rights, even if the officer is unaware of the unlawfulness of the action.

CACI 3066 (rev. 11/2018); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018)

## C.     Defendants' Evidence in Opposition

Because the majority of Plaintiffs' claim are based on the reasonableness of the State Defendants' use of lethal force, the key evidence in opposition to Plaintiffs' claims will be:

1.     The prior statements and testimony of the State Defendants and involved Sheriff's deputies.

2.     The prior statements and testimony of eyewitnesses.

3.     Evidence gathered of the incident, including but not limited to, video footage of the incident, photographs, witness statements, dispatch recordings and logs, and the reports and testimony of law enforcement investigators and forensic specialists regarding the evidence.

4.     Puga's prior criminal and medical records.

5.     Plaintiffs' deposition testimony and responses to discovery.

6.     Expert testimony of Greg Meyer regarding police procedures, including all the underlying evidence he relied on in reaching his conclusions.

7.    Expert testimony of Alexander Jason regarding shooting reconstruction, including all the underlying evidence he relied on in reaching his conclusions.

8.    Expert testimony of Kris Mohandie and Joshua Peter Visco regarding Puga's criminal history and potential charges and sentencing he was facing if he had lived that led to his conduct and "suicide by cop," including all the underlying evidence they relied on in reaching their conclusions.

Evidence in opposition to Plaintiffs' Fourteenth Amendment claim include the testimony of the minor Plaintiffs' mothers, the birth certificates showing Puga was not listed as the father, and Puga's incarceration records.

## II.    DEFENDANTS' AFFIRMATIVE DEFENSES

### A.    Legal Theories

State Defendants pled and asserted several key affirmative defenses which they intend to pursue at trial.

6.    Fifth Affirmative Defense: Qualified immunity against the 42 U.S.C. § 1983 claims.

7.    Sixth Affirmative Defense: Immunity under California Government Code § 815.2(b).

8.    Seventh Affirmative Defense: Immunity under California Government Code § 820.2.

9.    Tenth Affirmative Defense: Comparative fault of decedent and others.

10.    Twelfth Affirmative Defense: Immunity under California Penal Code §§ 835 and 835a.

11.    Sixteenth and Twenty-Third Affirmative Defenses: Self-defense and defense of others against the state law claims.

12.    Twenty-Second Affirmative Defense: Immunity under California Government Code § 820.4.

13.    Twenty-Third Affirmative Defense: Immunity under California Penal Code § 196(b).

**B.    Elements of Affirmative Defenses**

1.    Fifth Affirmative Defense—Qualified Immunity: Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of the law at the time of the conduct at issue. *Brouseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment).

2.    Sixth Affirmative Defense—Immunity under California Government Code § 815.2(b). Defendant State of California is not "liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b). "[W]here the liability of an employer in tort rests solely on the doctrine of respondeat superior, a judgment on the merits in favor of the employee is a bar to an action against the employer…" *Hilts v. Cnty. of Solano*, 265 Cal.App.2d 161, 176 (1968).

3.    Seventh Affirmative Defense—Immunity under California Government Code § 820.2. The elements for this affirmative defense are:

      a.    The officer exercised discretion in using force on Puga; and

      b.    The discretion was vested in the officer pursuant to his duties as a peace officer.

"In actions involving claims under state law, an officer's use of deadly force is privileged as a matter of law if he reasonably fears for his safety or that of others in the area." *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1074 (S.D. Cal.

1   1994) (recognizing an officer's "split-second decision to use force is exactly the

2   kind of act" which section 820.2 was enacted to shield from liability).

