UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-949-KK-SHKx** | Date: | May 5, 2025 |
|---|---|---|---|
| Title: | *L.C. et al. v. State of California et al.* | | |

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **(In Chambers) Order GRANTING IN PART and DENYING IN PART State Defendants' Motion for Summary Judgment [Dkt. 105]**

## I.
## INTRODUCTION

Plaintiffs L.C., a minor by and through her guardian ad litem Maria Cadena, individually and as a successor-in-interest to decedent Hector Puga, I.H., a minor by and through his guardian ad litem Jasmine Hernandez, individually and as a successor-in-interest to decedent Hector Puga, A.L., a minor by and through her guardian ad litem Lydia Lopez, individually and as a successor-in-interest to decedent Hector Puga, and Antonia Salas Ubaldo ("Plaintiffs") filed a Third Amended Complaint ("TAC") against defendants Robert Vaccari ("Vaccari"), Jake Adams ("Adams"), and the County of San Bernardino (collectively, "County Defendants")[1] and Michael Blackwood ("Blackwood"), Isaiah Kee ("Kee"), Bernardo Rubalcava ("Rubalcava"), and the State of California (collectively, "State Defendants"), alleging violations of the Fourth Amendment and related state claims arising from the February 17, 2021 shooting of decedent Hector Puga ("Puga"). ECF Docket No. ("Dkt.") 68, TAC. On February 20, 2025, State Defendants filed a Motion for Summary Judgment ("Motion"). Dkt. 105.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, State Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] On April 30, 2025, Plaintiffs and County Defendants filed a status report indicating they have reached a settlement. Dkt. 168.

## II.
## BACKGROUND

**A.      PROCEDURAL HISTORY**

On May 12, 2023, Plaintiffs filed the operative TAC, asserting the following claims:

(1)      **Cause of Action One:** Violation of the Fourth Amendment—Unlawful Detention and Arrest pursuant to 42 U.S.C. § 1983 ("Section 1983") by plaintiffs L.C., I.H., and A.L. ("Minor Plaintiffs") against defendants Vaccari, Adams, Blackwood, Kee, and Rubalcava ("Officer Defendants");

(2)      **Cause of Action Two:** Violation of the Fourth Amendment—Excessive Force pursuant to Section 1983 by Minor Plaintiffs against Officer Defendants;

(3)      **Cause of Action Three:** Violation of the Fourth Amendment—Denial of Medical Care pursuant to Section 1983 by Minor Plaintiffs against Officer Defendants;

(4)      **Cause of Action Four:** Violation of the Fourteenth Amendment—Substantive Due Process pursuant to Section 1983 by Plaintiffs against Officer Defendants;

(5)      **Cause of Action Five:** Battery by Plaintiffs against Defendants;

(6)      **Cause of Action Six:** Negligence by Plaintiffs against Defendants; and

(7)      **Cause of Action Seven:** Violation of California Civil Code Section 52.1 ("Bane Act") by Minor Plaintiffs against Defendants.

TAC at 10-25.[2]

On June 9, 2023, State Defendants filed an Answer to the TAC.  Dkt. 72.

On June 18, 2024, the Court issued an Order setting a Final Pretrial Conference for May 15, 2025 and a trial date of June 2, 2025.  Dkt. 85.

On February 20, 2025, State Defendants filed the instant Motion.  Dkt. 105.  State Defendants argue they are entitled to judgment as a matter of law on Plaintiffs' Second, Fourth, Fifth, Sixth, and Seventh Causes of Action.  Id.  In addition, State Defendants argue defendants Blackwood, Kee, and Rubalcava are immune from state law liability.  Id.  In support of State Defendants' Motion, State Defendants filed State Defendants' Statement of Undisputed Material Facts ("SDUMF"), dkt. 105-2, and the declaration of Diana Esquivel, dkt. 107.

On February 27, 2025, Plaintiffs filed an Opposition to State Defendants' Motion.  Dkt. 111. In support of Plaintiffs' Opposition, Plaintiffs filed a Statement of Additional Material Facts ("PAMF"), dkt. 111-1, and the declarations of Hang Le, dkt. 111-2 ("Le Decl."), and Roger Clark, dkt. 111-24.

On March 7, 2025, State Defendants filed a Reply.  Dkt. 120.

