1   **LAW OFFICES OF DALE K. GALIPO**
    Dale K. Galipo, Esq. (Bar No. 144074)
2   dalekgalipo@yahoo.com
    Hang D. Le, Esq. (Bar No. 293450)
3   hlee@galipolaw.com
    21800 Burbank Boulevard, Suite 310
4   Woodland Hills, California, 91367
    Telephone: (818) 347-3333
5   Facsimile: (818) 347-4118

6   Attorneys for Plaintiffs
    L.C., I.H., A.L., and Antonia Salas Ubaldo
7

8          UNITED STATES DISTRICT COURT FOR THE
9            CENTRAL DISTRICT OF CALIFORNIA
10

11  | L.C., a minor by and through her | Case No. 5:22-cv-00949-KK-SHK |
    guardian *ad litem* Maria Cadena,

12  individually and as successor-in-interest   *Honorable Kenly Kiya Kato*
    to Hector Puga; I.H., a minor by and

13  through his guardian *ad litem* Jasmine   **JOINT PROPOSED DISPUTED**
    Hernandez, individually and as            **JURY INSTRUCTIONS**

14  successor-in-interest to Hector Puga;
15  A.L., a minor by and through her
    guardian *ad litem* Lydia Lopez,
16  individually and as successor-in-interest
    to Hector Puga; and ANTONIA SALAS
17  UBALDO, individually;
18
19                          Plaintiffs,
20               vs.
21  STATE OF CALIFORNIA; COUNTY
    OF SAN BERNARDINO; S.S.C., a
22  nominal defendant; ISAIAH KEE;
    MICHAEL BLACKWOOD;
23  BERNARDO RUBALCAVA; ROBERT
    VACCARI; JAKE ADAMS; and DOES
24  6-10, inclusive,
25
26                          Defendants.
27
28

# **TABLE OF CONTENTS**

| Number | Title | Source | Page No. |
|---|---|---|---|
| 1 | Duty of Jury | 9th Cir. 1.3 | [See Agreed Set] |
| 2 | Plaintiffs' Proposed Claims and Defenses | 9th Cir. 1.5 | 1 |
| 2 | State Defendants' Proposed Claims and Defenses | 9th Cir. 1.5 | 4 |
| 3 | Burden of Proof | 9th Cir. 1.6 | [See Agreed Set] |
| 4 | Two or More Parties—Different Legal Rights | 9th Cir. 1.8 | [See Agreed Set] |
| 5 | What is Evidence | 9th Cir. 1.9 | [See Agreed Set] |
| 6 | What is Not Evidence | 9th Cir. 1.10 | [See Agreed Set] |
| 7 | Evidence for a Limited Purpose | 9th Cir. 1.11 | [See Agreed Set] |
| 8 | Direct and Circumstantial Evidence | 9th Cir. 1.12 | [See Agreed Set] |
| 9 | Ruling on Objections | 9th Cir. 1.13 | [See Agreed Set] |
| 10 | Credibility of Witnesses | 9th Cir. 1.14 | [See Agreed Set] |
| 11 | Conduct of the Jury | 9th Cir. 1.15 | [See Agreed Set] |
| 12 | No Transcript Available to Jury | 9th Cir. 1.17 | [See Agreed Set] |
| 13 | Taking Notes | 9th Cir. 1.18 | [See Agreed Set] |
| 14 | Bench Conferences and Recesses | 9th Cir. 1.20 | [See Agreed Set] |
| 15 | Outline of Trial | 9th Cir. 1.21 | [See Agreed Set] |
| 16 | Stipulations of Fact | 9th Cir. 2.2 | [See Agreed Set] |
| 17 | Expert Opinion | 9th Cir. 2.13 | [See Agreed Set] |
| 18 | Charts and Summaries Not Received in Evidence | 9th Cir. 2.14 | [See Agreed Set] |

| Number | Title | Source | Page No. |
|---|---|---|---|
| 19 | Defendants' Proposed Charts and Summaries Received in Evidence | | 7 |
| 20 | Evidence in Electronic Format | 9th Cir. 2.16 | [See Agreed Set] |
| 21 | Proposed 1983 Claim—Introductory Instruction | 9th Cir. 9.1 | [See Agreed Set] |
| 22 | Plaintiffs' Proposed 1983 Claims Against Individual Defendants | 9th Cir. 9.3 | 10 |
| 22 | State Defendants' Proposed 1983 Claims Against Individual Defendants | 9th Cir. 9.3 | 13 |
| 23 | Plaintiffs' Proposed Fourth Amendment—Unreasonable Seizure—Excessive Force | 9th Cir. 9.25 | 16 |
| 23 | State Defendants' Fourth Amendment—Unreasonable Seizure—Excessive Force | 9th Cir. 9.25 | 20 |
| 24 | Defendants' Proposed 1983 Claim--Causation | 9th Cir. 9.2 | 26 |
| 25 | Plaintiffs' Proposed Battery by a Peace Officer (Deadly Force)—Essential Factual Elements | CACI 1305B | 29 |
| 25 | State Defendants' Battery by a Peace Officer (Deadly Force)—Essential Factual Elements | CACI 1305B | 33 |
| 26 | Plaintiffs' Proposed Causation—Substantial Factor | CACI 430 | 38 |
| 26 | State Defendants' Causation—Substantial Factor | CACI 430 | 41 |
| 27 | Plaintiffs' Proposed Causation—Multiple Causes | CACI 431 | 44 |
| 27 | State Defendants' Causation—Multiple Causes | CACI 431 | 47 |
| 28 | Plaintiffs' Proposed Alternative Causation | CACI 434 | 50 |
| 29 | Plaintiffs' Proposed Negligence—Essential Factual Elements | CACI 400 | 53 |
| 30 | Plaintiffs' Proposed Basic Standard of Care | CACI 401 | 57 |

| Number | Title | Source | Page No. |
|--------|-------|--------|----------|
| 31 | Plaintiffs' Proposed Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements | CACI 441 | 61 |
| 31 | State Defendants' Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements | CACI 441 | 65 |
| 32 | Comparative Fault of Decedent | CACI 405, 407 | [See Agreed Set] |
| 32A | State Defendants' Apportionment of Responsibility | CACI 406 | 70 |
| 33 | Plaintiffs' Proposed Bane Act—Essential Elements | CACI 3066 | 73 |
| 33 | State Defendants' Proposed Bane Act—Essential Elements | CACI 3066 | 76 |
| 34 | Plaintiffs' Proposed Vicarious Liability—Introduction | CACI 3700 | [See Agreed Set] |
| 35 | State Defendants' Proposed Police Officers Forced to Make Split-Second Judgments | *Graham v. Connor*, 490 U.S. 386 (1989). | 79 |
| 36 | State Defendants' Proposed Least Intrusive Means Not Required | *Wilkson v. Torres*, 610 F.3d 546 (9th Cir. 2010; *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) | 82 |
| 37 | State Defendants' Proposed Officers Not Required to Wait | *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) | 85 |
| 38 | State Defendants' Proposed Officers Not Required to Retreat | *Napouk v. Las Vegas Metro. Police Dep't,* | 88 |

| Number | Title | Source | Page No. |
|---|---|---|---|
| | | 123 F.4th 906. 919 (9th Cir. 2024); *Tucker v. Las Vegas Metro. Police Dep't*, 470 F. App'x 627, 630 (9th Cir. 2012); Cal Penal Code § 835a(d) | |
| 39 | State Defendants' Proposed Officers Can Act Based on Apparent Danger | *People v. Minifie*, 13 Cal. 4th 1055, 1068 (1996); *Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 371, n.4 (9th Cir. 1998) | 91 |
| 40 | State Defendants' Proposed Determination of Reasonableness— At Moment of Use of Force | *Graham v. Connor*, 490 U.S. 386, 396, (1989); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) | 94 |
| 41 | State Defendants' Proposed Pre-Shooting Conduct Does Not Negate Reasonableness of Force | *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), abrogated on other grounds | 97 |

| Number | Title | Source | Page No. |
|---|---|---|---|
|  |  | by County of Los Angeles v. Mendez, 137 S. Ct. 1539 (2017); *City & County of San Francisco v. Sheehan*, 1353S. Ct. 1765, 1777 (2015); *Pettersen v. County of L.A.*, No. CV 14-4699 DSF (AGRx), 2015 WL 13333499, at *6 (C.D. Cal. Oct. 8, 2015) |  |
| 42 | State Defendants' Proposed Willful Resistance, Delay, or Obstruction of a Peace Officer | Cal. Penal Code § 148(a)(l); *People v. Yuen*, 32 Cal. App. 2d 151 (1939); *People v. Alaniz*, 182 Cal. App. 3d 903, 908 (1986); *Smith v. City of Hemet*, 394 F.3d 689, 697 (2004) | 100 |
| 43 | State Defendants' Proposed Expert Opinion Concerning Use of Force | *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994); *Reynolds v.* | 103 |

| Number | Title | Source | Page No. |
|---|---|---|---|
| | | *County of San Diego*, 84 F.3d 1162 (9th Cir. 1996); *Billington v. Smith*, 292 F.3d 1177,1189 (9th Cir. 2002) | |
| 44 | State Defendants' Proposed Self Defense/Defense of Others | CACI 1304 | 106 |
| 45 | State Defendants' Proposed Duty to Refrain From Using Force/Weapon to Resist | Cal. Penal Code § 834a | 109 |
| 46 | State Defendants' Proposed Reasonable Force (State Law) | Cal. Penal Code § 835a | 112 |
| 47 | State Defendants' Proposed Deference to Officers | *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009) | 115 |
| 48 | State Defendants' Proposed Police Officer Entitled to Use Greater Force | *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009) | 118 |
| 49 | State Defendants' Proposed Federal Standard Applies to California Use-of-Force Claims | *Hayes v. County of San Diego*, 57 Cal.4th 622, 637-639 (2013); *Yount v. City of Sacramento*, 43 Cal.4th 885, 902 (2008); *Martinez v. County of L.A.*, 47 | 121 |

| Number | Title | Source | Page No. |
|--------|-------|--------|----------|
|  |  | Cal.App.4th 334, 349-350 (1996); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-1273 (2009); *Lopez v. City of L.A.*, 196 Cal.App.4th 675, 690-692 (2011); Cal. Gov. Code §§ 820, 820.2, 820.4, 820.8, 821; *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1101-1103 (2004); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 525 (2009); *Young v. County of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011); *Hayes v. County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013); CACI 1300, 1301 |  |

| Number | Title | Source | Page No. |
|---|---|---|---|
| 50 | State Defendants' Proposed Enforcement/Execution of Law | Cal. Gov. Code § 820.4 | 126 |
| 51 | State Defendants' Proposed Justifiable Homicide | Cal. Penal Code §§ 196(b), 835a(c), (e)(2) | 129 |
| 52 | State Defendants' Proposed Exercise of Discretion | Cal. Gov. Code § 820.2 | 132 |
| 53 | State Defendants' Proposed Reliance on Good Conduct of Others | CACI 411 | 135 |
| 54 | Plaintiffs' Proposed Damages— Proof and Types | 9th Cir. 5.1, 5.2; CACI 3905A. 3921. | 138 |
| 54 | State Defendants' Proposed Damages—Proof and Types | 9th Cir. 5.1, 5.2 | 141 |
| 55 | State Defendants' Nominal Damages | 9th Cir. 5.6 | 144 |
| 56 | State Defendants' Proposed Wrongful Death (Death of An Adult) and Survival Damages | CACI 3919, 3921 | |
| 57 | Plaintiffs' Proposed Punitive Damages—Predicate Question | 9th Cir. 5.5 | 147 |
| 57 | State Defendants Proposed Punitive Damages | 9th Cir. 5.5; CACI 3941, 3942; Cal. Gov. Code § 818 | 151 |
| 58 | Defendants' Proposed Highly Probable—Clear and Convincing Proof | CACI 201 | 154 |
| 59 | Duty to Deliberate | 9th Cir. 3.1 | [See Agreed Set] |
| 60 | Consideration of Evidence— Conduct of the Jury | 9th Cir. 3.2 | [See Agreed Set] |
| 61 | Communication with Court | 9th Cir. 3.3 | [See Agreed Set] |
| 62 | Return of Verdict | 9th Cir. 3.5 | [See Agreed Set] |

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 2**

<u>Claims and Defenses</u>

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The decedent in this case is Hector Puga. The Plaintiffs in this case are the decedent's minor children, L.C, I.H., and A.L.. The Defendants are the State of California and California Highway Patrol Officers Isaiah Kee, Bernardo Rubalcava and Michael Blackwood. Plaintiffs contend that the Defendant CHP Officers used excessive and unreasonable deadly force against Hector Puga. Plaintiffs also contend that Defendant CHP Officers a were negligent in their conduct with Decedent.

The defendants deny these claim and contend that their uses of force and conduct were unreasonable under the circumstances.

<u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions No. 1.5 (modified).

