**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
L.C., I.H., A.L., and Antonia Salas Ubaldo

# UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., a minor by and through her guardian *ad litem* Maria Cadena, individually and as successor-in-interest to Hector Puga; I.H., a minor by and through his guardian *ad litem* Jasmine Hernandez, individually and as successor-in-interest to Hector Puga; A.L., a minor by and through her guardian *ad litem* Lydia Lopez, individually and as successor-in-interest to Hector Puga; and ANTONIA SALAS UBALDO, individually; <br><br>Plaintiffs, <br>vs. <br><br>STATE OF CALIFORNIA; COUNTY OF SAN BERNARDINO; S.S.C., a nominal defendant; ISAIAH KEE; MICHAEL BLACKWOOD; BERNARDO RUBALCAVA; ROBERT VACCARI; JAKE ADAMS; and DOES 6-10, inclusive, <br><br>Defendants. | Case No. 5:22-cv-00949-KK-SHK <br><br>*Honorable Kenly Kiya Kato* <br><br>**PLAINTIFFS' BRIEF REGARDING THE ADMISSIBILITY OF DR. KRIS MOHANDIE'S TESTIMONY AT TRIAL** |

## I. INTRODUCTION

This civil rights case arises out of the officer-involved detention and shooting of Hector Puga ("Decedent") by California Highway Patrol officers Isaiah Kee, Michael Blackwood, and Bernardo Rubalcava ("State Defendants") and County of San Bernardino deputies Jake Adams and Robert Vaccari ("County Defendants") that resulted in Decedent's death on February 17, 2021. When the parties exchanged initial expert disclosures, County Defendants designated retained and non-retained experts, including retained expert Dr. Kris Mohandie as one of their six retained experts. State Defendants designated only one retained expert—police practices Greg Meyer—and several non-retained experts. Dr. Kris Mohandie was not listed as a retained or non-retained expert in State Defendants' expert disclosures.

County Defendants have since settled with Plaintiffs. Thus, Plaintiffs contend State Defendants should be precluded from calling County Defendants' retained experts, including Dr. Kris Mohandie, to testify at trial because State Defendants failed to properly designate these experts and that allowing State Defendants to call these experts would undermine a principal objective of Rule 26 to prevent a party from "piggybacking on another party's trial preparation." Plaintiffs further contend that Dr. Mohandie's testimony should be excluded because his opinions have little to no probative value and are unduly prejudicial.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

After several continuances, the deadline for initial expert disclosures was ultimately set for January 30, 2025. (*See* Doc. No. 94). On January 29, 2025, State Defendants' counsel emailed County Defendants' and Plaintiffs' counsel requesting a one-day extension of the initial expert disclosures. (*See* Ex. A to Le Decl., Email Chain re Expert Disclosure Extension at 3). The parties could not come to an agreement to extend the initial expert disclosures. (*Id.* at 1-2). Proposing a compromise, State Defendants' counsel offered to produce State Defendants' retained expert, Greg Meyer's reports, early and indicated that they did not intend to designate

any other retained experts, and identified the non-retained experts State Defendants intended to designate, in exchange for the parties allowing State Defendants to produce their official initial expert disclosures one day late. (*Id.* at 1). The parties ultimately agreed to this proposal.

On January 30, 2025, County Defendants and Plaintiffs sent out their initial expert disclosures to all parties. County Defendants identified six experts retained by County, including Dr. Kris Mohandie, as well as two County employees as non-retained experts. (*See* Ex. B to Le Decl., County Defendants' Expert Disclosures). Dr. Mohandie's expert report contained a total of five opinions: generally, (1) Decedent committed suicide by cop; (2) Decedent was an extremely violent and dangerous individual and posed a danger to the community; (3) Decedent's behavior was consistent with methamphetamine and alcohol intoxication and underlying personality disorder and psychopathy and he could not be reasoned with; (4) there were alternative interventions to successfully resolve the situation with Decedent due to Decedent's homicidal and suicidal state of mind; and (5) Decedent had an Antisocial Personality Disorder, including psychopathy, with life-threatening addictions to alcohol and methamphetamine.

