ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General
DIANA ESQUIVEL
Deputy Attorney General
State Bar No. 202954
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7320
  Facsimile: (916) 322-8288
  E-mail: Diana.Esquivel@doj.ca.gov
*Attorneys for Defendants State of California, by and through the California Highway Patrol, Blackwood, Kee, and Rubalcava*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN-RIVERSIDE DIVISION

| | |
|---|---|
| **L.C.,**<br><br>       Plaintiffs,<br><br>v.<br><br>**STATE OF CALIFORNIA, et al.,**<br><br>       Defendants. | No. 5:22-cv-00949 KK-SHKx<br><br>**STATE DEFENDANTS' FURTHER RESPONSE AND OBJECTIONS TO PLAINTIFFS' EX PARTE APPLICATION RE: MINORS' COMPROMISE**<br><br>Judge:  Honorable Kenly Kiya Kato<br>Action Filed: June 7, 2022 |

As the Court permitted in its July 23, 2025 Minute Order (ECF No. 202), the State Defendants further respond and object to the Plaintiffs' ex parte application for approval of the minors' compromise as follows:

**1. Objection to paragraph 10 of the Declaration of Hang D. Le (ECF No. 198-1):** The settlement amount and minors' names are incorrect. This error was brought to the attention of Plaintiffs' counsel.

2. **Objection to paragraphs 7 and 8 of the proposed order (ECF No. 198-12):** The dates and amounts in the payment schedules for Plaintiffs L.C. and I.H. are inconsistent with the annuity payment schedules listed in Exhibits A and B, respectively. (*See* ECF Nos. 198-2, 198-3.) This inconsistency was brought to the attention of Plaintiffs' counsel.

3. **Objection to Qualified Assignment & Release (QAR) Language:** State Defendants object to the form of the QAR Plaintiffs request the State of California, acting by and through the California Highway Patrol (CHP), execute and that is necessary to release the State of any and all liability or responsibility to make periodic payments to the minors given that the parties' settlement agreement called for a lump sum payment. CHP does not generally object to executing a QAR but has requested some minor changes. (*See* Attachment 1.) Counsel for the parties have been meeting and conferring on these changes, and at the time of filing this document, Plaintiffs' counsel was still consulting with the broker whether the annuity provider agrees to the requested changes. Without an agreement on the QAR, State Defendants will not agree to a structured settlement with periodic payments and request that the minors' share from the State Defendants' settlement be deposited with the Court or blocked account.

4. **Request for Additional Language to Proposed Order:** After meeting and conferring, the parties agree that the paragraphs below be added to the Court's order if the Court approves the ex parte application. State Defendants contend this language is necessary because CHP may not be able to fund the annuities within the required time, potentially resulting in different payment dates and amounts. CHP agrees to promptly process all paperwork necessary for issuance of warrants (checks) to fund the annuities. However, payment of settlement funds require processing by the California Department of Finance and the warrants are issued by the State Controller's Office. CHP has no control or authority over these departments should a delay occur at either or both entities. To avoid burdening the

Court with one or more requests for an amended order reflecting different payout dates or amounts based on when the annuities are purchased, State Defendants request the following language be included in any order the Court issues approving the minors' compromise:

> (1) The future structured settlement payments listed in the Order are guaranteed based on current annuity rates and a projected annuity purchase date on or before _____, 2025. Any delay in funding the annuity purchase may result in a delay of the payment dates or a change in the payment amounts that shall be accurately recorded in the settlement agreement and release, qualified assignment and release document, or annuity contract without the need of obtaining an amended court order.
>
> (2) The future payment amounts outlined in this Order are guaranteed based upon a projected annuity purchase date of _____, 2025. Any delay in funding the annuity may result in a delay of the payment dates or change in payment amounts that shall be recorded in the settlement agreement and release, qualified assignment document, or annuity contract without the need to amend this Order up to 180 days after original purchase date."[1]

Dated: July 25, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General

*/s/ Diana Esquivel*

DIANA ESQUIVEL
Deputy Attorney General
*Attorneys for Defendants State, Blackwood, Kee, and Rubalcava*

LA2022603031
39191749

---

[1] State Defendants' attorney is currently unaware of the deadline to fund the annuities to secure the payout dates and amounts stated in the application.

# ATTACHMENT 1

# Qualified Assignment and Release Agreement
*In Accordance With Internal Revenue Code Section 130*

**"Claimant(s)":** _____

**"Assignor":** State of California and County of San Bernardino

**"Settlement Agreement":** Date and title of settlement agreement

**"Assignee":** MetLife Assignment Company, Inc.

**"Annuity Issuer":** Metropolitan Tower Life Insurance Company

**"Effective Date":** Date

**This Qualified Assignment and Release Agreement** is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A    Claimant(s) and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s) as specified or referred to in paragraph 12 of this Agreement (the "Periodic Payments"); and

B    Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

**Now, therefore,** in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor.** Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments described in Paragraph 12. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

2. **Nature of Periodic Payments.** The Periodic Payments constitute

   i. damages (other than punitive damages), whether by suit or agreement, or

   ii. compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments described in Paragraph 12.

[Handwritten annotations: "or agreed", "agreement or", "agreement or"]

MetLife QAR Revised 04/2017

    Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset**. Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement.  Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments**. Assignee may have Annuity Issuer send payments directly to a Claimant, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to a depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant or any Successor Payee any rights of ownership or control of the Annuity. Each Claimant and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant's or Successor Payee's current street address and telephone number and, if such Claimant or Successor Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the applicable depository institution and the account number of the account to which the payments are to be credited.

6. **Discharge of Liability**. The Assignee's liability to make each Periodic Payment to the Claimant or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant or Successor Payee by the Annuity Issuer.

7. **Acceleration, Transfer of Payment Rights**. None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

   i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

   ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

   No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Beneficiaries**. Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8.  Any party so designated is referred to in this Agreement as a " Beneficiary."  If no  Beneficiary is living at the time of the death of a Claimant or

MetLife QAR Revised 04/2017

Successor Payee, payment shall be made to the decedent's estate.  As used in this agreement the term "Successor Payee" refers to a Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent).  Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Beneficiary shall be deemed to be revocable; and no party that is designated as a Beneficiary (other than a party irrevocably designated as a Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. **Failure to Satisfy Section 130(c**). If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment and the release by Claimant(s) of Assignor's liability shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by ~~Assignor~~ which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.            and Assignor                  Claimant                                      or agreement

10.  **Governing Law; Disclosure of Certain Tax Information; Binding Effect**.

    (i)  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of <u>CA</u> provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    (ii) This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11.  **Advice, Comprehension of Agreement**. In entering into this Agreement, each Claimant represents and warrants that (i) such Claimant has relied solely upon the legal and tax advice of such Claimant's own attorneys and other advisors, who are the attorneys and advisors of such Claimant's choice, concerning the legal and income tax consequences of this Agreement; and (ii) the terms of this Agreement have been completely read by and explained to such Claimant and are fully understood and voluntarily accepted by such Claimant.

12.  **Description of Periodic Payments.** The Periodic Payments are as set forth immediately below or (if not set forth below) as set forth in attached **Addendum No. 1**, which is hereby incorporated in and made a part of this Agreement.

**Description of Periodic Payments:**

<u>Description of Periodic Payments or See Addendum No. 1</u>