3       4.    Tenth Affirmative Defense—Comparative Fault. The elements of

4   comparative fault are:

5           a.    Puga or the third party was negligent; and

6           b.    Puga or the third party's negligence was a substantial factor in

7   causing Puga's death or Plaintiffs' harm. CACI 406 (Apportionment of

8   Responsibility), 407 (Comparative Fault of Decedent).

9       5.    Twelfth Affirmative Defense—Immunity under California Penal Code

10  §§ 835 and 835a. The elements for this affirmative defense are:

11          a.    The officer had reasonable cause to believe Puga committed a

12  public offense;

13          b.    The force used was reasonable, based on the totality of the

14  circumstances, to overcome Puga's resistance and in protection of the life and

15  safety of the officer or another person; and

16          c.    Puga was subject to restraint reasonable to overcome his resistance

17  and in protection of the life and safety of the officer or another person. *Edson v.*

18  *Cty. of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (noting "police battery

19  actions recognize[ ]" § 835a's protections by requiring a plaintiff to "prove[ ]

20  unreasonable force was used").

21      6.    Sixteenth and Twenty-Third Affirmative Defenses--Self-defense. The

22  elements of self-defense are:

23          a.    The officer reasonably believed Puga was going to harm him or

24  other person; and

25          b.    The officer only used the amount of force that was reasonably

26  necessary to protect himself or other person. CACI 1304 (Self-Defense/Defense of

27  Others).

28

7. Twenty-Second Affirmative Defense—Immunity under California Government Code § 820.4. The elements for this affirmative defense are:

    a. The officer was exercising due care; and

    b. The officer was enforcing the law. *Mansor v. Flores*, No. 5:23-cv-00486 MWF-MAA, 2023 WL 8870587, *10 (C.D. Cal. Aug. 9, 2023) (stating that the exercise of due care required under § 820.4 presupposes the employee was not negligent or acting in an intentionally injurious manner).

8. Twenty-Third Affirmative Defense—Immunity under California Penal Code § 196(b). This affirmative defense justifies a homicide by a peace officer only when:

    a. The officer reasonably believes, based on the totality of the circumstances, that deadly force is necessary;

    b. To defend against an imminent threat of death or serious bodily injury to the officer or to another person, or to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended. Cal. Penal Code §§ 196(b), 835a(c).

**C. Defendants' Evidence in Support of Affirmative Defenses**

State Defendants' evidence in support of their affirmative defenses include:

1. The prior statements and testimony of the State Defendants and involved Sheriff's deputies.

2. The prior statements and testimony of eyewitnesses.

3. Evidence gathered of the incident, including but not limited to, video footage of the incident, photographs, witness statements, dispatch recordings and logs, and the reports and testimony of law enforcement investigators and forensic specialists regarding the evidence.

4. Puga's prior criminal and medical records.

5. Plaintiffs' deposition testimony and responses to discovery.

6.      Expert testimony of Greg Meyer regarding police procedures, including all the underlying evidence he relied on in reaching his conclusions.

7.      Expert testimony of Alexander Jason regarding shooting reconstruction, including all the underlying evidence he relied on in reaching his conclusions.

8.      Expert testimony of Kris Mohandie and Joshua Peter Visco regarding Puga's criminal history and potential charges and sentencing he was facing if he had lived that led to his conduct and "suicide by cop," including all the underlying evidence they relied on in reaching their conclusions.

## III.  THIRD PARTIES

There are no third parties asserting claims or defenses in this matter.

## IV.  ANTICIPATED EVIDENTIARY ISSUES

Defendants filed the following motions in limine:

1.      Defendants' Motion in Limine No. 1 to exclude portions of Plaintiffs' video analysis/graphics expert, Matthew Kimmins' testimony and opinions and the two video compilations he created. Mr. Kimmins' opinions as to what he is observing and hearing in the incident footage is not helpful to the jury, especially since his observations are not based on any scientific, technical, or other specialized training.

2.      Defendants' Motion in Limine No. 2 to exclude portions of Plaintiffs' police-practices expert Roger Clark's opinions and testimony. Mr. Clark is not qualified to opine on the use of pepper ball launcher, and he cannot offer legal opinions on an ultimate issue of law and other matters contrary to the video footage.

3.      Defendants' Motion in Limine No. 3 seeks to exclude any evidence or reference to the shooting of, and the injuries sustained by, the Botten family. That third party's were accidently struck by errant bullets has no bearing on the reasonableness of the force used against Puga.