---

[2] On February 20, 2025, the Court dismissed Causes of Action One and Three pursuant to the parties' stipulation.  Dkt. 102.  In addition, the Court dismissed Cause of Action Four as to defendant Vaccari.  Id.

The matter, thus, stands submitted.

**B.    MATERIAL FACTS**

Unless otherwise indicated, the following facts are uncontroverted.  To the extent certain facts are not referenced in this Order, the Court has not relied on such facts in reaching its decision.  In addition, the Court considers the parties' evidentiary objections only where necessary.[3]  All other objections are **OVERRULED AS MOOT**.

**1.    Relevant Parties**

In February 2021, defendants Blackwood, Kee, and Rubalcava were officers for the California Highway Patrol, and defendants Adams and Vaccari served as deputies with the San Bernardino County Sheriff's Department.  SDUMF ¶¶ 1-3, 8.  Plaintiffs L.C., I.H., and A.L. are Puga's minor children.  PAMF ¶¶ 480-92; TAC ¶¶ 6-7.  Plaintiff Antonia Salas Ubaldo is Puga's mother.  TAC ¶ 8.

**2.    February 17, 2021 Police-Involved Shooting of Hector Puga**

On February 16, 2021, defendant Kee investigated a car-to-car shooting on Interstate 15, where the suspect's vehicle was described as a white Ford Expedition with large black rims and a funeral procession sticker on the back window.  SDUMF ¶¶ 4, 9.  The following day, at approximately 1:30 a.m., defendants Blackwood and Rubalcava observed and pulled over a vehicle matching the suspect vehicle's description.  SDUMF ¶ 6.  Puga was driving the vehicle and initially complied by pulling over and stopping his vehicle.  SDUMF ¶ 7.  However, Puga refused to turn off the vehicle or lower his window, and subsequently drove away, prompting a pursuit.  SDUMF ¶ 7; PAMF ¶ 224.  Defendants Kee, Adams, and Vaccari joined the pursuit.  SDUMF ¶ 8; PAMF ¶¶ 225, 227.

The pursuit lasted over an hour and ended when Puga's vehicle ran over a spike strip and stopped near the intersection of Peach and Catalpa Streets in Hesperia, California.  SDUMF ¶ 9; PAMF ¶¶ 235-36.  A standoff ensued, during which time the officers did not develop a tactical plan or request the SWAT Team.  PAMF ¶¶ 251, 260.  Over approximately 40 minutes, Officer Defendants unsuccessfully ordered Puga to exit the vehicle.  SDUMF ¶ 15.  During this standoff, a female passenger exited the vehicle and was taken into custody.  SDUMF ¶ 17; PAMF ¶ 244.  In an attempt to coerce Puga to exit the vehicle, defendant Vaccari broke the back window of the vehicle and deployed approximately 100 pepper balls into the vehicle over the course of 30 to 45 minutes.  SDUMF ¶ 19; PAMF ¶¶ 261-65.  One of the pepper balls struck Puga in the right eye.  PAMF ¶¶ 269, 271.

At approximately 3:40 a.m., Puga exited the vehicle with his hands above his head.  SDUMF ¶ 20.  Puga was shirtless, wearing baggy pants and a silver watch.  SDUMF ¶ 20; PAMF ¶¶ 273, 277-78, 284, 339; Le Decl., Ex. 19.  Puga continually lowered his hands to pull his pants up.  PAMF ¶

---

[3] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself[.]"  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  The Court declines to address such objections.

286. While on the driver's side of the vehicle, the officers did not initially see a gun on Puga's person. PAMF ¶ 276. After approximately two minutes, Puga moved from the driver's side to the front of the vehicle. SDUMF ¶ 21; PAMF ¶ 290. Defendant Kee moved closer and saw a handgun in Puga's waistband. SDUMF ¶ 24.[4]

The parties dispute whether Puga reached for a gun in his waistband to fire at the Officer Defendants. SDUMF ¶¶ 25-27; PAMF ¶¶ 310-16. State Defendants argue defendant Kee shot the first shots at Puga when he saw Puga's hand move towards the gun. SDUMF ¶¶ 25-27. Plaintiffs, however, contend Puga was merely adjusting his pants, and officers began shooting at him when he turned to run. PAMF ¶¶ 310-16. The video evidence is not dispositive. Le Decl., Exs. 10, 13. Regardless, Puga began to run away from the officers towards a house, and defendants Blackwood, Kee, and Rubalcava continued shooting at Puga. SDUMF ¶ 30; PAMF ¶¶ 311, 325. At the time, defendants Blackwood and Kee were armed with AR-15 rifles. SDUMF ¶¶ 12, 14. Defendant Rubalcava was armed with a Smith & Wesson pistol that fired .40 caliber ammunition. SDUMF ¶ 14.