1

**<u>Defendants' Objections</u>**

2  Plaintiffs' proposed summary does not accurately and completely provide for the Defendants' position. It misstates Defendants' position, and unfairly emphasizes

3  Plaintiffs' claims and position.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Response**

Plaintiffs' proposed statement of the case accurately and neutrally states the Defendants' position in this case. Nor does the statement emphasize Plaintiffs' claims. It is simply a neutral and succinct statement of Plaintiffs' claims that does not include unnecessary details.

1    **STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 2**

2                    <u>Claims and Defenses</u>

3          To help you follow the evidence, I will give you a brief summary of the

4    positions of the parties:

5          Plaintiffs assert that California Highway Patrol officers Michael Blackwood,

6    Isaiah Kee, and Bernardo Rubalcava used excessive and unreasonable force

7    resulting in the death of decedent Hector Puga, following a standoff when Mr. Puga

8    barricaded himself in a vehicle. Plaintiffs also assert that the Defendants are liable

9    for their pre-shooting tactics.

10         Defendants deny those claims and contend that the use of lethal force against

11   Mr. Puga were reasonable and justified because Mr. Puga reached for and fired a

12   gun at them.

13

14   <u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions No. 1.5.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **<u>Plaintiffs' Objections</u>**

2        Plaintiffs object to this proposed instruction on the basis that it not a neutral

3  summary of the positions of the party and is prejudicial to Plaintiffs. Plaintiffs

4  further object that this summary does not cover all of Plaintiffs' claims against

5  Defendants and implies that Plaintiffs are seeking damages only for Decedent's

6  death and not for any harm that was caused by the Defendants that was not a cause

7  of Decedent's death. Plaintiffs further object on the basis that this instruction

8  unreasonably limits Plaintiffs' negligence claim to the officer's pre-force conduct

9  only.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Defendants' Response</u>**

Defendants' proposed summary of the parties' position is neutral and fairly and accurately state's each sides' position.

# STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 19

## Charts and Summaries Received in Evidence

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source: Ninth Circuit Manual of Model Jury Civil Instructions No. 2.15.

1    **<u>Plaintiffs' Objections</u>**

2         Plaintiffs object to this proposed instruction on the basis that this instruction

3    is inapplicable to this case. Plaintiffs contend that there are no charts or summaries

4    that are admissible as evidence in this case.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Defendants' Response</u>**

2    Defendants submit this proposed instruction with the expectation that charts,

3    illustrations, or summaries created by their experts will be moved into evidence at

4    trial. The proposed instruction is an unmodified model instruction provided by the

5    Ninth Circuit, which means the content of the instruction should not be subject to

     reasonable dispute.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PLAINTIFFS' INSTRUCTION NO. 22

<u>Section 1983 Claim against Defendants in Individual Capacity—Elements and Burden of Proof</u>

In order to prevail on their § 1983 claim for excessive force against defendants Isaiah Kee, Bernardo Rubalcava, and Michael Blackwood (collectively, "Defendant Officers"), the plaintiffs must prove each of the following elements by a preponderance of the evidence:

1.    the defendant acted under color of law; and

2.    the acts of the defendant deprived Hector Puga of his particular rights under the United States Constitution as explained in later instructions.

A person acts "under color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance, or regulation.  The parties have stipulated that the Defendant Officers acted under color of law.

If you find the plaintiffs have proved each of these elements, and if you find that the plaintiffs have proved all the elements they are required to prove under Instructions [##-##], your verdict should be for the plaintiffs on that claim. If, on the other hand, you find that the plaintiffs have failed to prove any one or more of these elements, your verdict should be for the defendant(s) on that claim.


<u>Source</u>: Ninth Circuit Manual of Model Jury Civil Instructions No. 9.3.

1

**<u>Defendants' Objections</u>**

2    This instruction is incomplete and omitted the causation definition without any
explanation for deviating from the Ninth Circuit model instruction.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Plaintiffs' Response</u>**

Plaintiffs contend that under the facts of this case, the CACI causation instructions proposed by Plaintiffs are applicable to Plaintiff's federal Fourth Amendment claim as well. Thus, it would be confusing to provide an incomplete instruction on causation within this instruction before providing later, more complete causation instructions.

**STATE DEFENDANTS' INSTRUCTION NO. 22**

<u>Section 1983 Claim against Defendants in Individual Capacity—Elements and Burden of Proof</u>

In order to prevail on a § 1983 claim against each Defendant Officer, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

        1.     The Defendant Officer acted under color of state law;

        2.     The conduct of the Defendant Officer deprived decedent Hector Puga of his particular rights under the United States Constitution as explained in later instructions; and

        3.     The Defendant Officer's conduct was an actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that each Defendant Officer acted under color of [ ] law.

The Defendant Officer's conduct is an actual cause of a plaintiff's injury only if the injury would not have occurred 'but for' that conduct, and the conduct has a sufficient connection to the result.

If you find the Plaintiffs have proved each of these elements, and if you find that the Plaintiffs have proved all the elements they are required to prove under the next instructions for their Fourth and Fourteenth Amendment claims, your verdict should be for the Plaintiff. If, on the other hand, you find that the Plaintiffs have failed to prove any one or more of these elements, your verdict should be for the Defendant on that claim as it pertains to each Defendant Officer.


<u>Source</u>: Ninth Circuit Manual of Model Jury Civil Instructions No. 9.3.

1    **<u>Plaintiffs' Objections</u>**

2          Plaintiff objects to the use of the term "Defendant Officer" as this term has

3    not been previously defined in Defendants' prior instructions. Plaintiffs further

4    object to the inclusion of an instruction regarding causation. Plaintiffs contend that

5    Plaintiffs' proposed CACI causation instructions are <u>applicable to Plaintiff's federal</u>

6    <u>Fourth Amendment claim as well. Thus, it would be confusing to provide an</u>

7    <u>incomplete instruction on causation within this instruction before providing later,</u>

8    <u>more complete causation instructions.</u>

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Defendants' Response</u>**

Only Defendants Blackwood, Kee, and Rubalcava remain in this lawsuit, and they are CHP officers. Thus, there is no confusion as to who the "Defendant officers" are. Further, Defendants are agreeable to removing "officers" if Plaintiffs genuinely believes that the jury will be confused by the phrase "Defendant officers."

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 23

## Fourth Amendment—Unreasonable Seizure—Excessive Force

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or defending himself.  Therefore, in order to prove an unreasonable seizure by excessive force in this case, the plaintiffs must prove by a preponderance of the evidence that the officers used excessive force against Hector Puga.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.  You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether Defendant Officers used excessive force in this case, consider all of the circumstances known to the deputy on the scene, including:

1.    The nature of the crime or other circumstances known to Defendant Officers at the time the force was applied;

2.    Whether Hector Puga posed an immediate threat of death or serious bodily injury to the officers or to others at the time deadly force was applied;

3.    Whether Hector Puga was actively resisting arrest or attempting to evade arrest by flight;

4.    The amount of time each officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5.    The relationship between the need for the use of force and the amount of force used;

6.    The extent of the Hector Puga's injury;

7.    Any effort made by the Defendant Officers to temper or limit the amount of force;

8.    The availability of alternative methods to take Hector Puga into custody;

9.    Whether it was practical for the officer(s) to give warning of the imminent use of force, and whether such warning was given.

10.    Whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

11.    Whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Source: Ninth Circuit Manual of Model Jury Civil Instructions No. 9.25 (modified).

**<u>Defendants' Objections</u>**

Plaintiffs' proposed instruction is incomplete and no explanation is provided for deviating from the Ninth Circuit model instruction. Plaintiffs also omit the tenth factor involving the number of lives at risk. The "totality of the circumstances" takes into consideration the parties' conduct before the use of lethal force. Here, Puga engaged in a lengthy, high speed pursuit that endangered the lives of the public and the officers. *People v. Howard*, 34 Cal. 4th 1129, 1140 (2005) ("Any high-speed pursuit is inherently dangerous to the lives of the pursuing police officers."). Puga's pre-shooting conduct also informed Defendants of the level of danger Puga posed and lengths he would go to avoid arrest.

1    **<u>Plaintiffs' Response</u>**

2         Plaintiffs have not omitted any necessary factors from this instruction.

3    Plaintiffs contend that factor 8 from the model instruction is inapplicable to the facts

4    of this case and would only serve to confuse the jury. Factors 9-15 are bracketed in

5    the model instruction to indicate that these factors are *optional*, depending on their

6    applicability to the facts of the case. Plaintiffs contend that factor 10 is not

7    applicable to the facts of this case. While Plaintiffs agree that this factor is generally

8    applicable in a high-speed pursuit case, this is *not* a high speed pursuit case.

9    Decedent and the officers were already stopped for over an hour and Decedent had

10   already exited the vehicle before the use of force at issue occurred. Thus, any risk

11   posed by the the pursuit was no longer a factor at the time of the officers' use of

12   force. As the Ninth Circuit recognized in *Tabares v. City of Huntington Beach*,

13   federal law generally focuses on the "totality of the circumstances" and tactical

14   condnuct *at the time of the shooting*. 988 F.3d 1119, 1126-26. The Ninth Circuit has

15   further recognized that the Fourth Amendment's "totality of the circumstances"

16   consideration focuses on the circumstances *at the time force was applied*. *Alves v.*

17   *Cnty. of Riverside*, --- F.4th ---, No. 23-55532, 2025 WL 1227942, at *8, 9 (9th Cir.

18   Apr. 29, 2025).

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 23**

<u>Fourth Amendment—Unreasonable Seizure—Excessive Force</u>

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself or others or in attempting to stop a fleeing or escaping suspect. Therefore, to establish an unreasonable seizure in this case, the Plaintiffs A.L., I.H., and L.C. must prove by a preponderance of the evidence that *each* officer used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the Defendant Officer used excessive force in this case, consider all of the circumstances known to the officers on the scene, including:

(1) the nature of the crime or other circumstances known to the officers at the time force was applied;

(2) whether the decedent Hector Puga posed an immediate threat to the safety of the officers or to others;

(3) whether Mr. Puga was actively resisting arrest or attempting to evade arrest by flight;

(4) the amount of time the officers had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the relationship between the need for the use of force and the amount of force used;

(6) the extent of Mr. Puga's injury;

(7) any effort made by the officers to temper or to limit the amount of force;

(8) the severity of the security problem at issue;

(9) the availability of alternative methods to take Mr. Puga into custody or to subdue him;

(10) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

(11) whether it was practical for the officers to give warning of the imminent use of force, and whether such warning was given;

[(12)-(14) omitted—not applicable]

(12) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

*The most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." Where deadly force is used, the officer need only have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury."* "Probable cause" exists when, under all of the circumstances known to the officers at the time, an objectively reasonable police officer would conclude there is a fair probability that Mr. Puga had committed or was committing a crime.

*These same factors guide the determination of whether Defendant Officers' use of force was reasonable under the "Battery by Peace Officer" and "Negligence in Use of Force under California Law" instructions, which will follow.*

Source: Model Jury Instructions for the Ninth Circuit, 9.25 and Comment (2017, rev. 11/2024) (modifications italicized); *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2011); *Hayes v. County of San Diego*, 57 Cal. 4th 622, 637-639 (2013); *Gonzalez v. County of Los Angeles*, No. 2:18-CV-09117-ODW-ASX, 2021 WL 2224262, at *12 (C.D. Cal. June 2, 2021)

**Plaintiffs' Objections**

Plaintiffs object to the proposed modifications that Plaintiffs must prove that "each officer" used excessive force. The wording is confusing and can lead a jury to believe that Plaintiffs must prove that *all* the defendant officers used excessive force in order to prevail on this claim. Plaintiff further objects to the use of "the Defendant Officer" in line 13, as it is confusing which Defendant Officer the instruction is referring to or if the instruction is referring to *a* Defendant Officer, and the term "Defendant Officer" has not been previously defined. Plaintiffs further object that the factors listed have not been modified to reflect that deadly and nondeadly force was used during the incident, such that the jury should also consider "whether decedent Hector Puga posed an immediate threat of death or serious bodily injury to the officers or others at the time of the use of deadly force." Plaintiffs further object to the inclusion of factor #10—"the number of lives at risk" as this factor is generally only applicable to high-speed pursuits and vehicle shootings and it is undisputed that the vehicle was disabled at the time of the uses of force and that Mr. Puga was out of the vehicle at the time of the shooting. Thus, any risk posed by the the pursuit was no longer a factor at the time of the officers' use of force. As the Ninth Circuit recognized in *Tabares v. City of Huntington Beach*, federal law generally focuses on the "totality of the circumstances" and tactical condnuct *at the time of the shooting*. 988 F.3d 1119, 1126-26. The Ninth Circuit has further recognized that the Fourth Amendment's "totality of the circumstances" consideration focuses on the circumstances *at the time force was applied*. *Alves v. Cnty. of Riverside*, --- F.4th ---, No. 23-55532, 2025 WL 1227942, at *8, 9 (9th Cir. Apr. 29, 2025).