On January 31, 2025, State Defendants sent out their initial expert disclosures in this case as well as the Botten case. (*See* Ex. C to Le Decl., Email re State Expert Disclosures). State Defendants' disclosures listed only Greg Meyer as their retained expert and did not list any County Defendants' retained experts as either retained or non-retained. (*See* Ex. D to Le Decl., State Defendants' Expert Disclosures).

On February 13, 2025, the parties exchanged their expert rebuttal disclosures. State Defendants identified Greg Meyer, their police practices expert, as a rebuttal expert to Plaintiffs' experts Roger Clark and Matthew Kimmins. (*See* Ex. E to Le Decl., State Defendants' Rebuttal Expert Disclosures). State Defendants did not identify any other rebuttal experts, but included language in their disclosures reserving the right to call as witness any experts designated by another party and to

designate additional experts for rebuttal or impeachment as needed. (*See id.*). Dr. Mohandie was not deposed by Plaintiffs or State Defendants during the expert discovery.

On April 1, 2025, the parties held a mediation with ADR Panel Mediator Richard Copeland pursuant to ADR Procedure No. 2. As a result of the mediation, Plaintiffs and County Defendants reached a tentative settlement that was subject to County Board approval. Plaintiffs were unable to reach a settlement with State Defendants. One of the motivating factors for Plaintiffs to settle with County Defendants was the understanding that County Defendants' retained experts would be excluded from testifying at trial due to the absence of a joint designation by State Defendants.

The Court and all parties were informed of the tentative settlement by way of a Joint Report submitted by the parties on April 8, 2025. (*See* Doc. No. 125). On April 29, 2025, the settlement between Plaintiffs and County Defendants was made official after the San Bernardino County Board of Supervisors voted to approve the settlement. The Court and all parties were informed of the settlement by way of a Status Report filed by Plaintiffs on April 30, 2025. (*See* Doc. No. 168).

## III. DR. MOHANDIE'S TESTIMONY SHOULD BE EXCLUDED AT TRIAL

### A. No Exceptional Circumstance Exists for State Defendants to Call Now-Settled County Defendants' Retained Experts

"Rule 26 of the Federal Rules of Civil Procedure requires the parties to disclose the identities of each expert and, for retained experts, requires that the disclosure includes the experts' written reports." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing Fed. R. Civ. P. 26(a)(2). These disclosures must be made the times and sequences set by the Court's orders. *Id.* "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use of trial of any information that is not properly disclosed." *Id.* (citing *Yeti by Molly,*

1 *Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001)). "Rule 37(c)(1)
2 is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement
3 for disclosure." *Id.* "When a party fails to make the disclosures required by Rule
4 26(a), the party is not allowed to use the witness to supply evidence at trial unless it
5 establishes that the failure was substantially justified or harmless." *Id.* at 826 (citing
6 Fed. R. Civ. P. 37(c)(1)).

7      In *Arriaga v. Logix Fed. Credit Union*, No. CV189128CBMAGRX, 2022 WL
8 3097455 (C.D. Cal. Apr. 22, 2022), the district court held that defendants were
9 precluded from calling the settling-defendant's designated expert at trial because
10 defendants had failed to designate the witness as their own expert and thus failed to
11 give plaintiff sufficient notice that they intended to call the witness as their own
12 expert and failed to disclose the witness's testimony as required by Rule 26(a)(2).
13 Defendant Logix did not disclose any experts at the time of the initial expert
14 disclosure, but stated that it reserved the right "to designate as a non-retained expert
15 witness, all individuals identified as person(s) most knowledgeable, in the herein
16 action which have yet to be identified" and reserved the right to "designate further
17 retained and/or non-retained expert witnesses." 2022 WL 3097455 at *1. Defendant
18 TransUnion, in its expert disclosures, identified Jared Weeks as a witness whom
19 TransUnion may call at trial to officer expert testimony. *Id.* TransUnion was
20 subsequently dismissed from the case. *Id.* There was no evidence that Logix ever
21 contacted TransUnion about designating Mr. Weeks as Logix's rebuttal expert no
22 evidence that Mr. Weeks was deposed in the action. *Id.* Thus, the Court held that the
23 remaining defendants' failure to give notice that they intended to call Mr. Weeks as
24 an expert was neither substantially justified nor harmless and therefore, the remaining
25 defendants were precluded form offering Mr. Weeks' testimony at trial. *Id.* at *2.