4.      Defendants' Motion in Limine No. 4 to exclude the "Sal" video. The video was untimely produced and lacks authentication.

5.     Defendants' Motion in Limine No. 5 seeks to limit the testimony of the medical examiner. Plaintiffs did not provide a Rule 26(a)(2)(B) for Dr. Jong, therefore he cannot offer testimony or opinions, including those based on hypothetical questions, beyond his percipient knowledge and work performed in connection with Puga's autopsy.

6.     Defendants' Motion in Limine No. 6 seeks to preclude lay witnesses from testifying about Puga's state of mind. The County Defendants filed an ex parte application to be permitted to file an additional motion in limine. (ECF No. 127.) State Defendants joined in that request. (ECF No. 131.)

Plaintiffs filed motions in limine to exclude: (1) evidence of Puga's criminal history, periods of incarceration, gang affiliation, and prior contacts with law enforcement; (2) evidence of Puga's history of drug and alcohol use; (3) untimely disclosure or production of documents sought from third parties; (4) portions of the opinions and testimony of Defendants' police-practices experts Greg Meyer and Ken Hubbs; and (5) the State and County investigative findings of the shooting incident involving Puga. State Defendants will oppose Plaintiffs' motions on the grounds that the evidence sought to be excluded is relevant to Plaintiffs' damages claims and proper expert opinion.

State Defendants also anticipate evidentiary disputes to arise as to several trial exhibits, in particular the recorded and transcribed interviews of the Defendants and various witnesses. Such evidence is hearsay, lacks foundation and authentication, and is cumulative.

## V.   OTHER GERMANE ISSUES OF LAW

State Defendants plan to raise the defense of qualified immunity by a Federal Rule of Civil Procedure 50 motion. If raised after the close of evidence, the qualified immunity defense may require special interrogatories. "In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir.

2002). "Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted." *Id; see also Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly allowed special interrogatories relating to facts underpinning qualified immunity defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide 'what the facts were that the officer faced or perceived' and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts.").

There is no law clearly establishing that a law enforcement officer is not entitled to use deadly force when confronted with a subject under the circumstances in this case.  Even if the State Defendants may have been mistaken about the nature of the threat Puga posed, any such mistake was reasonable. *Anderson v. Creighton*, 483 U.S. at 641; *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Elliott*, 99 F.3d at 644. There is not a "robust 'consensus of cases of persuasive authority'" on this issue, either. To the contrary, officers are on notice that they are permitted to use deadly force when there is probable cause to believe there is an immediate threat of serious bodily injury or death, which was the case here. "It would be unquestionably reasonable for police to shoot a suspect in [decedent's] position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given [decedent's] dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire." *Cruz v. Cty. of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014); *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023), cert. denied, 144 S. Ct. 559, 217 L. Ed. 2d 297 (2024) (stating that when a suspect points a gun in an officer's direction, "the Constitution undoubtedly entitles the officer to respond with deadly force").

## VI. BIFURCATION OF ISSUES

State Defendants seek bifurcation of the issue of punitive damages if the jury makes the requisite liability finding against any State Defendant. Should the Court grant the request to bifurcate, the State Defendants expect the second phase of the trial will begin immediately following the verdict.

## VII. JURY TRIAL

All issues are triable to a jury (except as discussed in Sections IV and V), and timely demands for jury have been made by all parties. (ECF Nos. 68, 70, 72.)

## VIII. ATTORNEY'S FEES

State Defendants do not waive their right to attorneys' fees if the Court finds the action was brought in bad faith.

## IX. ABANDONMENT OF ISSUES

State Defendants have not abandoned any affirmative defense.


Dated:  April 24, 2025                    Respectfully submitted,

                                          ROB BONTA
                                          Attorney General of California
                                          NORMAN D. MORRISON
                                          Supervising Deputy Attorney General


                                          */s/ Diana Esquivel*

                                          DIANA ESQUIVEL
                                          Deputy Attorney General
                                          *Attorneys for Defendants State of Cal.,
                                          Blackwood, Kee, and Rubalcava*

LA2022603031
38974681.docx