The parties further dispute whether Puga ran with a firearm in his hands. SDUMF ¶ 35; PAMF ¶ 315-21, 323-24; Le Decl, Ex. 8, Gonzalez Dep. 83:21-24, 97:16-25; Le Decl., Ex. 14, Botten Dep. 129:13-25, 130:6-12. Again, the video evidence is not dispositive. Le Decl., Exs. 10, 13. Puga fell face-first to the ground, succumbing to the shots, but was still breathing when the officers approached him. PAMF ¶¶ 328-29, 428. Defendant Vaccari deployed his taser twice on Puga as he lay on the ground, after which defendant Rubalcava handcuffed him and rolled him onto his back. PAMF ¶¶ 429-34. A firearm was found under Puga's body. SDUMF ¶ 41.

### 3.    Autopsy Results for Hector Puga

An autopsy revealed Puga sustained ten gunshot wounds, with the fatal wound caused by a .223 caliber bullet entering his mid-left back and piercing his lung. SDUMF ¶¶ 42-43; PAMF ¶ 346. Due to the firearms possessed by the officers and deputies on the scene, this bullet could only have been deployed by defendants Kee or Blackwood. Dkt. 103-2, Haag Decl. ¶ 11.

### III.
### LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit[.]" Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party moving for summary judgment bears the initial burden of production by "producing evidence, or showing the absence of evidence, on the motion for summary judgment[.]"

---

[4] While Plaintiffs dispute whether defendant Kee saw a handgun, Plaintiffs fail to cite any contrary evidence. Dkt. 111-1 at 11.

<u>Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  "[T]he ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial."  <u>Id.</u>  A moving party without the ultimate burden of persuasion at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  <u>Id.</u>  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must" establish "there is no genuine issue of material fact."  <u>Id.</u>

If the moving party meets its initial burden of production, the burden then shifts to the non-moving party to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The non-moving party "cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  <u>S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.</u>, 690 F.2d 1235, 1238 (9th Cir. 1982).

In deciding a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587.  Summary judgment is, therefore, not proper "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts[.]"  <u>Hollingsworth Solderless Terminal Co. v. Turley</u>, 622 F.2d 1324, 1335 (9th Cir. 1980).  Furthermore, the court does not make credibility determinations with respect to the evidence offered.  <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

**IV.**
**DISCUSSION**

**A.     DEFENDANTS BLACKWOOD, KEE, AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE SECOND CAUSE OF ACTION UNDER THE FOURTH AMENDMENT**

**1.     Applicable Law**

The Fourth Amendment's "objective reasonableness" standard governs excessive force claims.  <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989).  The reasonableness standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  <u>Id.</u> at 396 (internal quotation marks omitted).  In other words, a court must "balance the amount of force applied against the need for that force."  <u>Bryan v. MacPherson</u>, 630 F.3d 805, 823-24 (9th Cir. 2010).  Proper application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  <u>Graham</u>, 490 U.S. at 396.  "[W]hether the suspect poses an immediate threat to the safety of the officers or others" is the "most important" of the <u>Graham</u> factors.  <u>Smith v. City of Hemet</u>, 394 F.3d 689, 702 (9th Cir. 2005).

The use of deadly force is reasonable "only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994) (quoting Tennessee v. Garner, 471 U.S. 1, 3 (1985)) (internal quotation marks omitted). When a suspect is armed or "reasonably suspected" to be armed, "a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat" rendering the use of deadly force reasonable. George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013). On the other hand, the use of deadly force is not reasonable when a suspect has taken no "objectively threatening" actions, even when the suspect is armed. Id.; see also Zion v. Cnty. of Orange, 874 F.3d 1072, 1076 (9th Cir. 2017) ("[T]he use of deadly force against a non-threatening suspect is unreasonable.").