Plaintiffs further object to the addition of the last paragraph, contending that the listed factors also apply to Plaintiffs' battery and negligence claims. This is misleading as the state law claims are evaluated under a different standard than Plaintiffs' Fourth Amendment claim. The California Supreme Court in *Hayes v.*

JOINT PROPOSED DISPUTED JURY INSTRUCTIONS

*County of San Diego*, 57 Cal. 4th 622 (2013), specifically recognized that under California negligence law, liability can arise from tactical conduct and decision employed by law enforcement preceding the use of deadly force, among other negligent conduct. 57 Cal. 4th 626. In *Tabares v. City of Huntington Beach*, 988 F.3d 119 (9th Cir. 2021), the Ninth Circuit recognized that "California negligence law regarding the use of deadly force is broader than federal Fourth Amendment law" and that under California law, "the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation" whereas "[f]ederal law [] generally focuses on the tactical conduct at the time of the shooting." 988 F.3d 1125. Indeed, in *Alves v. County of Riverside,* the Ninth Circuit held that the jury's findings for the officers on the plaintiff's Fourth Amendment claim but against the officers on the plaintiff's negligence claim did not result in an inconsistent verdict as the standards were legally distinct.  --- F.4th ---, No. 23-55532, 2025 WL 1227942, at *5-10 (9th Cir. Apr. 29, 2025).

Courts have evaluated both state law battery and negligence by a peace officer claims under the same standard by taking into consideration pre-force conduct and tactics. *See McLeod v. City of Redding*, No. 2:22-CV-00585 WBS JDP, 2024 WL 3011227, at *8 (E.D. Cal. June 12, 2024) (finding that the analysis on the state law battery claim "requires the same 'totality of the circumstances' inquiry applied to negligence claims" including pre-shooting conduct) (citing *Hayes*, 57 Cal. 4th at p. 638; *Villalobos v. City of San Maria*, 85 Cal. App. 5th 383. 389 (2022) (evaluating both battery and negligence claims against police officers under the reasonableness standard articulated in *Hayes*); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 937(2020) (same)). The differences are embodied in the model instructions for each claim.

Moreover, Plaintiffs' negligence claim is not limited to the officer's use of force. Under California negligence law, "the actor's conduct must always be gauged

in relation to all other material circumstances surrounding it…" *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970) (citing *Toschi v. Christian*, 24 Cal. 2d 354, 360 (1944)); *see Shin v. Ahn* , 42 Cal. 4th 482, 499 (2007) (discussing totality-of-the-circumstances rule); *John B. v. Superior Court*, 38 Cal. 4th 1177, 1191(2006) (same); *Kahn v. East Side Union High School Dist.*, 31 Cal. 4th 990, 996 (2003) (same); *Commercial U.A. Co. v. Pacific G. & E. Co.*, 220 Cal. 515, 522 (1934) (same). Under California negligence law, a jury may "broadly [] consider whether officers acted in a manner consistent with their duty of due care *during the use of force incident*." *Alves*, 2025 WL 1227942, at *8 n.11 (emphasis added).

In a recently published opinion, the Ninth Circuit recognized that California tort law's "reasonable care" standard is distinct form the Fourth Amendment "reasonableness" standard and that the California's "totality of the circumstances" analysis was broader in scope than the Fourth Amendment's "totality of the circumstances." *Alves*, 2025 WL 1227942, at *8, 9. Thus, the Ninth Circuit concluded that under the plaintiff's negligence claim, the jury was permitted to focus on different aspects of the "totality of the circumstances." *Id.* at *8. While in the *Alves* case, the only negligence instruction given were CACI 440 and 441, which pertained to an officer's negligent use of force and deadly force, the Ninth Circuit still found that the plaintiff's negligence claim "allowed the jury to consider more broadly all the facts known to a reasonable officer at the time" and all conduct, including pre-force and post-force conduct, during the incident. *Alves*, 2025 WL 1227942, at *10 (cleaned up) (finding that a jury could have reasonably determined that the officers owed a duty of care to the decedent *after* restraining him in handcuffs, and breached that duty by failing to place him in a recovery position or check whether he was breathing or had a pulse); *see also Dooley v. City of Long Beach*, No. CV 13-4179 JFW RZ, 2014 WL 7405444, at *9 (C.D. Cal. Dec. 29, 2014) (using CACI 400 and 441 as the standard of review for the plaintiff's negligence claim in an excessive force case).

-24-

JOINT PROPOSED DISPUTED JURY INSTRUCTIONS

**Defendants' Response**

The inclusion of the tenth factor involving the number of lives at risk is appropriate as it goes to the "totality of the circumstances" analysis, which includes the parties' conduct before the use of lethal force. Puga engaged in a lengthy, high speed pursuit that endangered the lives of the public and the officers. *People v. Howard*, 34 Cal. 4th 1129, 1140 (2005) ("Any high-speed pursuit is inherenty dangerous to the lives of the pursuing police officers."). Puga's pre-shooting conduct also informed Defendants of the level of danger Puga posed and lengths he would go to avoid to avoid arrest.

The addition of the italicized are accurate statements of the law. The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *See, e.g., S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020). The factors listed in CACI Nos. 441 and 1305B for negligent use of force and battery by a peace officer, respectively, are substantially similar to those listed in this instruction.

Plaintiffs added almost three pages of authority on the eve this document was due. Defendants' attorney will not be able to address this additional authority here, and will address it at the Pretrial Conference.

## STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 24

### 1983 Claim—Causation

Plaintiffs bear the burden to prove that each Defendant Officer's conduct was the actionable cause of their claimed injuries. This inquiry into caution must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.

Source: Model Jury Instructions for the Ninth Circuit, 9.2 Comment—General Principles (2017, rev. 11/2024); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction on the basis that it is redundant under the circumstances. It is undisputed that the CHP officers shot at Puga and that Puga was struck by the gunshots.

Plaintiffs further contend that should the Court find that a causation instruction is needed, both concurrent causation and alternative causation are appropriate and applicable with regards to the issue of causation under Plaintiffs' federal claims. The Ninth Circuit Manual's discussion regarding causation recognizes that

> In *Jones v. Williams*, the Ninth Circuit affirmed a defense verdict in a § 1983 case in which the district court gave the following "concurrent cause" instruction to address allegations of supervisory and group liability: "[M]any factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such case each may be a proximate cause." *Jones v. Williams*, 297 F.3d 930, 937 n.6 (9th Cir. 2002).

Ninth Circuit Manual Model of Civil Jury Instructions, No. 9.2. Moreover, the fact that the fatal bullet likely came from only one of the officers does not absolve all the officers from liability if Plaintiffs are unable to show which officer fired which bullet, and which officer(s) caused the gunshot wounds sustained by Decedent or the fatal gunshot wound. In *Nelson v. City of Davis*, the district court found that even though the plaintiff was unable to show which officer fired the pepperspray bullet that hit the plaintiff, since excessive force **<u>liability</u>** may be predicated on an officer's "integral participation" and every officer who participated in firing pepperball launchers participated in a meaningful way, all officers may be held liable for the plaintiff's injuries. *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 987 (E.D. Cal. 2010), *aff'd*, 685 F.3d 867 (9th Cir. 2012). Similarly here, because all of the shooting officers intentionally used lethal force and shot at Decedent, they may all be held liable for Decedent's gunshot injuries and death.

**<u>Defendants' Response</u>**

Defendants propose this instruction in light of Plaintiffs' removal of the causation language in the Ninth Circuit model instruction No. 9.3. Causation is a necessary and required element of Plaintiffs' claim. The jury needs to be instructed on the causation element.

Further, Plaintiffs cite no authority that an instruction on concurrent or alternative causation must be given if the "but for" or "proximate" cause instruction is to be given. Moreover, Plaintiffs have not proposed a concurrent or alternative causation instruction applicable to a § 1983 claim, thus Defendants cannot adequately address whether such instructions are appropriate in this case.

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 25

<u>Battery by a Peace Officer (Deadly Force)—Essential Factual Elements</u>

A peace officer may use deadly force only when necessary in defense of a human life. The plaintiffs claim that defendants Isaiah Kee, Bernardo Rubalcava, and Michael Blackwood (collectively "Defendant Officers") unnecessarily used deadly force on Hector Puga. To establish this claim, the plaintiffs must prove all of the following:

1. That the officer(s) intentionally shot Hector Puga;

2. That the officer(s) used deadly force on Hector Puga;

3. That the officer(s)' use of deadly force was not necessary to defend human life;

4. That Hector Puga was harmed; and

4. That the officer(s)' use of deadly force was a substantial factor in causing Hector Puga's harm.

The Defendant Officers' use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the Defendant Officers at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to the Shooting Officers.

A person being arrested or detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another

-29-

person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of the Defendant Officers and Hector Puga leading up to the use of deadly force. In determining whether the Defendant Officers' use of deadly force was necessary in defense of human life, you must consider the Defendant Officers' tactical conduct and decisions before using deadly force on Hector Puga and whether the Defendant Officers used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to do so.

A police officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested resists or threatens to resist. Tactical repositioning or other de-escalation tactics are not retreat. An officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or prevent escape. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

Source: CACI 1305B.

**<u>Defendants' Objections</u>**

Plaintiffs' proposed instruction is incomplete and no explanation is provided for deviating from CACI. Defendants' proposed instruction uses the language provided in CACI 1305B, whereas Plaintiffs' proposed instruction omits language of a fleeing felon which is applicable to this case. Throughout this case Defendants have advanced a defense that Puga continued to pose an imminent threat of serious bodily injury and death when he ran towards a residence in an effort to flee from the officers.

1  **<u>Plaintiffs' Response</u>**

2         Plaintiffs contend that language regarding the "fleeing felon" theory is

3  inapplicable to the facts of this case and therefore should be omitted to avoid jury

4  confusion of the issues.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 25**

Battery by a Peace Officer (Deadly Force)—Essential Factual Elements

A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Defendant Officers Michael Blackwood, Isaiah Kee, and Bernardo Rubalcava unnecessarily used deadly force against decedent Hector Puga when they fatally shot him. To establish this *state-law claim for battery by a peace officer*, Plaintiffs must prove all of the following:

1. That Defendants Blackwood, Kee, and/or Rubalcava intentionally touched or caused Mr. Puga to be touched;

2. That Defendants Blackwood, Kee, and/or Rubalcava used deadly force on Mr. Puga;

3. That Defendants Blackwood, Kee, and/or Rubalcav's use of deadly force was not necessary to defend human life;

4. That Mr. Puga was harmed or killed; and

5. That Defendants Blackwood, Kee, and/or Rubalcava's use of deadly force was a substantial factor in causing Mr. Puga's harm or death.

Defendant Officers Blackwood, Kee, and/or Rubalcava's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the Defendant Officer at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to the officers or to another person and/or to apprehend a fleeing person for a felony, when all of the following conditions are present:

     i.    The felony threatened or resulted in death or serious bodily injury to another;

     ii.    The Defendant Officer reasonably believed that Mr. Puga would cause death or serious bodily injury to another unless immediately apprehended; and

iii.    If practical under the circumstances, the Defendant Officer made reasonable efforts to identify himself as a peace officer and to warn that deadly force would be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

A person being arrested has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.  An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of the Defendant Officers Adams, Blackwood, Kee, and Rubalcava and decedent Hector Puga leading up to the use of deadly force. In determining whether the Defendant Officer's use of deadly force was necessary in defense of human life, you must consider the Officer's tactical conduct and decisions before using deadly force on Mr. Puga and whether the Defendant Officer used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to do so.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect

-34-

1  the arrest or to prevent escape or to overcome resistance. A peace officer does,

2  however, have a duty to use reasonable tactical repositioning or other deescalation

3  tactics.

4

5  Authority: CACI 1305B.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **<u>Plaintiffs' Objections</u>**

2       Plaintiffs object to the wording of the first factor, given that this was an

3  intentional shooting. Plaintiffs further object to the wording of the fourth and fifth

4  factors, that "Mr. Puga was *killed*" and that the use of deadly force was a substantial

5  factor in causing "Mr. Puga's *death.*" Plaintiffs contend that even if a Defendant

6  Officer's bullet was not the bullet that caused Mr. Puga's death, if the bullet struck

7  Mr. Puga, it contributed to Mr. Puga's pain and suffering before his death.

8  Therefore, Defendant Officers would still be liable to Mr. Puga under Plaintiffs'

9  battery claim even if one of their bullets that struck Mr. Puga was not the bullet that

10  caused his fatal injuries. Plaintiffs further object the instruction regarding

11  apprehending a fleeing person for a felony as Plaintiffs contend it is inapplicable

12  under the facts of this case. Lastly, Plaintiffs object to the omission of Sergeant

13  Robert Vaccari's conduct under the "totality of the circumstances."

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Defendants' Response</u>**

2   Battery is an intentional touching, and Defendants' proposed instruction accurately

3   reflects CACI 1305B. In light of the Court's ruling on Defendants' motion for

    summary judgment, Defendants agree to changing "killed" to "harmed or killed" or

4   "harm or death."