26      Similarly here, State Defendants never designated any of County Defendants'
27 retained experts, including Dr. Mohandie, as retained or non-retained experts that
28 State Defendants' intended to call at trial, despite learning about the identities and

opinions of these experts prior to State Defendants' initial and rebuttal expert disclosures. State Defendants' general language reserving the right to call any experts designated by other parties in their Rebuttal Disclosures is not sufficient notice. Even if it were, County Defendants' retained experts, with the exception of their police practices expert Kenneth Hubbs, are not an appropriate rebuttal witnesses to Plaintiffs' police practices expert or Plaintiffs' video expert. Specifically, Dr. Mohandie did not provide any rebuttal opinions to Plaintiffs' police practices expert or video expert. Accordingly, State Defendants' failure to jointly designate or separately designate County Defendants' retained experts as in their expert disclosures was not substantially justified nor harmless.

Additionally, the majority of courts confronted with the issue of whether to allow a previously designated expert who has now turned into a non-testifying expert by either de-designation or the settling/dismissal of the party who retained the expert to testify at trial has applied the "exceptional circumstances" test in deciding the issue. *See Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, No. C05-01878 JW (HRL), 2008 WL 761417, at *3 (N.D. Cal. Mar. 19, 2008). This is because these courts have found that the "exceptional circumstances" test "best recognizes the 'underlying principles of litigation,'" of which Rule 26 was "developed around the doctrine of unfairness designed to prevent a party from building his own case by means of [another party's] financial resources, superior diligence and more aggressive preparation." *Rawers v. United States*, 488 F. Supp. 3d 1059, 1085 (D.N.M. 2020) (citing *Lehan v. Ambassodor Programs, Inc.*, 190 F.R.D. 670, 672 (E.D. Wash. 2000); *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 502 (10th Cir. 1980)). "Exceptional circumstances may exist where 1) the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it; or 2) there are no other available experts in the same field or subject area." *FMC*

*Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1046 (E.D. Cal. 2002). Neither circumstance applies here.

Courts faced with similar issues, for which no "exceptional circumstance" applied, have generally precluded a nonsettling party from using a settling party's expert at trial based on a "strong" public policy against permitting a non-diligent party from free-riding off of another party's industry and diligence. In *Board of Education v. Zando, Martin & Milstead*, 182 W.Va. 597 (1990), the West Virginia Supreme Court upheld the trial court's refusal to allow the remaining defendant to call the settlement defendant's expert witness at trial, stating that defendants in a multi-party case should retain their experts and not rely upon other defendants, and noted,

> It is obvious to any sophisticated trial lawyer that in litigation involving multiple defendants there is the likelihood that settlements will occur before trial. To rely on another party defendant's witnesses without some formal agreement as to shared use is to invite the consequences that arose….in the present case. The end result is that no error can be claimed.