Finally, "[b]ecause [the excessive force] inquiry is inherently fact specific, the determination whether the force used . . . was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." Green v. City & Cnty. of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks omitted).

### 2.     Analysis

Here, genuine issues of material fact exist as to whether defendants Blackwood, Kee, and Rubalcava used excessive force in violation of the Fourth Amendment. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find defendants Blackwood, Kee, and Rubalcava's actions were unreasonable under the circumstances.

A genuine issue of material fact exists as to whether Puga posed an immediate and significant threat of death or serious physical injury to defendants Blackwood, Kee, and Rubalcava or other nearby civilians. See Graham, 490 U.S. at 396; Scott, 39 F.3d at 914. Defendants assert that the use of deadly force was reasonable because Puga reached for a gun in his waistband despite warnings from defendant Kee. SDUMF ¶¶ 25-27. In contrast, Plaintiffs contend Puga was merely adjusting his pants (as he had been doing since exiting the vehicle) and running away from approaching officers when defendant Kee chose to shoot at him. PAMF ¶¶ 310-16. Viewing the evidence in the light most favorable to Plaintiffs, genuine issues of material fact exist from which a reasonable factfinder could agree with Plaintiffs' version of the events. Notably, the video evidence submitted by the parties is not dispositive of this issue. Le Decl., Exs. 10, 13. Crediting Plaintiffs' inferences from the bystander cell phone video, Puga did not grab a gun or try to shoot at the officers approaching the front side of his vehicle. Le Decl., Ex. 10, Mangerino Cellphone Video at 0:00:51-0:00:54. In addition, evidence suggesting Puga ran with a firearm is disputed by the fact he wore a polished, silver watch which could have been mistaken for a firearm. PAMF ¶ 339. Hence, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find Puga lowered his hands only to pull up his pants.

Moreover, to the extent a reasonable jury could find Puga pulled a weapon on Officer Defendants, additional genuine issues of material fact exist as to whether Puga shot or pointed the weapon at Officer Defendants. The deposition testimony of defendant Vaccari indicates Puga did not point the gun in any particular direction. Le Decl., Ex. 5, Vaccari Dep. 64:16-17. Additionally, based on video evidence and the deposition testimony of defendant Kee, no muzzle flashes came from Puga's direction. Le Decl., Exs. 10, 13; Ex. 2, Kee Dep. 92:14-16. Further, the testimony of bystander Betzabeth Gonzalez indicates Puga did not have a gun in his hand while running away from the officers. Le Dec., Ex. 8, Gonzalez Dep. 97:16-25. Again, the video evidence submitted by

the parties is not dispositive of this issue.  Le Decl., Exs. 10, 13.  Further, autopsy evidence establishes Puga was shot repeatedly in the back, suggesting he was not facing officers to shoot at them.  SDUMF ¶ 42.  These undisputed facts further underscore that triable questions of fact exist as to whether Puga had pulled a gun on the Officer Defendants.  S.T. v. City of Ceres, 327 F. Supp. 3d 1261, 1277 (E.D. Cal. 2018) (finding the fact that decedent was shot in the back "present[ed] another reason to allow the trier of fact" to assess "officers' account that [suspect] was angling his body, while running and hunching over, to point hand torch at them").

Thus, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find the use of deadly force was unreasonable because Puga did not pose an "immediate threat" to others.  Accordingly, defendants Blackwood, Kee, and Rubalcava's request for summary judgment on Plaintiffs' Second Cause of Action is **DENIED**.

**B.    DEFENDANTS BLACKWOOD, KEE, AND RUBALCAVA ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' SECOND CAUSE OF ACTION**

**1.    Applicable Law**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "[Q]ualified immunity is to be determined at the earliest possible point in the litigation[.]"  Estate of Lopez v. Gelhaus, 871 F.3d 998, 1021 (9th Cir. 2017).  Nevertheless, summary judgment in favor of a government official on the basis of qualified immunity "is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits."  Id.

The qualified immunity analysis is two-pronged, and courts have discretion "in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.  Under the first prong, the issue is whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right.  Id. at 232.  Under the second prong, the issue is whether the constitutional right in question was "clearly established" when the conduct at issue occurred.  Id. at 232, 236.