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 26**

<u>Causation—Substantial Factor</u>

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

<u>Source</u>: CACI 430.

1

**<u>Defendants' Objections</u>**

2
This causation instruction applies to Plaintiffs' state-law claims, and the jury must
so be informed. While similar, it is not the same causation standard applicable to a §

3
1983 claim.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **<u>Plaintiffs' Response</u>**

2        Plaintiffs contend that the CACI causation instructions in this case apply to

3  Plaintiffs' federal claims as well. As Defendants concede, the substantial factor

4  instruction are similar.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEFENDANTS' PROPOSED INSTRUCTION NO. 26**

2

<u>Causation—Substantial Factor</u>

3

*Under California law*, a substantial factor in causing harm is a factor that a

4

reasonable person would consider to have contributed to the harm. It must be more

5

than a remote or trivial factor. It does not have to be the only cause of the harm.

6

Conduct is not a substantial factor in causing harm if the same harm would

7

have occurred without that conduct.

8

9

<u>Source</u>: CACI 430; *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir.

10

2018)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **<u>Plaintiffs' Objections</u>**

2         Plaintiffs object to the addition of the phrase "Under California law" to the

3    model instruction on the basis that it is not needed and superfluous. Plaintiff

4    contends this definition applies to both Plaintiffs' federal and state law claims.

1

**<u>Defendants' Response</u>**

Ninth Circuit model instruction No. 9.3 contains a definition of causation that applies to claims under § 1983. It is misleading and inaccurate to instruct the jury on causation under CACI 430 without clarifying that this standard applies to Plaintiffs' state-law claims only.

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 27

## Causation—Multiple Causes

A person's conduct may combine with another factor to cause harm. If you find that any of the Defendant Officers' conduct was a substantial factor in causing Hector Puga's injuries, then that Defendant Officer is responsible for the injuries. A Defendant Officer cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Plaintiff's injuries.

Source: CACI 431.

1

**<u>Defendants' Objections</u>**

2
This causation instruction applies to Plaintiffs' state-law claims, and the jury must

3
so be informed. While similar, it is not the same causation standard applicable to a

§ 1983 claim. Further, Plaintiffs cite no authority that "conduct" and "negligence,"

4
as used in CACI 431, are interchangeable. The conduct must be negligent for this

5
instruction to apply. A jury may find that one officer's shooting was justified while

another's was negligent. This instruction incorrectly leads the jury to believe that the

6
negligent officer is responsible for all the harm, including that resulting from the

7
justified shooting.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Response**

Plaintiffs contend that this instruction is equally applicable to Plaintiffs' battery and federal claims claims as it is to Plaintiffs' negligence claim. The Ninth Circuit Manual's discussion regarding causation recognizes that

> In *Jones v. Williams*, the Ninth Circuit affirmed a defense verdict in a § 1983 case in which the district court gave the following "concurrent cause" instruction to address allegations of supervisory and group liability: "[M]any factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such case each may be a proximate cause." *Jones v. Williams*, 297 F.3d 930, 937 n.6 (9th Cir. 2002).

Ninth Circuit Manual Model of Civil Jury Instructions, No. 9.2.

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 27**

<u>Causation—Multiple Causes</u>

*Under California law,* a person's negligence may combine with another factor to cause harm. If you find that a Defendant Officer's negligence was a substantial factor in causing decedent Hector Puga's harm, then that Defendant Officer is responsible for the harm. The Defendant Officer cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Mr. Puga's harm.

<u>Source</u>: CACI 431 (modified).

1    **<u>Plaintiffs' Objections</u>**

2        Plaintiffs object to this instruction on the basis that it should include conduct

3    in addition to negligence, as this instruction is equally applicable to Plaintiffs'

4    battery and federal claims claims as it is to Plaintiffs' negligence claim. The Ninth

5    Circuit Manual's discussion regarding causation recognizes that

6        In *Jones v. Williams*, the Ninth Circuit affirmed a defense verdict in a §
7    1983 case in which the district court gave the following "concurrent
     cause" instruction to address allegations of supervisory and group
8    liability: "[M]any factors or things or the conduct of two or more
     persons can operate at the same time either independently or together
9    to cause injury or damage and in such case each may be a proximate
10   cause." *Jones v. Williams*, 297 F.3d 930, 937 n.6 (9th Cir. 2002).

11   Ninth Circuit Manual Model of Civil Jury Instructions, No. 9.2.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Response**

Plaintiffs cite no evidence that CACI 431 applies to Plaintiffs' state-law and federal claim. Plaintiffs read *Jones* too broadly. There, the Ninth Circuit affirmed the district court's rejection of a jury instruction that would have allowed for group liability, that is, a defendant's liability for simply being present. The Ninth Circuit noted that district court gave instructions that allowed the jury to consider the interplay of two or more officers in a deprivation of constitutional rights, which included the "concurrent cause" instruction the plaintiff proposed. *Jones*, 297 F.3d at 937. "This instruction allowed the jury to consider whether the actions of more than one officer contributed to a search that was unreasonable." *Id*. The instruction in *Jones* simply allowed the jury to find that more than one defendant could be the proximate cause of Plaintiffs' deprivation. CACI 431 focuses on the consequence (or lack thereof) when there are more than one negligent action or person. Moreover, CACI 431 speaks of "negligence." Negligence is not the standard for a § 1983 claim, especially for excessive force. Thus, the causation standard under CACI 431 and § 1983 are not the same, nor interchangeable.

JOINT PROPOSED DISPUTED JURY INSTRUCTIONS

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 28

## Alternative Causation

You may decide that more than one of the defendants used unreasonable force or was negligent, but that the use of unreasonable force or negligence of only one of them could have actually caused Hector Puga's harm. If you cannot decide which defendant caused Hector Puga's harm, you must decide that each defendant is responsible for the harm.

However, if a defendant proves that he did not cause Hector Puga's harm, then you must conclude that defendant is not responsible.

Source: CACI 434.

1

**<u>Defendants' Objections</u>**

2   Defendants object to this instruction because it is inapplicable unless and until the

3   Plaintiffs demonstrate that all defendants acted tortiously and that the harm resulted

    from the conduct of one of them. (CACI 434 Sources and Authorities, citing Rest.2d

4   Torts, § 433B, com. g, p. 446.) Further, CACI 434 uses the term "negligent," not

    "unreasonable force." Plaintiffs' proposed terminology may lead the jury into

5   believing that negligence is sufficient to find an officer used excessive force. The

6   conduct must be negligent for this instruction to apply, and therefore can only apply

    to Plaintiffs' state-law claims.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **<u>Plaintiffs' Response</u>**

2        Plaintiffs contend that this instruction is equally applicable to Plaintiffs'

3  battery and federal claims claims as it is to Plaintiffs' negligence claim. The fact that

4  the fatal bullet likely came from only one of the officers does not absolve all the

5  officers from liability if Plaintiffs are unable to show which officer fired which

6  bullet, and which officer(s) caused the gunshot wounds sustained by Decedent or the

7  fatal gunshot wound. In *Nelson v. City of Davis*, the district court found that even

8  though the plaintiff was unable to show which officer fired the pepperspray bullet

9  that hit the plaintiff, since excessive force liability may be predicated on an officer's

10  "integral participation" and every officer who participated in firing pepperball

11  launchers participated in a meaningful way, all officers may be held liable for the

12  plaintiff's injuries. *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 987 (E.D. Cal.

13  2010), *aff'd*, 685 F.3d 867 (9th Cir. 2012). Similarly here, because all of the

14  shooting officers intentionally used lethal force and shot at Decedent, they may all

15  be held liable for Decedent's gunshot injuries and death.

16

17

18

19

20

21

22

23

24

25

26

27

28

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 29

<u>Negligence—Essential Elements</u>

The plaintiffs claim that Hector Puga was harmed by the negligence of the Defendant Officers To establish this claim, the plaintiffs must prove all of the following:

1.    That the Defendant Officer(s) was/were negligent;

2.    That Defendant Officer(s)' negligence was/were a substantial factor in causing Hector Puga's injury, damage, loss, or harm.

<u>Source</u>:  CACI 400.

1

**<u>Defendants' Objections</u>**

2
This incomplete instruction is inapplicable to this case because the Defendants are

peace officers. Therefore CACI 441 applies to determine whether Defendants' use

3
of lethal force was negligent.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Plaintiffs' Response**

2        Under California negligence law, "the actor's conduct must always be gauged

3    in relation to all other material circumstances surrounding it…" *Grudt v. City of Los*

4    *Angeles*, 2 Cal. 3d 575, 587 (1970) (citing *Toschi v. Christian*, 24 Cal. 2d 354, 360

5    (1944)); *see Shin v. Ahn* , 42 Cal. 4th 482, 499 (2007) (discussing totality-of-the-

6    circumstances rule); *John B. v. Superior Court*, 38 Cal. 4th 1177, 1191(2006)

7    (same); *Kahn v. East Side Union High School Dist.*, 31 Cal. 4th 990, 996 (2003)

8    (same); *Commercial U.A. Co. v. Pacific G. & E. Co.*, 220 Cal. 515, 522 (1934)

9    (same). The Ninth Circuit has recognized that "the California Supreme Court has

10   held that California negligence law 'is broader than federal Fourth Amendment

11   law.'" *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1122 (9th Cir. 2021).

12   Under California negligence law, a jury may "broadly [] consider whether officers

13   acted in a manner consistent with their duty of due care *during the use of force*

14   *incident*." *Alves v. Cnty. of Riverside*, --- F.4th ---, No. 23-55532, 2025 WL

15   1227942, at *8 n.11 (9th Cir. Apr. 29, 2025) (emphasis added).

16       In a recently published opinion, the Ninth Circuit recognized that California

17   tort law's "reasonable care" standard is distinct form the Fourth Amendment

18   "reasonableness" standard and that the California's "totality of the circumstances"

19   analysis was broader in scope than the Fourth Amendment's "totality of the

20   circumstances." *Alves*, 2025 WL 1227942, at *8, 9. Thus, the Ninth Circuit

21   concluded that under the plaintiff's negligence claim, the jury was permitted to

22   focus on different aspects of the "totality of the circumstances." *Id.* at *8. While in

23   the *Alves* case, the only negligence instruction given were CACI 440 and 441, which

24   pertained to an officer's negligent use of force and deadly force, the Ninth Circuit

25   still found that the plaintiff's negligence claim "allowed the jury to consider more

26   broadly all the facts known to a reasonable officer at the time" and all conduct,

27   including pre-force and post-force conduct, during the incident. *Alves*, 2025 WL

28   1227942, at *10 (cleaned up) (finding that a jury could have reasonably determined

1   that the officers owed a duty of care to the decedent *after* restraining him in

2   handcuffs, and breached that duty by failing to place him in a recovery position or

3   check whether he was breathing or had a pulse); *see also Dooley v. City of Long*

4   *Beach*, No. CV 13-4179 JFW RZ, 2014 WL 7405444, at *9 (C.D. Cal. Dec. 29,

5   2014) (using CACI 400 and 441 as the standard of review for the plaintiff's

6   negligence claim in an excessive force case).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 30**

<u>Basic Standard of Care</u>

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in the Defendant Officers' situation.

<u>Source</u>: CACI 401.

**<u>Defendants' Objections</u>**
This instruction is inapplicable to this case because the Defendants are peace officers. Therefore CACI 441 sets out the factors to determine whether Defendants' use of lethal force breached the standard of care.

**Plaintiffs' Response**

Under California negligence law, "the actor's conduct must always be gauged in relation to all other material circumstances surrounding it…" *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970) (citing *Toschi v. Christian*, 24 Cal. 2d 354, 360 (1944)); *see Shin v. Ahn* , 42 Cal. 4th 482, 499 (2007) (discussing totality-of-the-circumstances rule); *John B. v. Superior Court*, 38 Cal. 4th 1177, 1191(2006) (same); *Kahn v. East Side Union High School Dist.*, 31 Cal. 4th 990, 996 (2003) (same); *Commercial U.A. Co. v. Pacific G. & E. Co.*, 220 Cal. 515, 522 (1934) (same). The Ninth Circuit has recognized that "the California Supreme Court has held that California negligence law 'is broader than federal Fourth Amendment law.'" *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1122 (9th Cir. 2021). Under California negligence law, a jury may "broadly [] consider whether officers acted in a manner consistent with their duty of due care *during the use of force incident*." *Alves v. Cnty. of Riverside*, --- F.4th ---, No. 23-55532, 2025 WL 1227942, at *8 n.11 (9th Cir. Apr. 29, 2025) (emphasis added).