*Zando*, 182 W. Va. At 613; *see also State ex rel. Ward v. Hill*, 200 W.Va. 270, 278, 489 S.E.2d 24 (1997) (holding "that, absent a formal agreement among defendants in a litigation proceeding involving multiple defendants, the circuit court should not generally permit a settling defendant's expert witnesses to testify for the remaining defendants"). This reasoning was followed in *Wolt v. Sherwood, a Div. of Harsco Corp.*, 828 F. Supp. 1562 (D. Utah 1993), wherein the district court applied the "exceptional circumstances" analysis and found that the settling defendants could make an agreement with the plaintiffs to not share its experts with non-settling defendants because Rule 26 "is designed to promote fairness by precluding unreasonable access to [another] party's diligent trial preparation." 828 F. Supp. at 1568. In doing so, district court in *Wolt* recognized,

> The law encourages voluntary settlement of lawsuits. [citation omitted]. One factor which encourages settlement is the cost of obtaining expert witnesses. Frequently, plaintiffs will take less, and defendants will pay more, in order to avoid litigation expenses. Similarly, plaintiffs may settle for less from one defendant, if they believe other defendants will be placed at a disadvantage by virtue of the settlement and will, consequently, pay more in settlement in the future.

*Id*. In *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023 (E.D. Cal. 2002), a case with significantly similar expert disclosure circumstances to this case, the district court prevented a party from relying on the experts of a settling party in granting a motion to quash BNSF's subpoena of settling party FMC's experts because BNSF "show[ed] an unjustifiable lack of diligence" and "[r]ewarding BNSF by allowing it to use FMC"s experts…has the potential to discourage settlement in contravention of public policy favoring settlement and to upset the expectations of the parties, the court, and the police of law that encourages diligence and discourages profit from the work product and industry of the opponent." 196 F. Supp. 2d at 1047. Other courts facing similar circumstances have generally followed this line of reasoning and precluded a nondiligent party from relying on a diligent, settling-party's experts. *See Giles v. The Inflatable Store, Inc.*, No. CIV.A07CV00401PABKLM, 2009 WL 801729, at *5-7 (D. Colo. Mar. 24, 2009); *Rivera v. Drs. Ctr. Hosp., Inc.*, No. CV 22-1504 (CVR), 2024 WL 725263, at *3 (D.P.R. Feb. 21, 2024); *Est. of Halama v. Barkman*, No. 2:06CV63, 2007 WL 2306947, at *1–2 (D.N.D. Aug. 8, 2007).

Accordingly, the Court should preclude State Defendants from calling now-settled County Defendants' retained experts, including Dr. Mohandie, from testifying at trial

**B. Dr. Mohandie's Opinions and Testimony are Unreliable and Unduly Prejudicial**

While Plaintiffs recognize that courts have applied *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009) in allowing an expert to testify

regarding prejudicial, unknown information pursuant to a "suicide by cop" theory, *Boyd*'s holding as limited to a specific set of circumstances that are not present here. As another court in this district recognized, "[i]n Boyd, we have a traumatic life-changing event that caused the amputation of both of the decedent's legs 'that could be tied to police action,' which made it more likely that [the decedent] resolved to place liability for his death on the police, and "there was evidence that [the decedent] was arrested three days prior while performing a 'practice run' during which he exclaimed "kill me," and the decedent "was aware of the substantial damages his family could receive if the police were found liable for his death." *Shirar v. Guerrero*, No. EDCV13906JGBDTBX, 2017 WL 6001270, at *10 (C.D. Cal. Aug. 2, 2017). The district court in *Shirar* ultimately found Dr. Mohandie's opinions regarding suicide by cop to be unreliable and not permissible, even under *Boyd*, because the "telltale signs" of a suicide by cop as identified by the expert was not present in the case at issue.

    Here, the evidence Dr. Mohandie relies upon fail to establish sufficient causation to support Dr. Mohandie's five opinions, including his suicide by cop opinion. For example, Dr. Mohandie opines that Decedent had chronic, life-threatening addictions to alcohol and methamphetamine that in part fueled his homicidal and suicidal behavior that day. The scant evidence Dr. Mohandie relies upon to form this opinion is (1) Decedent's toxicology report showing that he tested positive for methamphetamine and alcohol; (2) Decedent's drinking during the incident, and (3) testimony from Decedent's former partner in which she testified that Decedent "drank all time" during their relationship, which preceded the incident by eight to nine years. (Ex. F to Le Decl., Mohandie Report at 39-40). Dr. Mohandie's conclusion that Decedent was addicted to methamphetamine, simply based on the scant evidence of the toxicology report and drug paraphernalia found in Decedent's vehicle, is also part of the basis of his suicide by cop opinion. (Ex. F to Le Decl., Mohandie Report at 29).