A right is "clearly established" if, at the time of the challenged conduct, "'the contours of [the] right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (brackets omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The "clearly established" inquiry "must be undertaken in light of the case's specific context, not as a broad general proposition," Saucier v. Katz, 533 U.S. 194, 201 (2001), and "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken,'" Pearson, 555 U.S. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)).  "[A] case directly on point" is not required to show the right in question was clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate."  Ashcroft, 563 U.S. at 741 (citing Anderson, 483 U.S. at 640; Malley v. Briggs, 475 U.S. 335, 341 (1986)).

///

### 2.    Analysis

Genuine issues of material fact exist as to whether defendants Blackwood, Kee, and Rubalcava are entitled to qualified immunity.  With respect to the first prong, as discussed above, a reasonable jury could find defendants Blackwood, Kee, and Rubalcava used excessive force in violation of the Fourth Amendment.  In addition, with respect to the second prong, a reasonable jury could find defendants Blackwood, Kee, and Rubalcava's conduct violated a clearly established right.

It is clearly established "the use of deadly force against a non-threatening suspect is unreasonable."  Zion, 874 F.3d at 1076.  For example, in George v. Morris, 736 F.3d 829 (9th Cir. 2013), the Ninth Circuit held the use of deadly force against a domestic violence suspect armed with a gun would violate the Fourth Amendment where the suspect took no "objectively threatening" actions immediately prior to being shot by law enforcement officers.  Similarly, in Estate of Lopez v. Gelhaus, 871 F.3d 998 (9th Cir. 2017), the Ninth Circuit held the use of deadly force against a teenager carrying a toy AK-47 would violate the Fourth Amendment, even though law enforcement officers believed he was carrying a firearm, where the teenager moved "naturally and non-aggressively" immediately prior to being shot and did not point the object believed to be a firearm at the officers.

Here, genuine issues of material fact exist as to whether Puga's actions were objectively threatening.  While State Defendants assert Puga reached for a gun in his waistband, SDUMF ¶¶ 25-27, Plaintiffs contend Puga moved his hands to pull up his pants and run away when defendant Kee started to shoot at him.  PAMF ¶¶ 310-16.  In addition, it is disputed whether Puga shot at the Officer Defendants, as no muzzle flashes came from Puga's direction.  Le Decl., Exs. 10, 13; Ex. 2, Kee Dep. 92:14-16.  It is further disputed whether Puga was running with a weapon in his hand because Puga wore a polished, silver watch on his left wrist, which could have been mistaken for a firearm.  PAMF ¶ 339.  Moreover, even if Puga were carrying a firearm, the autopsy results suggest he was not facing Officer Defendants as he had 10 gunshot wounds, all having a back-to-front trajectory or upward trajectory.  PAMF ¶¶ 341-44.  Therefore, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find Puga did not take an objectively threatening action immediately prior to Officer Defendants deploying a barrage of bullets into his back.

Thus, genuine issues of material fact exist as to whether defendants Blackwood, Kee, and Rubalcava are entitled to qualified immunity with respect to the excessive force claim.  Accordingly, State Defendants' request for summary judgment on Cause of Action Two is **DENIED**.

### C.    DEFENDANTS BLACKWOOD, KEE, AND RUBALCAVA ARE ENTITLED TO SUMMARY JUDGMENT ON THE FOURTH CAUSE OF ACTION UNDER THE FOURTEENTH AMENDMENT

### 1.    Applicable Law

Parents and children have a Fourteenth Amendment liberty interest in each other's "companionship and society."  Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010); see also Hardwick v. Cnty. of Orange, 980 F.3d 733, 740-41 (9th Cir. 2020) (holding the Fourteenth Amendment's guarantee against unwarranted state interference with the right to familial association applies equally to "parent-child" relationships and "child-parent" relationships).  Hence, official

conduct that "shocks the conscience" in depriving a parent or child of that interest "is cognizable as a violation of due process." Wilkinson, 610 F.3d at 554.

In determining whether a law enforcement's officer's use of force "shocks the conscience" and, therefore, violates the Fourteenth Amendment right to familial association, a court must first determine whether the circumstances were such that "actual deliberation" by the officer was practical. Id. "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." Id. By contrast, "where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." Id.