In a recently published opinion, the Ninth Circuit recognized that California tort law's "reasonable care" standard is distinct form the Fourth Amendment "reasonableness" standard and that the California's "totality of the circumstances" analysis was broader in scope than the Fourth Amendment's "totality of the circumstances." *Alves*, 2025 WL 1227942, at *8, 9. Thus, the Ninth Circuit concluded that under the plaintiff's negligence claim, the jury was permitted to focus on different aspects of the "totality of the circumstances." *Id.* at *8. While in the *Alves* case, the only negligence instruction given were CACI 440 and 441, which pertained to an officer's negligent use of force and deadly force, the Ninth Circuit still found that the plaintiff's negligence claim "allowed the jury to consider more broadly all the facts known to a reasonable officer at the time" and all conduct, including pre-force and post-force conduct, during the incident. *Alves*, 2025 WL 1227942, at *10 (cleaned up) (finding that a jury could have reasonably determined

1    that the officers owed a duty of care to the decedent *after* restraining him in

2    handcuffs, and breached that duty by failing to place him in a recovery position or

3    check whether he was breathing or had a pulse); *see also Dooley v. City of Long*

4    *Beach*, No. CV 13-4179 JFW RZ, 2014 WL 7405444, at *9 (C.D. Cal. Dec. 29,

5    2014) (using CACI 400 and 441 as the standard of review for the plaintiff's

6    negligence claim in an excessive force case).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 31**

Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements

A peace officer may use deadly force only when necessary in defense of human life. The plaintiffs claim that defendants Isaiah Kee, Bernardo Rubalcava, and Michael Blackwood (collectively, "Defendant Officers) werer negligent in using deadly force to arrest Hector Puga. To establish this claim, the plaintiffs must prove all of the following:

1. That the Defendant Officers were peace officers;

2. That the Defendant Officers used deadly force on Hector Puga;

3. That the Defendant Officers' use of desadly force was not necessary to defend human life;

4. That Hector Puga was harmed or killed;

5. That the Defendant Officers' use of deadly force was a substantial factor in causing Hector Puga's harm or death.

The Defendant Officers' use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the Defendant Officers at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to the Defendant Officers and/or another person.

A person being detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of the Defendant Officers and Hector Puga. leading up to the use of deadly force. In determining whether the Defendant Officers' use of deadly force was necessary in defense of human life, you must consider the Shooting Officers' tactical conduct and decisions before using deadly force on Hector Puga and whether the Defendant Officers used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to detain. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

<u>Source</u>: CACI 441.

1
2
3
4

**<u>Defendants' Objections</u>**
This instruction is incomplete without any explanation for its omissions and modifications, especially as to the fleeing felony language as this is a theory Defendants are pursuing. Defendants' proposed instruction uses the language provided in CACI 441 and includes options that are applicable to this case.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **<u>Plaintiffs' Response</u>**

2      Plaintiffs contend that language regarding the "fleeing felon" theory is

3  inapplicable to the facts of this case and therefore should be omitted to avoid jury

4  confusion of the issues.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:23-cv-00257-KK-SHK

## STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 31

Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements

*Under California law*, a peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Defendant Officers Michael Blackwood, Isaiah Kee, and Bernardo Rubalcava were negligent in using deadly force to arrest, prevent the escape of, or overcome the resistance of decedent Hector Puga. To establish this claim, Plaintiffs must prove all of the following:

1. That Defendants Blackwood, Kee, and Rubalcava were peace officers;

2. That the Defendant Officer used deadly force on Mr. Puga;

3. That Defendant Officer's use of deadly force was not necessary to defend human life;

4. That Mr. Puga was harmed or killed; and

5. That the Defendant Officer's use of deadly force was a substantial factor in causing Mr. Puga's harm or death.

The Defendant Officer's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Defendant Blackwood, Kee, and/or Rubalcava at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to the officers or others *and/or* to apprehend a fleeing person for a felony, when all of the following conditions are present:

i. The felony threatened or resulted in death or serious bodily injury to another;

ii. The Defendant Officer reasonably believed that Mr. Puga would cause death or serious bodily injury to another unless immediately apprehended; and

-65-

5:23-cv-00257-KK-SHK

iii.    The Defendant Officer made reasonable efforts to identify himself as a peace officer and to warn that deadly force would be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.

A person being arrested has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" is force that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of the Defendant Officers Blackwood, Kee, and Rubalcava and decedent Hector Puga leading up to the use of deadly force. In determining whether the Defendant Officer's use of deadly force was necessary in defense of human life, you must consider the Defendant Officer's tactical conduct and decisions before using deadly force on Mr. Puga and whether the Defendant Officer used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest, prevent escape, or overcome resistance.

A law enforcement officer may use reasonable force to arrest or overcome the resistacnce of a person the officer has reasonable cause to believe that that person has committed or is committing a crime. However, the officer may use only that degree of force necessary to arrest or overcome the resistance of the person. Even if the officer is mistaken, a person being arrested or detained has a duty not to use force to resist the officer unless the officer is using unreasonable force.

An officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. An officer does not lose the right to self-defense by using objectively reasonable force to arrest or overcome the resistance of the person.

Source: CACI 440.

1  **<u>Plaintiffs' Objections</u>**

2    Plaintiffs object to the modification to include "Under California law." The

3  heading of this instruction already specifies that this instruction only applies to

4  Plaintiffs' negligence claim. Thus, it is unnecessary to add superfluous information

5  to the instruction. Plaintiffs further object to the wording of the fourth and fifth

6  factors, that "Mr. Puga was *killed*" and that the use of deadly force was a substantial

7  factor in causing "Mr. Puga's *death.*" Plaintiffs contend that even if a Defendant

8  Officer's bullet was not the bullet that caused Mr. Puga's death, if the bullet struck

9  Mr. Puga, it contributed to Mr. Puga's pain and suffering before his death.

10  Therefore, Defendant Officers would still be liable to Mr. Puga under Plaintiffs'

11  negligence claim even if one of their bullets that struck Mr. Puga was not the bullet

12  that caused his fatal injuries. Plaintiffs further object the instruction regarding

13  apprehending a fleeing person for a felony as Plaintiffs contend it is inapplicable

14  under the facts of this case. Lastly, Plaintiffs object to the omission of Sergeant

15  Robert Vaccari's conduct under the "totality of the circumstances."

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Defendants' Response</u>**

Informing the jury that this instruction applies to Plaintiffs' state-law claim for negligence because most jury instructions do not have headings, and the jury will not know to which claim this instruction applies. Defendants are agreeable that "killed" or "death" be changed to "harm or killed" or "harm or death." The fleeing-felon language applies because it is a theory Defendants have pursued from the onset. All Defendants testified at their depositions that after Puga shot at Kee and Rubalcava, he attempted to flee, and they feared he would run into a nearby residence and create a hostage situation since Defendants never saw Puga drop the gun as he ran.

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 32A**

<u>Apportionment of Responsibility</u>

Defendant Officers claim that the negligence of San Bernardino County Sheriff Deputies Jake Adams and Robert Vaccarri also contributed to decedet Hector Puga's harm or death. To succeed on this claim, Defendant Officers must prove both of the following:

     1. Deputies Adams and Vaccari were negligent; and

     2. That the negligence of Deputies Adams and/or Vaccari was a substantial factor in causing Mr. Puga's harm or death.

If you find that the negligence of more than one person including the Defendant Officers, Mr. Puga, and Deputy Adams or Vaccari was a substantial factor in causing Mr. Puga's harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent.

You will make a separate finding of Mr. Puga's total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.

<u>Source</u>: CACI 406 (modified by omitting the last paragraph).

1    **<u>Plaintiffs' Objections</u>**

2            Defendants added this instruction at the last minute on the day of the filing

3    deadline. Plaintiffs have not had any meaningful time to fully evaluate the

4    applicability of this instruction. Thus, Plaintiffs object to the last-minute addition of

5    this instruction. Plaintiffs further object on the basis that this instruction states that

6    Deputies Adams and Vaccari may be responsible for Hector Puga's death. Based on

7    the Court's MSJ Order, the Court has determined that it is undisputed that the fatal

8    shot came from either Defendant Isaiah Kee or Defendant Michael Blackwood. Due

9    to this determination, the Court held that Officer Bernardo Rubalcava may only be

10   liable for survival damages (pain and suffering) under Plaintiffs' state law wrongful

11   death claims. The same should apply to Deputies Jake Adams and Robert Vaccari.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **<u>Defendants' Response</u>**

2 Plaintiffs cannot claim surprise by the addition of this instruction because the State

3 Defendants' proposed verdict form, that was provided to Plaintiffs' counsel more

4 than a month ago, listed deputies Adams and Vaccari in the negligence and

5 apportionment questions. Even if Adams and Vaccari are no longer defendants, the

6 jury can still apportion fault to them on Plaintiffs' pre-shooting and shooting tactics

7 negligence theories. Plaintiffs' police practices expert, Roger Clark, was highly

8 critical of Vaccari, incuding Vaccari's refusal to call SWAT, shooting pepper balls

9 into the cabin of Puga's vehicle, including purposefully striking Puga with a pepper

10 ball in the face, and deploying two rounds from the taser after Puga was already on

11 the ground. Defendants are entitled to present evidence of the negligent conduct of

12 the deputies regardless if they are parties or not.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 33

<u>Bane Act—Essential Elements</u>

The plaintiffs claims that Defendant Officers intentionally interfered with or attempted to interfere with Hector Puga's civil rights by threats, intimidation, or coercion. To establish this claim, the plaintiffs must prove all of the following:

1. That the defendant officer(s) acted violently against Hector Puga to prevent him from exercising his right to be free from excessive force.

2. That defendant officers intended to deprive Hector Puga of his enjoyment of the interests protected by the right to be free from excessive force

3. That Hector Puga was harmed; and

4. That defendant officer(s)' conduct was a substantial factor in causing Hector Puga's harm.

A reckless disregard of a person's constitutional rights is evidence of specific intent to deprive that person of those rights.

<u>Source</u>: CACI 3066 (modified).

**<u>Defendants' Objections</u>**

Plaintiffs' instruction does not identify the constitutional right at issue. Plaintiffs' last paragraph is confusing.

**<u>Plaintiffs' Response</u>**

Plaintiffs have identified the constitutional right at issue (excessive force) under factor #2. Plaintiffs' last paragraph provides a simple and succinct definition of "reckless disregard" taken directly from *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).

## STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 33

<u>Bane Act—Essential Elements</u>

Plaintiffs claim that the Defendant Officers intentionally interfered with decedent Hector Puga's constitutional right to be free from excessive force by threats, intimidation, or coercion. To establish this claim, Plaintiffs must prove all of the following:

    1.  One or more Defendant Officer used excessive force against Mr. Puga;

    2.  The Defendant Officer intended to violate Mr. Puga's right to be free of excessive force;

    3.  That Mr. Puga was harmed; and

    4.  That the Defendant Officer's conduct was a substantial factor in causing Mr. Puga's harm.

A Defendant Officer's intent to violate the constitutional right of another may be demonstrated by a reckless disregard of those rights where the officer's actions constitute a purposeful deprivation of those rights, even if the officer is unaware of the unlawfulness of the action.

<u>Source</u>: CACI 3066 (rev. 11/2018); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-45 (9th Cir. 2018)

1    **Plaintiffs' Objections**

2          Plaintiffs object to the modification to include "by a preponderance of the

3    evidence." This is redundant as there is already a separate jury instruction regarding

4    the burden of proof for the claims and thus, there is no need to depart from the

5    model instruction. Plaintiffs further object to the last paragraph. While Plaintiffs

6    agree that the model instruction needs to be modified to include an explanation that

7    specific intent can be shown through a reckless disregard of a person's constitutional

8    rights, the paragraph as worded is wordy, confusing and may mislead the jury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Defendants' Response</u>**

Defendants agree to remove the phrase about the preponderance of the evidence. Otherwise, Defendants' instruction more closely follows CACI and *Reese* from where the language in the last paragraph is taken.

# STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 35

## Officers Forced to Make Split-Second Judgments

All determinations of unreasonable force must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Source: *Graham v. Connor*, 490 U.S. 386, 396-397 (1989)

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in the Ninth Circuit Model Instruction 9.25, CACI 1305B, and CACI 441. To give an additional instruction on this concept would unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

1

**<u>Defendants' Response</u>**

2

Defendants' proposed instruction is not cumulative or duplicative of other

3

instructions. Rather, it supplements that instruction by advising the jury that peace

officers are to be given a reasonable amount of breathing room to make, often times,

4

life or death decisions in a split-second. The facts of this case support this

5

instruction, as the subject shooting evolved and ended quickly, with Defendants

6

making a snap-judgment concerning the lives and safety of themselves and others.

Moreover, it is an accurate statement of the law.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 36**

2  <u>Least Intrusive Means Not Required</u>

3            A police officer is not required to avail himself of the least intrusive

4  means of responding to a situation; rather, the officer need only act within that range

5  of conduct which is identified as reasonable. The appropriate inquiry is whether the

6  officer acted reasonably, not whether he had less intrusive alternatives available to

7  him.

8  A reasonable use of deadly force encompasses a range of conduct, and the

9  availability of a less-intrusive alternative will not render conduct unreasonable.