1 Additionally, in light of the Court's bifurcation of liability from damages, Dr. Mohandie's testimony, which extensively discusses information not known to the officers at the time of the incident, is unfairly prejudicial and will allow Defendants to "back door" evidence that is usually inadmissible. In determining whether an officer's use of force was objectively reasonable, trial courts and juries must confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). The "reasonableness" standard is an objective one. *Kingsley v. Hendrickson*, 576 U. S. 389, 402 (2015). The reasonableness analysis must be based only "upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001); *see Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) ("[W]e can only consider the circumstances of which [the officers] were aware when they employed deadly force").

Allowing Dr. Mohandie to testify to the details of Decedent's criminal history, alleged alcohol or drug abuse, and alleged Antisocial Personality Disorder and psychopathy, which were unknown to the officers and therefore not considered by the officers at the time of the incident would unduly prejudice Plaintiffs by creating a substantial risk of a decision by the jury on an improper basis, violating Rules 403 and 404. Thus, the Court must balance the probative value with any potential unfair prejudice. Here, Plaintiffs contend that the probative value of Dr. Mohandie's opinions and testimony are little to nil. Decedent's state of mind is not at issue as the standard for evaluating the reasonableness of an officer's use of force is an objective one. To admit evidence and testimony regarding Decedent's state of mind would completely change the objectively reasonableness analysis as defined by the jury instructions.

Additionally, this incident was captured on video from several different sources, at several different angles, which will allow the jury to decide for themselves as to whether the officers correctly perceived Decedent to be an imminent threat at the time of the shooting. *See Estate of Tindle v. Mateu*, No. 18-CV-05755-YGR, 2020 WL 5760287, at *12 (N.D. Cal. Sept. 28, 2020) (*Boyd* did not require the admission of evidence unknown to the officer that the decedent possessed or fired a gun just prior to the officer's arrival because the officer's body camera captured the entire incident such that there was no material dispute as to the conduct of decedent and the officers before and at the time of the shooting, and therefore, information unknown to the officer had little to no probative value on the question of whether the officer correctly perceived the decedent to be an imminent threat); *Est. of O'Brien v. City of Livingston*, No. CV 18-106-BLG-TJC, 2021 WL 3565574, at *2 (D. Mont. Aug. 12, 2021) (any probative value of the toxicology report regarding the decedent's blood alcohol and methamphetamine levels was substantially outweighed by the risk of unfair prejudice and misleading the jury because there was no significant dispute as to what occurred during the decedent's encounter with law enforcement officers due to video from the officer's dash camera capturing the almost the entire incident); *I.H., et al v. State of California, et al.*, No. 2:19-cv-02343-DAD-AC, 2025 WL 661995 (E.D. Cal. Feb. 18, 2025) (decedent's use of drugs and alcohol on the day of the incident had almost no probative value to support the officers' testimony that the decedent was driving erratically in light of video footage of the pursuit that was entered into evidence and played for the jury). Due to the availability of several different recordings capturing the shooting, any probative value of Dr. Mohandie's opinions are substantially outweighed by its prejudicial effect.

## IV. CONCLUSION

For the foregoing reasons, the Court should preclude State Defendants from calling County Defendants' retained experts, including Dr. Kris Mohandie, to testify at trial.

1 | Respectfully submitted,

2 | DATED: May 19, 2025          LAW OFFICES OF DALE K. GALIPO

4 |                         By      /s/ Hang D. Le
                                Dale K. Galipo
5 |                             Hang D. Le
                                Attorneys for Plaintiffs