### 2.    Analysis

Here, defendants Blackwood, Kee, and Rubalcava are entitled to summary judgment on Plaintiffs' Fourteenth Amendment right to familial association.

As an initial matter, the heightened purpose-to-harm standard applies to Plaintiffs' Fourteenth Amendment claim because "actual deliberation" was not practical under the circumstances, where it is undisputed that within seconds Puga lowered his hands towards his waistband, the officers claim to have seen a firearm, and Puga sprinted away from the officers. See PAMF ¶ 311; Diaz, 512 F. Supp. 3d at 1047 (applying purpose-to-harm standard despite "lengthy car chase" and "approximately hour-long standoff" because "the moments before [defendant officer] used lethal force upon [decedent] were fast-paced and occurred within a matter of seconds"). Thus, defendants Blackwood, Kee, and Rubalcava "faced an evolving set of circumstances that took place over a short time period" and required "split-second decisions." See Porter v. Osborn, 546 F.3d 1131, 1133, 1139 (9th Cir. 2008) (holding purpose-to-harm standard applied where, over the course of approximately five minutes, defendant officers responding to a call about an apparently abandoned vehicle "shouted at a startled and confused [suspect] to get out of his car," "pepper sprayed him through the open window" when he failed to comply, and fatally shot him when he "began to drive the car slowly forward").

Applying the purpose-to-harm standard, the Court concludes no genuine issue of material fact exists from which a reasonable factfinder could conclude defendants Blackwood, Kee, and Rubalcava's conduct violated the Fourteenth Amendment. See Wilkinson, 610 F.3d at 554. Plaintiffs present no evidence – nor has the Court identified any – to suggest defendants Blackwood, Kee, and Rubalcava "had a purpose to harm [Puga] apart from legitimate law enforcement objectives." Id. Even if Puga simply reached for his waistband to lift his pants before he ran away, PAMF ¶¶ 310-16, the purpose-to-harm standard "is a subjective standard of culpability." A.D. v. Cal. Highway Patrol, 712 F.3d 446, 453 (9th Cir. 2013). Hence, even viewing the evidence in the light most favorable to Plaintiffs, no reasonable jury could find defendants Blackwood, Kee, and Rubalcava acted with a purpose to harm unrelated to legitimate law enforcement objectives, such that their actions shock the conscience. See Diaz, 512 F. Supp. 3d at 1047 (finding no genuine issue of material fact existed as to whether defendant officer had purpose to harm where he "fired four shots in rapid succession and stopped when [decedent] hit the ground" because, "[a]t most, a jury could conclude that [defendant officer] irrationally panicked out of a false sense of fear").

Thus, because no reasonable factfinder could conclude defendants Blackwood, Kee, and Rubalcava's conduct violated Plaintiffs' Fourteenth Amendment right to unwarranted state

interference with the right to familial association.  Accordingly, State Defendants' request for summary judgment on Plaintiffs' Fourteenth Cause of Action is **GRANTED**.[5]

## D.    DEFENDANTS BLACKWOOD, KEE, AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE FIFTH CAUSE OF ACTION FOR BATTERY

### 1.    Applicable Law

To prevail on a claim for battery under California law, a plaintiff must show the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, the plaintiff did not consent to such contact, and such contact caused injury, damage, loss, or harm to the plaintiff.  Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007); accord. Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27 (Cal. Ct. App. 2009).  In an excessive force case, a plaintiff asserting a claim for battery must establish the defendant officer's use of force was unreasonable.  Avina v. United States, 681 F.3d 1127, 1131 (9th Cir. 2012).  Such claims are governed by the Fourth Amendment's "objective reasonableness" standard.  Id.; see also Diaz, 512 F. Supp. 3d at 1048 ("[C]laims for battery against police officers acting in their official capacities 'are analyzed under the reasonableness standard of the Fourth Amendment[.]'").