10

11  <u>Source</u>: *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010); *Scott v. Henrich*, 39

12  F.3d 912, 915 (9th Cir. 1994)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in the Ninth Circuit Model Instruction 9.25, CACI 1305B, and CACI 441. To give an additional instruction on this concept would unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

1

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction by advising the jury that peace officers are not required to search for and use less instrusive means. The facts of this case support this instruction, especially as Plaintiffs' expert, Roger Clark, intends to testify that the Defendants should have taken other action. Moreover, it is an accurate statement of the law.

1    **STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 37**

2    <u>Officers Not Required to Wait</u>

3         The Fourth Amendment does not require officers in a tense and dangerous

4    situation to wait until the moment a suspect uses a deadly weapon to act to stop the

5    suspect.

6

7    <u>Source</u>: *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *Elliott v.*

8    *Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in the Ninth Circuit Model Instruction 9.25, CACI 1305B, and CACI 441. To give an additional instruction on this concept would unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction by advising the jury that peace officers are not required to wait-out a suspect. The facts of this case support this instruction, especially in light of Mr. Clark's anticipated expert testimony. Moreover, it is an accurate statement of the law.

1    **STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 38**

2    <u>Officers Not Required to Retreat</u>

3    For purposes of determining reasonableness of an officer's use of force,

4    officers do not have a duty to retreat when faced with an immediate threat.

5

6    <u>Source</u>: *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906. 919 (9th Cir.

7    2024); *Tucker v. Las Vegas Metro. Police Dep't*, 470 F. App'x 627, 630 (9th Cir.

2012); Cal Penal Code § 835a(d)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in the Ninth Circuit Model Instruction 9.25, CACI 1305B, and CACI 441. To give an additional instruction on this concept would unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction by advising the jury that peace officers are not required to retreat. The facts of this case support this instruction, especially in light of Mr. Clark's anticipated expert testimony.   Moreover, it is an accurate statement of the law.

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 39**

<u>Officers Can Act Based on Apparent Danger</u>

If a police officer is confronted by the appearance of danger which he believes, and a reasonable person in the same position would believe, would result in death or great bodily injury, the officer may act upon those circumstances. The right of self-defense is the same whether the danger is real or merely apparent.

<u>Source</u>: *People v. Minifie*, 13 Cal. 4th 1055, 1068 (1996); *Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 371, n.4 (9th Cir. 1998)

1  **<u>Plaintiffs' Objections</u>**

2      Plaintiffs object to this instruction in its entirety. The concept of this

3  instruction is already embodied in the Ninth Circuit Model Instruction 9.25, CACI

4  1305B, and CACI 441. To give an additional instruction on this concept would

5  unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Defendants' Response</u>**

2

Defendants' proposed instruction is not cumulative or duplicative of other

instructions. Rather, it supplements that instruction. The facts of this case support

3

this instruction, especially in light of Mr. Clark's anticipated expert testimony.

4

Moreover, it is an accurate statement of the law.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 40**

<u>Determination of Reasonableness—At Moment of Use of Force</u>

The determination of whether an officer's use of deadly force was excessive is based on whether the use of deadly force was unreasonable at the moment of the shooting. If the officer engaged in negligent conduct prior to the moment of shooting, such negligence should not be considered when deciding whether the officer's use of deadly force was unreasonable at the moment of shooting.

<u>Source</u>: *Graham v. Connor*, 490 U.S. 386, 396, (1989); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021)

1 **Plaintiffs' Objections**

2    Plaintiffs object to this instruction in its entirety. The concept of this

3 instruction is already embodied in the Ninth Circuit Model Instruction 9.25. To give

4 an additional instruction on this concept would unfairly emphasize this concept and

5 be unfairly prejudicial to Plaintiffs. Moreover, this instruction is a misstatement of

6 the law for Plaintiffs' battery and negligence claim and fails to specify that it only

7 applies to Plaintiff's Fourth Amendment claim. *See Tabares v. City of Huntington*

8 *Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) ("Under California law, the officer's

9 pre-shooting decisions can render his behavior unreasonable under the totality of the

10 circumstances, even if his use of deadly force at the moment of shooting might be

11 reasonable in isolation.").

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Defendants' Response</u>**

2    Defendants' proposed instruction is not cumulative or duplicative of any proposed

3    "excessive force" instruction. Rather, it supplements the Ninth Circuit Model

4    Instructions by clarifying for the jury that consideration of use of force must be at

5    the moment force is used and not based on any prior conduct of Defendants. The

6    facts of this case support this instruction, especially in light of Mr. Clark's

     anticipated expert testimony. Moreover, it is an accurate statement of the law.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 41

## Pre-Shooting Conduct Does Not Negate Reasonableness of Force

You may not find an officer's use of force unreasonable based merely on tactical errors that result in a confrontation that could have been avoided. The fact that an officer negligently creates a dangerous situation does not mean it is unreasonable for him to use force. Even if an officer negligently provokes a violent response, that negligent act does not mean the force used was unreasonable.

Source: *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), abrogated on other grounds by County of Los Angeles v. Mendez, 137 S. Ct. 1539 (2017); *City & County of San Francisco v. Sheehan*, 1353S. Ct. 1765, 1777 (2015); *Pettersen v. County of L.A.*, No. CV 14-4699 DSF (AGRx), 2015 WL 13333499, at *6 (C.D. Cal. Oct. 8, 2015)

1    **<u>Plaintiffs' Objections</u>**

2         Plaintiffs object to this instruction in its entirety. The concept of this

3    instruction is already embodied in the Ninth Circuit Model Instruction 9.25. To give

4    an additional instruction on this concept would unfairly emphasize this concept and

5    be unfairly prejudicial to Plaintiffs. Moreover, this instruction is a misstatement of

6    the law for Plaintiffs' battery and negligence claim and fails to specify that it only

7    applies to Plaintiff's Fourth Amendment claim. *See Tabares v. City of Huntington*

8    *Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) ("Under California law, the officer's

9    pre-shooting decisions can render his behavior unreasonable under the totality of the

10   circumstances, even if his use of deadly force at the moment of shooting might be

11   reasonable in isolation."). Lastly, the authority cited does not support the text of the

12   proposed instruction.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Defendants' Response</u>**

2  Defendants' proposed instruction is necessary to appropriately define for the jury

3  what may and may not be considered when deciding the central Fourth Amendment

   "excessive force" issue in this case. The proposed instruction is intended to blunt

4  Plaintiffs' attempts to color a jury's opinions on "excessive force" based upon

5  tactical decisions Defendants made or did not make, especially in light of Mr.

6  Clark's anticipated expert testimony. The *Billington* and *Sheehan* cases relied upon

   foreclose such an approach, and the jury should be instructed accordingly.

7  Moreover, it is an accurate statement of the law.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 42**

<u>Willful Resistance, Delay, or Obstruction of a Peace Officer</u>

A citizen is under a duty to obey the commands of a peace officer. It is a crime to willfully resist, delay, or obstruct any peace officer in the discharge or attempt to discharge his duty.

<u>Source</u>: Cal. Penal Code § 148(a)(l); *People v. Yuen*, 32 Cal. App. 2d 151 (1939); *People v. Alaniz*, 182 Cal. App. 3d 903, 908 (1986); *Smith v. City of Hemet*, 394 F.3d 689, 697 (2004)

1   **<u>Plaintiffs' Objections</u>**

2          Plaintiff objects to this instruction in its entirety. The concept of this

3   instruction is already embodied in CACI 1305B and 441. To give an additional

4   instruction on this concept would unfairly emphasize this concept and be unfairly

5   prejudicial to Plaintiffs.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction. The facts of this case support this instruction, especially in light of Mr. Clark's anticipated expert testimony. Moreover, it is an accurate statement of the law.

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 43**

<u>Expert Opinion Concerning Use of Force</u>

The fact that an expert witness disagrees with a peace officer's actions after the fact does not render the officer's actions unreasonable. It is up to you, as the jury, to decide whether a reasonable officer could have believed that the use of force, including deadly force, was reasonable or justified under the circumstances.

<u>Source</u>: *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994); *Reynolds v. County of San Diego*, 84 F.3d 1162 (9th Cir. 1996); *Billington v. Smith*, 292 F.3d 1177,1189 (9th Cir. 2002)

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. This instruction has a biased slant, suggesting that the jury discount Plaintiff's police practices expert's opinions. The concept of this instruction is already embodied in the neutral Ninth Circuit Jury Instruction 2.13.

1

**<u>Defendants' Response</u>**

2
Defendants' proposed instruction is not cumulative or duplicative of other

3
instructions. Rather, it supplements that instruction. The facts of this case support

4
this instruction. Plaintiffs have retained long-time police practices expert Roger

5
Clark to offer opinion testimony concerning the actions of Defendants. Mr. Clark is

6
well-qualified. But his testimony is not to be deemed determinative just because he

7
speaks from a wealth of experience. Indeed, "'in close cases, a jury does not

8
automatically get to second-guess these life and death decisions, even though a

9
Plaintiff has an expert and a plausible claim that the situation could better have been

10
handled differently.'" *Saucier v. Katz*, 533 U.S. 194, n. 6 (2001) (Ginsburg, J.,

concurring in judgment) (internal citation omitted). The jury should be advised

accordingly. Moreover, it is an accurate statement of the law.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 44**

<u>Self Defense/Defense of Others</u>

Defendant Officers Michael Blackwood, Isaiah Kee, and Bernardo Rubalcava claim they are not responsible for decedent Hector Puga's harm or death because they were acting in self-defense and defense of others. To succeed, the officers must prove both of the following:

1.    The officer reasonably believed that Mr. Puga was going to harm him and another officer or person; and

2.    The officer used only the amount of force that was reasonably necessary to protect himself or another officer or person.

<u>Source</u>: CACI 1304.

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in the Ninth Circuit Model Instruction 9.25, CACI 1305B, and CACI 441. To give an additional instruction on this concept would unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction. The facts of this case support this instruction, especially in light of Mr. Clark's anticipated expert testimony. It is an accurate statement of the law, and Defendants have plead an affirmative defense of self-defense and defense of others, such that the instruction is necessary.

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 45**

Duty to Refrain From Using Force/Weapon to Resist

If a person has knowledge, or by the exercise of reasonable care, should have knowledge that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest.

Source: Cal. Penal Code § 834a

1

**<u>Plaintiffs' Objections</u>**

2

3

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in CACI 1305B and 441. To give an additional instruction on this concept would unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction. The facts of this case support this instruction, especially in light of Mr. Clark's anticipated expert testimony. Moreover, it is an accurate statement of the law.

# STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 46

## Reasonable Force (State Law)

Any peace officer, who has reasonable cause to believe that the person to be arrested has committed a public offense, may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance.

Source: Cal. Penal Code § 835a

1

**Plaintiffs' Objections**

2

3       Plaintiffs object to this instruction in its entirety. The concept of this

4   instruction is already embodied in CACI 1305B and 441. To give an additional

5   instruction on this concept would unfairly emphasize this concept and be unfairly

6   prejudicial to Plaintiffs.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction. The facts of this case support this instruction, especially in light of Mr. Clark's anticipated expert testimony. Moreover, it is an accurate statement of the law.

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 47**

<u>Deference to Officers</u>

The reasonableness standard of the Fourth Amendment to the United States Constitution, as applied to a state law battery claim against a police officer based on excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen, is highly deferential to the police officer's need to protect himself and others.

<u>Source</u>: *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009)

1  **Plaintiffs' Objections**

2        Plaintiffs object to this instruction in its entirety. The concept of this

3  instruction is already embodied in CACI 1305B. In discussing the standard for

4  "whether a peace officer's actions were objectively reasonable based on the facts

5  and circumstances confronting the peace officer" under a state law battery claim, the

6  Court in *Brown v. Ransweiler*, 171 Cal. App. 4th 516 (2009) *characterized* the test

7  as "highly deferential to the police officer's need to protect himself and others." To

8  give an additional instruction on this concept would unfairly emphasize this concept

9  and be unfairly prejudicial to Plaintiffs. Moreover, the instruction as phrased is

10  confusing and may mislead the jury in believing that it applies to both Plaintiffs'

11  Fourth Amendment and battery claim.

1

**<u>Defendants' Response</u>**

2   Defendants' proposed instruction is not cumulative or confusing. The instruction

3   clearly states it applies to the Fourth Amendment claim. The facts of this case

    support this instruction, especially in light of Mr. Clark's anticipated expert

4   testimony. Moreover, it is an accurate statement of the law.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 48

## Police Officer Entitled to Use Greater Force

Unlike private citizens, police officers act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties. Police officers are not similarly situated to the ordinary battery defendant and need not be treated the same. Police officers who are protecting the public peace and order are entitled to an even greater use of force than might be required in the same circumstances for self-defense.