### 2.    Analysis

Here, genuine issues of material fact exist as to the reasonableness of defendants Blackwood, Kee, and Rubalcava's use of force.  As discussed above in Section IV.A.2, a reasonable jury could find Puga did not pose a threat to others such that the use of deadly force against him was unreasonable.  Thus, genuine issues of material fact exist as to whether defendants Blackwood, Kee, and Rubalcava committed a battery.  Accordingly, for the same reason that State Defendants' request for summary judgment on Plaintiffs' Second Cause of Action is denied, State Defendants' request for summary judgment on Plaintiffs' Fifth Cause of Action is **DENIED**.[6]

## E.    DEFENDANTS BLACKWOOD, KEE, AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE SIXTH CAUSE OF ACTION FOR NEGLIGENCE

### 1.    Applicable Law

"In California, the general rule is that people owe a duty of care to avoid causing harm to others and that they are thus usually liable for injuries their negligence inflicts."  S. California Gas Leak Cases, 7 Cal. 5th 391, 398 (2019) (internal quotation marks omitted).  To prevail in a negligence action, a plaintiff must show the defendant (1) owed a legal duty, (2) breached that duty, and (3) the

---

[5] In light of the Court's finding Defendants are entitled to summary judgment, the Court does not address Defendants' argument that plaintiff L.C. lacks standing to bring a substantive due process claim because plaintiff L.C. and Puga were estranged.  See dkts. 103 at 26-27; 105-1 at 2 n.1.

[6] Plaintiffs may only seek survival damages against defendant Rubalcava for the Fifth Cause of Action because the undisputed facts clearly provide the fatal gunshot wound did not come from defendant Rubalcava's firearm.  SDUMF ¶¶ 14, 42-43.

breach was the proximate cause of (4) plaintiff's injury.  J.L. v. Children's Inst., Inc., 177 Cal. App. 4th 388, 396 (2009).  Under California law, law enforcement officers owe "a duty to act reasonably when using deadly force."  Hayes v. Cnty. of San Diego, 57 Cal. 4th 622, 629 (2013).  Whether an officer has breached this duty "is determined in light of the totality of circumstances."  Id. Generally, an officer's use of deadly force "will be considered reasonable where the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  Koussaya v. City of Stockton, 54 Cal. App. 5th 909, 936-37 (Cal. Ct. App. 2020).

## 2.   Analysis

Here, genuine issues of material fact exist as to the reasonableness of defendants Blackwood, Kee, and Rubalcava's use of force.  As discussed above in Sections IV.A.2 and IV.D.2, a reasonable jury could find Puga did not pose a threat to defendants Blackwood, Kee, and Rubalcava or other bystanders such that the use of deadly force and subsequent non-lethal force against him was unreasonable.  Thus, genuine issues of material fact exist as to whether defendants Blackwood, Kee, and Rubalcava were negligent.  Accordingly, for the same reason, State Defendants' request for summary judgment on Plaintiffs' Second Cause of Action is denied, State Defendants' request for summary judgment on Plaintiffs' Sixth Cause of Action is **DENIED**.[7]

## F.   DEFENDANTS BLACKWOOD, KEE, AND RUBALCAVA ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE SEVENTH CAUSE OF ACTION UNDER THE BANE ACT

### 1.   Applicable Law

The Bane Act creates a cause of action against persons who interfere with constitutional rights "by threat, intimidation, or coercion[.]"  Cal. Civ. Code § 52.1.  In an excessive force case, the Bane Act requires establishing a Fourth Amendment violation and "a specific intent to violate the arrestee's right to freedom from unreasonable seizure."  Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting Cornell v. City & Cnty. of San Francisco, 17 Cal. App. 5th 766, 801 (Cal. Ct. App. 2017)).  Evidence of "[r]eckless disregard for a person's constitutional rights" is sufficient to establish "a specific intent to deprive that person of those rights."  Id. at 1045 (quoting United States v. Reese, 2 F.3d 870, 885 (9th Cir. 1993)).  Courts have concluded a reasonable jury could find an officer's use of deadly force on a suspect amounted to reckless disregard where the evidence raised a triable question of fact as to whether the suspect posed a threat to the officer or others.  See, e.g., Banks v. Mortimer, 620 F. Supp. 3d 902, 935 (N.D. Cal. 2022) (concluding reasonable jury could find use of deadly force amounted to reckless disregard where evidence suggested suspect was fleeing and posed no threat); Chambers v. Cnty. of Los Angeles, No. CV 21-8733-MCS-JEMx, 2022 WL 19076765, at *12 (C.D. Cal. Dec. 12, 2022) (concluding reasonable jury could find use of deadly force amounted to reckless disregard where, despite claim that suspect approached deputies in a "threatening manner[,]" video footage of incident did "not clearly show [suspect] posing a threat to the deputies").