Source: *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009)

1    **<u>Plaintiffs' Objections</u>**

2    Plaintiffs object to this instruction in its entirety. There are no instructions

3    given for a standard battery claim and thus, no frame of reference for self-defense in

4    the context of an ordinary battery defendant. This instruction will only mislead the

5    jury and lead to jury confusion. The concept of this instruction is already embodied

6    in CACI 1305B and 441. To give an additional instruction on this concept would

7    unfairly emphasize this concept and be unfairly prejudicial to Plaintiffs.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Defendants' Response</u>**

Defendants' proposed instruction is not cumulative or duplicative of other instructions. Rather, it supplements that instruction. The facts of this case support this instruction, especially in light of Mr. Clark's anticipated expert testimony. Moreover, it is an accurate statement of the law.

## STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 49

### Federal Standard Applies to California Use-of-Force Claims

Under California law, where a peace officer's seizure (including a use of force) is found to be objectively reasonable under the federal Fourth Amendment standard (as I previously instructed)—namely, where from the perspective of a reasonable police officer, the Defendant Officer's use of force is objectively reasonable under the totality of the circumstances—that officer's use of force is also reasonable under California law, including California law claims for battery/excessive force, assault, negligence, and/or wrongful death.

If you find that a Defendant Officer's useof force is objectively reasonable under the federal Fourth Amendment standard, you must find that the Defendant Officer's use of force was objectively reasonable in evaluating Plaintiffs' California law claims.


Source: *Hayes v. County of San Diego*, 57 Cal.4th 622, 637-639 (2013); *Yount v. City of Sacramento*, 43 Cal.4th 885, 902 (2008); *Martinez v. County of L.A.*, 47 Cal.App.4th 334, 349-350 (1996); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-1273 (2009); *Lopez v. City of L.A.*, 196 Cal.App.4th 675, 690-692 (2011); Cal. Gov. Code §§ 820, 820.2, 820.4, 820.8, 821; *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1101-1103 (2004); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 525 (2009); *Young v. County of L.A.*, 655 F.3d 1156, 1170 (9th Cir. 2011); *Hayes v. County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013); CACI 1300, 1301

**Plaintiffs' Objections**

Plaintiff objects to this instruction in its entirety on the basis that it is a misstatement of the law. The standard for evaluating a peace officer's use of force under California law for battery and negligence is not the same as the standard under the Fourth Amendment. The California Supreme Court in *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013), specifically recognized that under California negligence law, liability can arise from tactical conduct and decision employed by law enforcement preceding the use of deadly force, among other negligent conduct. 57 Cal. 4th 626. In *Tabares v. City of Huntington Beach*, 988 F.3d 119 (9th Cir. 2021), the Ninth Circuit recognized that "California negligence law regarding the use of deadly force is broader than federal Fourth Amendment law" and that under California law, "the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation" whereas "[f]ederal law [] generally focuses on the tactical conduct at the time of the shooting." 988 F.3d 1125. Courts have evaluated both state law battery and negligence by a peace officer claims under the same standard by taking into consideration pre-force conduct and tactics. *See McLeod v. City of Redding*, No. 2:22-CV-00585 WBS JDP, 2024 WL 3011227, at *8 (E.D. Cal. June 12, 2024) (finding that the analysis on the state law battery claim "requires the same 'totality of the circumstances' inquiry applied to negligence claims" including pre-shooting conduct) (citing *Hayes*, 57 Cal. 4th at p. 638; *Villalobos v. City of San Maria*, 85 Cal. App. 5th 383. 389 (2022) (evaluating both battery and negligence claims against police officers under the reasonableness standard articulated in *Hayes*); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 937(2020) (same)). The differences are embodied in the model instructions for each claim.

Moreover, Plaintiffs' negligence claim is not limited to the officer's use of force. Under California negligence law, "the actor's conduct must always be gauged

in relation to all other material circumstances surrounding it…" *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970) (citing *Toschi v. Christian*, 24 Cal. 2d 354, 360 (1944)); *see Shin v. Ahn* , 42 Cal. 4th 482, 499 (2007) (discussing totality-of-the-circumstances rule); *John B. v. Superior Court*, 38 Cal. 4th 1177, 1191(2006) (same); *Kahn v. East Side Union High School Dist.*, 31 Cal. 4th 990, 996 (2003) (same); *Commercial U.A. Co. v. Pacific G. & E. Co.*, 220 Cal. 515, 522 (1934) (same). Under California negligence law, a jury may "broadly [] consider whether officers acted in a manner consistent with their duty of due care *during the use of force incident*." *Alves v. Cnty. of Riverside*, --- F.4th ---, No. 23-55532, 2025 WL 1227942, at *8 n.11 (9th Cir. Apr. 29, 2025) (emphasis added).

In a recently published opinion, the Ninth Circuit recognized that California tort law's "reasonable care" standard is distinct form the Fourth Amendment "reasonableness" standard and that the California's "totality of the circumstances" analysis was broader in scope than the Fourth Amendment's "totality of the circumstances." *Alves*, 2025 WL 1227942, at *8, 9. Thus, the Ninth Circuit concluded that under the plaintiff's negligence claim, the jury was permitted to focus on different aspects of the "totality of the circumstances." *Id.* at *8. The Ninth Circuit also recognized that *Hayes* emphasized that "pre-force conduct should not be considered in isolation; it is merely one part of a continuum of circumstances surrounding the reasonableness of an officer's use of deadly force." *Id.* (cleaned up) (citing *Hayes*, 57 Cal. 4th at 638).  While in the *Alves* case, the only negligence instruction given were CACI 440 and 441, which pertained to an officer's negligent use of force and deadly force, the Ninth Circuit still found that the plaintiff's negligence claim "allowed the jury to consider more broadly all the facts known to a reasonable officer at the time" and all conduct, including pre-force and post-force conduct, during the incident. *Alves*, 2025 WL 1227942, at *10 (cleaned up) (finding that a jury could have reasonably determined that the officers owed a duty of care to the decedent *after* restraining him in handcuffs, and breached that duty by failing to

1   place him in a recovery position or check whether he was breathing or had a pulse);

2   *see also Dooley v. City of Long Beach*, No. CV 13-4179 JFW RZ, 2014 WL

3   7405444, at *9 (C.D. Cal. Dec. 29, 2014) (using CACI 400 and 441 as the standard

4   of review for the plaintiff's negligence claim in an excessive force case).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Defendants' Response</u>**

Plaintiffs purposefully conflate use-of-force and preshooting tactics. Defendants' proposed instruction is clearly directed at an officer's use-of-force, and correctly states the law that if an officer's use of force is found to be reasonable under the Fourth Amendment, such use-of-force is also reasonable under California law in a battery/assault, negligence, or wrongful death. The proposed instruction is silent on pre-shooting tactics. Thus, there is no confusion or incorrect statement of the law.

Plaintiffs added two pages of additional authority and argument on the eve thi document was due. Defendants do not have time to address this argument in this document but will do so at the Pretrial Conference.

## STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 50

<u>Enforcement/Execution of Law</u>

A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.

If you find that the Defendant Officer was exercising due care when interacting with Hector Puga, then your verdict as to Plaintiffs' negligence, battery, and Bane Act claims should be in favor of that officer.

<u>Source</u>: Cal. Gov. Code § 820.4

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in the instructions for Plaintiffs' battery, negligence, and Bane Act claim. To single out this concept in a separate instruction would be unduly prejudicial to Plaintiffs.

1

**<u>Defendants' Response</u>**

2

Defendants' proposed instruction applies to plaintiffs' state law claims. Courts have

3

recognized uses of force like the type at issue here as conduct falling within and

deserving the protection of this immunity. *Reynolds v. Cnty. of San Diego*, 858

4

F.Supp. 1064, 1075 (S.D. Cal. 1994) (holding that a sheriff's deputy was immune

5

from state law tort claims under Government Code § 820.2 and 820.4, even when

6

using deadly force). Moreover, Defendants pled and intend to prove this immunity

applies to their conduct.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 51**

<u>Justifiable Homicide</u>

Homicide is justifiable when committed by peace officers when the homicide results from a peace officer's use of force that is in compliance with California Penal Code Section 835a.

California Penal Code section 835(a) provides that a peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary for either of the following reasons:

(A) To defend against an imminent threat of death or serious bodily injury to the officer or to another person, or

(B) To apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended. Where feasible, a peace officer shall, prior to the use of force, make reasonable efforts to identify themselves as a peace officer and to warn that deadly force may be used, unless the officer has objectively reasonable grounds to believe the person is aware of those facts.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

<u>Source</u>: Cal. Penal Code §§ 196(b), 835a(c), (e)(2)

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction in its entirety. The concept of this instruction is already embodied in CACI 1305B and 441. There is no need to introduce the concept of homicide as there are no instructions given regarding homicide. This is simply a restatement of CACI 1305B and 441 with language that is more favorable to Defendants as it implies that Defendants' actions conform with a California statute.

1

**<u>Defendants' Response</u>**

2   Defendants timely pled and intend to pursue this affirmative defense. They are

3   therefore entitled to an instruction that informs the jury of the elements of that

    defense so the jury can determine whether Defendants have met their burden.

4   Moreover, it is an accurate statement of the law.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 52**

<u>Exercise of Discretion</u>

Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

<u>Source</u>: Cal. Gov. Code § 820.2

1  **<u>Plaintiffs' Objections</u>**

2       Plaintiffs object to this instruction in its entirety. Whether Defendants are

3  entitled to discretionary immunity under California Government Code section 820.2

4  is a question of law for the Court to decide, not a question of fact for the jury.

5  Additionally, this instruction is an incomplete statement on the law regarding

6  discretionary immunity under section 820.2. Lastly, courts have held that

7  discretionary immunity does not apply to an officer's decision to make an arrest,

8  method of arrest, and use of force. *See Liberal v. Estrada*, 632 F.3d 1064, 1084–85

9  (9th Cir. 2011); *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012); *Gomez*

10  *v. City of Vacaville*, 483 F. Supp. 3d 850, 870–71 (E.D. Cal. 2020).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **<u>Defendants' Response</u>**

2  Defendants timely pled and intend to pursue this affirmative defense. They are

3  therefore entitled to an instruction that informs the jury of the elements of that

4  defense so the jury can determine whether Defendants have met their burden.

Moreover, it is an accurate statement of the law.

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 53**

<u>Reliance on Good Conduct of Others</u>

Every person has a right to expect that every other person will use reasonable care, unless that person knows, or should know, that the other person will not use reasonable care.

<u>Source</u>: CACI 411

1  **<u>Plaintiffs' Objections</u>**

2      Plaintiffs object to this instruction in its entirety on the basis that it is

3  inapplicable under the facts of this case. "[CACI No. 411] is a pattern jury

4  instruction designed for use in civil negligence cases involving a plaintiff suing a

5  defendant for failing to prevent harm caused by a third party. The principle it

6  espouses is essentially that a defendant will not be liable for harm caused by a third

7  party's negligent or criminal conduct, unless the third party's conduct was

8  foreseeable . . . ." *People v. Elder*, 11 Cal.App.5th 123, 135 (2017). Plaintiffs do not

9  contend that Decedent's harm was caused by a third party. Plaintiffs contend that

10  Decedent's harm and death was caused by the Defendant Officers.

1

**<u>Defendants' Response</u>**

2
Defendants' proposed instruction is appropriate because third-party officers were

3
involved in Puga's shooting. The County Defendants settled their case and are

therefore no longer parties in this matter. Thus, the instruction is appropriate and

4
applicable to former Defendants Adams' and Vaccari's conduct.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 54

<u>Damages—Proof and Types of Damages</u>

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiffs on any of the plaintiffs' claims, you must determine the plaintiffs' damages and Hector Puga's damages. The plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiffs and Hector Puga for any injury you find was caused by a defendant.

When determining Hector Puga's damages, you should consider the following:

1. The nature and extent of the injuries;

2. The loss of life; and

3. The mental, physical, and emotional pain and suffering, grief, anxiety, emotional distress and loss of enjoyment of life experienced.

When determining the plaintiffs' damages, you should consider the following:

1. The loss of Hector Puga's love, companionship, comfort, care, assistance, protection, affection, society, and moral support; and

2. The loss of Hector Puga's training and guidance.

It is for you to determine what damages, if any, have been proved. No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

<u>Source</u>: Ninth Circuit Manual of Model Jury Civil Instructions Nos. 5.1, 5.2; CACI 3905A, 3921 (modified).

**<u>Defendants' Objections</u>**

Plaintiffs' proposed instruction does not address the Court's recent ruling granting summary judgment on Plaintiffs' Fourteenth Amendment claim for deprivation of the familial relationship and Plaintiffs' wrongful-death damages claim against Rubalcava. Further, Plaintiffs did not incur any funeral costs and Plaintiff Salas-Ubaldo admitted to not being financially dependent on Puga, such that she is not a proper wrongful death Plaintiff. Defendants are willing to work with Plaintiffs on drafting a combined damages instruction that addresses these issues.