---

[7] Plaintiffs may only seek survival damages against defendant Rubalcava for the Sixth Cause of Action because the undisputed facts clearly provide the fatal gunshot wound did not come from defendant Rubalcava's firearm.  SDUMF ¶¶ 14, 42-43.

## 2.    Analysis

Here, genuine issues of material fact exist as to whether defendants Blackwood, Kee, and Rubalcava acted with reckless disregard for Puga's constitutional rights during the shooting. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude defendants Blackwood, Kee, and Rubalcava exhibited reckless disregard by shooting repeatedly at Puga's back. See SDUMF ¶ 42; PAMF ¶¶ 340-50. For essentially the same reasons, defendants Blackwood, Kee, and Rubalcava are not entitled to summary judgment on Plaintiffs' Fourth Amendment claim, and Plaintiffs' Bane Act claim must survive. Reese, 888 F.3d at 1042 ("[The Bane Act] does not require a showing of threats, intimidation and coercion separate from an underlying constitutional violation.") (internal quotation marks omitted). In fact, crediting Plaintiffs' inferences from the bystander videos, Officer Defendants continued to shoot Puga after he had fallen to the ground. See PAMF ¶¶ 334-35, 340-50. Hence, while the initial gunshots may not constitute reckless disregard, a reasonable jury could find the excessive number of additional gunshots constitutes reckless disregard. The evidence raises a triable question of fact as to whether Puga posed a threat to the officer or others. Hence, a reasonable jury could conclude defendants Blackwood, Kee, and Rubalcava's use of force amounted to reckless disregard. See Banks, 620 F. Supp. 3d at 935; Chambers, 2022 WL 19076765, at *12.

Thus, genuine issues of material fact exist as to whether defendants Blackwood, Kee, and Rubalcava violated the Bane Act. Accordingly, State Defendants' request for summary judgment on Plaintiffs' Seventh Cause of Action is **DENIED**.

## G.    STATE DEFENDANTS ARE NOT ENTITLED TO IMMUNITY FROM THE STATE LAW CAUSES OF ACTION

State Defendants argue defendants Blackwood, Kee, and Rubalcava are immune from state law liability pursuant to California Penal Code Section 835a, California Penal Code Section 196, or California Government Code Section 820.2. Dkt. 105-1 at 15-16. "California courts have held that when the officers' conduct is reasonable for purposes of the Fourth Amendment, that conduct is also reasonable under California Penal Code [Section] 196." Lennox v. City of Sacramento, No. 2:21-CV-02075-DAD-CSK, 2024 WL 3845378, at *29 (E.D. Cal. Aug. 16, 2024). "California Penal Code [Section] 835a likewise permits police officers to use reasonable force to effect an arrest and therefore turns on the reasonableness of the officer's actions." Id. (cleaned up).

Here, for the same reasons defendants Blackwood, Kee, and Rubalcava are not entitled to summary judgment on Plaintiffs' Fourth Amendment excessive force claims, the Court concludes genuine disputes of material fact prevent the Court from finding defendants Blackwood, Kee, and Rubalcava are entitled to immunity under California Penal Code Sections 196 and 835a. In addition, California Government Code Section 820.2 immunity protects "basic policy decisions" by public employees, and defendants Blackwood, Kee, and Rubalcava were not in the process of making policy decisions during the relevant incident. See Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting Johnson v. State of California, 69 Cal. 2d 782, 796 (1968)).

Thus, defendants Blackwood, Kee, and Rubalcava are not entitled to immunity pursuant to California Penal Code Section 835a, California Penal Code Section 196, or California Government Code Section 820.2. Accordingly, State Defendants' request for summary judgment on Plaintiffs' Fifth, Sixth, and Seventh Causes of Action is **DENIED**.

## V.
## CONCLUSION

For the reasons set forth above, State Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  State Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' Fourth Cause of Action;
2.  State Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiffs' Second, Fifth, Sixth, and Seventh Causes of Action; and
3.  In addition, parties are ordered to file a status report with respect to settlement discussions **no later than May 9, 2025**.

**IT IS SO ORDERED**.