**<u>Plaintiffs' Response</u>**

Plaintiffs' proposed instruction is an accurate statement of Plaintiffs' claims and entitlement to damages. Even though Plaintiffs no longer have a Fourteenth Amendment claim for unlawful interference with familial relations, Plaintiffs are entitled to wrongful death damages under Plaintiffs' remaining state law battery and negligence claims, which includes damages for the loss of Hector Puga's love, companionship, comfort, care, assistance, protection, affection, society, and moral support, and training and guidance. *See* CACI 3921. Additionally, nowhere in Plaintiffs' proposed instruction do Plaintiffs make a claim for economic damages (including funeral and burial expenses) nor do Plaintiffs list Antonia Salas Ubaldo as a Plaintiff.

The Court's limitation of survival damages under Plaintiffs' state law claims as to Rubalcava can be addressed more sufficiently in the verdict form.

## STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 54

### Damages—Proof and Types of Damages

It is the duty of the Court to instruct you about the measure of damages that apply to Plaintiffs' federal civil rights claims. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for the Plaintiffs on their Fourth and/or Fourteenth Amendment claims, you must determine the Plaintiffs' damages. Plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Plaintiffs for any injury you find was caused by the Defendants. You should consider the following:

1. The economic damages, including funeral and burial costs, the Plaintiffs incurred in connection with the death of Hector Puga;

2. The loss of Mr. Puga's life; and

3. The mental, physical, and emotional pain and suffering Mr. Puga experienced before his death.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Source: Ninth Circuit Manual of Model Jury Civil Instructions Nos. 5.1, 5.2

**<u>Plaintiffs' Objections</u>**

  Plaintiffs object to separating instructions for damages for Plaintiffs' federal claims and Plaintiffs' state law claims. Plaintiffs contend that defining damages under two different instructions will lead to jury confusion.

1

**<u>Defendants' Response</u>**

2   As discussed above in connection with Plaintiffs' Instruction No. 56, Defendants are

3   willing to work with Plaintiffs on drafting a combined damages instruction that

4   addresses the recent issues affecting damages resulting from the Court's ruling on

    Defendants' motion for summary judgment.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 55**

<u>Nominal Damages</u>

The law that applies to Plaintiffs' *federal civil rights claims* authorizes an award of nominal damages. If you find for the Plaintiffs but you find that the Plaintiffs have failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

<u>Source</u>: Ninth Circuit Manual of Model Jury Civil Instructions Nos. 5.5

**Plaintiffs' Objections**

Plaintiffs object to this instruction on the basis that it is inapplicable to the facts of this case. If the jury finds that any officer used excessive force against Decedent under Plaintiffs' Fourth Amendment claim, the nature and cause of Decedent's injuries necessitate more than nominal damages as Decedent was shot multiple times. When a plaintiff or decedent has indisputably suffered an actual injury, an award of compensatory damages is mandatory. *Hazle v. Crofoot*, 727 F.3d 983, 991-92 (9th Cir. 2013). Nominal damages are awarded only in cases in which the plaintiff or decedent is not entitled to compensatory damages, "such as in cases in which no actual injury is incurred or can be proven." *Id.* at n.6. Here, it is undisputed that Decedent sustained multiple gunshot wounds, one of which ultimately led to his death. Thus, actual injury did occur and can be proven.

**<u>Defendants' Response</u>**

An instruction on nominal damages in a § 1983 case like this is mandatory. None of the State Defendants shot Puga in the eye with pepper balls. A jury may find that the subsequent lethal rounds a Defendant fired at Puga was unreasonable, but that the gun wound was inconsequential or did not cause harm to warrant actual damages.

## STATE DEFENDANTS' PROPOSED INSTRUCTION NO. 56

<u>Wrongful Death (Death of an Adult) and Survival Damages</u>

If you decide that Plaintiffs A.L., I.H., and L.C. have proved their battery, negligence, and/or Bane Act claims against any Defendant for the death of Hector Puga, you also must decide how much money will reasonably compensate them for the death of Mr. Puga. This compensation is called "damages." You must also decide the amount of damages that Mr. Puga sustained before death and that he would have been entitled to recover because of the Defendant Officer's conduct, including any penalties or punitive damages as explained in other instructions I will give you.

The Plaintiffs do not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

The damages Plaintiffs claim fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

Plaintiffs A.L., I.H., and L.C. claim the following economic damages:

1. The financial support, if any, that Hector Puga would have contributed to Plaintiffs during either the life expectancy that Mr. Puga had before his death or the life expectancy of the Plaintiff, whichever is shorter;

2. The loss of gifts or benefits that the Plaintiff would have expected to receive from Mr. Puga;

3. Funeral and burial expenses; and

4. The reasonable value of household services that Mr. Puga would have provided to the Plaintiff.

Your award of any future economic damages must be reduced to present cash value.

Plaintiffs A.L., I.H., and L.C. also claim noneconomic damages consisting of the loss of Mr. Puga's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

For these noneconomic damages, determine the amount in current dollars paid at the time of judgment that will compensate the Plaintiff for those damages. This amount of noneconomic damages should not be further reduced to present cash value because that reduction should only be performed with respect to future economic damages.

In determining each Plaintiff's loss, do not consider:

1. The Plaintiff's grief, sorrow, or mental anguish;

2. Mr. Puga's pain and suffering; or

3. The poverty or wealth of the Plaintiff.

In deciding a person's life expectancy, you may consider, among other factors, the average life expectancy of a person of that age, as well as that person's health, habits, activities, lifestyle, and occupation.

In computing these damages, consider the losses suffered by the Plaintiff and return a verdict of a single amount.

The Plaintiffs, as the successors in interest to Hector Puga, may recover the following damages:

1. The amount of income, earnings, salary, or wages that Mr. Puga lost before death;

2. The pain or suffering Mr. Puga suffered before his death. You may not award damages for any loss for Mr. Puga's shortened life span attributable to his death.

Source: CACI 3919, 3921

**<u>Plaintiffs' Objections</u>**

Plaintiffs again object to the separation of damages for Plaintiffs' federal claims and state law claims as it can lead to jury confusion and an inconsistent verdict, or even double damages. Whatever damages Plaintiffs are entitled to under what claims can be more sufficiently addressed in the verdict form.

**<u>Defendants' Response</u>**

<u>As discussed above with respect to Plaintiffs' Instruction No. 56,</u> Defendants are willing to work with Plaintiffs on drafting a combined damages instruction that addresses the Court's ruling on summary judgment that limits Plaintiffs' damages.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 57**

<u>Punitive Damages – Predicate Question</u>

Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the decedent.  Conduct is in reckless disregard of the decedent's rights if, under the circumstances, it reflects complete indifference to the decedent's safety or rights, or the individual defendant acts in the face of a perceived risk that its actions will violate the decedent's rights under federal law. An act or omission is oppressive if the individual defendant injures or damages or otherwise violates the decedent's rights with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the decedent.

<u>Source</u>: Ninth Circuit Manual of Model Jury Civil Instructions No. 5.5 (modified).

**<u>Defendants' Objections</u>**

Plaintiffs' proposed instruction is incomplete and inexplicably deviates from the Ninth Circuit model instruction. Further, it does not address the different standard applicable to punitive damages under federal law and California law, which employs a "clear and convincing standard."

1  **<u>Plaintiffs' Response</u>**

2      Plaintiffs are not seeking punitive damages under state law. Additionally, this

3  instruction provides a clear and succinct definition of the standard the jury must

4  evaluate in determining whether Plaintiffs are entitled to punitive damages.

**STATE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 57**

<u>Punitive Damages</u>

If you find for the Plaintiffs on their *federal civil rights, battery, or Bane Act claims against any Defendant*, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a Defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate *a* Plaintiff. *Nor can a Plaintiff be awarded for her negligence claim, if you find any Defendant negligent. Punitive damages may not be awarded against Defendant State of California.*

*At this time, you must decide whether an award of punitive damages is appropriate based on the evidence presented. The amount of punitive damages, if any, will be decided later.*

You may impose punitive damages against one or more of the Defendants and not others. Punitive damages may be awarded even if you award Plaintiffs only nominal and not compensatory damages on their *federal civil rights claims.*

*The burden of proof for an award of punitive damages differs depending on Plaintiffs' claim. I will first give you the law that applies to Plaintiffs' claim for excessive force under the Fourth Amendment and deprivation of the familial relationship under the Fourteenth Amendment.*

*If you find for the Plaintiffs on their Fourth and/or Fourteenth Amendment claims*, Plaintiffs have the burden of proving by a preponderance of the evidence that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the Defendant's conduct that harmed the Plaintiff was malicious, oppressive or in reckless disregard of the Plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the Plaintiff. Conduct is in reckless

disregard of the Plaintiff's rights if, under the circumstances, it reflects complete indifference to the Plaintiff's safety or rights, or if the Defendant acts in the face of a perceived risk that *his* actions will violate the Plaintiff's rights under federal law. An act or omission is oppressive if the Defendant injures or damages or otherwise violates the rights of the Plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the Plaintiff.

If you find for the Plaintiffs on their claims for state-law battery or violation of the Bane Act, you must decide whether Plaintiffs have proved by clear and convincing evidence (as I will explain to you in a later instruction) that the Defendant engaged in conduct with malice, oppression, or fraud.

"Malice" means that the Defendant acted with intent to cause injury or that the Defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.

"Oppression" means that the Defendant's conduct was despicable and subjected Mr. Puga to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that the Defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mr. Puga.

### [To be given during second phase, if necessary]

*You must now decide the amount, if any, that you should award the Plaintiffs in punitive damages. There is no fixed formula for determining the amount of punitive damages, but* you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. *As a reminder,*

-155-

*the purpose of punitive damages are to punish the Defendant for the conduct that harmed the Plaintiffs and to discourage similar conduct in the future.*

In considering the amount of any punitive damages, consider the degree of reprehensibility of the Defendant's conduct. *In deciding how reprehensible the Defendant's conduct was, you may consider, among other factors:*

1. *Whether the conduct caused physical harm;*

2. *Whether the Defendant disregarded the health or safety of others.* You may not, however, set the amount of any punitive damages in order to punish the Defendant for harm to anyone other than the Plaintiffs or Mr. Puga in this case;

3. *Whether the Defendant's conduct involved a pattern or practice; and*

4. *Whether the Defendant acted with trickery or deceit.*

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the Plaintiffs or Mr. Puga *and the Defendant's financial condition. You may not, however, increase the punitive award above an amount that is otherwise appropriate merely because a Defendant has substantial financial resources.*

Source: Ninth Circuit Manual of Model Jury Civil Instructions No. 5.5; CACI 3941, 3942; Cal. Gov. Code § 818

**Plaintiffs' Objections**

Plaintiffs object to the mixing of punitive damages instruction under federal law and state law, which will likely lead to jury confusion, as the burden of proof is different for each. Plaintiffs further object to the added instruction that the jury may not award punitive damages for negligence or against the State of California. The instruction is clear. The jury simply needs to find that the defendant's conduct was malicious, oppressive, or in reckless disregard of the Decedent's right. This is clearly a different standard from negligence and it specifies that it applies only to the individual defendant and not the State. Plaintiff further objects to the instruction apply to Plaintiff's right and Plaintiff's injuries as opposed to Decedent's. The instructions for Plaintiffs' state law claims specify *Decedent*'s harm or injury and *Decedent*'s rights. This instruction must be consistent.

Plaintiffs further object to the modifications of the second phase of the punitive damages jury instruction. The standard in determining the amount of punitive damages under federal law and state law are different. For example, under federal law, a defendant's financial condition is not a factor in determining the amount of punitive damages. The mixing of the two standards is an inaccurate statement of the law.

1

**<u>Defendants' Response</u>**

2

Defendants' proposed instruction correctly addresses the different standards for

3

punitive damages under federal and California law. The instruction is not confusing

simply because it is lengthy. To the extent the proposed instruction does not address,

4

punitive damages for Puga's injuries or harm, this can easily be corrected by adding

5

such language.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 58**

<u>Highly Probable—Clear and Convincing Proof</u>

*As I previously explained to you, Plaintiffs had to prove by clear and convincing evidence that the Defendant engaged in conduct with malice, oppression, or fraud for a punitive damages award on their claims for state-law battery or violation of the Bane Act.* Certain facts must be proved by clear and convincing evidence, which is a higher burden of proof. This means the party must persuade you that it is highly probable that the fact is true.

*Remember, this standard applies only to your determination for punitive damages, if any, related to the state-law battery and violation of the Bane Act claims and to no other matter.*

<u>Source</u>: CACI 201

**<u>Plaintiffs' Objections</u>**

Plaintiffs object to this instruction on the basis that Plaintiffs do not seek state law punitive damages and thus, this instruction is inapplicable.

**<u>Defendants' Response</u>**

Defendants will withdraw this instruction if Plaintiffs unequivocally confirm at the Pretrial Conference that they are not seeking any punitive damages for their claims under California law, including battery and Bane Act violation.